Morgan E. Pietz (SBN 260629)
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:   (310) 424-5557
Facsimile :   (310) 546-5301

Attorney for Putative John Doe in 2:12-cv-08333-DMG-PJW

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INGENUITY 13, LLC, a Limited Liability Company Organized Under the Laws of the Federation of Saint Kitts and Nevis,<br><br>        Plaintiff,<br><br>    v.<br><br>JOHN DOE,<br><br>        Defendant. | Case Number(s): 2:12-cv-08333-DMG-PJW<br><br>Assigned to: Judge Dolly M. Gee<br>Referred to: Magistrate Judge Patrick J. Walsh<br><br>**MEMORANDUM IN SUPPORT OF PUTATIVE JOHN DOE'S *EX PARTE* APPLICATION FOR LEAVE TO TAKE EARLY DISCOVERY AND FOR A FURTHER STAY OF THE SUBPOENA RETURN DATE** |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................ ii

TABLE OF AUTHORITIES..................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES....................................... 1

(a) Introduction and Summary ....................................................... 1

(a) Factual Background Regarding Alan Cooper, Ingenuity 13, and AF Holdings .. 4

(b) Applicable Law ......................................................................... 8

(c) The Requested Early Discovery is Relevant to the Issue of Plaintiff's Standing to Sue for Copyright Infringement and is Also Relevant to Uncovering a Possible Fraud on the Court and/or Undisclosed Financial Interests in the Case 8

(d) Prejudice to the Plaintiff Can be Easily Avoided .............................. 11

(e) Need for the Requested Discovery Outweighs the Minimal Prejudice to Plaintiff 11

(f) Need for *Ex Parte* Relief to Preserve the Ability of Movant to File a Meaningful Motion to Quash ............................................................... 12

(g) Even if the Court Denies John Doe's Request for Limited Early Discovery, the Court Should Still Order a Brief Stay of the ISP Subpoena Return Date .......... 13

(h) Local Rule 7-19 Statement ............................................. 14

(i) Conclusion ............................................................... 15

**MEMORANDUM IN SUPPORT OF PUTATIVE JOHN DOE'S *EX PARTE* APPLICATION FOR LEAVE TO TAKE EARLY DISCOVERY AND FOR A FURTHER STAY OF THE SUBPOENA RETURN DATE**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AF Holdings LLC v. John Doe*
  C.D. Cal. Case No. 12-cv-5709-ODW, ECF No. 9, p. 2, 10/19/12 ................................. 3

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*
  69 F.3d 337, 348 (9th Cir. Cal. 1995) .................................................................... 8

*Bautista v. Los Angeles County*
  216 F.3d 837, 842-843 (9th Cir. 2000) .................................................................. 3

*Combs v. Rockwell Int'l Corp.*
  927 F.2d 486 (9th Cir. 1991) ................................................................................ 9

*Forsberg v. Pefanis,*
  261 F.R.D. 694, 702 (N.D. Ga. 2009) ................................................................... 8

*Gillespie v. Civiletti*
  629 F.2d 637, 642 (9th Cir. 1980) ......................................................................... 4

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*
  322 U.S. 238, 246, 64 S. Ct. 997, 88 L. Ed. 1250, 1944 Dec. Comm'r Pat. 675 (1944) ... 8

*Malibu Media LLC v. John Does 1–10*
  No. 2:12-cv-01642-RGK-SSx, slip op. at 4 (C.D. Cal. Oct. 10, 2012) ............................ 3

*Patrick Collins, Inc. v. John Does 1 though 9,*
  S.D. Cal. Case No. 3:12-cv-1436, ECF No. 23, 11/08/12 ................................................ 2

*Righthaven, LLC v. Democractic Underground, LLC*
  791 F. Supp. 2d 968, 973 (D. Nev. 2011)(Case No. 10-cv-1356-RLH-GWF, ECF No.
  116, 6/14/11) .................................................................................................... 9

*Semitool, Inc. v. Tokyo Electron Am., Inc.*
  208 F.R.D. 273 (N.D. Cal. 2002) .......................................................................... 8

*Silvers v. Sony Pictures Entertainment, Inc.*

    402 F.3d 881 (9th Cir. 2005) .......................................................................9

*Sunlust Pictures, Inc. v. Tuan Nguyen*

    M.D. Fl. Case No. 8:12-CV-1685-T-35MAP......................................................6

*Texas Guaranteed Student Loan Corp. v. Deepinder Dhindsa*

    2010 U.S. Dist. LEXIS 65753, No. 10-00335 (E.D. Cal. 2010) ......................8

*Wyle v. R.J. Reynolds Indus., Inc.*

    709 F.2d 585, 589 (9th Cir. 1983) .................................................................8

**Other Authorities**

Black's Law Dictionary, Eighth Ed., p. 246 .......................................................9

S. Balganesh, "The Uneasy Case Against Copyright Trolls," 86 S. CAL. L. REV.

    (forthcoming May 2013), *28 ......................................................................8

**MEMORANDUM IN SUPPORT OF PUTATIVE JOHN DOE'S *EX PARTE* APPLICATION FOR LEAVE TO TAKE EARLY DISCOVERY AND FOR A FURTHER STAY OF THE SUBPOENA RETURN DATE**

## MEMORANDUM OF POINTS AND AUTHORITIES

**(a)    Introduction and Summary**

Plaintiff Ingenuity 13, LLC is a shell entity organized under the laws of laws of the Federation of Saint Kitts and Nevis.  It has filed dozens of copyright infringement cases across the country alleging that ISP subscribers illegally downloaded pornography.  Prenda Law, Inc., which represents Ingenuity 13, LLC as counsel, has filed hundreds of such lawsuits against tens of thousands of John Doe defendants over the last two plus years, on behalf of a variety of pornographer clients.  However, not a single one of the many Prenda Law cases has ever been decided on the merits (other than on default).  In 2011, Judge Koh ordered Prenda to disclose how many of the thousands of people Prenda had sued had it ever actually served.  The answer then was that out of 200 some odd lawsuits against approximately 15,000 John Does, it had served zero (0) people with complaints.[1]

Nevertheless, Prenda has made a small to perhaps medium sized fortune over the past few years collecting "settlements" with ISP subscribers whom it has threatened with suit, accusing them of using the BitTorrent file sharing protocol to illegally download pornography. Prenda has pioneered a new business model that is based on using the Court's subpoena power, and leveraging the social stigma associated with pornography, to shake down ISP subscribers for quick copyright infringement "settlements" of a few thousand dollars each. For the most part, Prenda's business is essentially predicated on a single threat: pay Prenda a few thousand dollars, or Prenda will publicly accuse the ISP subscriber of downloading pornography.

One major problem with this scheme—and this is an issue that Prenda is perpetually dancing around; telling one Court one thing, and another Court something different—is

---

[1] *AF Holdings v. Does 1-135*, N.D. Cal. No. 5:11-cv-3336-LHK, ECF No. 43-1, 2/4/12, p 4. ("our records indicate that no defendants have been served in the below-listed cases"). Since this 'emperor has no clothes' moment this spring, Prenda has actually served several dozen people nationwide, to try and make an example out of them.  As an effective way to shame its adversaries, and as a warning to the thousands of people it threatens with suit, Prenda lists the names of the people it has named or served with pornography lawsuits on its website: http://wefightpiracy.com/suits-against-individuals.php

that ISP subscriber does not necessarily equal the actual John Doe defendant.  That is, just because someone happens to pay the Internet bill for a household does not mean that person is actually the John Doe infringer who used the IP address to download something illegally.  Particularly when ISP subscribers have open or unencrypted WiFi networks that are not encrypted (i.e., no password is required to join the network), very often, the actual infringer can be a teenage kid next door, or, indeed, anyone with access to the wireless network.

For a time, Prenda was getting away with filing lawsuits, issuing subpoenas, getting lists of names from the ISPs, and then simply putting on a full court press, like a debt collector, to try and collect from ISP subscribers.  Prenda used the full toolkit to try and leverage settlement: threats and harassing calls from "settlement negotiators" working at call centers, robo-calls at all hours, etc.  Particularly early on, Prenda would generally just *assume* that whomever happened to pay the Internet bill was the actual defendant, and then threaten this person with a lawsuit accordingly.  When faced with the expense and uncertainty of retaining counsel to contest the case, or paying a few thousand dollars to Prenda avoid having ones name dragged through the mud many people—including many innocent people—chose to simply pay the ransom.

More recently, and with good reason, federal courts have become increasingly skeptical of Prenda's business model.  First, based on jurisdictional and venue concerns, courts put a stop to the big, hundred-Doe or even thousand-Doe lawsuits where Prenda sued John Doe defendants from all over the country in a single action.  Next, Prenda and others started filing multiple defendant lawsuits against groups of Does who all resided in a given judicial district. Courts began throwing these lawsuits out too, rejecting the so-called "swarm joinder" theory, which is now being consistently repudiated by district courts in the Ninth Circuit.  *E.g., Patrick Collins, Inc. v. John Does 1 though 9*, S.D. Cal. Case No. 3:12-cv-1436, ECF No. 23, 11/08/12 ("the majority view among district courts within the Ninth Circuit is that allegations of swarm joinder are alone insufficient for joinder. . . Doe Defendants' alleged conduct therefore lacks the type of "very definite logic relationship"

-2-

1  required to permit joinder."); *quoting Bautista v. Los Angeles County*, 216 F.3d 837, 842-

2  843 (9th Cir. 2000).

3        The instant case (as well as all the related Ingenuity 13, LLC and AF Holdings, LLC

4  cases) represents the latest incarnation of Prenda's business model: actions against a single

5  John Doe defendant, with the increased costs passed on to ISP subscribers in the form of

6  higher settlement demands.  However, Judge Wright, of the Central District of California,

7  who was assigned all of the AF Holdings cases pending there, recently zeroed in on

8  precisely what is wrong with these single Doe cases. After all the AF Holdings cases in the

9  Central District were transferred to Judge Wright, he vacated all prior orders authorizing

10 ISP subpoenas and issued an order to show cause asking plaintiff to justify why early

11 discovery should be allowed,

12              "AF Holdings must demonstrate to the Court, in light of the

13              Court's above discussion,[2] ***how it would proceed to uncover***

14              ***the identity of the actual infringer once it has obtained***

15              ***subscriber information***—given that the actual infringer may be

16              a person entirely unrelated to the subscriber—while also

17              considering how to minimize harassment and embarrassment of

18              innocent citizens."  *AF Holdings LLC v. John Doe*, C.D. Cal.

19              Case No. 12-cv-5709-ODW, ECF No. 9, p. 2, 10/19/12

20              (emphasis added).

21 Judge Wright is spot-on: until the plaintiff can put forth some kind of credible discovery

22 plan showing how it will go from obtaining ISP subscriber information to identifying

23 _____

24 [2] The "above discussion" Judge Wright referred to was a discussion of all the reasons it is incorrect
   to simply assume that an ISP subscriber is the actual defendant.  The subpoenas to the ISPs "may

25 only lead to the person paying for the internet service and not necessarily the actual infringer, who
   may be a family member, roommate, employee, customer, guest, or even a complete stranger.

26 *Malibu Media LLC v. John Does 1–10*, No. 2:12-cv-01642-RGK-SSx, slip op. at 4 (C.D. Cal. Oct.

27 10, 2012)." *AF Holdings LLC v. John Doe*, C.D. Cal. Case No. 12-cv-5709-ODW, ECF No. 9, p.
   1-2, 10/19/12

28

-3-

actual infringing defendants, the subpoenas are premature.  Once Prenda has a list of ISP subscriber info, that is all it needs or really wants to execute its business model; it will simultaneously threaten to sue and seek to settle with ISP subscribers, while also sometimes telling the Court that these people have no standing to object since they are not yet named as parties.  Prenda Law has this two-step down pat: tell the ISP subscribers they are defendants and threaten to sue them, and then tell the Courts the ISP subscribers are merely targets for discovery, in an attempt to explain why almost none of the ISP subscribers are ever served.[3]

Although the ISP subpoenas are a *necessary* first step in identifying a defendant, they are not *sufficient* to make it "very likely" that the subpoenas seeking to identify ISP subscribers will result in identification of actual John Doe defendants, as required by *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (early discovery to identify John Does authorized when it is "very likely" to identify actual defendants). Particularly in light of the potential for abuse in this kind of lawsuit, and Prenda's track record of settling or dismissing most actions without prejudice at or near the service deadline, the plaintiff should be required to put forward a more complete discovery plan before being allowed to avail itself of the Court's subpoena power.

**(a)     Factual Background Regarding Alan Cooper, Ingenuity 13, and AF Holdings**

Movant believes that Prenda should be compelled to provide some answers on the Alan Cooper issue, and right away, in view of the following facts—all of which seem to suggest a possible pattern whereby current/former close associates of John Steele are being fraudulently held out as corporate representatives of AF Holdings and Ingenuity 13:

(1) There is a gentleman from Minnesota named Alan Cooper who formerly worked as a caretaker on a property owned by John Steele.  Appendix 1; Appendix 2 ¶ 4.

---

[3] This "two-step" is issue that will be briefed in further detail in Movant's opposition to Prenda's completely frivolous motion for sanctions (ECF No. 22) that it filed in violation of the 21-day safe harbor, and without even an attempting to meet and confer.

**MEMORANDUM IN SUPPORT OF PUTATIVE JOHN DOE'S *EX PARTE* APPLICATION FOR LEAVE TO TAKE EARLY DISCOVERY AND FOR A FURTHER STAY OF THE SUBPOENA RETURN DATE**

(2) John Steele was the name partner in the predecessor firm to Prenda Law, Inc., which was called Steele Hansemeier PLLC, and, at least until recently, Mr. Steele clearly remained closely associated with Prenda Law, Inc. *See* Appendix 1, Exhibits A through D.

(3) Mr. Steele has alternatively identified himself as both "of counsel" with Prenda Law (Exhibit A to Appendix 1) and "not an attorney with any law firm" (Appendix 3, pp. 11:25–12:7), depending on who was asking and when.  However, regardless of whatever is Mr. Steele's current story, it appears to the undersigned that Mr. Steele has been pulling the strings at Prenda Law with respect to its national pornography lawsuit "settlement" business.

(4) Mr. Steele bragged to his caretaker Alan Cooper about a copyright scheme Appendix 1, p 1., and, according to Mr. Cooper "Steele had told me on at least one occasion that if anyone asked about companies that I should call him." Appendix 2, ¶ 8.

(5) After Mr. Cooper became suspicious, and searched online, he found out that Prenda Law had been using the name "Alan Cooper" as the supposed principal of AF Holdings and Ingenuity 13, in various federal court filings, including copyright assignment forms, and verifications filed on behalf of Ingenuity 13 that use an electronic signature for "Alan Cooper."  Appendix 1, Exhibit E, page 8 of 8.

(6) Concerned about his potential personal liability in connection with the scores of Ingenuity 13 and AF Holdings copyright infringement lawsuits pending across the country, Mr. Cooper hired a lawyer who asked Prenda Law to confirm that there was another Alan Cooper who is the true principal of AF Holdings and Ingenuity 13, and that the identity of Alan Cooper of Minnesota is not being misappropriated.  Appendix 1.

(7) Immediately after Mr. Cooper's attorney filed a notice of appearance on Mr. Cooper's behalf in an AF Holdings case pending in Minnesota, John Steele attempted to call Mr. Cooper multiple times, despite the fact that Mr. Cooper was represented by counsel. Appendix 1.

(8) For about three weeks, Prenda has been dodging the questions asked by Mr. Cooper's attorney, and by the undersigned counsel, about whether there is another Alan

**MEMORANDUM IN SUPPORT OF PUTATIVE JOHN DOE'S *EX PARTE* APPLICATION FOR LEAVE TO TAKE EARLY DISCOVERY AND FOR A FURTHER STAY OF THE SUBPOENA RETURN DATE**

Cooper who was the principal of AF Holdings and Ingenuity 13.  Prenda refuses to say.  Appendix 4.

(9) Undersigned counsel has asked Brett Gibbs, counsel for plaintiff here, to produce a verification allegedly signed by Alan Cooper that Mr. Gibbs purported to have in his possession, under penalty of perjury.  Mr. Gibbs has refused to do so.  Appendix 4.

(10) At almost the exact same time the Alan Cooper allegations were coming to light, the curtain was pulled back a bit farther on Prenda's operation by a federal Judge in Florida, in an episode that begins to suggest a pattern of deception with respect to who is really behind these lawsuits. In *Sunlust Pictures, Inc. v. Tuan Nguyen*, M.D. Fl. Case No. 8:12-CV-1685-T-35MAP Judge Scriven ordered a principal of Prenda Law, Inc. to attend a hearing on a John Doe motion, and also ordered a principal of Sunlust Pictures, the plaintiff in that action, to attend the hearing as well. (The complete hearing transcript is attached as Appendix 3). According to the transcript, Prenda's purported "sole principal" Paul Duffy, belatedly notified the Court that he could not attend due to a health issue. After two prior local counsel sought to withdraw from the matter, Prenda placed an advertisement in a local newspaper and obtained a new, third local counsel (hired by plaintiff's counsel here Brett Gibbs) who, after filing a notice of appearance and conferring with defense counsel, almost immediately sought to withdraw.  Sunlust also did not send a principal to the hearing; rather, it sent John Steele's former paralegal, a man named Mark Lutz, as the plaintiff's "corporate representative" for hire.  However, upon questioning Mr. Lutz, Judge Scriven quickly determined that Mr. Lutz had no authority to bind the company, and that he did not know who owned or managed it.  Accordingly, despite a Court order requiring them to do so, neither Prenda Law nor its client Sunlust Pictures sent a principal to the hearing.[4]  Note in particular page 20 of the transcript where Judge

---

[4] Coincidentally (?) one person who did attend the hearing: John Steele.  Mr. Steele started out in the gallery and purported not to be involved in the case, but after the Court noticed Mr. Lutz constantly trying to confer with Mr. Steele, the Judge asked Mr. Steele who he was, and then asked him for answers to some of her questions about Sunlust Pictures, which Mr. Steele provided.  Appendix 3, p. 18:12-24.

-6-

**MEMORANDUM IN SUPPORT OF PUTATIVE JOHN DOE'S *EX PARTE* APPLICATION FOR LEAVE TO TAKE EARLY DISCOVERY AND FOR A FURTHER STAY OF THE SUBPOENA RETURN DATE**

Scriven orders the purported "corporate representative" for the plaintiff, Mark Lutz (i.e., John Steele's former paralegal), away from the plaintiff's table and dismisses the case for "failure to present a lawful agent, for attempted fraud on the Court by offering up a person who has no authority to act on behalf of the corporation as its corporate representative" and invites a motion for sanctions.  Appendix 3.

(11)   The signature used by Alan Cooper of Minnesota on his lease agreement with John Steele appears to be somewhat similar to the "Alan Cooper" signature used on various copyright assignments in Prenda cases:

| *Image of Authenticated Signature of Minnesota Alan Cooper from His Lease with John Steele:*[5] | *Image of "Alan Cooper" Signature Used on Copyright Assignment Filed in C.D. Cal. 12-cv-5709 (Low-number Case):*[6] |
|---|---|
| SIGNED THIS 17TH OF NOVEMBER, 2006<br><br>Landlord: _____<br><br>John Steele, 21067 220th St. McGrath MN 56350.<br><br><br>Tenant: _____ | <br><br><br><br>_____<br>Alan Cooper, on behalf of:<br><br>Assignee<br>AF Holdings, LLC |

---

[5] This signature is found the last page of the attachment to Allan Cooper's sworn affidavit, which is a copy of his lease with John Steele, a copy of which is filed herewith as Appendix 2.

[6] This signature is found on the last page of Exhibit B to the complaint, which is the copyright assignment agreement for the copyright at issue in the above-referenced action, a copy of which is filed herewith as Appendix 5.

-7-

**MEMORANDUM IN SUPPORT OF PUTATIVE JOHN DOE'S *EX PARTE* APPLICATION FOR LEAVE TO TAKE EARLY DISCOVERY AND FOR A FURTHER STAY OF THE SUBPOENA RETURN DATE**

**(b)     Applicable Law**

As correctly noted by the plaintiff in its own brief seeking early discovery, "Courts within the Ninth Circuit use a balancing test to decide whether motions for expedited discovery should be granted. *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273 (N.D. Cal. 2002) (granting expedited discovery under a "balance of hardships" analysis). Under the balancing test standard, a request for expedited discovery should be granted where a moving party can show that its need for expedited discovery outweighs the prejudice to the responding party. *Id.* at 276 ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."); *see also Texas Guaranteed Student Loan Corp. v. Deepinder Dhindsa*, 2010 U.S. Dist. LEXIS 65753, No. 10-00335 (E.D. Cal. 2010)."  ECF No. 8, p. 3, 10/8/12.

**(c)     The Requested Early Discovery is Relevant to the Issue of Plaintiff's Standing to Sue for Copyright Infringement and is Also Relevant to Uncovering a Possible Fraud on the Court and/or Undisclosed Financial Interests in the Case**

Moreover, "The use of a forged document in defense of a lawsuit prejudices both the opposing party and the judicial system itself. . .A court may use its inherent powers to preserve the integrity of the judicial process and prevent the perpetration of fraud on the court." *Forsberg v. Pefanis*, 261 F.R.D. 694, 702 (N.D. Ga. 2009); *citing Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246, 64 S. Ct. 997, 88 L. Ed. 1250, 1944 Dec. Comm'r Pat. 675 (1944).

As the Ninth Circuit has explained, "It is well settled that dismissal is warranted where. . .a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings: 'courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.'" *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. Cal. 1995); *quoting Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983) (upholding dismissal of complaint pursuant to court's inherent

**MEMORANDUM IN SUPPORT OF PUTATIVE JOHN DOE'S *EX PARTE* APPLICATION FOR LEAVE TO TAKE EARLY DISCOVERY AND FOR A FURTHER STAY OF THE SUBPOENA RETURN DATE**

power where plaintiff's denials of material fact were knowingly false); *see also Combs v. Rockwell Int'l Corp.*, 927 F.2d 486 (9th Cir. 1991) (affirming dismissal under the court's inherent power as appropriate sanction for falsifying a deposition), cert. denied, 502 U.S. 859, 116 L. Ed. 2d 138, 112 S. Ct. 176 (1991).

    If there are indeed forged documents in the copyright chain of title, then there are obvious standing problems with respect to AF Holdings and Ingenuity 13's ability to sue for copyright infringement. Standing is a particularly important concern in lawsuits like this because it was on the rocky issue of copyright standing that *Righthaven* copyright troll cases foundered.[7] *E.g., Righthaven, LLC v. Democractic Underground, LLC*, 791 F. Supp. 2d 968, 973 (D. Nev. 2011)(Case No. 10-cv-1356-RLH-GWF, ECF No. 116, 6/14/11) (dismissing copyright infringement claims brought by "copyright troll" company taking assignment to copyrights for lack of standing due to technical problems with the assignment documentation); *see also, generally*, S. Balganesh, "The Uneasy Case Against Copyright Trolls," 86 S. CAL. L. REV (forthcoming May 2013), p *28[8] (discussing how the *Righthaven* court applied *Silvers v. Sony Pictures Entertainment, Inc.,* 402 F.3d 881 (9th Cir. 2005), which prohibits bare assignment of a mere right to sue, and noting that "As a functional matter then, *Silvers* operates as copyright law's rule against *both* the assignment of actionable copyright claims *and* champertous[9] lawsuits).

---

[7] The *Righthaven* actions, which began in 2010, were the first in the modern era were a company was purpose-built to take assignment to copyrights and then go into business as a professional copyright infringement plaintiff.  After Judge Hunt of the District of Nevada learned that there was a problem with Righthaven's assignment documents, the result was that all of Righthaven's many infringement lawsuits were eventually dismissed, Righthaven was liquidated, and its copyrights sold at auction to pay the attorneys fees of the defendants who Righthaven had sued.

[8] An abstract to and copy of this forthcoming law review article is available here: http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2150716

[9] "Champerty – 1. An agreement between an officious intermeddler in a lawsuit and a litigant by which the intermeddler helps pursue the litigant's claim as consideration for receiving part of any judgment proceeds; specif. an agreement to divide litigation proceeds between the owner of the litigated claim and a party unrelated to the lawsuit who supports or helps enforce the claim. . .2

-9-

Further, beyond standing, the requested discovery on Alan Cooper is also highly relevant to determining whether there are undisclosed parties with a pecuniary interest in the outcome of the litigation, and to potential improper fee splitting.  What seems increasingly likely is that Minnesota Alan Cooper's identity was misappropriated, without his knowledge or consent, in a fraudulent attempt to hide the fact that Prenda Law, Inc. and/or John Steele are the real parties in interest behind AF Holdings and Ingenuity 13.  The fact that these two shell entities were organized in St. Kitts and Nevis, a notorious privacy haven, which has strict laws guarding against the recording or disclosure of corporate ownership information,[10] lends further support to this theory.  Moreover, the hearing transcript from Prenda's *Sunlust* case in Florida suggests that there is a pattern here: when Courts pry as to who is really behind Prenda's lawsuits, Prenda and/or John Steele attempt to defraud the court.  Appendix 3.  In *Sunlust*, when Prenda was ordered to produce a client principal at a hearing, the person who showed up was a current close associate of John Steele—Steele's former paralegal, Mark Lutz—despite the fact that, as the Court determined through questioning, Mr. Lutz had no authority and knew nothing about the plaintiff entity.  From defrauding a Court with respect to producing a purported agent who lacks authority, it is not then a far leap to imagine that the same thing occurred with respect to Alan Cooper.  That is, Prenda and/or John Steele simply chose another person Mr. Steele knew (and whose signature they had a copy of), namely Alan Cooper of Minnesota, and attempted to hold this person out in federal court filings as the principal of AF Holdings and Ingenuity 13 (only without telling Mr. Cooper about it).  In short, there appears to be a possible pattern of Prenda Law, Inc. and/or John Steele seeking to defraud

---

*Hist.* A writ available to the party who is the target of a champertous action."  Black's Law Dictionary, Eighth Ed., p. 246.

[10] "Managers and final beneficiaries are not registered anywhere, this way they have total anonymity." http://www.offshorebankshop.com/en/11-saint-kitts-and-nevis-offshore-company-form-tax-haven-limited-liability.html; *see also* U.S. Department of Treasury Financial Crimes Enforcement Network Warning re: St. Kitts and Nevis: http://www.fincen.gov/news_room/rp/advisory/html/advis26.html

**MEMORANDUM IN SUPPORT OF PUTATIVE JOHN DOE'S *EX PARTE* APPLICATION FOR LEAVE TO TAKE EARLY DISCOVERY AND FOR A FURTHER STAY OF THE SUBPOENA RETURN DATE**

the Courts on the issue of who is really behind these lawsuits, by falsely holding out straw-men that have a personal connection to John Steele as company principals.

If Prenda Law, Inc. and/or John Steele (or some other person or entity) are the true real parties in interest in these cases, then Movant, the public, and the Court (for the purpose of recusal procedures) have a right to know, and this raises further questions about improper fee splitting.  Even if it turns out that John Steele and/or Prenda are not legally the real parties in interest, a question remains: how much of the take can the plaintiff's lawyers keep before they become the *de facto* real party in interest such that the required financial disclosure is in order under Fed. R. Civ. Proc. 7.1 and L.R. 7.1-1?  How much is allowed pursuant to ethical rules on fee splitting – 90%, 70%?  The Alan Cooper discovery will also lead to answers on all of these questions as well.  What appears to be going on here is the definition of what was once called "champerty," which, under common law concepts that are no longer recognized, was a crime as well as a tort.

**(d)     Prejudice to the Plaintiff Can be Easily Avoided**

Generally, Prenda Law complains that when there are delays in cases like this, it will have difficulty meeting the Rule 4(m) service of process deadline.   To remedy any possible prejudice associated with that issue, Movant would stipulate to a 30-day extension of that deadline.  Indeed, if this lawsuit is allowed to proceed, and Movant's identity is ordered disclosed to Prenda, and Prenda insists on moving forward notwithstanding Rule 11(b)(3), undersigned counsel will urge Movant to waive service.

**(e)     Need for the Requested Discovery Outweighs the Minimal Prejudice to Plaintiff**

Prenda law can moot the early discovery request (if not the request for a stay of the subpoena return date), and put the minds of litigants nationwide at ease by providing a verified response, in its opposition hereto, to a very simple question: is there another Alan Cooper, other than the gentleman in Minnesota, who is or was the principal of Ingenuity 13 and AF Holdings?  Similarly, if this Mr. Cooper did sign a notarized, verified petition by hand, which Mr. Gibbs has averred, under penalty of perjury, that he kept a copy of, then

-11-

Mr. Gibbs should produce the signature page. *See In the Matter of a Petition by Ingenuity 13, LLC,* E.D. Cal. Case No. 11-mc-0084-JAM-DAD, ECF No. 1, p. 8 of 8, 10/28/11.[11] By submitting a one-page affidavit in support of its opposition along with Mr. Cooper's verification page, plaintiff could get the case right back on track. However, Movant believes that the fact that Prenda has utterly refused to substantively address any of the very troubling circumstances raised by Alan Cooper of Minnesota speaks volumes.

The requested early discovery is narrow in scope, minimally burdensome, can and will be propounded promptly, and is necessary for several reasons: (1) to ensure that a fraud is not being perpetuated, with help of the Court's subpoena power; (2) to address standing issues associated with possible forged chain of title documents; (3) to determine whether the plaintiff's lawyers, or some other person or entity, are actually the undisclosed real parties in interest in this case; (4) to determine whether there is evidence of improper fee splitting.

**(f)    Need for *Ex Parte* Relief to Preserve the Ability of Movant to File a Meaningful Motion to Quash**

Plaintiff Ingenuity 13, LLC sought and obtained leave of court to issue a subpoena to Comcast seeking to identify the billing contact associated with the Internet account which, at the relevant time, was assigned the particular IP address which plaintiff alleges was used to illegally download plaintiff's pornographic movie.

After receiving a subpoena, Comcast checked its records and determined that at the time alleged in the complaint the IP address at issue was assigned to an Internet account paid for by Movant. Accordingly, Comcast then notified Movant, as the billing contact for this account, that unless Movant takes action to quash or otherwise object to the subpoena Comcast will disclose Movant's identity to the plaintiff.

On November 28, 2012, Movant filed an initial ex parte application seeking an extension of the subpoena return date (ECF no. 13). On December 3, 2012, Magistrate Judge Walsh held a telephonic conference with counsel for both sides in this action and

---

[11] A copy of this verified petition is included as Exhibit E to Appendix 1 hereto.

**MEMORANDUM IN SUPPORT OF PUTATIVE JOHN DOE'S *EX PARTE* APPLICATION FOR LEAVE TO TAKE EARLY DISCOVERY AND FOR A FURTHER STAY OF THE SUBPOENA RETURN DATE**

granted the 30-day stay requested by Movant in the ex parte application, *nunc pro tunc* to November 28, 2012.  (ECF No. 16).  Accordingly, ***the current subpoena response deadline is Saturday December 29, 2012***.  This application for a further stay of the response deadline is being filed well in advance of that deadline, given the upcoming Christmas holiday.[12]

Movant respectfully requests that the ISP subpoena response deadline in this case be stayed pending further order of this Court, and that the very troubling questions regarding Alan Cooper be resolved, or at least addressed, as threshold issues before this case is allowed to proceed any farther.  Movant will be filing a motion to quash, and the information sought by early discovery is highly relevant thereto.  Further, Movant, as well as the public and the Court (for purposes of considering possible conflicts in connection with recusal rules) have a right to know if Prenda Law, Inc. and/or John Steele are really the true parties in interest in this lawsuit.

**(g)    Even if the Court Denies John Doe's Request for Limited Early Discovery, the Court Should Still Order a Brief Stay of the ISP Subpoena Return Date**

Even if the Court is not inclined to grant John Doe's request for limited pre-service written discovery, Movant would respectfully request that, in the alternative, the Court stay the return date on the subpoena plaintiff issued to Comcast seeking Movant's identity to a date certain (perhaps a 30-day extension), to allow Movant to file a motion to quash by then.  Here, a 30-day stay of the subpoena return would also be beneficial in that the Notice of Related Cases filed by undersigned counsel on December 3, 2012, will likely be decided by Judge Wright by then.  Since Prenda Law and similar plaintiffs firms generally prefer to try and parcel their highly similar cases out to as many different Judges as possible, a recurring problem in these cases is that after lawyers for John Does become involved and seek to relate the cases, there end up being motions to quash heard before one Judge, only

---

[12] Undersigned counsel notes that Magistrate Judge Walsh suggested that a further discovery conference might be in order on this matter, and is filing this application in order to have something in writing to discuss at such a conference, hopefully in advance of the coming holidays.

-13-

**MEMORANDUM IN SUPPORT OF PUTATIVE JOHN DOE'S *EX PARTE* APPLICATION FOR LEAVE TO TAKE EARLY DISCOVERY AND FOR A FURTHER STAY OF THE SUBPOENA RETURN DATE**

to have all of the cases then transferred to another Judge, which is clearly a waste of resources for both the Court and the parties.  Again, as noted above, Movant has no objection to a reasonable continuance of the 4(m) deadline.

**(h)      Local Rule 7-19 Statement**

As required by L.R. 7-19, the contact information for plaintiff's counsel is as follows:

>                         Brett L. Gibbs, Esq. (SBN 251000)
>                         Of Counsel to Prenda Law Inc.
>                         38 Miller Avenue, #263
>                         Mill Valley, CA 94941
>                         415-325-5900[13]
>                         blgibbs@wefightpiracy.com

Mr. Gibbs indicated on the phone that he would oppose an application like this one.  Dec'l. of Morgan E. Pietz ¶ 6.

/

---

[13] An issue undersigned counsel has raised with Mr. Gibbs previously, in state court litigation, is that Mr. Gibbs does not appear to maintain a working fax number: http://members.calbar.ca.gov/fal/Member/Detail/251000

**MEMORANDUM IN SUPPORT OF PUTATIVE JOHN DOE'S *EX PARTE* APPLICATION FOR LEAVE TO TAKE EARLY DISCOVERY AND FOR A FURTHER STAY OF THE SUBPOENA RETURN DATE**

**(i)       Conclusion**

For the foregoing reasons, Movant respectfully requests (1) that leave be granted to propound the specific proposed written discovery identified in Movant's ex parte application; (2) that the subpoena return date be stayed pending further order of this Court, which shall be re-evaluated after verified responses have been served to the requested written discovery; or (3) in the alternative, that the subpoena return date be stayed for 30 more days, to permit Movant to file a motion to quash the subpoena plaintiff issued to Comcast seeking Movant's identity.


Respectfully submitted,

DATED: December 18, 2012                    THE PIETZ LAW FIRM

                                            */s/ Morgan E. Pietz*

                                            Morgan E. Pietz
                                            THE PIETZ LAW FIRM
                                            Attorney for Putative John Doe(s)
                                            Appearing on Caption


## CERTIFICATE OF SERVICE

I hereby certify that on this day, the above document was submitted to the CM/ECF system, which sent notification of such filing(s) to the plaintiff, which is registered for electronic service.

Respectfully submitted:  December 18, 2012        THE PIETZ LAW FIRM
                                                  */s/ Morgan E. Pietz*
                                                  Morgan E. Pietz
                                                  THE PIETZ LAW FIRM
                                                  Attorney for Putative John Doe(s)
                                                  Appearing on Caption

**MEMORANDUM IN SUPPORT OF PUTATIVE JOHN DOE'S *EX PARTE* APPLICATION FOR LEAVE TO TAKE EARLY DISCOVERY AND FOR A FURTHER STAY OF THE SUBPOENA RETURN DATE**