1 | Morgan E. Pietz (SBN 260629)
THE PIETZ LAW FIRM
2 | 3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
3 | mpietz@pietzlawfirm.com
Telephone:   (310) 424-5557
4 | Facsimile :   (310) 546-5301

5

Attorney for Putative John Doe in 2:12-cv-08333-ODW-JC

6

## UNITED STATES DISTRICT COURT

7

## CENTRAL DISTRICT OF CALIFORNIA

8

9 | INGENUITY 13, LLC, a Limited Liability
Company Organized Under the Laws of
10 | the Federation of Saint Kitts and Nevis,

Case Number(s): 2:12-cv-08333-ODW-JC

Case Assigned to: Judge Otis D Wright, II
Discovery Referred to: Magistrate Judge
Jacqueline Chooljian

11

Plaintiff,

12

13 | v.

14 | JOHN DOE,

**EXHIBITS TO THE DECLARATION
OF MORGAN E. PIETZ RE: PRENDA
LAW, INC.**

15 | Defendant.

16

17

18

19

20

21

22

23

24

25

26

27

28

-1-
**EXHIBITS TO THE DECLARATION OF MORGAN E. PIETZ RE: PRENDA LAW, INC.**

Exhibits to the Declaration of Morgan E. Pietz
Page 1

## **INDEX OF EXHIBITS**

| | |
|---|---|
| **Exhibit A** | Screenshots of the wefightpiracy.com website, 2010 to present |
| **Exhibit B** | Illinois Business Entity Listing for Prenda Law, Inc. |
| **Exhibit C** | Complaint filed by local counsel for Prenda in Nebraska, showing use by local counsel of blgibbs@wefightpiracy.com as the email on the pleadings |
| **Exhibit D** | *Pro Hac Vice* application filed by John Steele listing him as "of counsel" to Prenda Law as of April 12, 2012 |
| **Exhibit E** | Example of Prenda demand letter sent to pressure ISP subscribers to settle |
| **Exhibit F** | Exhibit A to status report filed by Brett Gibbs in *AF Holdings v. Does 1-135*, N.D. Cal. Case No. 5:11-cv-0336-LHK, ECF No. 43-1, 2/24/12, wherein Mr. Gibbs admits that Prenda Law, Inc. f/k/a Steele Hansemeier, PLLC had filed 118 multiple-defendant cases, against 15,878 Doe defendants, but they had served zero (0) John Does in any of these cases |
| **Exhibit G** | Declaration of Jesse Nason swearing that he did not "live alone," which was the "fact" Prenda relied upon to justify naming and serving him |
| **Exhibit H** | Judge Hamilton's order in *AF Holdings LLC v. John Doe et al.*, N.D. Cal. No. 12-cv-2049, ECF No. 45, 1/7/13, denying Prenda's motion for leave to amend the complaint, and explaining why "Plaintiff's Further Investigation of Defendant" was insufficient to justify naming and serving the ISP subscriber Josh Hatfield as the actual defendant in this case. |
| **Exhibit I** | Declaration of Josh Hatfield swearing that the facebook any Myspace pages Prenda wanted to rely upon to justify naming and serving him with a complaint did not actually belong to Mr. Hatfield |
| **Exhibit J** | Letter Alan Cooper's attorney Paul Godfread filed on his behalf in two AF Holdings cases pending in Minnesota |
| **Exhibit K** | Sworn affidavit executed by Alan Cooper explaining the bases for his suspicions that Prenda has misappropriated his identity |
| **Exhibit L** | Petition filed by Brett Gibbs in *In the Matter of a Petition by Ingenuity 13, LLC*, E.D. Cal. Case No. 11-mc-0084, ECF No. 1, 10/28/11, wherein, Mr. Gibbs purports to have kept the notarized original signature of Alan Cooper |
| **Exhibit M** | Meet and confer emails where Morgan Pietz asks Mr. Gibbs to confirm that there is another Alan Cooper (other than the man in Minnesota) who was a principal of AF Holidings and Ingenuity 13, and to produce a copy of the Rule 27 petition verification page, but Mr. Gibbs stonewalls |
| **Exhibit N** | Transcript from November 27, 2012 hearing in *Sunlust Pictures, Inc. v. Tuan Nguyen*, M.D. Fl. Case No. 8:12-CV-1685-T-35MAP where Judge Scriven invites sanctions for Prenda's attempted fraud on the court |
| **Exhibit O** | Illinois Business Entity Listing for Anti-Piracy Law Group, LLC |

**EXHIBITS TO THE DECLARATION OF MORGAN E. PIETZ RE: PRENDA LAW, INC.**

# EXHIBIT A

Case 2:12-cv-08333-ODW-JC    Document 40-2    Filed 01/14/13    Page 4 of 153    Page ID #:489

http://wefightpiracy.com/    [Go]

**21 captures**
20 Jan 11 – 23 Nov 12

DEC   **JAN**   JUN
◀  **20**  ▶
2010  **2011**  2012

# STEELE | HANSMEIER

- [Home](#)
- [About Us](#)
- [Services](#)
- [Contact Us](#)
- [Disclaimer](#)

- **Steele | Hansmeier** Jun 19, 2010 Steele | Hansmeier PLLC is a law firm dedicated to eradicating digital piracy. We represent prominent content producers and commence legal action against individuals and businesses who steal our client's content.



- **Combating Piracy in the Digital Age** Jun 19, 2010 Our practice includes addressing the unique legal issues posed by Internet-based piracy, where the vast majority of infringement occurs under the cover of IP addresses

1/9/13 7:06 PM

Exhibits to the Declaration of Morgan E. Pietz
Page 4



- **Preserving the Creative Arts** Jun 19, 2010 We view our mission as preserving the creative arts for future generations. If left unchecked, digital piracy represents an existential threat to creative arts professionals around the world.



- **Steele | Hansmeier**

INTERNET ARCHIVE
WayBack Machine

21 captures
20 Jan 11 – 23 Nov 12

DEC   JAN   JUN
20
2010  2011  2012

- **Preserving the Creative Arts**

**Contact Us**

# About Us

Steele | Hansmeier PLLC is a Chicago-based law firm that provides legal services to content producers and creative professionals. Our focus is purusing individuals and businesses who infringe on the copyrights associated with our clients' creative works. Our practice includes addressing the unique legal issues posed by Internet-based piracy, where the vast majority of infringement occurs under the cover of Internet Protocol ("IP") addresses.

We view our mission as a small part of the overall effort to preserve the creative arts for future generations. In our view, the ease with which digital content is pirated represents an existential threat to the future of professional content producers. Our clients understand all too well the problems posed by the unauthorized redistribution of their copyrighted works, particularly given the capital investment associated with producing and marketing professional works.

# Services

The legal services offered by Steele | Hansmeier PLLC reflect the lifecycle of a creative work. Such services include:

- Due diligence efforts to determine whether a proposed creative work lacks originality or infringes on another creative work;
- Developing a plan for protecting and enforcing U.S. and international copyrights;
- Securing U.S. copyrights and coordinating with third parties to secure international copyrights in both Berne and non-Berne Convention countries; and
- Enforcing U.S. copyrights and coordinating with third parties to enforce international copyrights.

Many of our services involve coordinating with third party attorneys (e.g. international copyright work) and third party technology providers (e.g. copyright enforcement). Our consistent focus is to provide our clients with strong returns on the capital they invest in our time and that of our third party service providers.

top

## Due Diligence

Before investing substantial capital into the production and/or distribution of a creative work, a creative artist may wish to conduct a basic level of due diligence into determining the degree to which their work resembles other copyrighted creative works. The methods for conducting this sort of due diligence vary based on the medium, through most forms of creative work lend themselves to digital due diligence. For example, an audio file can be digitally fingerprinted based on a variety of characteristics (e.g. rhythm, length, melody, etc.). This fingerprint can be compared to those of other audio files. Similar results would then be reviewed to determine whether a copyright issue exists. If such an issue exists, then the creative artist can attempt to obtain a license from the copyright holder of the original work. A creative artist's bargaining power is much stronger before they invest millions of dollar into marketing and distributing a creative work.

In 2008, Joe Satriani filed a copyright infringement lawsuit against the Grammy Award-winning band, Coldplay. Satriani's suit alleged that Coldplay's hit song, *Vida la Vida*, contained substantial portions of Satriani's, *If I Could Fly*. The parties eventually reached an out-of-court monetary settlement for an undisclosed financial sum.

In addition to avoiding infringement lawsuits, it is important to know whether a given creative work will even be afforded

Exhibits to the Declaration of Morgan E. Pietz
Page 6

INTERNET ARCHIVE
**WayBackMachine**

21 captures
20 Jan 11 – 23 Nov 12

DEC    JAN    JUN
◄    **20**    ►
2010   2011   2012

## Protection Planning

Another category of services offered by Steele | Hansmeier PLLC is assisting creative artists plan their copyright strategy in advance of the creation and/or publication of their creative works. Despite the existence of international treaties, such as the Berne Convention, the world as a whole essentially remains a patchwork of copyright laws with varying degrees of enforcement. By way of example, a creative artist's approach to copyright protection in the United States should look much different than the artists approach to copyright protection in China. We offer to assist creative artists in developing copyright protection strategies worldwide.

## Securing Copyrights

Once a creative work has been produced and/or published, it is generally important to register a copyright in every country where the copyright holder may wish to assert their rights. We offer to assist creative artists by coordinating the registration of their copyrights around the world, as required.

> In the United States it is particularly important to register one's copyrights. As a general rule, copyright registration is a prerequisite to filing a copyright infringement lawsuit in U.S. federal court and a timely filing will preserve remedies that may be lost indefinitely if one does not timely register his or her copyright.

## Enforcing Copyrights

Copyright enforcement is a rapidly evolving field. Recent advances in communications technology have dramatically lowered the cost and increased the profitability of mass-piracy. As piracy evolves, so too must copyright enforcement strategies. Steele | Hansmeier PLLC offers services on the cutting edge of copyright enforcement, including: 1) DMCA enforcement services; 2) pirate pursuit services; and 3) advising on comprehensive paradigm shifts in copyright enforcement.

# Disclaimer

Our website is intended to provide only an overview of Steele | Hansmeier PLLC. Nothing on this website is meant to be or should be relied on as legal advice. Commentary on this website is not necessarily up to date. This website is not intended to be an offer to represent you, nor is it intended to establish an attorney client privilege.

## Links

-Berne Convention
-Copyright Office
-Copyright Overview
-Copyright Statutes
-Creative Commons

## Resources

-Patry Blog
-Geist Blog (Canadian law)
-IP Watch

## Pages

- About Us

INTERNET ARCHIVE
WaybackMachine

[                                        ] ( Go )

**21 captures**
20 Jan 11 – 23 Nov 12

DEC | **JAN** | JUN
2010 | **20** | 2012
    | **2011** |

## Latest News

### Google fights piracy



According to an article published on Digital Trends, Google is taking steps to implement several anti-piracy measures, which will ideally make it more difficult for searchers to located pirated material. First, Google is increasing its responsiveness to takedown requests of so-called "reliable copyright holders." Second, its autocomplete function will filter out greater amounts of infringing results. [...]

### Pixar's president discusses copyright laws



According to a recently published article in the Salt Lake Tribune, Ed Catmull, president of Pixar Studios, linked international copyright protection to Pixar's ability to continue investing in the cutting-edge technology that's brought us such movies as Wall-E, Monster's, Inc., and Up – all of which are presumably registered trademarks of Pixar Animation Studios. At [...]

### Robin Hood is the week's most pirated movie



Ridley Scott's Robin Hood, starring Russell Crowe and Cate Blanchett, is not only popular in the theaters, but also among the BitTorrent crowd. According to BitTorrent news site, TorrentFreak, Robin Hood, despite its relatively lower IMDB rating, beat out both Iron Man 2 and the Expendables for the the top spot on the piracy chart [...]

© Copyright Steele | Hansmeier PLLC - Design by Kriesi.at - Wordpress Themes

- RSS
- Facebook
- Twitter
- flickr

top

# Prenda Law Inc.

Protecting Intellectual Property

## Pirate Code

Posted on **November 14, 2011**

Modern-day intellectual property pirates practice many of the customs of their sea-faring forebearers. By way of example, both groups abide by a set of rules (i.e. a "Pirate Code") to provide a structure intended to enhance the effectiveness of piracy operations. A description of "Pirate Codes" associated with the likes of such buccaneers as Captain Henry Morgan can be found on Wikipedia: Here

The Pirate Codes of modern-day intellectual property pirates are more focused on assuring that everyone is participating in the distribution of pirated content. For example, the principles embedded in the BitTorrent protocol assure that every downloader is also an uploader. The rules of some BitTorrent websites take this principle to more extreme heights. For example, certain private BitTorrent websites *require* users to maintain a minimum upload/download ratio. Failure to abide by these principles can result in a lifetime ban-which is not the worst fate considering the consequences of crossing Blackbeard.

Posted in **Uncategorized** | **Leave a reply**

---

## Google fights piracy

Posted on **December 2, 2010**

According to an article published on Digital Trends, Google is taking steps to implement several anti-piracy measures, which will ideally make it more difficult for searchers to located pirated material. First, Google is increasing its responsiveness to takedown requests of so-called "reliable copyright holders." Second, its autocomplete function will filter out greater amounts of infringing results. Third, Google's AdSense program will attempt to reduce its presence on websites associated with piracy. Finally, Google indicated that it would tweak its search algorithm to promote search results linking to legitimate requests.

Posted in **Uncategorized**

---

## Pixar's president discusses copyright laws

Posted on **September 10, 2010**

According to a recently published article in the Salt Lake Tribune, Ed Catmull, president of Pixar Studios, linked international copyright protection to Pixar's ability to continue investing in the cutting-edge technology that's brought us such movies as Wall-E, Monster's, Inc., and Up – all of which are presumably registered trademarks of Pixar Animation Studios. At his Utah Valley University speech, Catmull singled out

Exhibits to the Declaration of Morgan E. Pietz
Page 9



Case 2:12-cv-08333-ODW-JC Document 40-2 Filed 01/14/13 Page 10 of 153 Page ID #:435

INTERNET ARCHIVE WaybackMachine
Go
21 captures
20 Jan 11 - 23 Nov 12
OCT NOV DEC
29
2010 2011 2012
Close
Help

Posted in Infos | Leave a reply



# Welcome

Prenda Law is a law firm that provides legal services to content producers and creative professionals. Our focus is purusing individuals and businesses who infringe on the copyrights associated with our clients' creative works. Our practice includes addressing the unique legal issues posed by Internet-based piracy, where the vast majority of infringement occurs under the cover of Internet Protocol ("IP") addresses.

## Pirate Code



Modern-day intellectual property pirates practice many of the customs of their sea-faring forebearers. By way of example, both groups abide by a set of rules (i.e. a "Pirate Code") to provide a structure intended to enhance the effectiveness of piracy operations. A description of "Pirate Codes" associated with the likes of such buccaneers as Captain Henry Morgan can be found on Wikipedia: Here

The Pirate Codes of modern-day intellectual property pirates are more focused on assuring that everyone is participating in the distribution of pirated content. For example, the principles embedded in the BitTorrent protocol assure that every downloader is also an uploader. The rules of some BitTorrent websites take this principle to more extreme heights. For example, certain private BitTorrent websites require users to maintain a minimum upload/download ratio. Failure to abide by these principles can result in a lifetime ban-which is not the worst fate considering the consequences of crossing Blackbeard.

## Google fights piracy

Google fights piracy

According to an article published on Digital Trends, Google is taking steps to implement several anti-piracy measures, which will ideally make it more difficult for

### Links

- Berne Convention
- Copyright Office
- Copyright Overview
- Copyright Statutes
- Creative Commons

### Resources

- Patry Blog
- Geist Blog (Canadian law)
- IP Watch

### Digital Piracy 101

Digital piracy occurs through several channels. Each of these channels offers trade-offs between likelihood of detection, convenience and content availability.

Direct File Sharing This most basic form of piracy involves friends simply transferring files directly to one another via an instant messaging program (e.g. AIM), e-mail or other similar means. Direct file sharing is difficult to detect, but content availability is limited to the files held within the peer group.

1/10/13 7:13 PM

Exhibits to the Declaration of Morgan E. Pietz Page 11

INTERNET ARCHIVE
WayBack Machine

5 captures
21 Jan 11 – 8 Dec 11

SEP    DEC    JAN
8
2010   2011   2012

Close

Help

results linking to legitimate requests.

# Pixar's president discusses copyright laws

### Copyright Laws

According to a recently published article in the Salt Lake Tribune, Ed Catmull, president of Pixar Studios, linked international copyright protection to Pixar's ability to continue investing in the cutting-edge technology that's brought us such movies as Wall-E, Monster's, Inc., and Up – all of which are presumably registered trademarks of Pixar Animation Studios. At his Utah Valley University speech, Catmull singled out Russia and China as nations where copyright protection is particularly lacking, estimating that up to 90 percent of the value of Pixar's recently-released movies were lost due to poor copyright protection. According to Catmull, if the global community values continuing innovation in the computer animation field, it must allow studios to recoup the value of their investment in such innovation.

typically via a content-specific forum, with the general Internet population. Third parties then follow that link to a site where they download content. File locker piracy is relatively easy to detect, but is not an extremely convenient means of sharing files. Nor is content availability as high as in other channels (though this is changing fast).

Peer-to-peer piracy This form of piracy occurs when individuals use a peer-to-peer protocol (e.g. BitTorrent) to transfer files. The typical steps in this process involve using a search function to locate the desired content, and then running a software program that implements a given protocol to download the desired content. P2P piracy suffers from easy detection, but is extremely convenient and the content availability is breathtaking. Virtually any form of content published in the past 20 years is available via P2P networks.

Home | About Us | Contact Us | Current Litigation Information
© Copyright 2011 Prenda Law Inc.. All Rights Reserved.
Web Design by No.1WebDesign.com.



# Welcome

Prenda Law is a law firm that provides legal services to content producers and creative professionals. Our focus is purusing individuals and businesses who infringe on the copyrights associated with our clients creative works. Our practice includes addressing the unique legal issues posed by Internet-based piracy, where the vast majority of infringement occurs under the cover of Internet Protocol ("IP") addresses.  In addition, our firm pursues hackers that break into our client's pay websites to steal digital content. Prenda Law actually pioneered this litigation.

## Prendas Top Pirates (Individual Cases)

- California (Phillip Williamson)
- Florida (Chris Adekola)
- Illinois (Christopher Plotts)
- Illinois (Jason Spain)
- Florida (William Trout)
- Florida (Michael Golzman)
- Florida (Paul Williams)
- Illinois (Jamie Phiou)
- Illinois (Klint Christensen)
- Illinois (Edward Neese)
- Illinois (Erik Schwarz)
- Illinois (Stilian Pironkov)
- Illinois (Hyung Kim)
- California (Sauel Teitelbaum)
- California (Jo Vasquez)
- California (Steve Polan)
- California (Jeff Goldberg)
- California (Isaac Kamins)
- California (Francisco Rivas)
- California (Jason Angle)
- California (Seth Abrahams)

Unfortunately we are unable to list and provide the link to every suit currently pending throughout the country due to space limitations.  However, our firm will be uploading a sampling of 'Individual' cases that we file each month.

### Links

- Berne Convention
- Copyright Office
- Copyright Overview
- Copyright Statutes
- Creative Commons

### Resources

- Patry Blog
- Geist Blog (Canadian law)
- IP Watch

Home | About Us | Contact Us | Current Litigation Information
© Copyright 2011 Prenda Law Inc.. All Rights Reserved.



Exhibits to the Declaration of Morgan E. Pietz
Page 14



http://wefightpiracy.com/   Go   APR **NOV** DEC   Close

21 captures
20 Jan 11 – 23 Nov 12   ◀ **23** ▶   Help
2011 **2012** 2013

About the     Firm     Attorneys     PRENDA LAW INC. *Intellectual Property Attorneys*     Practice     Giving     Case





## NEWS AND PRESS

### Prenda Sues AT&T and Comcast

2012-08-10

### Judge Facciola Rules in favor of Prenda Law and denies all Motions brought by John Does

2012-08-14

### Judge Howell: AT&T and Comcast arguments "have no merit".

2012-08-14



## Why create anything?

Without copyrights, there would be no book stores, concert halls or movie theaters. Digital piracy is an existential threat to the useful arts and sciences. Our founding fathers enshrined copyright law in the Constitution, understanding that artistic works are instrumental to social progress.

Stealing is wrong, regardless of whether it involves a DVD from the store or a digital copy via BitTorrent. While our firm cannot prevent theft, we can prosecute the thieves. We understand the frustration of creating a movie, book or song, only to watch online pirates use BitTorrent or illegal passwords to steal your content.

We Can Help.

> "It is piracy, not overt online music stores, that is our main competitor." -Steve Jobs

## PRENDA LAW : ANTI-PIRACY PIONEER



At Prenda Law Inc. we assist our clients regarding the acquisition, protection and exploitation of some of their most valuable assets their company possesses (such as brands, creative works and technology). Click here to see our most recent cases.

As the first law firm to successfully pursue widespread copyright infringement on a contingency fee basis, Prenda Law Inc. helps our clients preserve their copyrighted work with none of the large, up-front, costs required by traditional litigation firms. Because our clients do not pay any fees until and unless there is money recovered (by settlement or verdict), the contingency fee arrangement is almost always more cost-effective for the client. Our belief is a copyright holder shouldn't lose money having to pursue criminals stealing its works. The criminals should.

Exhibits to the Declaration of Morgan E. Pietz Page 15



from the creation of copyrights, trademarks and trade secret laws, to the protection of intellectual
property rights, to the legal pursuit of those who infringe on our clients' rights to their intellectual property.

The firm's practice areas include:

- copyrights
- intellectual property litigation
- intellectual property strategy
- licensing rights
- trade secret actions
- trademarks
- website hacking prosecution

# PRENDA LAW INC. INTELLECTUAL PROPERTY ATTORNEYS BLOG

Please visit our blog to find out about the lastest in the anti-piracy wars.

THE BLOG



Home | About the Firm | Firm Resources | Attorneys | Practice Areas | Giving | Case Samples | Terms of Service

© 2012 Copyright 2011 Prenda Law Inc. All Rights Reserved.

You may reproduce materials available at this site for your own personal use and for non-commercial distribution. All copies must include the above copyright notice. ATTORNEY ADVERTISING DISCLAIMER  The contents of this website should not be construed as legal advice on any specific fact or circumstance. Its content was prepared by Prenda Law Inc. This Illinois law firm organized as a limited liability company with its principal office at 161 North Clark Street, Suite 3200, Chicago, Illinois 60601. Ph.1-800-380-0840) for general information purposes only. Your receipt of such information does not create an attorney-client relationship with Prenda Law Inc. or any of its lawyers. You should not act or rely on any of the information contained here without seeking professional legal advice. Prior results referred to in these materials do not guarantee or suggest a similar result in other matters. Prenda Law Inc.'s lawyers are licensed in Illinois and a limited number of other jurisdictions. They are not certified by any regulatory agency. Certification is not necessarily required to practice law, nor are they certified in that jurisdiction for a limited period.



# Welcome

Prenda Law is a law firm that provides legal services to content producers and creative professionals. Our focus is purusing individuals and businesses who infringe on the copyrights associated with our clients creative works. Our practice includes addressing the unique legal issues posed by Internet-based piracy, where the vast majority of infringement occurs under the cover of Internet Protocol ("IP") addresses.  In addition, our firm pursues hackers that break into our client's pay websites to steal digital content. Prenda Law actually pioneered this litigation.

# About Us

We view our mission as a small part of the overall effort to preserve the creative arts for future generations. In our view, the ease with which digital content is pirated represents an existential threat to the future of professional content producers. Our clients understand all too well the problems posed by the unauthorized redistribution of their copyrighted works, particularly given the capital investment associated with producing and marketing professional works.

Whether it is going after infringers who use BitTorrent to steal movies, or hackers who steal passwords to access pay sites, Prenda Law will continue to lead the way in protecting copyrighted material on the Internet.

If you are a creative artist who has their content being stolen by pirates, feel free to contact us.  If you are a pirate who steals copyrighted works on the Internet, we hope to meet you soon.

## Links

- Berne Convention
- Copyright Office
- Copyright Overview
- Copyright Statutes
- Creative Commons

## Resources

- Patry Blog
- Geist Blog (Canadian law)
- IP Watch

Home | About Us | Contact Us | Current Litigation Information
© Copyright 2011 Prenda Law Inc.. All Rights Reserved.
Web Design by No.1 Web Design.

1/10/13 7:23 PM

Exhibits to the Declaration of Morgan E. Pietz
Page 17




About the   Firm   Attorneys   Practice   Giving   Case



Call: 1-800-380-0840



## NEWS AND PRESS

### Prenda Sues AT&T and Comcast

2012-08-10

### Judge Howell: AT&T and Comcast arguments "have no merit".

2012-08-14

### Judge Facciola Rules in favor of Prenda Law and denies all Motions brought by John Does

2012-08-14



## Why create anything?

Without copyrights, there would be no book stores, concert halls or movie theaters. Digital piracy is an existential threat to the useful arts and sciences. Our founding fathers enshrined copyright law in the Constitution, understanding that artistic works are instrumental to social progress.

Stealing is wrong, regardless of whether it involves a DVD from the store or a digital copy via BitTorrent. While our firm cannot prevent theft, we can prosecute the thieves. We understand the frustration of creating a movie, book or song, only to watch online pirates use BitTorrent or illegal passwords to steal your content.

We Can Help.

> "It is piracy, not overt online music stores, that is our main competitor." -Steve Jobs

## PRENDA LAW : ANTI-PIRACY PIONEER



At Prenda Law Inc. we assist our clients regarding the acquisition, protection and exploitation of some of their most valuable assets their company possesses (such as brands, creative works and technology). Click here to see our most recent cases.

As the first law firm to successfully pursue widespread copyright infringement on a contingency fee basis, Prenda Law Inc. helps our clients preserve their copyrighted work with none of the large, up-front, costs required by traditional litigation firms.  Because our clients do not pay any fees until and unless there is money recovered (by settlement or verdict), the contingency fee arrangement is almost always more cost-effective for the client. Our belief is that a copyright holder shouldn't lose money having to pursue criminals stealing its works.  The criminals should.

## INTELLECTUAL PROPERTY LAW PRACTICE AREAS

The intellectual property attorneys at Prenda Law Inc. are experienced in a multitude of practice areas from the creation of copyrights, trademarks and trade secret laws, to the protection of intellectual property rights, to the legal pursuit of those who infringe on our clients' rights to their intellectual property.

The firm's practice areas include:

- copyrights
- intellectual property litigation
- intellectual property strategy



1 of 2



- licensing rights
- trade secret actions
- trademarks
- website hacking prosecution

## PRENDA LAW INC. INTELLECTUAL PROPERTY ATTORNEYS BLOG

Please visit our blog to find out about the lastest in the anti-piracy wars.

THE BLOG

PRENDA LAW INC.
Intellectual Property Attorneys

Home | About the Firm | Firm Resources | Attorneys | Practice Areas | Giving | Case Samples | Terms of Service

© 2012 Copyright 2011 Prenda Law Inc. All Rights Reserved.
You may reproduce materials available at this site for your own personal use and for non-commercial distribution. All copies must include the above copyright notice.

ATTORNEY ADVERTISING DISCLAIMER. The contents of this website should not be construed as legal advice on any specific fact or circumstance. Its content was prepared by Prenda Law Inc. (an Illinois law firm organized as a limited liability company with its principal office at 161 North Clark Street, Suite 3200, Chicago, Illinois 60601, Ph 1-800-380-0840) for general information purposes only. Your receipt of such information does not create an attorney-client relationship with Prenda Law Inc. or any of its lawyers. You should not act or rely on any of the information contained here without seeking professional legal advice. Prior results referred to in these materials do not guarantee or suggest a similar result in other matters. Prenda Law Inc.'s lawyers are licensed in Illinois and a limited number of other jurisdictions. They and the Firm cannot file actions in all states without associating locally licensed attorneys and/or becoming admitted in that jurisdiction for a limited purpose. Prenda Law Inc. lawyer responsible for the contents of this website is Paul Duffy.

Mon Jan 14 12:43 PM mepietz

Prenda Law INC.

Prenda Law INC.

www.wefightpiracy.com

Google

Surf ▾  Fincl ▾  Lgl Rsrch ▾  IP ▾  Courts ▾  Corps ▾  Bill4Time  F.B.B. a  F.B.B. k  MLB

## INTELLECTUAL PROPERTY LAW PRACTICE AREAS

The intellectual property attorneys at Prenda Law Inc. are experienced in a multitude of practice areas from the creation of copyrights, trademarks and trade secret laws, to the protection of intellectual property rights, to the legal pursuit of those who infringe on our clients' rights to their intellectual property.

The firm's practice areas include:

- copyrights
- intellectual property litigation
- intellectual property strategy
- licensing rights
- trade secret actions
- trademarks
- website hacking prosecution

### PRENDA LAW INC. INTELLECTUAL PROPERTY ATTORNEYS BLOG

Please visit our blog to find out about the lastest in the anti-piracy wars.

> THE BLOG

## PRENDA LAW INC.

### Intellectual Property Attorneys

Home | About the Firm | Firm Resources | Attorneys | Practice Areas | Giving | Case Samples | Terms of Service
© 2012 Copyright 2011 Prenda Law Inc. All Rights Reserved.

You may reproduce materials available at this site for your own personal use and for non-commercial distribution. All copies must include the above copyright notice.
ATTORNEY ADVERTISING DISCLAIMER. The contents of this website should not be construed as legal advice on any specific fact or circumstance. Its content was prepared by Prenda Law Inc. (an Illinois law firm organized as a limited liability company with its principal office at 161 North Clark Street, Suite 3200, Chicago, Illinois 60601, Ph 1-800-380-0840) for general information purposes only. Your receipt of such information does not create an attorney-client relationship with Prenda Law Inc. or any of its lawyers. You should not act or rely on any of the information contained here without seeking professional legal advice. Prior results referred to in these materials do not guarantee or suggest a similar result in other matters. Prenda Law Inc.'s lawyers are licensed in Illinois and a limited number of other jurisdictions. They and the Firm cannot file actions in all states without associating locally licensed attorneys and/or becoming admitted in that jurisdiction for a limited purpose. Prenda Law Inc. lawyer responsible for the contents of this website is Paul Duffy.



About the    Firm    Attorneys    **PRENDA LAW INC.**    Practice    Giving    Case
                                   *Intellectual Property Attorneys*

Call: 1-800-380                                                          Samples

## MENU

Suits Against
Individuals

Suits Against Mass
Does

## Recent Cases Against Identified Individuals

Prior to actually naming and serving individuals accused of various civil and criminal acts against our
clients, Prenda Law attempts to reach out and resolve the issue with the infringer/hacker and/or account
holder directly. While we are able to resolve the matter in some cases, some individuals alleged
infringers wish to go to trial over the matter.

Sandipan Chowdhury - 1:12-CV-12105 (MA)

Matthew Burnell - 1:12-CV-01256 (MI)

Cristian Morinico - 2:12-CV-01969-MCE-CKD (CA)

Christopher Sanchez - 1:12-CV-03862-RLV (GA)

Rajesh Patel - 2:12-CV-00262-WCO (GA)

Joseph Skoda - 2:12-CV-01663-JAM-JFM (CA)

June Quantong - 4:12-CV-02411-PJH (CA)

Steven Pecadeso - 3:12-CV-02404-SC (CA)

Joe Navasca - 3:12-CV-02396-EMC (CA)

Chris Rogers - 3:12-CV-01519-BTM-BLM (CA)

Carlos Martinez - 1:12-CV-03567 (IL)

Jason Hawk - 1:12-CV-04236 (IL)

Perry Miloglou - 1:12-CV-05077 (IL)

Ryan Jacobs - 1:12-CV-04240 (IL)

Eleazar Santana - 1:12-CV-04239 (IL)

Julio Baez - 1:12-CV-06405 (IL)

Robert Olson - 1:12-CV-00685-ML-LDA (RI)

John Foster - 3:12-CV-30164-KPN (MA)

Joshua Demelo - 1:12-CV-11851-MBB (MA)

Alec Chrzanowski - 4:12-CV-11842 (MA)

Maxime St. Louis - 4:12-CV-11797-TSH (MA)

Hajime Okuda - 1:12-CV-11850-MLW (MA)

John Grenier - 1:12-CV-11843 (MA)

Jason Martinez - 1:12-CV-11848-PBS (MA)

Mayank Patel - 2:12-CV-06210 (NJ)

Evans Papantouros - 3:12-CV-06013-MAS-TJB (NJ)

Exhibits to the Declaration of Morgan E. Pietz
Page 21

Frederick C. Highfield - 1:12-CV-06033-JEI-AMD (NJ)

Richard Lovejoy - CV-12-196 (ME)

Thomas Lemay - CV-12-197 (ME)

Gary Millican - 2:12-CV-00259 (GA)

Ben Sanders - 2:12-CV-00258-WCO (GA)

Benjamin Curtis - 1:12-CV-03773-CAP (GA)

Robert Unger - 1:12-CV-03665-RLV (GA)

Paul Stapleton - 1:12-CV-00166-WLS (GA)

Perry Jackson - 5:12-CV-00429-MTT (GA)

Reginald Patterson - 3:12-CV-00144-CAR (GA)

Justin Miller - 3:12-CV-00143-CAR (GA)

Nick Klimek - 1:12-CV-03838-TCB (GA)

Tin Lam - 1:12-CV-03771-ODE (GA)

Michael Davidson - 1:12-CV-03772-RWS (GA)

Shainal Nagar - 1:12-CV-03578-TWT (GA)

David Green, Jr. - 1:12-CV-03557-JOF (GA)

Howard Robinson - 1:12-CV-03542-ODE (GA)

Lorenzo Belmontes, Jr - 2:12-CV-01067-KJM-CKD (CA)

Taurence Lopez - 4:12-CV-0741-DCB (AZ)

James Forth - 4:12-CV-00740-CKJ (AZ)

Charlie Burrell - 4:12-CV-00739-FRZ (AZ)

Michael Tekala - 2:12-CV-02157-GMS (AZ)

Zeke Lundstrum - 2:12-CV-02142-SRB (AZ)

Eric Lemnitzer - 2:12-CV-02141-FJM (AZ)

Carl Strickland - 2:12-CV-02140-ROS (AZ)

Andres Chen - 2:12-CV-02151-MEA (AZ)

Jerry Aurilia - 2:12-CV-02139-SPL (AZ)

Kevin Antrosiglio - 2:12-CV-02138-GMS (AZ)

Adam Nichols - 2:12-CV-02156-MHB (AZ)

Ngoc Nguyen - 2:12-CV-02154-FJM (AZ)

Purnell Phillips - 2:12-CV-02137-MEA (AZ)

Jeff Montgomery - 2:12-CV-02153-ROS (AZ)

Brian Trottier - 2:12-CV-02136-GMS (AZ)

Erick Guevara - 2:12-CV-02152-JAT (AZ)

Matthew Michuta - 2:12-CV-02143-DGC (AZ)

Robert Richardson - 2:12-CV-02148-PGR (AZ)

Andrew Simoneschi - 2:12-CV-02147-PGR (AZ)

Taylor Velasco - 2:12-CV-02146-FJM (AZ)

Douglas Buchanan - 2:12-CV-02145-DKD (AZ)

David Harris - 2:12-CV-02144-MHB (AZ)

Walter Szarek - 2:12-CV-2134-SPL (AZ)

John Song - 2:12-CV-02132-GMS (AZ)

Steven Laizure - 2:12-CV-02131-DGC (AZ)

Christopher Heggum - 2:12-CV-02130-LOA (AZ)

Rick Friend - 2:12-CV-02125-NVM (AZ)

AJ Chubbuck - 2:12-CV-02124-DGC (AZ)

Andrew Gutierrez - 2:12-CV-02127-SPL (AZ)

Rim Boltong - 1:12-CV-03482-MHS (GA)

1/14/13 11:48 AM

Exhibits to the Declaration of Morgan E. Pietz
Page 22

Matthew Taylor - 3:12-CV-00160-TCB (GA)

Danny Chambless - 1:12-CV-03839-AT (GA)

Max Hilmo - 2:12-00263-WCO (GA)

Christopher Eachus - 1:12-CV-06032-JBS-AMD (NJ)

Lazaro Ana Contreras - 1:12-CV-06031-RMB-AMD (NJ)

Steve Sullivan - 1:12-CV-01100 (MI)

Andrew Standley - 2:12-CV-14746-GAD-DRG (MI)

Nicholas Bossard - 1:12-CV-01101 (MI)

Michael Pacheco - 1:12-CV-01102 (MI)

James Davis - 1:12-CV-22149-JEM (FL)

Javier Ubieta - 1:12-CV-22155-CMA (FL)

Erik Diep - 4:12-CV-14459-DPH-RSW (MI)

Nigel Sookdeo - 1:12-CV-22146-CMA (FL)

Vaden Cook - 5:12-CV-14455-SFC-DRG (MI)

James Szewczyk - 2:12-CV-14453-MAG-LJM (MI)

Allen Keehn - 2:12-CV-JAC-MKM (MI)

Joseph Jenkins - 2:12-CV-14450-DML-RSW (MI)

David Olivo - 3:12-CV-01403 (CT)

Elliott Olivas - 3:12-CV-01401-JBA (CT)

Kevin Nevins - 3:12-CV-01404-SRU (CT)

Craig Fenn - 3:12-CV-01402-VLB (CT)

Jonathan J. Abarca - 3:12-CV-01400-SRU (CT)

Udish Sundarrajan - 2:12-CV-01078-GEB-GGH (CA)

Matthew Ciccone - 2:12-CV-14442-GAD-LJM (MI)

Shehzad Lakdawala - 2:12-CV-14444-GCS-MKM (MI)

Jason Hinds - 2:12-CV-14445-AJT-MJH (MI)

Michael Murray - 2:12-CV-14443-GAD-LJM (MI)

Matthew Baldwin - 1:12-CV-11841 (MA)

Michael Nissensohn - 1:12-CV-00687-M-DLM (RI)

Timothy Trafford - 1:12-CV-00686-S-DLM (RI)

Norbert Weitendorf - 1:12-CV-07826 (IL)

Dewey Wilson - CV-2012-900893 (AL)

Adam Sekora - CV-2012-053194 (AZ)

World Timbers - CV-2012-053230 (AZ)

Reza Shemira - 37-2012-00100384 (CA)

Jesse Nason - CV-2012-0057950 (CA)

Samuel Teitelbaum - CV-2011-05628-JCS (CA)

Joe Vasquez - CV-2011-03080-MCE-KJN (CA)

Jeff Goldberg - CV-2011-03074-KJM-CKD (CA)

Jason Angle - CV-2011-03077-JAM-KJN (CA)

Sebastian Lopez - CV-2012-03114 (FL)

Zachary Boudreaux - CV-2012CA-01679 (FL)

Jacob McCullough - CV-2012-21100-JAL (FL)

Tuan Nguyen - CV-2012-01685-MSS-MAP (FL)

Paul Oppold - CV-2012-01686-MSS-AEP (FL)

Lucas Shashek - CV-12-L-927 (IL)

Ronald Trivisonno - CV-2012-L-000531 (IL)

Tom Berry - CV-12-L-95 (IL)

Exhibits to the Declaration of Morgan E. Pietz
Page 23

Michael Allison - CV-2012-L-000530 (IL)

Klint Christensen - CV-2011-08338 (IL)

Edward Neese - CV-2011-08340 (IL)

Hyung Kim - CV-2011-08343 (IL)

Robert Reynolds - CV-2012-01104 (IL)

Jeremy Lozano - CV-2012-00812 (MI)

Adam Grote - CI-12-2625 (NE)

Austin Cunningham - C-133,846 (TX)

Josh Hatfield - CV-2012-02049 (CA)

Bobby Rammos - CV-2012-04232 (CA)

Felix Naylor - CV-2012-03566 (CA)

Thang Ngo - CV-2012-02416-WHA (CA)

David Trinh - CV-2012-02393-CRB (CA)

Jason Hawk - CV-2012-04236 (IL)

Kenneth Payne - CV-2012-04234 (IL)

Daniel Frankfort - CV-2012-03571 (IL)

Ali Yang - CV-2012-01079 (CA)

Cory Phan - CV-2012-01076 (CA)

Darryl Lessere - CV-22156-UU (CA)

Unfortunately, due to space limitations, we are unable to list and provide the link to every individual we are currently suing on behalf of our clients.  Also, it is our firm's policy to remove any cases from our site after we obtain a judgment or settlement.  However, this list will be updated on a regular basis, so if you don't see a particular law suit listed above, feel free to call us at 1-800-380-0840 for more information.

# Recent Cases Against Soon-to-be-Identified Individuals

Prenda Law also files lawsuits on behalf of the firm's clients against anonymous hackers and infringers. The traditional process in these cases is to file a John Doe lawsuit (examples of which are listed below), request discovery from the court, obtain the wrongdoer's identity and either settle with or sue the individual. If you have received a notice from your Internet Service Provider, then your identifying information is about to be released to our firm. At this stage the firm will attempt to contact you to see if settlement is a possibility. If it is not, our client will have no option but to put the matter to a jury of your peers.

1:12-CV-02512-DDD, John Doe, 65.60.170.220

2:12-CV-02158-SRB, John Doe, 70.162.31.215

5:12-CV-00398-HL, John Doe, 72.210.67.50

2:12-CV-06664-GAF-AGR, John Doe 75.142.115.172

2:12-AT-01337, John Doe, 71.92.65.184

2:12-CV-14722-LPZ-RSW, John Doe, 75.114.172.113

2:12-CV-14724-JCO-MAR, John Doe, 71.197.29.106

2:12-CV-00995-EJF, John Doe, 98.202.218.205

2:12-CV-00994-BCW, John Doe, 71.219.136.154

2:12-CV-00993-DAK, John Doe, 65.130.163.107

2:12-CV-00597-RBS-TEM, John Doe, 72.84.95.167

1:12-CV-03568, John Doe, 68.51.101.217

1:12-CV-03569, John Doe, 68.51.101.71

1:12-CV-03570, John Doe, 98.193.34.158

1:12-CV-08030, John Doe, 98.206.40.200

1:12-CV-01398-JES-JAG, John Doe, 99.46.242.157

8:12-CV-01688-JSM-AEP, John Doe, 97.97.62.62

8:12-CV-01689-VCM-TBM, John Doe, 72.91.172.134

Exhibits to the Declaration of Morgan E. Pietz
Page 24

8:12-CV-01690-JDW-EAJ, John Doe, 70.119.245.31

8:12-CV-01691-SDM-MAP, John Doe, 24.110.60.96

8:12-CV-01693-SDM-EAJ, John Doe, 68.59.130.7

2:12-AT-01391, John Doe, 69.110.90.245

2:12-AT-01392, John Doe, 75.26.52.50

2:12-AT-01394, John Doe, 69.225.24.38

2:12-AT-01395, John Doe, 68.189.50.101

2:12-AT-01396, John Doe, 98.192.184.147

2:12-AT-01397, John Doe, 67.181.237.255

5:12-CV-05435-PSG, John Doe, 71.141.229.186

7:12-CV-00545-SGW, John Doe, 24.125.96.75

2:12-CV-00520-AWA-DEM, John Doe, 98.183.144.201

2:12-CV-00598-RGD-LRL, John Doe, 108.17.139.77

2:12-CV-00600-RGD-TEM, John Doe, 24.254.194.149

2:12-CV-00601-MSD-LRL, John Doe, 96.249.247.211

2:12-CV-00602-RAJ-LRL, John Doe, 68.107.226.232

2:12-CV-00605-RGD-LRL, John Doe, 98.183.227.97

2:12-CV-07386-DMG-JEM, John Doe, 108.38.135.253

2:12-CV-01064-JAM-GGH, John Doe, 24.10.30.29

2:12-CV-01066-GEB-GGH, John Doe, 67.182.119.178

2:12-CV-01067-KJM-CKD , John Doe, 71.195.119.40

2:12-CV-14720-PDB-LJM, John Doe, 76.247.139.163

2:12-CV-00992-DBP, John Doe, 24.10.145.222

1:12-CV-00677-N, John Doe, 71.45.14.20

1:12-CV-00676-N, John Doe, 99.102.20.29

2:12-CV-00675-N, John Doe, 71.207.173.128

1:12-CV-00674-N, John Doe, 75.138.43.178

1:12-CV-00673-N, John Doe, 50.130.0.12

2:12-CV-01068, John Doe, 76.125.61.233

2:12-CV-01073-KJM-KJN, John Doe, 76.20.26.96

2:12-CV-01075-GEB-DAD, John Doe, 76.20.32.228

2:12-CV-01076-JAM-GGH, John Doe, 98.208.73.220

2:12-CV-01078-GEB-GGH, John Doe, 98.208.97.196

5:12-CV-02048-HRL, John Doe, 71.202.249.178

3:12-CV-01123-MJR-PMF, John Doe, 24.107.215.180

3:12-CV-02049-EDL, John Doe, 67.161.66.97

3:12-CV-02394-JSC, John Doe, 69.181.134.74

3:12-CV-02393-MEJ, John Doe, 69.181.62.141

3:12-CV-02397-JCS, John Doe, 69.110.5.254

3:12-CV-02416-WHA, John Doe, 71.202.28.31

5:12-CV-02403-PSG, John Doe, 24.7.44.195

5:12-CV-00417-MTT, John Doe, 72.210.66.207

3:12-CV-02417-EDL, John Doe, 67.161.60.39

4:12-CV-05434-DMR, John Doe, 71.202.175.46

4:12-CV-02408-DMR, John Doe, 24.4.210.137

4:12-CV-02411-PJH, John Doe, 67.169.35.65

3:12-CV-02415-CRB, John Doe, 67.160.221.52

2:12-CV-05712-ODW-PJW, John Doe, 71.118.169.163

2:12-CV-05722-JAK-AJW, John Doe, 173.51.46.28

2:12-CV-05725-JFW-JEM, John Doe, 75.38.25.176

2:12-CV-05724-GAF-RZ, John Doe, 76.172.144.175

2:12-CV-01654-MCE-CKD, John Doe, 76.217.185.105

2:12-CV-01655-GEB-GGH, John Doe, 174.134.231.94

2:12-CV-01656-KJM-GGH, John Doe, 174.134.185.41

2:12-CV-01657-GEB-KJN, John Doe, 98.242.5.13

2:12-CV-01658-WBS-CKD, John Doe, 71.193.7.209

2:12-CV-01659-JAM-KJN, John Doe, 76.126.37.254

2:12-CV-01660-JAM-CKD, John Doe, 67.187.147.237

2:12-CV-01661-MCE-DAD, John Doe, 71.193.7.209

2:12-CV-07401-ODW-JC, John Doe, 76.95.241.163

2:12-CV-07402-ODW-JC, John Doe, 71.189.173.168

2:12-CV-07403-ODW--JC, John Doe, 173.58.144.109

2:12-CV-07404-PA-VBK, John Doe, 24.30.132.99

2:12-CV-07405-ODW-JC, John Doe, 24.205.26.247

2:12-CV-07406-ODW-JC, John Doe, 68.99.190.38

2:12-CV-07407-ODW-JC, John Doe, 76.175.73.72

2:12-CV-07408-ODW-JC, John Doe, 76.168.66.219

2:12-CV-07410-SVW-JEM, John Doe, 66.75.82.94

2:12-CV-05709-MWF-JC, John Doe, 66.27.196.248

2:12-CV-07391-ODW-JC, John Doe, 76.90.118.186

2:12-CV-07387-ODW-JC, John Doe, 76.89.191.106

2:12-CV-07384-ODW-JC, John Doe, 67.49.108.156

2:12-CV-02206-JAM-EFB, John Doe, 76.20.6.100

2:12-CV-02207-KJM-DAD, John Doe, 76.103.65.116

2:12-CV-02204-JAM-EFB, John Doe 75.45.103.31

1:12-CV-01279-LMB-IDD, John Doe, 70.179.91.240

1:12-CV-01274-LMB-IDD, John Doe, 68.100.106.162

1:12-CV-01270-LMB-IDD, John Doe, 68.100.85.99

1:12-CV-01269-LMB-IDD, John Doe, 68.100.90.254

1:12-CV-01264-LMB-IDD, John Doe, 173.79.132.143

1:12-CV-01260-LMB-IDD, John Doe, 76.100.131.151

1:12-CV-01256-LMB-IDD, John Doe, 71.127.43.73

1:12-CV-01257-LMB-IDD, John Doe, 70.110.21.134

1:12-CV-01254-LMB-IDD, John Doe, 96.241.127.190

1:12-CV-22147-PAS, John Doe, 74.166.133.168

1:12-CV-22149-JEM, John Doe, 69.84.97.152

1:12-CV-22152-FAM, John Doe, 68.1.71.1

1:12-CV-22157-PAS, John Doe, 174.58.4.112

1:12-CV-22756-CMA, John Doe, 75.74.37.91

1:12-CV-22757-DLG, John Doe, 75.74.108.31

4:12-CV-03253-DMR, John Doe, 76.254.71.44

3:12-CV-03251-JSW, John Doe, 50.131.50.46

3:12-CV-03250-EDL, John Doe, 24.23.170.145

3:12-CV-03249-JCS, John Doe, 24.4.19.164

3:12-CV-03248-NC, John Doe, 99.108.164.117

3:12-CV-05433-LB, John Doe, 76.103.249.187

3:12-CV-01522-LAB-KSC, John Doe, 98.176.216.109

3:12-CV-01519-BTM-BLM, John Doe, 68.8.137.53

3:12-CV-01523-AJB-KSC, John Doe, 72.207.23.163

3:12-CV-01525-LAB-RBB, John Doe, 68.105.113.37

3:12-CV-50176, John Doe, 75.142.52.147

3:12-CV-01115-MJR-DGW, John Doe, 68.187.245.241

3:12-CV-01116, John Doe, 98.240.14.172

3:12-CV-01117, John Doe, 68.52.122.101

3:12-CV-02318-LAB-JMA, John Doe, 72.220.226.162

3:12-CV-02319-AJB-JMA, John Doe, 68.101.166.135

2:12-CV-08331-DMG-PJW, John Doe, 71.189.120.34

2:12-CV-06667, John Doe, 24.176.226.177

2:12-CV-06670, John Doe, 108.23.117.228

2:12-CV-06666, John Doe, 66.74.193.106

2:12-CV-06659, John Doe, 71.106.44.52

2:12-CV-06636, John Doe, 71.106.57.116

2:12-CV-06669, John Doe, 71.118.185.55

2:12-CV-06665, John Doe, 71.254.185.93

2:12-CV-06668, John Doe, 75.128.55.44

1:12-CV-03645-MHS, John Doe, 24.107.165.172

1:12-CV-03647-AT, John Doe, 174.49.64.150

1:12-CV-03646-TCB, John Doe, 24.131.46.64

1:12-CV-03648-SCJ, John Doe, 98.230.128.148

1:12-CV-03645-MHS, John Doe 24.107.165.172

1:12-CV-01399-JES-BGC, John Doe, 67.58.230.16

1:12-CV-01162-PLM, John Doe, 24.35.120.19

1:12-CV-01163-PLM, John Doe, 24.176.5.51

1:12-CV-08429, John Doe, 98.213.86.254

1:12-CV-08431, John Doe 71.194.151.29

1:12-CV-08418, John Doe, 108.68.168.90

1:12-CV-08436, John Doe, 71.239.254.43

1:12-CV-08434, John Doe, 98.193.102.176

1:12-CV-08424, John Doe, 24.1.125.241

1:12-CV-08420, John Doe, 75.57.160.137

1:12-CV-08416, John Doe, 76.202.248.118

1:12-CV-08031, John Doe, 24.14.197.217

1:12-CV-08027, John Doe, 24.1.181.201

1:12-CV-08029, John Doe, 69.245.184.145

1:12-CV-07944, John Doe, 98.226.214.247

1:12-CV-07943, John Doe, 24.14.81.215

1:12-CV-07941, John Doe, 99.141.246.51

2:12-CV-06664, John Doe, 75.142.115.172

2:12-CV-06637, John Doe, 76.169.108.45

2:12-CV-06662, John Doe, 96.248.225.171

2:12-CV-06635, John Doe, 99.12.183.52

2:12-CV-01967, John Doe, 108.91.71.53

2:12-CV-01968, John Doe, 174.134.202.20

2:12-CV-01969-MCE-CKD, John Doe, 98.208.32.103

1/14/13 11:48 AM

Prenda Law, Inc.                                                                                            http://wefightpiracy.com/suits-against-individuals.php

2:12-CV-08320-ODW-JC, John Doe, 71.106.65.201

2:12-CV-08321-ODW-JC, John Doe 64.183.53.14

2:12-CV-08322-DMG-PJW, John Doe, 71.83.94.169

2:12-CV-08323-DMG-PJW, John Doe, 76.170.32.81

2:12-CV-08324-DMG-PJW, John Doe, 67.180.37.35

2:12-CV-08325-ODW-JC, John Doe, 173.58.57.119

2:12-CV-08326-DMG-PJW, John Doe, 76.175.182.136

2:12-CV-08327-GAF-AGR, John Doe, 71.104.194.84

2:12-CV-08328-DMG-PJW, John Doe, 76.175.251.189

2:12-CV-08329-DMG-PJW, John Doe, 68.185.77.225

2:12-CV-08330-DMG-PJW, John Doe, 76.170.133.8

2:12-CV-08332-DMG-PJW, John Doe, 96.40.162.169

2:12-CV-08333-DMG-PJW, John Doe, 108.13.119.253

2:12-CV-08334-DMG-PJW, John Doe, 173.6.105.180

2:12-CV-08336-DMG-PJW, John Doe, 71.104.70.247

3:12-CV-02093-LAB-JMA, John Doe, 72.220.222.3

3:12-CV-04976-JSW, John Doe, 76.102.35.231

3:12-CV-04977-WHA, John Doe, 76.14.13.88

4:12-CV-04978-PJH, John Doe, 50.131.15.143

3:12-CV-04979-LHK, John Doe, 76.126.238.116

3:12-CV-04980-EJD, John Doe, 24.130.232.141

3:12-CV-04981-RS, John Doe, 24.5.245.112

3:12-CV-04982-CRB, John Doe, 67.180.65.8

3:12-CV-04450-MMC, John Doe, 98.234.65.146

3:12-CV-04449-SC, John Doe, 67.160.239.96

5:12-CV-04448-EJD, John Doe, 71.134.226.53

5:12-CV-04447-RMW, John Doe, 71.198.107.59

5:12-CV-04446-EJD, John Doe, 50.131.91.169

5:12-CV-04445-LHK, John Doe, 71.135.105.95

7:12-CV-00544-SGW, John Doe, 66.37.82.174

3:12-CV-00817-JAG, John Doe, 24.254.94.36

3:12-CV-00815-HEH, John Doe, 96.247.199.64

3:12-CV-00813-HEH, John Doe, 72.84.197.14

3:12-CV-00812-JAG, John Doe, 173.53.64.176

3:12-CV-00810-HEH, John Doe, 98.244.115.149

3:12-CV-00808-HEH, John Doe, 74.110.143.212

3:12-CV-00807-REP, John Doe, 71.63.127.97

3:12-CV-00806-JAG, John Doe, 72.196.241.117

3:12-CV-00805-REP, John Doe, 173.53.87.92

2:12-CV-04219, John Doe, 24.7.75.176

2:12-CV-04221, John Doe, 69.181.141.228

2:12-CV-04217, John Doe, 98.207.238.156

2:12-CV-04218, John Doe, 98.248.205.13

2:12-CV-04216, John Doe, 99.47.22.212

2:12-CV-01839, John Doe, 174.66.160.178

2:12-CV-01840, John Doe, 68.101.214.251

2:12-CV-01843, John Doe, 68.8.110.21

**NOTE:** Neither the Defendants, nor anyone listed as an account holder in any of the above cases have

1/14/13 11:48 AM

been found liable for any wrongdoing at this time. The pleadings listed above are part of the public record and can be accessed at www.pacer.gov (for federal cases) or the local county where the case was filed (for state cases).

## PRENDA LAW INC. INTELLECTUAL PROPERTY ATTORNEYS BLOG

Please visit our blog to find out about the lastest in the anti-piracy wars.

THE BLOG

Home [redacted] About the Firm [redacted] Firm Resources | Attorneys | Practice Areas [redacted] Giving [redacted] Case Samples [redacted] Terms of Service

[redacted]

Prenda Law Inc. lawyer responsible for the contents of this website is Paul Duffy.

Mon Jan 14 12:47 PM   mepietz

Anti-Piracy Law Group

Anti-Piracy Law Group   +

wefightpiracy.org.previewdns.com                    antipiracy law group dns

Surf ▾    Fincl ▾    Lgl Rsrch ▾    IP ▾    Courts ▾    Corps ▾    Bill4Time    F.B.B. a    F.B.B. k    MLB

## *Anti-Piracy Law Group*
1-800-380-0840

About Us    Notable Decisions    Sample Cases    Anti-Piracy News Desk



Piracy Costs American Workers 373,375 Jobs Annually

## *Anti-Piracy Law Group .* **Preserving Creativity**

| NOTABLE DECISIONS | SAMPLE CASES | BITTORRENT BETTY |
|---|---|---|







There is always interesting news and important legal decisions regarding the fight between right and wrong, creative artists vs. piracy.

If you are a digital pirate you might see your name end up here unless you stop your infringing ways. If you are thinking about stealing content, please reconsider. Litigation is unpleasant for everyone involved.

BitTorrent Betty is here to provide commentary regarding the latest developments on the anti-piracy front.

Prenda Law Inc.'s Dedicated Website Can be Reached at: Prenda Law Firm

# EXHIBIT B





## CORPORATION FILE DETAIL REPORT

| Entity Name | PRENDA LAW INC. | File Number | 68212189 |
|---|---|---|---|
| Status | NOT GOOD STANDING | | |
| Entity Type | CORPORATION | Type of Corp | DOMESTIC BCA |
| Incorporation Date (Domestic) | 11/07/2011 | State | ILLINOIS |
| Agent Name | PAUL DUFFY | Agent Change Date | 11/07/2011 |
| Agent Street Address | 161 N CLARK ST STE 3200 | President Name & Address | |
| Agent City | CHICAGO | Secretary Name & Address | |
| Agent Zip | 60601 | Duration Date | PERPETUAL |
| Annual Report Filing Date | 00/00/0000 | For Year | 2012 |

Return to the Search Screen

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

Exhibits to the Declaration of Morgan E. Pietz
Page 32

# EXHIBIT C

EXHIBIT C
Exhibits to the Declaration of Morgan E. Pietz
Page 33

Image ID:
D00382270D02

# SUMMONS

Doc. No.   382270

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln          NE 68508

Lightspeed Media Corporation v. Jeremy Youngs

Case ID: CI 12    2965

TO:  Jeremy Youngs

You have been sued by the following plaintiff(s):

    Lightspeed Media Corporation

 COPY

Plaintiff's Attorney:     Matthew Jenkins
Address:                  PO Box 6621
                          Lincoln, NE 68506

Telephone:                (402) 417-6427

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date:  SEPTEMBER 25, 2012    BY THE COURT:  _Sue M Kirkland_
                                            Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        Jeremy Youngs
        Nebraska Dept. of HHS
        301 Centennial Mall South
        Lincoln, NE 68508

BY:  Lancaster County Sheriff
Method of service:  Personal Service

You are directed to make such service within twenty days after the issue
and show proof of service as provided by law.

STATE OF NEBRASKA } ss
Lancaster County
I hereby appoint
to serve the within writ
Dated this ___ day of ___ 20 __
Served By: ___

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA

| | |
|---|---|
| LIGHTSPEED MEDIA CORPORATION, | Case No. CI 12 - 2965 |
| Plaintiff, | |
| v. | COMPLAINT |
| JEREMY YOUNGS, | |
| Defendant. | **JURY TRIAL DEMANDED** |

Plaintiff Lightspeed Media Corporation, by and through its undersigned counsel, hereby files this Complaint requesting damages and injunctive relief, and alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff LIGHTSPEED MEDIA CORPORATION ("Plaintiff") files this action for computer fraud and abuse, conversion, unjust enrichment, breach of contract, and negligence. Defendant YOUNGS ("Defendant") used one or more hacked usernames/passwords to gain unauthorized access to Plaintiff's Internet website and protected content and, upon information and belief, continues to do the same.  Plaintiff seeks a permanent injunction, statutory damages or actual damages, award of costs and attorneys' fees, and other relief.

## THE PARTIES

2.      Plaintiff is a corporation organized and existing under the laws of the State of Arizona, with its principal place of business located in Arizona.

3.      Defendant is an individual adult over the age of eighteen whom, upon information and belief, is currently, and at all relevant times mentioned herein, a resident of the County of Lancaster.

4)   Judgment in favor of Plaintiff against the Defendant awarding the Plaintiff attorneys' fees, litigation expenses (including fees and costs of expert witnesses), and other costs of this action; and

5)   Judgment in favor of the Plaintiff against Defendant, awarding Plaintiff declaratory and injunctive or other equitable relief as may be just and warranted under the circumstances.

DATED: July 27, 2012

Respectfully submitted,

**LIGHTSPEED MEDIA CORPORATION**, Plaintiff

By:    _____
       Matthew Jenkins, Esq. (Bar No. 23319)
       PO Box 6621
       Lincoln, NE 68506
       Tel: (415) 325-5900
       Email: blgibbs@wefightpiracy.com

       *Attorney for Plaintiff*

12

# EXHIBIT D

# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AF HOLDINGS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case : 1:12-cv-00048 |
| | ) | |
| DOES 1 – 1058, | ) | Judge : Hon. Beryl A. Howell |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MOTION FOR PRO HAC VICE ADMISSION OF JOHN L. STEELE

I, Paul A. Duffy, hereby move pursuant to Local Civil Rule 83.2(d) for the *pro hac vice* admission of John L. Steele to the bar of this Court to act as co-counsel in this action.  Mr. Steele is of counsel with the firm of Prenda Law, Inc., and is a member in good standing of the bar of the State of Illinois and the U.S. District Court for the Northern District of Illinois.  On the basis of the foregoing, it is respectfully requested that this Court admit Mr. Steele *pro hac vice* for the purpose of appearing and participating as co-counsel on behalf of Plaintiff, AF Holdings, Inc., in this action.

Dated:  April 20, 2012                    Respectfully submitted,

By:   /s/ Paul A. Duffy
      Paul A. Duffy (D.C. Bar # IL0014 )
      Prenda Law Inc.
      161 N. Clark Street, Suite3200
      Chicago, IL  60601
      Telephone: (312) 880-9160
      Facsimile:   (312) 893-5677
      Attorneys for Plaintiff,
      AF Holdings LLC

**Exhibit A**
**Pg 1 of 5**

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on April 20, 2012, I caused a true and correct copy of the foregoing Motion For Pro Hac Vice Admission to be electronically filed with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

Dated: April 20, 2012

/s/  Paul A. Duffy
Paul A. Duffy

Case 2:12-cv-08333-ODW-JC   Document 40-2   Filed 01/14/13   Page 40 of 153   Page ID
#:465
Case 1:12-cv-00048-BAH   Document 32   Filed 04/20/12   Page 3 of 5

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| AF HOLDINGS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case : 1:12-cv-00048 |
| | ) |
| DOES 1 – 1058, | )   Judge : Hon. Beryl A. Howell |
| | ) |
| Defendants. | ) |
| | ) |

## DECLARATION OF JOHN L. STEELE

I, John Steele, declare pursuant to 28 U.S.C. § 1746 and Local Civil Rule 83.2(d):

1.      I am of counsel with the law firm of Prenda Law, Inc., counsel for Plaintiff,

AF Holdings, LLC in the above-captioned action.  I submit this declaration in support of

Paul A. Duffy's Motion pursuant to Local Civil Rule 83.2(d) for the *pro hac vice* admission

of John Steele to the bar of this Court.

2.      My full name is John L. Steele.

3.      My office address is 161 N. Clark Street, Suite 3200, Chicago, Illinois

60601.  My office telephone number is (312) 880-9160.

4.      I have also been admitted to practice before, and am a member in good standing

of, the bars of the United States Court District Court for the Northern District of Illinois, and the

State of Illinois.

5.      I have not been disciplined by any bar.

6.      I have been admitted *pro hac vice* to this Court in one case (1:12-mc-00150-

ESH-AK) in the previous two years.



Exhibit A
Pg 3 of 5

    7.     I do not engage in the practice of law from an office located in the District of Columbia.  I am not a member of the District of Columbia bar, nor do I have an application for membership pending.

    I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:      April 20, 2012

                                      /s/  John Steele

                                      John Steele
                                      Prenda Law Inc.
                                      161 N. Clark St., Suite 3200
                                      Chicago, IL 60601
                                      Telephone: (312) 880-9160
                                      Facsimile:  (312) 893-5677

**Exhibit** A
**Pg** 4 **of** 5

# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

AF HOLDINGS LLC,                          )
                                          )
      Plaintiff,                     )
                                          )
v.                                        )   **Case : 1:12-cv-00048**
                                          )
DOES 1 – 1058,                            )   **Judge : Hon. Beryl A. Howell**
                                          )
      Defendants.                    )
                                          )

## [PROPOSED] ORDER

    Upon consideration of the Motion for *Pro Hac Vice* Admission of John L. Steele, it is

hereby

    ORDERED that John L. Steele be specially admitted to appear and participate in the

above-captioned matter as counsel for Plaintiff AF Holdings, LLC.


Dated: April 20, 2012                     _____
                                               Hon. Beryl A. Howell
                                               United States District Court Judge

# EXHIBIT E

# Prenda Law Inc.

Protecting Intellectual Property

05/04/2012

**VIA U.S. MAIL**

████████████████████

       Re: Sunlust Pictures, LLC v. Does 1-120
       **1:12-cv-20920** ████████████

Dear ████████████

Prenda Law, Inc. has been retained by Sunlust Pictures, LLC to pursue legal action against people who illegally downloaded their copyrighted content (i.e., 'digital pirates'). Digital piracy is a very serious problem for adult content producers, such as our client, who depend on revenues to sustain their businesses and pay their employees.

On February ██, 2012 at ████████ UTC (UTC), our agents observed the IP address with which you are associated illegally downloading and sharing with others via the BitTorrent protocol the following copyrighted file(s):

       ***Sunny Leone - Goddess***
       *The ISP you were connected to:* ████████████
       *Your IP Address you were assigned during your illegal activity:* ████████████

We have received a subpoena return from your ISP confirming that you are indeed the person that was associated with the IP address that was performing the illegal downloading of our client's content listed above on the exact date(s) listed above.

On 3/03/2012 we filed an action against several anonymous digital pirates (Sunlust Pictures, LLC v. Does 1-120). Under the applicable rules of civil procedure, our lawsuit against you personally will not commence unless we serve you with a Complaint.

While it is too late to undo the illegal file sharing associated with your IP address, we have prepared an offer to enable our client to recover damages for the harm caused by the illegal downloading and to allow both parties to avoid the expense of a lawsuit.

---

Fax: 312.893.5677       161 N Clark St., Suite 3200, Chicago, IL 60601       Tel: 312.880.9160
Fax: 305.748.2103       1111 Lincoln Rd., Suite 400, Miami Beach, FL 33139       Tel: 305.748.2102

www.wefightpiracy.com

Under the Copyright Law of the United States, copyright owners may recover up to $150,000 in statutory damages (in cases where statutory damages are applicable, which may or may not be the case here) per infringing file plus attorney's fees in cases, whereas here, infringement was willful. In it least one case where the Copyright Law has been applied to digital piracy and statutory damages were applicable, juries have awarded over $20,000 per pirated file. During the RIAA's well-publicized campaign against digital music piracy, over 30,000 people nationwide settled their cases for amounts ranging from an average of $3,000 to $12,000. More recently, on December 22, 2010, a case in which a defendant was accused of illegally downloading six works via BitTorrent, a settlement was reached for $250,000.

In light of these factors, we believe that providing you with an opportunity to avoid litigation by working out a settlement with us, versus the costs of attorneys' fees and the uncertainty associated with jury verdicts, is very reasonable and in good faith.

In exchange for a comprehensive release of all legal claims in this matter, which will enable you to avoid becoming a named Defendant in our lawsuit, our firm is authorized to accept the sum of $3,400.00 as full settlement for the claims. This offer will expire on 05/19/2012 at 4:00 p.m. CST. If you reject our settlement offers, we expect to serve you with a Complaint and commence litigation.

To reiterate: if you act promptly you will avoid being named as a Defendant in the lawsuit. You may pay the settlement amount by:

(a) Mailing a check or money order payable to "Prenda Law Inc. Trust Account" to:

> **Prenda Law, Inc.**
> **1111 Lincoln Road Suite 400**
> **Miami Beach, FL 33139;**

(b) Completing and mailing/faxing the enclosed payment authorization to:

> **Prenda Law, Inc.**
> **1111 Lincoln Road Suite 400**
> **Miami Beach, FL 33139**
> **Facsimile: (305) 748-2103.**

Be sure to reference your case number and your "Ref#" on your method of payment. Regardless of your payment method, once we have processed the settlement, we will mail you your signed Release as confirmation that your payment has been processed and that you have been released from the lawsuit.

Please consider this letter to constitute formal notice that until and unless we are able to settle our client's claim against you, we demand that you not delete any files from your computer or any other computers under your control or in your possession. If forced to proceed against you in a lawsuit, we will have a computer forensic expert inspect these computers in an effort to locate the subject content and to determine if you have deleted any content. If in the course of litigation the forensic computer evidence suggests that you deleted media files, our client will amend its complaint to add a 'spoliation of evidence' claim against you. Be advised that if we prevail on this additional claim, the court could award monetary sanctions, evidentiary sanctions and reasonable attorneys' fees. If you are unfamiliar with the nature of this claim in this context, please consult an attorney.

We strongly encourage you to consult with an attorney to review your rights in connection with this matter. Although we have endeavored to provide you with accurate information, our interests are directly adverse to yours and you should not rely on the information provided in this letter for assessing your position in this case. Only an attorney who represents you can be relied upon for a comprehensive analysis of our client's claim against you.

Enclosed, please find a Frequently Asked Questions sheet, a payment authorization form and a sample of the Release that you will receive. We look forward to resolving our client's claim against you in an amicable fashion, through settlement.

Sincerely,

Joseph Perea
Attorney and Counselor at Law

Enclosures

# EXHIBIT F

# EXHIBIT A

1)    The date that Plaintiff's counsel served subpoenas on each ISP and the date the ISP responded.

| ISP | Issued | Response |
|---|---|---|
| Advanced Colocation | 8/5/11 | |
| Covad Communications Co. | 8/5/11 | |
| AT&T Internet Services | 8/5/11 | 11/15/11 |
| Color Broadband | 8/5/11 | 8/18/11 |
| Sonic | 8/5/11 | |
| Charter Communications | 8/5/11 | 11/15/11 |
| Comcast Cable Communications | 8/5/11 | 10/10/11 |
| Frontier Communications of America | 8/5/11 | |
| Sprint PCS | 8/5/11 | |
| Unwired Broadband | 8/5/11 | 8/18/11 |
| Black Oak Computers | 8/5/11 | 9/26/11 |
| Wave Broadband | 8/5/11 | 10/24/11 |
| Clearwire US | 8/5/11 | |
| Verizon Online | 8/5/11 | |
| Surewest Broadband | 8/5/11 | |
| Cox Communications | 8/5/11 | 11/28/11 |

2)    The IP addresses for which Plaintiff's counsel has made a settlement offer and how that offer was communicated, e.g. by mail, phone, or email.  The movants (for motions to quash) and objectors to whom Plaintiff's counsel has made a settlement offer and how that offer was communicated.

| Status | IP | Status | IP | Status | IP |
|---|---|---|---|---|---|
| USMail | 67.121.209.48 | USMail | 71.202.113.106 | USMail | 98.208.108.119 |
| USMail | 66.215.158.202 | USMail | 76.127.112.56 | USMail | 98.182.27.239 |
| USMail | 68.101.114.52 | USMail | 24.6.249.176 | USMail | 98.207.248.39 |
| USMail | 68.113.62.22 | USMail | 67.166.151.220 | USMail | 98.234.59.149 |
| USMail | 67.181.128.221 | USMail | 67.180.246.80 | USMail | 24.4.119.18 |
| USMail | 69.107.102.11 | USMail | 76.14.29.230 | USMail | 24.6.73.58 |
| USMail | 64.203.113.177 | USMail | 76.254.41.180 | USMail | 174.65.129.8 |
| USMail | 67.161.66.97 | USMail | 24.23.6.73 | USMail | 76.126.155.41 |
| USMail | 69.108.96.77 | USMail | 71.198.194.113 | USMail | 76.126.66.211 |
| USMail | 99.183.240.55 | USMail | 72.211.231.103 | USMail | 71.204.161.2 |
| USMail | 98.210.25.174 | USMail | 72.197.231.3 | USMail | 76.200.129.112 |
| USMail | 98.207.38.44 | USMail | 24.4.144.239 | USMail | 70.181.85.58 |
| USMail | 68.4.128.139 | USMail | 71.198.158.39 | USMail | 71.202.249.178 |
| USMail | 68.5.188.159 | USMail | 72.220.42.29 | USMail | 74.213.246.188 |
| USMail | 69.227.70.219 | USMail | 76.230.233.239 | USMail | 98.192.186.87 |
| USMail | 69.107.91.219 | USMail | 24.23.222.237 | USMail | 99.183.242.47 |
| USMail | 76.20.11.145 | USMail | 209.237.232.57 | USMail | 98.176.78.121 |
| USMail | 71.195.97.154 | USMail | 108.81.168.247 | USMail | 99.24.161.31 |
| USMail | 72.220.176.44 | USMail | 24.180.49.171 | USMail | 98.234.38.72 |
| USMail | 76.126.36.154 | USMail | 24.5.38.201 | USMail | 98.210.218.152 |
| USMail | 76.103.48.164 | USMail | 98.207.183.169 | USMail | 98.238.203.2 |
| USMail | 24.5.13.184 | USMail | 24.205.30.192 | USMail | 99.183.243.142 |
| USMail | 68.127.118.133 | USMail | 67.180.56.26 | USMail | 98.176.15.188 |
| USMail | 68.5.122.173 | USMail | 68.126.204.146 | USMail | 98.248.213.208 |
| USMail | 68.7.130.203 | USMail | 68.111.244.226 | USMail | 99.41.79.188 |
| USMail | 68.8.57.53 | USMail | 68.105.66.166 | USMail | 67.169.107.114 |
| | | USMail | 72.197.43.207 | USMail | 67.187.248.194 |

*In cases where a motion to quash was filed.*

| Status | IP |
|---|---|
| USMail | 71.139.12.128 |

USMail  71.83.208.158

**3)** **A list of ISPs not complying with Magistrate Judge Lloyd's expedited discovery order, and for which IP addresses the ISP is not complying. Include the reason, if any, given by the ISP for not complying.**

| ISP | IP Addresses | Reason |
|---|---|---|
| Advanced Colocation | ALL | None provided |
| Black Oak Computers | 66.160.133.102 | Two Subpoenas issued, one completed, the other no response, no reason provided |
| Clearwire US | ALL | None provided |
| Covad Communications Co. | ALL | None provided |
| Frontier Communications of America | ALL | None provided |
| Sonic | ALL | None provided |
| Sprint PCS | ALL | None provided |
| Surewest Broadband | ALL | None provided |
| Verizon Online | ALL | None provided |

**4)** **A list of ISPs not complying with a subpoena, and for which IP addresses the ISP is not complying. Include the reason, if any, given by the ISP for not complying.**

| ISP | IP Addresses | Reason |
|---|---|---|
| Advanced Colocation | ALL | None provided |
| Black Oak Computers | 66.160.133.102 | Two Subpoenas issued, one completed, the other no response, no reason provided |
| Clearwire US | ALL | None provided |
| Covad Communications Co. | ALL | None provided |
| Frontier Communications of America | ALL | None provided |
| Sonic | ALL | None provided |
| Sprint PCS | ALL | None provided |
| Surewest Broadband | 0 | None provided |
| Verizon Online | 0 | None provided |

**5)** **A list of the ISPs for which there is a pending motion to quash.**
AT&T, COMCAST, CHARTER & COX

**6)** **Whether, when, and by what means Plaintiff's counsel has contacted John Doe 134, the movant in ECF No. 25.**
Plaintiff's counsel has not attempted to contact the unidentified individual referred to by the Court as "John Doe 134."

**7)** **Whether, when, and by what means Plaintiff's counsel has contacted or attempted to contact Messrs. Ferlito and Smith.**
Plaintiff's counsel attempted to contact Mr Ferlito by U.S mail. Plaintiff's counsel attempted to contact Mr. Smith by U.S. mail.

**8)** **A list of the IP addresses for which Plaintiff's counsel received subpoena returns and whether the ISP provided all the categories of information requested by the subpoena. If the ISP did not provide all categories of information, identify which categories of information were not provided.**

| IP Address | Missing | | | | |
|---|---|---|---|---|---|
| | | | | email | 76.200.129.112 | Phone, email |
| 68.126.204.146 | Phone, email | 69.107.91.219 | Phone, email | 76.254.41.180 | Phone, email |
| 68.127.118.133 | Phone, email | 69.108.96.77 | Phone | 99.183.240.55 | Phone, email |
| | | 69.227.70.219 | Phone | | |
| 69.107.102.11 | Phone, | 71.139.12.128 | Email | | |

| 99.183.242.47 | Phone, email | 24.5.13.184 | Email | 76.126.66.211 | Email |
| 99.183.243.142 | Phone, email | 67.161.66.97 | Email | 98.192.186.87 | Email |
| | | 67.166.151.220 | Email | 98.207.248.39 | Email |
| 99.24.161.31 | Phone, email | 67.169.107.114 | Email | 98.208.108.119 | Email |
| | | 67.180.56.26 | Email | 98.210.218.152 | Email |
| 99.41.79.188 | Phone | 67.181.128.221 | Email | 98.210.25.174 | Email |
| 209.237.232.57 | Phone | 67.187.248.194 | Email | 98.234.128.170 | Email |
| 68.113.62.22 | Email | 71.198.158.39 | Email | 98.234.38.72 | Email |
| 74.213.246.188 | Email | 71.202.113.106 | Email | 98.234.59.149 | Email |
| 24.23.222.237 | Email | 71.202.249.178 | Email | 98.248.213.208 | Email |
| 24.23.6.73 | Email | 76.103.48.164 | Email | 68.101.114.52 | Email |
| 24.4.144.239 | Email | 76.126.155.41 | Email | 72.197.231.3 | Phone, email |
| | | 76.126.36.154 | Email | | |

9)      A list of the BitTorrent copyright infringement cases involving multiple joined John Doe Defendants filed Plaintiff's counsel's law firm or predecessor firm in federal court. Identify the case by name, case number, court, and filing date. For each case, indicate how many Doe Defendants were actually served.

Although our records indicate that we have filed suits against individual copyright infringement defendants, our records indicate that no defendants have been served in the below-listed cases.

| Case Name | Case Number | Court | Filing date |
| --- | --- | --- | --- |
| Lightspeed Media Corporation v. Does 1-9 | 4:11-cv-02261 | ND CA | 5/6/11 |
| MCGIP, LLC v. Does 1-9 | 3:11-cv-02262 | ND CA | 5/6/11 |
| CP Productions, Inc. v. Does 1-300 | 1:10-cv-06255 | ND IL | 9/29/10 |
| Future Blue, Inc. v. Does 1-300 | 1:10-cv-06256 | ND IL | 9/29/10 |
| First Time Videos LLC v. Does 1-500 | 1:10-cv-06254 | ND IL | 9/29/11 |
| Hard Drive Productions, Inc.v. Does 1-100 | 1:10-cv-05606 | ND IL | 9/2/10 |
| Lightspeed Media Corporation v. Does 1-100 | 1:10-cv-05604 | ND IL | 9/2/10 |
| Millennium TGA, Inc. v. Does 1-100 | 1:10-cv-05603 | ND IL | 9/2/10 |
| In the Matter Of a Petittion By Ingenuity13 LLC | 2:11-mc-00084 | ED CA | 10/28/11 |
| Pacific Century International Ltd, v. Does 1-101 | 4:11-cv-02533 | ND CA | 5/25/11 |
| Boy Racer Inc. v. Does 1-10 | 1:11-cv-00592 | SD OH | 8/26/11 |
| Hard Drive Productions, Inc. v. Does 1-10 | 1:11-cv-02980 | ND IL | 5/4/11 |
| Boy Racer Inc. v. Does 1-10 | 3:11-cv-00492 | WD KY | 8/31/11 |
| CP Productions, Inc. v. Does 1-12 | 3:11-cv-02259 | ND CA | 5/6/11 |
| Hard Drive Productions, Inc. v. Does 1-11 | 1:11-cv-23033 | SD FL | 8/23/11 |
| Hard Drive Productions, Inc. v. Does 1-12 | 1:11-cv-00595 | SD OH | 8/26/11 |
| MCGIP, LLC v. Does 1-14 | 1:11-cv-02887 | ND IL | 4/29/11 |
| CP Productions, Inc. v. Does 1-14 | 1:11-cv-22204 | SD FL | 6/17/11 |
| Hard Drive Productions, Inc. v. Does 1-14 | 1:11-cv-02981 | ND IL | 5/4/11 |
| Pacific Century International LTD v. Does 1-14 | 1:11-cv-03118 | ND IL | 5/10/11 |
| Boy Racer Inc. v. Does 1-17 | 1:11-cv-05416 | ND IL | 8/10/11 |
| MCGIP, LLC v. Does 1-316 | 1:10-cv-06677 | ND IL | 10/15/10 |
| Hard Drive Productions, Inv. v. Does 1-16 | 1:11-cv-23064 | SD FL | 8/25/11 |
| Hard Drive Productions, Inc. v. Does 1-16 | 1:11-cv-03108 | ND IL | 5/10/11 |
| VPR Internationale v. Does 1-17 | 4:11-cv-01494 | ND CA | 3/28/11 |
| First Time Videos LLC v. Does 1-18 | 4:11-cv-00069 | SD IN | 6/14/11 |
| MCGIP, LLC v. Does 1-17 | 3:11-cv-50062 | ND IL | 3/9/11 |
| Boy Racer Inc. v. Does 1-17 | 1:11-cv-03097 | ND IL | 5/9/11 |
| VPR International v. Does 1-1017 | 2:11-cv-02068 | ND IL | 3/8/11 |
| Hard Drive Productions, Inc. v. Does 1-118 | 4:11-cv-01567 | ND CA | 3/3/11 |
| Hard Drive Productions, Inv. v. Does 1-18 | 1:11-cv-23032 | SD FL | 8/23/11 |

| | | | |
|---|---|---|---|
| MCGIP, LLC v. Does 1-18 | 3:11-cv-01495 | ND CA | 3/28/11 |
| Pink Lotus Entertainment LLC v. Does 1-20 | 1:11-cv-03048 | ND IL | 5/6/11 |
| MCGIP, LLC v. Does 1-20 | 1:11-cv-04486 | ND IL | 7/1/11 |
| Millennium TGA, inc. v. Does 1-21 | 3:11-cv-02258 | ND CA | 5/6/11 |
| MCGIP, LLC v. Does 1-21 | 4:11-cv-01783 | ND CA | 4/12/11 |
| Hard Drive Productions, Inc. v. Does 1-21 | 4:11-cv-00059 | SD IN | 5/20/11 |
| Hard Drive Productions, Inv. v. Does 1-20 | 1:11-cv-22208 | SD FL | 6/17/11 |
| AF Holdings LLC v. Does 1-20 | 3:11-cv-00491 | WD KY | 8/31/11 |
| Millennium TGA, inc. v. Does 1-21 | 5:11-cv-01739 | ND CA | 4/8/11 |
| Boy Racer Inc. v. Does 1-23 | 4:11-cv-00070 | SD IN | 6/14/11 |
| First Time Videos LLC v. Does 1-23 | 1:11-cv-05417 | ND IL | 8/10/11 |
| Boy Racer Inc. V. Does 1-22 | 1:11-cv-02984 | ND IL | 5/4/11 |
| MCGIP, LLC v. Does 1-24 | 1:11-cv-04488 | ND IL | 7/1/11 |
| Hard Drive Productions Inc. v. Does 1-25 | 1:11-cv-03864 | ND IL | 6/7/11 |
| Openmind Solutions, Inc. v. Does 1-2,925 | 3:11-cv-00092 | SD IL | 2/2/11 |
| MCGIP, LLC v. Does 1-24 | 1:11-cv-02985 | ND IL | 5/4/11 |
| Hard Drive Productions v. Does 1-24 | 1:11-cv-02829 | ND IL | 4/27/11 |
| MCGIP LLC v. Does 1-26 | 5:11-cv-03679 | ND CA | 7/27/11 |
| Hard Drive Productions, Inc. v. Does 1-27 | 1:11-cv-03863 | ND IL | 6/7/11 |
| First Time Videos LLC v. Does 1-27 | 1:11-cv-02890 | ND IL | 4/29/11 |
| Pacific Century International Ltd, v. Does 1-129 | 5:11-cv-03681 | ND CA | 7/27/11 |
| First Time Videos LLC  v. Does 1-28 | 1:11-cv-02982 | ND IL | 5/4/11 |
| MCGIP LLC v. Does 1-30 | 5:11-cv-03680 | ND CA | 7/27/11 |
| Hard Drive Productions, Inv. v. Does 1-130 | 4:11-cv-03826 | ND CA | 8/3/11 |
| AF Holdings LLC v. Does 1-29 | 0:11-cv-01794 | D MN | 7/6/11 |
| Hard Drive Productions, Inc. v. Does 1-30 | 1:11-cv-22102 | SD FL | 6/9/11 |
| Pacific century International LTD v. Does 1-31 | 1:11-cv-09064 | ND IL | 12/21/11 |
| Hard Drive Productions, Inv. v. Does 1-33 | 4:11-cv-03827 | ND CA | 8/3/11 |
| Hard Drive Productions, Inv. v. Does 1-32 | 1:11-cv-22206 | SD FL | 6/17/11 |
| MCGIP, LLC v. Does 1-32 | 1:11-cv-22210 | SD FL | 6/17/11 |
| Pacific Century International LTD v. Does 1-34 | 1:11-cv-03857 | ND IL | 6/7/11 |
| Hard Drive Productions, Inc. v. Does 1-35 | 1:11-cv-03866 | ND IL | 6/7/11 |
| Boy Racer Inc v. Does 1-34 | 1:11-cv-23035 | SD FL | 8/23/11 |
| AF Holdings LLC v. Does 1-135 | 4:11-cv-03336 | ND CA | 7/7/11 |
| Bubble Gum Productions, LLC v. Does 1-37 | 1:12-cv-00595 | ND IL | 1/26/12 |
| First Time Videos LLC  v. Does 1-37 | 4:11-cv-01675 | ND CA | 4/6/11 |
| Openmind Solutions, Inc. v. Does 1-39 | 3:11-cv-03311 | ND CA | 7/6/11 |
| First Time Videos LLC v. Does 1-541 | 1:11-cv-02031-RLW | DC | 11/15/11 |
| Hard Drive Productions, Inc. v. Does 1-42 | 3:11-cv-01956 | ND CA | 4/22/11 |
| First Time Videos LLC v. Does 1-43 | 1:11-cv-09066 | ND IL | 12/21/11 |
| MCGIP, LLC v. Does 1-44 | 1:11-cv-03098 | ND IL | 5/9/11 |
| Pacific Century International LTD v. Does 1-44 | 1:11-cv-04825 | ND IL | 7/18/11 |
| Hard Drive Productions, Inc. v. Does 1-44 | 1:11-cv-02828 | ND IL | 4/27/11 |
| Pink Lotus Entertainment LLC v. Does 1-46 | 5:11-cv-02263 | ND CA | 5/6/11 |
| First Time Videos LLC v. Does 1-46 | 3:11-cv-03822 | ND CA | 8/3/11 |
| Hard Drive Productions, Inc v. Does 1-46 | 3:11-cv-01959 | ND CA | 4/22/11 |
| Pacific Century International, LTD v. Does 1-48 | 3:11-cv-03823 | ND CA | 8/3/11 |
| Hard Drive Productions, Inc. v. Does 1-48 | 3:11-cv-01957 | ND CA | 4/22/11 |
| Hard Drive Productions, Inc. v. Does 1-48 | 1:11-cv-09062 | ND IL | 12/21/11 |
| MCGIP, LLC v. Does 1-49 | 5:11-cv-01801 | ND CA | 4/13/11 |
| MCGIP, LLC v. Does 1-149 | 4:11-cv-02331 | ND CA | 5/11/11 |
| Hard Drive Productions, Inc. v. Does 1-51 | 1:11-cv-05414 | ND IL | 8/10/11 |
| Boy Racer Inc v. Does 2-52 | 5:11-cv-02834 | ND CA | 6/14/11 |
| Boy Racer Inc. v. Does 1-52 | 5:11-cv-02329 | ND CA | 5/11/11 |
| Hard Drive Productions, Inc. v. Does 1-53 | 3:11-cv-02330 | ND CA | 5/11/11 |
| Pink Lotus Entertainment LLC v. John Does 1-53 | 1:11-cv-22103 | SD FL | 6/9/11 |

| | | | |
|---|---|---|---|
| MCGIP LLC v. Does 1-55 | 3:11-cv-03312 | ND CA | 7/6/11 |
| Hard Drive Productions, Inv. v. Does 1-55 | 1:11-cv-02798 | ND IL | 4/27/11 |
| Hard Drive Productions, Inc. v. Does 1-58 | 4:11-cv-02537 | ND CA | 5/25/11 |
| AF Holdings LLC v. Does 1-1,058 | 1:12-cv-00048 | DC | 1/11/12 |
| Boy Racer Inc v. Does 1-60 | 3:11-cv-01738 | ND CA | 4/8/11 |
| AF Holdings LLC v. Does 1-62 | 1:11-cv-00593 | SD OH | 8/26/11 |
| AF Holdings LLC v. Does 1-162 | 1:11-cv-23036 | SD FL | 8/23/11 |
| First Time Videos LLC v. Does 1-63 | 1:11-cv-03837 | ND IL | 6/6/11 |
| MCGIP, LLC v. Does 1-1,164 | 1:10-cv-07675 | ND IL | 12/2/10 |
| Hard Drive Productions, Inv. v. Does 1-166 | 5:11-cv-03682 | ND CA | 7/27/11 |
| Openmind Solutions, Inc. v. Does 1-565 | 1:11-cv-01883 | DC | 10/25/11 |
| Hard Drive Productions, Inc.v. Does 1-66 | 5:11-cv-03005 | ND CA | 6/17/11 |
| Boy Racer Inc v. Does 2-71 | 5:11-cv-02833 | ND CA | 6/14/11 |
| Boy Racer Inc. v. Does 1-71 | 5:11-cv-01958 | ND CA | 4/22/11 |
| Heartbreaker Productions, Inc. v. Does 1-71 | 1:11-cv-02860 | ND IL | 4/28/11 |
| Boy Racer Inc v. Does 1-73 | 3:11-cv-02534 | ND CA | 5/25/11 |
| First Time Videos LLC v. Does 1-76 | 1:11-cv-03831 | ND IL | 6/6/11 |
| Hard Drive Productions, Inc. v. Does 1-80 | 5:11-cv-02535 | ND CA | 5/25/11 |
| Bubble Gum Productions, LLC v. Does 1-80 | 1:12-cv-20367 | SD FL | 1/30/12 |
| Hard Drive Productions, Inv. v. Does 1-84 | 5:11-cv-03648 | ND CA | 7/26/11 |
| Pacific Century International LTD v. Does 1-87 | 3:11-cv-02915 | ND CA | 6/14/11 |
| First Time Videos LLC v. Does 1-186 | 3:11-cv-03310 | ND CA | 7/6/11 |
| Hard Drive Productions, Inc v. Does 1-87 | 3:11-cv-02333 | ND CA | 5/11/11 |
| Hard Drive Productions, Inc v. Does 1-188 | 3:11-cv-01566 | ND CA | 3/31/11 |
| Hard Drive Productions, Inc v. Does 1-87 | 5:11-cv-03004 | ND CA | 6/17/11 |
| Hard Drive Productions, Inv. v. Does 1-90 | 5:11-cv-03825 | ND CA | 8/3/11 |
| First Time Videos LLC v. Does 1-294 | 3:11-cv-02916 | ND CA | 6/14/11 |
| Hard Drive Productions, Inv. v. Does 1-1,495 | 1:11-cv-01741 | DC | 9/27/11 |
| AF Holdings LLC v. Does 1-96 | 3:11-cv-03335 | ND CA | 7/7/11 |
| AF Holdings LLC v. Does 1-97 | 4:11-cv-03067 | ND CA | 6/21/11 |
| Boy Racer Inc. v. Does 1-98 | 3:11-cv-02536 | ND CA | 5/25/11 |

# EXHIBIT G

Morgan E. Pietz (SBN 260629)
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:   (310) 424-5557
Facsimile :   (310) 546-5301

Attorney for Putative John Doe in 2:12-cv-08333-ODW-JC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INGENUITY 13, LLC, a Limited Liability Company Organized Under the Laws of the Federation of Saint Kitts and Nevis,<br><br>          Plaintiff,<br><br>     v.<br><br>JOHN DOE,<br><br>          Defendant. | Case Number(s): 2:12-cv-08333-ODW-JC<br><br>Case Assigned to: Judge Otis D Wright, II<br>Discovery Referred to: Magistrate Judge Jacqueline Chooljian<br><br>**DECLARATION OF JESSE NASON** |

## DECLARATION OF JESSE NASON

I, Jesse Nason, have personal knowledge of the facts alleged herein and hereby declare as follows:

1.      I was the defendant in *Lightpseed Media Corporation v. Nason*, Los Angeles Superior Court No. NC057950.  Counsel for the plaintiff in that case was Mr. Brett Gibbs of Prenda Law, Inc.  Prenda got my name and contact info from my ISP via a prior case filed by Lightspeed in St. Clair County, Illinois. *Lightspeed Media Corporation v. John Doe*, Circuit Court of St. Clair County, IL, No. 11 L 683.  Prenda subpoenaed my ISP in the Illinois case, and then followed up and sued me individually here in Los Angeles County, where I reside.

2.      I understand from my attorney Morgan Pietz that at the first hearing in the LA case, Mr. Gibbs was asked how he could justify naming and serving me with the complaint in this case, given his prior admissions that the mere fact that someone is an ISP bill payer is not enough to conclude that such a person is an actual infringer.  My attorney told me that Mr. Gibbs responded at the hearing by saying that Prenda had done an investigation and determined that I "lived alone."

3.      I do not live alone, and have not lived alone for a long time.  I have been married for 9 years, during which time I have always lived with my wife.  We have been at our current address, which is in a high rise apartment building, for the last three years.

4.      I did not commit the wrongful acts I was accused of in the case Prenda brought against me.  I attempted to resolve this matter with Prenda by showing them credible third party evidence (in the form of a November 2011 email chain between me an the Apple iTunes store) that on the day of the alleged wrongful activity, my iTunes account was actually hacked.  That is, on the day someone supposedly hacked into the Lightspeed site from my IP address, someone also hacked into my iTunes account.  At the time, I had an open WiFi network.  In my apartment, when I go to log on to wireless Internet, there are usually about 20 or so networks within range of my computer.

-2-
**DECLARATION OF JESSE NASON**

5.     As a result of Prenda's lax approach to its obligations to perform a reasonable investigation and to have good faith basis to believe something (i.e., that *I was the actual wrongdoer*) before it alleges it, I have been publicly—but wrongly—accused of downloading "teen" pornography.  I am a teacher, and this is a problem for me.  After my attorney got the case against me dismissed on demurrer, but with leave to amend, Prenda filed a first amended complaint.  On the eve of my attorney filing a demurrer to that first amended complaint, Prenda simply dismissed this case against me without prejudice.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Respectfully submitted,

DATED: January 14, 2013
At Long Beach California,

_____
Jesse Nason, Declarant

### CERTIFICATE OF SERVICE

I hereby certify that on this day, the above document was submitted to the CM/ECF system, which sent notification of such filing(s) to the plaintiff, which is registered for electronic service.

Respectfully submitted:  January 14, 2013        THE PIETZ LAW FIRM
                                                 */s/ Morgan E. Pietz*
                                                 Morgan E. Pietz
                                                 THE PIETZ LAW FIRM
                                                 Attorney for Putative John Doe(s)
                                                 Appearing on Caption

-3-
**DECLARATION OF JESSE NASON**

# EXHIBIT H

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AF HOLDINGS LLC,

       Plaintiff,

    v.

JOHN DOE, et al.,

       Defendants.
_____/

No. C 12-2049 PJH

**ORDER DENYING MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

    Plaintiff's motion for leave to amend the complaint came on for hearing before this court on November 7, 2012.  Plaintiff appeared by its counsel Brett L. Gibbs, and defendant Josh Hatfield appeared by his counsel Nicholas Ranallo.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby DENIES the motion.

**BACKGROUND**

    Plaintiff AF Holdings LLC holds the copyrights to any number of "adult entertainment" videos, and has filed numerous lawsuits asserting copyright infringement against multiple "Doe" defendants, based on their alleged unlawful downloading of those videos from the Internet.

    The downloading is alleged to have been accomplished by using online peer-to-peer file-sharing tool called BitTorrent.  The BitTorrent transfer protocol is a file-sharing method

United States District Court

For the Northern District of California

1  used for distributing data via the Internet.  See, e.g., Diabolic Video Prods., Inc. v. Does 1-

2  2099, 2011 WL 3100404, at *2 (N.D. Cal. May 31, 2011).

3       Because the alleged unlawful downloading occurs behind the mask of anonymous

4  internet protocol ("IP") addresses, AF Holdings does not know the identity of the persons

5  who have utilized BitTorrent to access the copyrighted videos.  At most, AF Holdings is

6  able to identify the alleged infringers by the unique IP address assigned to the Internet

7  subscriber by the subscriber's Internet Service Provider ("ISP").  Generally, soon after filing

8  one of these lawsuits, AF Holdings requests an order authorizing limited expedited

9  discovery, so it can serve subpoenas on the ISPs in the hope of obtaining the identity of the

10 "Doe" defendants based on the IP addresses of their computers.

11      On July 7, 2011, AF Holdings filed a complaint in this district against 135 unidentified

12 "Doe" defendants (identified only by IP addresses), alleging that on either April 21, 2011 or

13 May 2, 2011, each of the 135 "Does" had infringed AF Holdings' copyright by downloading

14 a video called "Sexual Obsession."  See AF Holdings v. Does 1-135, No. C-11-3336 LHK

15 (N.D. Cal.).  On July 14, 2011, AF Holdings requested expedited discovery in order to

16 discover the identity of the subscribers associated with the IP addresses.  The request was

17 granted on August 2, 2011.  Among the IP addresses implicated in that suit was

18 67.161.66.97, which is registered to defendant Josh Hatfield ("Hatfield").

19      According to Hatfield, his ISP provided his identifying information to AF Holdings in

20 October 2011.  After obtaining this information, AF Holdings did nothing for three months –

21 although it did dismiss a number of the Does identified by certain IP addresses (but not

22 Hatfield).  On January 19, 2012, noting that more than 190 days had passed since the filing

23 of the complaint (and more than 150 days since the order authorizing expedited discovery)

24 the court issued an order to show cause why the Doe defendants should not be dismissed

25 based on AF Holdings' failure to effectuate service on any identified Doe.

26      On February 22, 2012, the court ordered AF Holdings to provide certain

27 supplementary information.  On February 28, 2012, AF Holdings filed a notice of voluntary

28 dismissal of the claims against Does identified by 19 of the IP addresses (not including the

2

1  address associated with Hatfield).  On March 27, 2012, the court dismissed the case in its

2  entirety pursuant to Federal Rule of Civil Procedure 4(m), due to AF Holdings' failure to

3  effectuate service on any of the defendants.

4  　　Approximately four weeks later, on April 24, 2012, AF Holdings filed the present

5  action, asserting two claims of direct copyright infringement (reproduction and distribution)

6  and one claim of contributory infringement against an unidentified Doe defendant, and

7  another cause of action for negligence, against Hatfield, based on Hatfield's alleged failure

8  to secure his Internet connection against unlawful downloading by third parties.

9  　　AF Holdings alleged that the Doe defendant had performed the actual downloading

10  and distribution, via the IP address that was registered to Hatfield, and that Hatfield

11  "allowed" the Doe defendant to use his Internet connection to illegally download, republish,

12  and distribute copies of the copyrighted video.  However, AF Holdings did not allege any

13  copyright infringement or contributory infringement claims against Hatfield.

14  　　After Hatfield moved to dismiss the negligence claim, AF Holdings filed a first

15  amended complaint ("FAC"), which again asserted claims of copyright infringement against

16  the Doe defendant, and a claim of negligence against Hatfield, based on an alleged third

17  party's use of Hatfield's Internet connection to commit the infringement, and Hatfield's

18  failure to secure his Internet connection and/or failure to monitor the unidentified third

19  party's use of his Internet connection.  In a footnote on page 1, AF Holdings stated that "[a]t

20  this stage of the litigation, [p]laintiff does not know if [d]efendant Doe is the same individual

21  as Josh Hatfield."  FAC at 1, n.1.

22  　　On June 30, 2012, Hatfield moved to dismiss the negligence claim asserted in the

23  FAC.  In its opposition, filed July 16, 2012, AF Holdings asserted that it had not alleged that

24  Hatfield knowingly facilitated and actively participated in anyone's infringement, but rather

25  that Hatfield was a "concededly ignorant but alleged careless defendant."  AF Holdings

26  argued that its claim against Hatfield was purely based on a theory of negligence and a

27  duty to secure one's Internet connection.

28  　　On September 4, 2012, the court issued an order granting the motion, on the basis

United States District Court
For the Northern District of California

3

Exhibits to the Declaration of Morgan E. Pietz
Page 61

United States District Court

For the Northern District of California

1    that an allegation of non-feasance (failure to secure Internet connection) cannot support a

2    claim of negligence in the absence of facts showing the existence of a special relationship;

3    and that the negligence claim was preempted by the Copyright Act.  Finding that

4    amendment would be futile, the court dismissed the negligence claim with prejudice.  Since

5    that was the only claim asserted against Hatfield, he was effectively dismissed from the

6    case (although the order framed the issue solely in terms of dismissal of the negligence

7    cause of action).

8        The order added that with regard to the Doe defendant, more than 120 days had

9    passed since the case had been filed, and there was no indication in the docket that the

10   Doe defendant had been served and no request for expedited discovery to learn the Doe

11   defendant's identity had been filed.  The court ordered AF Holdings to file a proof of

12   service no later than October 4, 2012, showing service on the Doe defendant, and stated

13   that if the proof of service was not filed by that date, the case would be dismissed under

14   Rule 4(m).

15       AF Holdings did not file a proof of service.  However, on September 28, 2012, it filed

16   the present motion for leave to file a second amended complaint ("SAC"), to allege two

17   claims of copyright infringement (reproduction and distribution) and a claim of contributory

18   infringement against Hatfield (who was no longer in the case as of the date of the order

19   dismissing the sole claim asserted against him in the FAC).

20        The proposed SAC did not name a Doe defendant.  However, with the exception of

21   having no Doe defendant and no cause of action for negligence, it was almost entirely

22   identical to the FAC.  The primary difference was that every incidence of "Doe defendant" in

23   the FAC had been replaced by "defendant" or "defendant Hatfield" in the proposed SAC.

24       At the November 7, 2012 hearing, the court advised counsel for AF Holdings  that he

25   would have to persuade the court that he had discovered additional evidence, based on the

26   same identification of a defendant that he had known about for more than a year.  The

27   court gave counsel one week to submit a revised proposed SAC that demonstrated

28   diligence and that supported the alleged "new facts" asserted by counsel.  The court also

Exhibits to the Declaration of Morgan E. Pietz
Page 62

1  indicated that it would prefer to resolve the case on the merits, rather than simply

2  dismissing it for failure to serve, but that its concern was with lack of diligence on the part of

3  AF Holdings, and whether the alleged "new facts" were sufficient to state a claim.

4      On November 14, 2012, AF Holdings filed a revised proposed SAC.  The revised

5  SAC is identical to the prior proposed SAC, except that it includes a section headed

6  "Plaintiff's Further Investigation of Defendant."  In this section, AF Holdings alleges that it

7      –   initiated an online Internet investigation on September 8, 2012, which

8  "determined [d]efendant's general online presence," from which AF Holdings "concluded"

9  that Hatfield had "a large Internet presence" and that "that presence demonstrated

10 [d]efendant's knowledge of computers and the Internet," Revised Proposed SAC ¶ 30;

11     –   located a Facebook page "purportedly attributed to a Josh Hatfield

12 living in the Bay Area fitting the age range of [d]efendant," which stated that the individual

13 "likes" movies – "pretty much any movie," id. ¶ 31;

14     –   located a MySpace page "purportedly attributed to a Josh Hatfield

15 living in the Bay Area fitting the age range of [d]efendant," stating that the individual "goes

16 by the moniker 'Mistah HAT' and has pictures of his various activities including, but not

17 limited to, playing video games," id. ¶ 32;

18     –   conducted a search on September 8, 2012 relating to Hatfield's

19 address (assertedly an 8-unit apartment building on Lenox Ave. in Oakland), and

20 discovered a "recent" listing by a real estate agent for an apartment in that building that

21 was advertised as being available on 3/1/12, id. ¶ 33 (including lengthy quotation from

22 rental ad);

23     –   called the agent who had listed the rental and left a message, but

24 never received a call back, id. ¶ 34;

25     –   was able to obtain no information about Hatfield's neighbors or

26 whether he in fact had any neighbors, id. ¶ 34;

27     –   conducted "more research" on September 8, 2012 regarding the

28 building's "other potential residents," which indicated that "while a residential building, it had

United States District Court
For the Northern District of California

5

1  a few tenants who were running their businesses out of their units," id. ¶ 35;

2      –   performed a "skip trace" on Hatfield on October 9, 2012, and

3  discovered that he was 33 years old, was in fact living at the Lenox Ave. address, was

4  living with a 30-year old female with a different last name, and that "[t]here was no

5  indication that the two were married," id. ¶¶ 36-37;

6      –   discovered "on or around the same time" that Hatfield has a criminal

7  record, based on offenses that occurred in Oregon in 1999 and 2001, although "[t]he actual

8  violation charged [is] unclear," id. ¶ 38;

9      –   found "no evidence" that Hatfield has "a wireless Internet network" or

10 that "if such wireless Internet connection existed, that such network was unsecured (i.e.,

11 without password protection)," id. ¶ 39;

12     –   searched the court's docket in this case and found no "declaration

13 under oath" from Hatfield stating that "he had not infringed on" AF Holdings' work, id. ¶ 40.

14     Based on the above, AF Holdings asserts that it had "a good faith basis to name

15 Josh Hatfield as the infringing [d]efendant in this case," in view of the fact that Hatfield was

16 the subscriber assigned to the IP number 67.161.66.97 by his ISP in April 2011, and "was

17 the only person with direct access to the account during this period," and also "considering

18 that any then unknown or unconfirmed information would bear out through the discovery

19 process." Id. ¶ 41.

**DISCUSSION**

21 A.  Legal Standard

22     Federal Rule of Civil Procedure 15 requires that a plaintiff obtain either consent of

23 the defendant or leave of court to amend its complaint once the defendant has answered,

24 but "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); see also,

25 e.g., Chodos v. West Pub. Co., 292 F.3d 992, 1003 (9th Cir. 2002) (leave to amend

26 granted with "extreme liberality"). The Ninth Circuit has held that discovery of new facts

27 after a complaint was filed may warrant granting leave to amend. Wittmayer v. United

28 States, 118 F.2d 808, 809 (9th Cir. 1941).

**United States District Court** For the Northern District of California

6

United States District Court

For the Northern District of California

1   The effect of this policy of granting motions to amend with "extreme liberality" is that

2   the moving party need only a reason why amendment is required, and the burden then

3   shifts to the opposing party to convince the court that "justice" requires denial.  See, e.g.,

4   DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir. 1987).  Leave to amend is

5   thus ordinarily granted unless the amendment is futile, would cause undue prejudice to the

6   defendants, or is sought by plaintiffs in bad faith or with a dilatory motive.  Foman v. Davis,

7   371 U.S. 178, 182 (1962); Smith v. Pacific Properties and Dev. Corp., 358 F.3d 1097, 1101

8   (9th Cir. 2004).  In addition, amendments seeking to add claims are to be granted more

9   freely than amendments adding parties.  Union Pacific R. Co. v. Nevada Power Co., 950

10  F.2d 1429, 1432 (9th Cir. 1991).

11  B.      Plaintiff's Motion

12          AF Holdings asserts that, "after further investigation since filing its [FAC]," it has "a

13  reasonable basis to name and serve [d]efendant Hatfield as the direct and contributory

14  infringer in this case."  Specifically, AF Holdings claims that since filing the FAC, it has

15  "discovered new information about [Hatfield's] interactions on the computer and living

16  situation (among other things)," which information it asserts allows it to have "a good faith

17  basis to name Josh Hatfield as the infringing [d]efendant in this case."

18          AF Holdings contends that the motion is timely, and that in order to respond to the

19  court's order requiring filing of a proof of service showing service on the Doe defendant, it

20  must first must file an amended complaint to name the infringer.

21          AF Holdings argues that there is no prejudice to Hatfield, because as of this date the

22  court has not held a case management conference, and has set no deadline for requesting

23  leave to amend the pleadings.  AF Holdings also asserts that it is acting in good faith in

24  seeking to amend the complaint.

25          In opposition, Hatfield argues that the case should be dismissed pursuant to Rule

26  41(b) for failure to prosecute and failure to comply with the court's order to file a proof of

27  service on the Doe defendant; and second, that leave to amend should be denied.  At the

28  hearing, the court denied the motion to dismiss, and also denied a motion filed by AF

7

1   Holdings to strike the opposition.

2       With regard to the motion for leave to amend, Hatfield argues that AF Holdings' bad

3   faith is "evident."  He asserts that AF Holdings has strung him along for months on the

4   premise that it was unaware of the identity of the infringer, and was unable to determine the

5   identity without formal discovery – and indeed, filed two complaints based on this position.

6   In addition, Hatfield notes that AF Holdings filed an opposition to the prior motion to dismiss

7   the FAC, in which it explicitly stated that Hatfield was "concededly ignorant" regarding the

8   alleged infringement.

9       Nevertheless, Hatfield asserts, on September 4, 2012, only a few hours after the

10  court issued the order dismissing the negligence cause of action, counsel for AF Holdings

11  sent an email threatening to sue him as the infringer unless he agreed to pay a particular

12  settlement demand.  Given AF Holdings' prior position that Hatfield had no knowledge of

13  the alleged infringement, and its failure to sue him for copyright infringement, Hatfield

14  contends that this email, sent mere hours after the court dismissed the negligence claim,

15  constituted an "improper threat" and clearly shows AF Holdings' bad faith.

16      In a somewhat related argument, Hatfield asserts that AF Holdings unduly delayed

17  in seeking leave to amend.  Hatfield contends that AF Holdings knew or should have known

18  of the facts and theories raised by the proposed amendments when it filed the prior

19  versions of the complaint, but that in any event, AF Holdings has known of his identity for

20  more than a year, and nonetheless failed to seek leave to amend to substitute him for the

21  Doe defendant.

22      Since there has been no discovery relevant to this case since AF Holdings was

23  granted expedited discovery to learn the identities of the owners of the implicated IP

24  addresses in AF Holdings v. Does 1-135, and since AF Holdings previously indicated that

25  Hatfield was a "concededly ignorant" account holder and does not explain what this "new

26  information" is that it claims supports the proposed amendment, Hatfield argues that there

27  is no reason AF Holdings could not have conducted its "investigation" earlier before wasting

28  the time and resources of this court.

United States District Court

For the Northern District of California

8

United States District Court

For the Northern District of California

1    Hatfield argues in addition that AF Holdings has made no real effort to justify its own

2  delay in this matter, and also has not established that Hatfield will not be prejudiced if the

3  motion is granted.  Hatfield contends that unlike the negligence claim, much of the

4  evidence for the copyright claim would consist of "fleeting electronic evidence" which may

5  be lost due to the passage of time, and that allowing AF Holdings to proceed with this claim

6  would thus be prejudicial.

7    Finally, Hatfield argues that leave to amend would be futile, as AF Holdings is barred

8  by principles of equitable and judicial estoppel from alleging that Hatfield is the infringer of

9  its copyrighted works.

10    As noted above, in determining whether to grant leave to amend, the court must

11  consider whether the proposed amendment is futile, whether it would cause undue

12  prejudice to the defendant, and whether it is sought by plaintiff in bad faith or with a dilatory

13  motive.  These factors do not carry equal weight, as delay, by itself, may be insufficient to

14  justify denial of a motion for leave to amend, and "it is the consideration of prejudice to the

15  opposing party that carries the greatest weight."  Eminence Capital LLC v. Aspeon, Inc.,

16  316 F.3d 1048, 1052 (9th Cir. 2003); see also Bowles v. Read, 198 F.3d 752, 758 (9th Cir.

17  1999).  On the other hand, egregious, unexplained delay alone may in certain

18  circumstances provide a sufficient basis for denying leave to amend.  See

19  AmerisourceBergen Corp. v. Dialysis West, Inc., 465 F.3d 946, 953 (9th Cir. 2006).

20    With regard to futility, the court is not persuaded by Hatfield's argument that the

21  proposed amendment would be futile based on equitable estoppel and judicial estoppel.

22  Both equitable estoppel and judicial estoppel are affirmative defenses.  See, e.g.,

23  Powertech Tech. Inc. v. Tessera, Inc., 872 F.Supp.2d 924, 934-35 (2012) (equitable

24  estoppel); Coble v. DeRosia, 823 F.Supp.2d 1048, 1050 (E.D. Cal. 2011) (judicial

25  estoppel).  For that reason, assuming the court were to grant leave to amend, any such

26  argument would be more appropriately raised in a Rule 12(b)(6) motion to dismiss.

27    As for Hatfield's argument that he will be prejudiced because of the "fleeting" nature

28  of electronic evidence, AF Holdings asserts in its reply that because Hatfield was previously

<center>9</center>

United States District Court

For the Northern District of California

1    named as a defendant in the negligence claim, he had an obligation to "preserve evidence"

2    that could be used in this case.  However, the negligence claim was dismissed on

3    September 4, 2012, and Hatfield had no continuing duty to preserve evidence after that

4    date.

5         After AF Holdings filed the present action naming the Doe defendant and Hatfield,

6    but did not sue Hatfield for infringement and even stated that it was not its intention to sue

7    him for infringement, Hatfield had no reason to know, until AF Holdings filed the present

8    motion for leave to amend, that he was in danger of being sued for copyright infringement.

9    This is arguably prejudicial, although it may not be sufficient to qualify as "substantial

10   prejudice" in order to justify denial of leave to amend.  See Monongo Band of Mission

11   Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990).

12        The court does find, however, that AF Holdings delayed unduly in seeking leave to

13   amend, and that its conduct is at least suggestive of bad faith.  As noted above, the

14   complaint in this action was filed on April 24, 2012.  Thus, when AF Holdings filed its

15   motion for leave to amend the complaint to add Hatfield as a defendant and to assert new

16   claims against him – or to substitute Hatfield in place of the Doe defendant – the 120-day

17   limit for service had already passed more than a month previously.  Even though the

18   complaint in this case was filed only five months before the motion for leave to amend was

19   filed, there is no dispute that AF Holdings has had the identifying information for Hatfield

20   since it obtained the information in the prior AF Holdings v. Does 1-135 case in October

21   2011.

22        While the prior case was dismissed without prejudice, and AF Holdings was thus

23   within its rights to file another suit naming a Doe defendant, AF Holdings did not file a

24   complaint against Hatfield for infringement.  Indeed, in the FAC in the present case, filed on

25   June 14, 2012, AF Holdings asserted that it did not know if the Doe defendant was the

26   same individual as Hatfield; and in its July 16, 2012 opposition to Hatfield's motion to

27   dismiss the FAC, AF Holdings stated unequivocally that it was not accusing Hatfield of

28   infringement, and that Hatfield was a "concededly ignorant but alleged careless defendant."

Exhibits to the Declaration of Morgan E. Pietz
Page 68

1  It was only after the court dismissed the negligence claim (with the result that no claim

2  remained against Hatfield) that AF Holdings decided that it would sue Hatfield for

3  infringement (unless Hatfield offered a sum of money to settle the case).

4      In addition, the court notes that the "investigation" AF Holdings claims to have

5  conducted apparently commenced on September 8, 2012 – which was four days after the

6  date the court dismissed the negligence claim and AF Holdings threatened to sue Hatfield

7  as the infringer.

8      The court finds further that the new allegations in the revised proposed SAC are

9  vague and speculative, and do not demonstrate diligence or add any substance to the

10 claims.  The allegation that AF Holdings discovered that Hatfield has "a large Internet

11 presence" is conclusory and appears to be based on pure speculation about social media

12 accounts that may or may not be registered to Hatfield.  The lengthy quotation from the

13 rental ad is irrelevant to the claims asserted in the complaint; at most, it simply supports AF

14 Holdings' claim that Hatfield lives in an 8-unit building.  In addition, the alleged "research"

15 about Hatfield's "neighbors" is contradicted by the alleged "research" regarding the other

16 residents of the building, as AF Holdings claims to have discovered no information about

17 Hatfield's neighbors, and to have simultaneously learned that "a few [unidentified] tenants"

18 in Hatfield's building were/are running businesses out of their apartments.  In any event,

19 this "research" sheds no light on the alleged infringement.

20     Similarly, the allegation that Hatfield is sharing the apartment with someone of the

21 opposite sex, and that "there is no indication that the two are married" is meaningless, as is

22 the allegation that AF Holdings found "no evidence" that Hatfield has a wireless connection.

23 Finally, the allegation that Hatfield has a criminal record is vague as to the offenses

24 charged or any other details.

25     In short, the revised proposed SAC alleges no facts showing that Hatfield infringed

26 AF Holdings' copyrighted material, apart from the facts that were previously alleged and

27 that have been known to AF Holdings for more than a year – in particular, that the IP

28 connection through which the material was downloaded is registered to Hatfield.

11

Exhibits to the Declaration of Morgan E. Pietz
Page 69

United States District Court
For the Northern District of California

1    **CONCLUSION**

2         In accordance with the foregoing, AF Holdings' motion for leave to file a second

3    amended complaint is DENIED.  In addition, for the reasons stated at the hearing, AF

4    Holdings' motion to strike Hatfield's opposition to the motion is DENIED, as is Hatfield's

5    request that the case be dismissed pursuant to Rule 41(b).

6

7    **IT IS SO ORDERED.**

8    Dated:  January 7, 2013

9                                                              _____
                                                               PHYLLIS J. HAMILTON
10                                                             United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12

# EXHIBIT I

EXHIBIT I
Exhibits to the Declaration of Morgan E. Pietz
Page 71

Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone No.: (831) 703 - 4011
Fax No.: (831) 533-5073
Email: nick@ranallolawoffice.com

Attorney for Defendant Joe Navasca

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS, LLC., | Case No. 3:12-cv-02396-EMC |
| Plaintiff, | |
| v. | **JOSH HATFIELD'S DECLARATION IN SUPPORT OF DEFENDANT'S MOTION TO POST UNDERTAKING** |
| JOE NAVASCA | |
| Defendants. | |

## DECLARATION OF JOSH HATFIELD

1. I am over the age of 18, and presently reside in Oakland, CA. The instant declaration is based on my personal knowledge and I could and would testify competently to the truth of the facts herein.

2. I am the defendant named in *AF Holdings v. Josh Hatfield* (4:12-cv-2049-PJH), presently pending in the Northern District of California.

3. AF Holdings initially accused me of negligence in that action, though the cause of action for negligence was dismissed.

4. On September 28, 2012, Plaintiff sought to amend the complaint in the above-noted matter to accuse me of sharing their clients work, though they had previously admitted that they did not know the identity of the alleged infringer.

1    5.    After being ordered by the court, Plaintiff submitted a 'Proposed Second Amended

2        Complaint', a copy of which is annexed hereto as Exhibit A.

3    6.    This proposed complaint includes a section entitled "Plaintiff's Further Investigation of

4        Defendant," beginning on Page 8, which purportedly explains how they chose me as the

5        "infringer" in that matter.

6    7.    ¶ 31 of Plaintiff's proposed complaint discusses a Facebook page that supposedly includes

7        evidence of guilt, including that "Defendant 'likes' movies, 'pretty much any movie,'

8        among other things."

9    8.    The Facebook page identified in ¶31 of Plaintiff's complaint does not belong to me, nor

10       am I responsible for any of the content thereon.

11    9.    ¶32 of Plaintiff's proposed complaint discusses a MySpace page that also supposedly

12       includes evidence of guilt, including "pictures of his various activities, including, but not

13       limited to, playing video games."

14   10.    The MySpace page identified in ¶32 of Plaintiff's proposed complaint likewise does not

15       belong to me, nor am I responsible for any of the content thereon.

16

17 I declare under penalty of perjury under the laws of the State of California that the foregoing is

18 true and correct and that this Declaration is executed on this _12th_ day of December, 2012, in

19 Oakland, CA

20

21

22

23 Josh Hatfield

24

25

26

27

28

# EXHIBIT J

# GODFREAD LAW FIRM, P.C.

100 South Fifth Street, Suite 1900, Minneapolis, MN 55402

November 29, 2012

**Via ECF**
The Honorable Richard H. Kyle
772 Federal Building
316 N. Robert Street
St. Paul, MN 55101

The Honorable Joan N. Erickson
12W U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

**Re:    Alan Cooper - AF Holdings, LLC and Ingenuity13, LLC**

Dear Judge Kyle and Judge Erickson:

I represent Alan Cooper who is concerned that his name or identity is being used without his consent as the CEO of AF Holdings, LLC, a plaintiff in several cases pending in the District of Minnesota. His name appears in attachments to the pleadings in these cases. Perhaps, the CEO of AF Holdings has the same name as my client, we have substantial information that would indicate that this is not a mere coincidence. I would like to be certain my client is not at risk of liability for the outcome of these cases and others like it and that he is not being made a front for the litigation activities of plaintiffs. I have attempted to contact counsel for AF Holdings and their reaction has not been reassuring.

My client had for several years acted as a caretaker for a Minnesota property owned by an attorney by the name of John Steele. When visiting his property, Steele had on numerous occasions bragged to my client about a plan involving massive copyright litigation in multiple jurisdictions. He also specifically instructed my client to contact him if anyone asked about various corporations, that Cooper was to call him. When Cooper confronted Steele about that, Steele told him not to worry about it. Needless to say, my client was suspicious, but did not know what to make of this situation. Upon learning about the many lawsuits filed by AF Holdings and learning that AF Holdings has a CEO with an identical name he began to investigate further, eventually prompting him to retain counsel.

Steele has filed numerous lawsuits across the country similar to the ones before this court involving copyright infringement over Bittorrent and may be heavily involved in the cases filed here by AF Holdings. Steele has appeared on behalf of AF Holdings in at least one case (see Ex. A). Steele also shares an office address (161 N. Clark Street, Chicago, IL 60601) with the office listed on the website of plaintiff's counsel (www.wefightpiracy.com) (see Ex. B and C). Steele's former law firm, Steele Hansmeier, appears to be the predecessor firm to Prenda Law and used the same domain name (see Ex. D - a screenshot of a cached copy of Steele's law firm Steele Hansmeier at www.wefightpiracy.com in February 2011) Steele Hansmeier has also represented Ingenuity 13, which also appears to have a similar case pending here (0:12-cv-02686-RHK-JJG) which apparently also has a manager named Alan Cooper. (See Ex. E, page 8). From these exhibits, it is also clear that attorney Dugas shares a phone number with attorney Gibbs of Steele Hansmeier (415-325-5900).

paul@godfreadlaw.com
www.godfreadlaw.com

phone 612-284-7325
fax 612-465-3609

Hon. Richard H. Kyle and Hon. Joan N. Ericksen
November 29, 2012
Page Two

When investigating this matter and calling the number listed on the wefightpiracy.com website, I confirmed that Steele is currently "of counsel" with Prenda Law. I called and emailed local counsel, Michael Dugas to give notice of representation and to find out if there was in fact a different Alan Cooper with AF Holdings. Within an hour after giving notice to Prenda Law and local counsel of my representation, Steele himself called my client several times in a row and asked if he had been talking to attorneys in Minnesota. Because I had not yet heard from attorneys Dugas or Steele, I looked for an alternative phone number for attorney Dugas and found a different number than the one that appears on the pleading (312-880-9160, See Ex. F). This number appears as attorney Steele's number in Exhibit A as well. Calling that number, I heard a voicemail message which said "Prenda Law." I again left a message, but have received no response. Because I have received no response from Dugas or Steele, and because Steele has contacted my client, my suspicions are now increased.

Today, I received an email from another attorney from Prenda Law, Paul Duffy, suggesting that their client, AF Holdings, probably would not volunteer information. I reasserted my request to confirm that there was another Alan Cooper at AF Holdings. Shortly before sending this letter, Duffy emailed me again and said that I should not contact his office again.

My client would like certainty that his identity is not being used without his knowledge and against his will as the would be CEO of AF Holdings, LLC or as a manager of Ingenuity13, LLC. Because both are Nevis based companies, discovering the true officers or directors is at best difficult. I have attempted to contact plaintiffs' attorneys, but have not received a response that would allow me to advise my client that he should not be concerned.

I respectfully request leave to file a motion to intervene and to seek discovery regarding the true identity of AF Holdings, LLC's CEO and Ingenuity 13, LLC's manager, Alan Cooper.

Sincerely,

Paul Godfread

Exhibits

cc:     John Steele, Esq. (via email)
        Paul Duffy, Esq. (via email)
        Michael Dugas (via ECF)

paul@godfreadlaw.com
www.godfreadlaw.com

phone 612-284-7325
fax 612-465-3609

Exhibits to the Declaration of Morgan E. Pietz
Page 76

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| AF HOLDINGS LLC, )<br><br>     Plaintiff, )<br><br>v. )<br><br>DOES 1 – 1058, )<br><br>     Defendants. ) | Case : 1:12-cv-00048<br><br>Judge : Hon. Beryl A. Howell |

### MOTION FOR PRO HAC VICE ADMISSION OF JOHN L. STEELE

I, Paul A. Duffy, hereby move pursuant to Local Civil Rule 83.2(d) for the *pro hac vice* admission of John L. Steele to the bar of this Court to act as co-counsel in this action. Mr. Steele is of counsel with the firm of Prenda Law, Inc., and is a member in good standing of the bar of the State of Illinois and the U.S. District Court for the Northern District of Illinois. On the basis of the foregoing, it is respectfully requested that this Court admit Mr. Steele *pro hac vice* for the purpose of appearing and participating as co-counsel on behalf of Plaintiff, AF Holdings, Inc., in this action.

Dated:  April 20, 2012

Respectfully submitted,

By:  ___/s/ Paul A. Duffy_____

    Paul A. Duffy (D.C. Bar # IL0014 )
    Prenda Law Inc.
    161 N. Clark Street, Suite3200
    Chicago, IL  60601
    Telephone: (312) 880-9160
    Facsimile:   (312) 893-5677
    Attorneys for Plaintiff,
    AF Holdings LLC

**Exhibit** A
**Pg** 1 **of** 5

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on April 20, 2012, I caused a true and correct copy of the foregoing Motion For Pro Hac Vice Admission to be electronically filed with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

Dated: April 20, 2012

/s/  *Paul A. Duffy*
Paul A. Duffy

Exhibit A
Pg. 2 of 5

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AF HOLDINGS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case : 1:12-cv-00048 |
| | ) | |
| DOES 1 – 1058, | ) | Judge : Hon. Beryl A. Howell |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DECLARATION OF JOHN L. STEELE

I, John Steele, declare pursuant to 28 U.S.C. § 1746 and Local Civil Rule 83.2(d):

1.      I am of counsel with the law firm of Prenda Law, Inc., counsel for Plaintiff, AF Holdings, LLC in the above-captioned action.  I submit this declaration in support of Paul A. Duffy's Motion pursuant to Local Civil Rule 83.2(d) for the *pro hac vice* admission of John Steele to the bar of this Court.

2.      My full name is John L. Steele.

3.      My office address is 161 N. Clark Street, Suite 3200, Chicago, Illinois 60601.  My office telephone number is (312) 880-9160.

4.      I have also been admitted to practice before, and am a member in good standing of, the bars of the United States Court District Court for the Northern District of Illinois, and the State of Illinois.

5.      I have not been disciplined by any bar.

6.      I have been admitted *pro hac vice* to this Court in one case (1:12-mc-00150-ESH-AK) in the previous two years.



Exhibit A
Pg 3 of 5

7.      I do not engage in the practice of law from an office located in the District of Columbia.  I am not a member of the District of Columbia bar, nor do I have an application for membership pending.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated:         April 20, 2012


                         /s/  John Steele

                         John Steele
                         Prenda Law Inc.
                         161 N. Clark St., Suite 3200
                         Chicago, IL 60601
                         Telephone: (312) 880-9160
                         Facsimile:  (312) 893-5677

**Exhibit** A
**Pg** 4 **of** 5

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| AF HOLDINGS LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case : 1:12-cv-00048 |
| | ) |
| DOES 1 – 1058, | )    Judge : Hon. Beryl A. Howell |
| | ) |
|     Defendants. | ) |
| | ) |

### [PROPOSED] ORDER

Upon consideration of the Motion for *Pro Hac Vice* Admission of John L. Steele, it is hereby

ORDERED that John L. Steele be specially admitted to appear and participate in the above-captioned matter as counsel for Plaintiff AF Holdings, LLC.

Dated: April 20, 2012          _____

                                Hon. Beryl A. Howell
                                United States District Court Judge

11/27/12          Chicago Divorce Lawyer, Child Support Attorney, Child Custody Lawyers, Family Law Attorneys – Ste...



STEELE LAW FIRM   PHONE: 312-893-5888 | TOLL-FREE: 1-800-DIVORCE (IN NORTHERN ILLINOIS)

MAKE A FRESH START
TURN OVER A NEW LEAF

Steele Law Home    Attorney Profile    Steele Law Firm Overview    Practice Areas    Divorce and Family Law    Resources    Contact Us

**Divorce And Family Law**

**Child Custody**

**Child Support**

**Modification & Enforcement**

**Collaborative Divorce & Mediation**

**Prenuptial & Postnuptial Agreements**

**Spousal Support / Maintenance**

**Domestic Violence & Orders of Protection**

**Adoption**

**Bankruptcy**

STEELE LAW FIRM, LLC
Phone: 312-893-5888 Toll-Free (in Northern Illinois):
1-800-DIVORCE

Office Locations:

Downtown Chicago
161 N Clark St., Suite 3200
Chicago, IL 60601

Naperville
2135 CityGate Ln, Suite 300
Naperville, IL 60563

### WELCOME TO THE STEELE LAW FIRM, LLC
### with Offices in Chicago, IL.

**Family Law • Bankruptcy • Divorce • Child Custody
Child Support • Prenuptial Agreements**

If you are going through a divorce, or if your financial troubles are leading you to consider bankruptcy, you now have the opportunity to take a situation that isn't working out and make it better.

All of our clients have unique personal problems that they need help with. We are in the business of solving thos problems, whether they be related to family law matters, such as divorce, child custody or child support, or consumer bankruptcymatters. Contacting a lawyer can be the first step toward taking hold of your future and building a better life.

**If you are looking for an attorney who will do what it takes to get you relief from your legal concerns, contact us to schedule a free initial consultation about your case.**

**Quality Legal Assistance in Illinois**

The Steele Law Firm is one of Chicagoland's premier family law and consumer bankruptcy law firms. Our attorneys and staff are committed to providing high quality, accessible, compassionate service to our clients. We give each client and case the individual attention they deserve, and do everything in our power to reach our clients' overall needs and goals.

Our main office is located in the Loop in downtown Chicago, and we also have an office location in the Chicago suburb of Naperville. We represent clients with matters in Cook County, DuPage County, Kane County, Lake County, and Will County family courts, and the Northern, Southern and Central Districts of Illinois federal bankruptcy courts.

Whether you are looking for an advocate in a divorce proceeding, need help enforcing a child support order, want to know whether Chapter 7 or Chapter 13 bankruptcy is better for you, you need the advice and assistance of a skilled, experienced Illinois attorney to help you protect all of your legal rights.

Give us a call today at (312) 893-5888 or 1-800-DIVORCE (in Northern Illinois) or **contact us** to learn more about how we can help you or to set up a FREE consultation.

**Rate Information:**

Fixed Hourly Rates
Fixed Flat Fees Available
**FREE Consultation**

**We Accept Major Credit Cards**
• Visa
• MasterCard
• American Express
• Discover

**We Can Assist You With:**

• Matrimonial Law
• Family Law
• Divorce
• Domestic Relations
• Dissolution of Marriage and Legal Separation
• Litigation in Trial Courts
• Negotiated Settlements
• Alternative Dispute Resolution, such as Collaborative Law and Mediation
• Appeals to Reviewing Courts
• Financial Discovery and Analysis
• Property Division
• Retirement Benefits
• Qualified Domestic Relations Orders (QDROs)
• Paternity
• Adoption



www.steele-law.com

Exhibit B
Pg 1 of 2

1/2

- Child Custody, including Joint Custody and Sole Custody
- Child Visitation
- Child Support
- Child Abductions
- Maintenance, formerly known as Alimony
- Spousal Support
- Marital Settlement Agreements
- Premarital Agreements
- Postnuptial Agreements
- Annulments
- Domestic Violence
- Post-Decree and Post-Judgment Issues and Modifications
- Restraining Orders
- Separation Agreements

**We are a debt relief agency.**

DISCLAIMER: This web site does not constitute an attorney/client relationship and this website does not give legal advice

**Exhibit** B

Exhibits to the Declaration of Morgan E. Pietz
Page 83

**Pg** 2 **of** 2

11/27/12                          Prenda Law Inc.





Call: 1-800-380-0840

# DISCLAIMER

The information provided on Prenda Law, Inc.'s website is not intended to be legal advice, but merely conveys general information related to legal issues commonly encountered. This information is not intended to create any legal relationship between Prenda Law, Inc. Intellectual Property Attorneys or any attorney and the user. Neither the transmission nor receipt of these website materials will create an attorney-client relationship between sender and receiver.

The information is not guaranteed to be correct, complete, or current. We make no warranty, expressed or implied, about the accuracy or reliability of the information at this website or at any other website to which this site is linked.

Please note that recovery results vary per client. The recovery amounts in each case reflect the specific facts of that case. Further, recovery amounts in past cases are not a guarantee of future results.

There are no photos of clients on this website. Photos used on this website have been purchased from stock photography companies.

This website is not intended to create and does not create an attorney-client relationship between the user and Prenda Law, Inc. Intellectual Property Attorneys. An attorney-client relationship with us cannot be formed by reading the information at this website. The only way to become our client is through a mutual agreement in a formal letter. This website is not soliciting clients and does not propose any type of transaction. You should not act or rely on any information at this website without seeking the advice of an attorney. The determination of whether you need legal services and your choice of a lawyer are very important matters that should not be based on websites or advertisements.

THIS SITE IS PROVIDED ON AN "AS IS", "AS AVAILABLE" BASIS AND PRENDA LAW INC. EXPRESSLY DISCLAIMS ALL WARRANTIES, INCLUDING THE WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NONINFRINGEMENT.

PRENDA LAW DISCLAIMS ALL RESPONSIBILITY FOR ANY LOSS, INJURY, CLAIM, LIABILITY, OR DAMAGE OF ANY KIND RESULTING FROM, ARISING OUT OF OR ANY WAY RELATED TO (A) ANY ERRORS IN OR OMISSIONS FROM THIS SITE AND ITS CONTENT, INCLUDING BUT NOT LIMITED TO TECHNICAL INACCURACIES AND TYPOGRAPHICAL ERRORS, (B) ANY THIRD PARTY WEBSITES OR CONTENT THEREIN DIRECTLY OR INDIRECTLY ACCESSED THROUGH LINKS IN THIS SITE, INCLUDING BUT NOT LIMITED TO ANY ERRORS IN OR OMISSIONS THEREFROM, (C) THE UNAVAILABILITY OF THIS SITE OR ANY PORTION THEREOF, (D) YOUR USE OF THIS SITE, OR (E) YOUR USE OF ANY EQUIPMENT OR SOFTWARE IN CONNECTION WITH THIS SITE.

## PERSONAL INFORMATION SUBMITTED TO THE WEBSITE

Any information that you send us in an email message might not be confidential or privileged. Prenda Law, Inc. makes effort to protect personal information submitted by users of the website, including through the use of firewalls and other security measures on our servers. However, no server is 100 percent secure, and you should take this into account when submitting personal or confidential data about yourself on any website, including this one.

Additionally, while the website does not gather your name, email address or similar information about you without your knowledge or consent, the website does permit you to voluntarily submit data about yourself so that we can provide you with requested services. The information gathered will be incorporated into our mailing database and will not be sold to third parties for marketing purposes. At your request, we will remove your personal information from our files.

If you are interested in having us represent you, you should call us so we can determine whether the matter is one for which we are willing or able to accept professional responsibility. We will not make this determination by email communication.

The telephone numbers for our office are listed in this website. We reserve the right to decline any representation. We may be required to decline representation if it would create a conflict of interest with our other clients.

## PRACTICE JURISDICTIONS

Prenda Law, Inc. is an Illinois law firm. Always directly confirm with the individual attorney whom you contact whether he or she practices the type of law with which you need assistance in your jurisdiction.

wefightpiracy.com/terms-of-service.php

**Exhibit** C

**Pg** 1 **of** 3

1/3

## TERMS OF USE MAY BE MODIFIED BY THE FIRM

Prenda Law, Inc. periodically changes, adds, or updates the material in this website without notice. Prenda Law, Inc. assumes no liability or responsibility for any errors or omissions in the contents of this website. Your use of this website is at your own risk. Under no circumstances shall Prenda Law, Inc. or any other party involved in the creation, production or delivery of this website be liable to you or any other person for any indirect, special, incidental, or consequential damages of any kind arising from your access to, or use of, this website.

## THIRD-PARTY WEBSITES

This website may occasionally contain links to third party websites for the convenience of our users. Prenda Law, Inc. does not endorse any of these third party sites and does not intent to imply any association between the firm and the party(ies) involved. Furthermore, Prenda Law, Inc. does not control these third party websites and cannot represent that their policies and practices will be consistent with these Terms of Use. If you use any links to websites not maintained by Prenda Law, Inc., you do so at your own risk. Prenda Law, Inc. is not responsible for the contents or availability of any linked sites. These links are provided only as a convenience to the recipient.

## LEGAL AND ETHICAL REQUIREMENTS

Prenda Law, Inc. has tried to comply with all legal and ethical requirements in compiling this website. We do not want to represent clients based on their review of any portion of this website that does not comply with legal or ethical requirements.

To the extent that the professional responsibility rules of any jurisdiction require us to designate a principal office or an attorney responsible for this website, Prenda Law, Inc. designates its office in 161 N Clark St., Suite 3200, Chicago, IL 60601 and its telephone number as (312) 880-9160

## STATE ADVERTISING DISCLAIMERS

**Alabama:** No representation is made that the quality of the legal services to be performed is greater than the quality of legal services performed by other lawyers.

**Colorado:** Colorado does not certify attorneys as specialists in any field.

**Florida:** The hiring of a lawyer is an important decision that should not be based solely upon advertisements. Before you decide, ask us to send you free written information about our qualifications and experience.

**Illinois:** Unless otherwise stated, our attorneys claiming certification in an area of law are not certified by the Illinois Board of Legal Specialization.

**Iowa:** The determination of the need for legal services and the choice of a lawyer are extremely important decisions and should not be based solely upon advertisements or self-proclaimed expertise. This disclosure is required by rule of the Supreme Court of Iowa.

NOTICE TO THE PUBLIC: Memberships and offices in legal fraternities and legal societies, technical and professional licenses, and memberships in scientific, technical and professional associations and societies of law or field of practice do not mean that a lawyer is a specialist or expert in a field of law, nor do they mean that such a lawyer is necessarily any more expert or competent than any other lawyer. All potential clients are urged to make their own independent investigation and evaluation of any lawyer being considered. This notice is required by rule of the Supreme Court of Iowa.

**Kentucky and Oregon:** THIS IS AN ADVERTISEMENT.

**Mississippi:** The Mississippi Supreme Court advises that a decision on legal services is important and should not be based solely on advertisements.

**Missouri:** Neither the Supreme Court of Missouri nor the Missouri Bar reviews or approves certifying organizations or specialist designations.

**Nevada:** The State Bar of Nevada does not certify any lawyer as a specialist or expert.

**New Mexico:** LAWYER ADVERTISEMENT.

**Tennessee:** None of the attorneys in this firm are certified as a Civil Trial, Criminal Trial, Business Bankruptcy, Consumer Bankruptcy, Creditor's Rights, Medical Malpractice, Legal Malpractice, Accounting Malpractice, Estate Planning or Elder Law specialist by the Tennessee Commission on Continuing Legal Education and Specialization. Certification as a specialist in all other listed areas is not currently available in Tennessee.

**Wyoming:** The Wyoming State Bar does not certify any lawyer as a specialist or expert. Anyone considering a lawyer should independently investigate the lawyer's credentials and ability, and not rely upon advertisements or self-proclaimed expertise.

## LAWYER'S LISTINGS

The information in the directory of lawyers is provided by the listees. Prenda Law, Inc. does not warrant the validity of the information, nor does it guarantee the quality of the work product.

The determination of the need for legal services and the choice of a lawyer are extremely important decisions and should not be based solely upon advertisements or self-proclaimed expertise. Prenda Law, Inc. does not review the contents of the listings, which are provided by the listees or any links; Prenda Law, Inc. is not responsible for any material or information contained in the linked sites or provided by listees.

A description or indication of limitation of practice by a lawyer does not mean that any agency or board has certified such lawyer as a specialist or expert in any indicated field of law practice, nor does it mean that such lawyer is necessarily any more expert or competent than any other lawyer.

All potential clients are urged to make their own independent investigation and evaluation of any lawyer being considered.

## OWNERSHIP, LICENSE & RESTRICTIONS ON USE

As between Prenda Law, Inc. and you, all right, title and interest (including all copyrights, trademarks and other intellectual property rights) in this website belongs to Prenda Law, Inc., its licensors, or listees. In addition, the names, images, pictures, logos and icons identifying Prenda Law, Inc. products and services in many countries are proprietary marks of Prenda Law, Inc. and/or its subsidiaries or affiliates. Except as expressly provided below, nothing contained herein shall be construed as conferring any license or right, by implication, estoppel or otherwise, under copyright or other intellectual property rights.



Exhibit C of 3

Exhibits to the Declaration of Morgan E. Pietz
Page 85

11/27/12                                    Prenda Law Inc.

You are hereby granted a nonexclusive, nontransferable, limited license to view and use information retrieved from this website provided solely for your personal, informational, non-commercial purposes, and provided you do not remove or obscure the copyright notice or other notices. Except as expressly provided above, no part of this website, including but not limited to materials retrieved there from and the underlying code, may be reproduced, republished, copied, transmitted, or distributed in any form or by any means. In no event shall materials from this website be stored in any information storage and retrieval system without prior written permission from Prenda Law, Inc. Intellectual Property Attorneys.

Use, duplication, or disclosure by or for the United States Government is subject to the restrictions set forth in DFARS 252.227-7013 (c)1)(ii) and FAR 52.227-19.

## LIMITATION OF LIABILITY

A covered party (as defined below) shall not be liable for any direct, indirect, incidental, special, or consequential damages of any kind whatsoever (including, without limitation, attorneys' fees and lost profits or savings) in any way due to, resulting from, or arising in connection with this site, including its content, regardless of any negligence of any covered party. "Covered party" means Prenda Law, Inc., its affiliates, its listees, and any officer, director, employee, subcontractor, agent, successor, or assign Prenda Law, Inc., its affiliates, and its listees.

## GOVERNING LAWS IN CASE OF DISPUTE; JURISDICTION

These Terms of Use shall be governed by and construed in accordance with the laws of the State of Illinois, USA, as they apply to agreements made and solely performed therein. Disputes arising hereunder shall be exclusively subject to the jurisdiction of the federal courts of the United States of America and/or the state courts of Illinois and jurisdiction therefore shall rest solely in Illinois, USA.

## ENTIRE AGREEMENT; SEVERABILITY

These Terms of Use incorporate by reference any notices contained on this Site and constitute the entire agreement with respect to your access to and use of this Site. If any provision of these Terms and Conditions is unlawful, void or unenforceable, then that provision shall be deemed severable from the remaining provisions and shall not affect their validity and enforceability.

Material available in Prenda Law, Inc. website is protected by copyright law.

Prenda Law, Inc. All rights reserved.



Home | About the Firm | Firm Resources | Attorneys | Practice Areas | Giving | Case Samples | Terms of Service
© 2012 Copyright 2011 Prenda Law Inc. All Rights Reserved.
You may reproduce materials available at this site for your own personal use and for non-commercial distribution. All copies must include the above copyright notice.
ATTORNEY ADVERTISING DISCLAIMER. The contents of this website should not be construed as legal advice on any specific fact or circumstance. Its content was prepared by Prenda Law Inc. (an Illinois law firm organized as a limited liability company with its principal office at 161 North Clark Street, Suite 3200, Chicago, Illinois 60601, Ph 1-800-380-0840) for general information purposes only. Your receipt of such information does not create an attorney-client relationship with Prenda Law Inc. or any of its lawyers. You should not act or rely on any of the information contained here without seeking professional legal advice. Prior results referred to in these materials do not guarantee or suggest a similar result in other matters. Prenda Law Inc.'s lawyers are licensed in Illinois and a limited number of other jurisdictions. They and the Firm cannot file actions in all states without associating locally licensed attorneys and/or becoming admitted in that jurisdiction for a limited purpose.
Prenda Law Inc. lawyer responsible for the contents of this website is Paul Duffy.

INTERNET ARCHIVE
WayBackMachine | http://wefightpiracy.com/ | Go | JAN FEB MAR | Close
1 captures | ◄ 7 ► | Help
7 Feb 11 – 7 Feb 11 | 2010 2011 2012

# STEELE | HANSMEIER

- Home
- About Us
- Services
- Contact Us
- Disclaimer

- **Steele | Hansmeier** Jun 19, 2010 Steele | Hansmeier PLLC is a law firm dedicated to eradicating digital piracy. We represent prominent content producers and commence legal action against individuals and businesses who steal our client's content.



- **Combating Piracy in the Digital Age** Jun 19, 2010 Our practice includes addressing the unique legal issues posed by Internet-based piracy, where the vast majority of infringement occurs under the cover of IP addresses



- **Preserving the Creative Arts** Jun 19, 2010 We view our mission as preserving the creative arts for future generations. If left unchecked, digital piracy represents an existential threat to creative arts professionals around the world.

Exhibit _D_
Pg __1__ of __4__
Exhibits to the Declaration of Morgan E. Pietz
Page 87



- Steele | Hansmeier 

- Combating Piracy in the Digital Age 

- Preserving the Creative Arts

Contact Us

# About Us

Steele | Hansmeier PLLC is a Chicago-based law firm that provides legal services to content producers and creative professionals. Our focus is pursuing individuals and businesses who infringe on the copyrights associated with our clients' creative works. Our practice includes addressing the unique legal issues posed by Internet-based piracy, where the vast majority of infringement occurs under the cover of Internet Protocol ("IP") addresses.

We view our mission as a small part of the overall effort to preserve the creative arts for future generations. In our view, the ease with which digital content is pirated represents an existential threat to the future of professional content producers. Our clients understand all too well the problems posed by the unauthorized redistribution of their copyrighted works, particularly given the capital investment associated with producing and marketing professional works.

# Services

The legal services offered by Steele | Hansmeier PLLC reflect the lifecycle of a creative work. Such services include:

- Due diligence efforts to determine whether a proposed creative work lacks originality or infringes on another creative work;
- Developing a plan for protecting and enforcing U.S. and international copyrights;
- Securing U.S. copyrights and coordinating with third parties to secure international copyrights in both Berne and non-Berne Convention countries; and
- Enforcing U.S. copyrights and coordinating with third parties to enforce international copyrights.

Many of our services involve coordinating with third party attorneys (e.g. international copyright work) and third party technology providers (e.g. copyright enforcement). Our consistent focus is to provide our clients with strong returns on the capital they invest in our time and that of our third party service providers.

top

# Due Diligence

Before investing substantial capital into the production and/or distribution of a creative work, a creative artist may wish to conduct a basic level of due

Exhibit D

Exhibits to the Declaration of Morgan E. Pietz
Page 88

Page ___ of ___

11/28/12                                    Steele | Hansmeier PLLC

diligence into determining the degree to which their work resembles other copyrighted creative works. The methods for conducting this sort of due diligence vary based on the medium, through most forms of creative work lend themselves to digital due diligence. For example, an audio file can be digitally fingerprinted based on a variety of characteristics (e.g. rhythm, length, melody, etc.). This fingerprint can be compared to those of other audio files. Similar results would then be reviewed to determine whether a copyright issue exists. If such an issue exists, then the creative artist can attempt to obtain a license from the copyright holder of the original work. A creative artist's bargaining power is much stronger before they invest millions of dollar into marketing and distributing a creative work.

In 2008, Joe Satriani filed a copyright infringement lawsuit against the Grammy Award-winning band, Coldplay. Satriani's suit alleged that Coldplay's hit song, *Vida la Vida*, contained substantial portions of Satriani's, *If I Could Fly*. The parties eventually reached an out-of-court monetary settlement for an undisclosed financial sum.

In addition to avoiding infringement lawsuits, it is important to know whether a given creative work will even be afforded the protection of the copyright laws of the jurisdictions in which the artist intends to market the creative work. Steele | Hansmeier PLLC offers services to assist creative artists in conducting the forms of due diligence described in this section.

## Protection Planning

Another category of services offered by Steele | Hansmeier PLLC is assisting creative artists plan their copyright strategy in advance of the creation and/or publication of their creative works. Despite the existence of international treaties, such as the Berne Convention, the world as a whole essentially remains a patchwork of copyright laws with varying degrees of enforcement. By way of example, a creative artist's approach to copyright protection in the United States should look much different than the artists approach to copyright protection in China. We offer to assist creative artists in developing copyright protection strategies worldwide.

## Securing Copyrights

Once a creative work has been produced and/or published, it is generally important to register a copyright in every country where the copyright holder may wish to assert their rights. We offer to assist creative artists by coordinating the registration of their copyrights around the world, as required.

In the United States it is particularly important to register one's copyrights. As a general rule, copyright registration is a prerequisite to filing a copyright infringement lawsuit in U.S. federal court and a timely filing will preserve remedies that may be lost indefinitely if one does not timely register his or her copyright.

## Enforcing Copyrights

Copyright enforcement is a rapidly evolving field. Recent advances in communications technology have dramatically lowered the cost and increased the profitability of mass-piracy. As piracy evolves, so too must copyright enforcement strategies. Steele | Hansmeier PLLC offers services on the cutting edge of copyright enforcement, including: 1) DMCA enforcement services; 2) pirate pursuit services; and 3) advising on comprehensive paradigm shifts in copyright enforcement.

# Disclaimer

Our website is intended to provide only an overview of Steele | Hansmeier PLLC. Nothing on this website is meant to be or should be relied on as legal advice. Commentary on this website is not necessarily up to date. This website is not intended to be an offer to represent you, nor is it intended to establish an attorney client privilege.

## Links

-Berne Convention
-Copyright Office
-Copyright Overview
-Copyright Statutes
-Creative Commons

## Resources

-Patry Blog
-Geist Blog (Canadian law)
-IP Watch

## Pages

- About Us
- Contact Us
- Disclaimer
- Services


Exhibit D
Page 3 of 4

Exhibits to the Declaration of Morgan Pietz
Page 89

3/4

11/28/12                                    Steele | Hansmeier PLLC

Latest News

Google fights piracy



According to an article published on Digital Trends, Google is taking steps to implement several anti-piracy measures, which will ideally make it more difficult for searchers to located pirated material. First, Google is increasing its responsiveness to takedown requests of so-called "reliable copyright holders." Second, its autocomplete function will filter out greater amounts of infringing results. [...]

Pixar's president discusses copyright laws



According to a recently published article in the Salt Lake Tribune, Ed Catmull, president of Pixar Studios, linked international copyright protection to Pixar's ability to continue investing in the cutting-edge technology that's brought us such movies as Wall-E, Monster's, Inc., and Up – all of which are presumably registered trademarks of Pixar Animation Studios. At [...]

Robin Hood is the week's most pirated movie



Ridley Scott's Robin Hood, starring Russell Crowe and Cate Blanchett, is not only popular in the theaters, but also among the BitTorrent crowd. According to BitTorrent news site, TorrentFreak, Robin Hood, despite its relatively lower IMDB rating, beat out both Iron Man 2 and the Expendables for the the top spot on the piracy chart [...]

© Copyright Steele | Hansmeier PLLC - Design by Kriesi.at - Wordpress Themes

- RSS
- Facebook
- Twitter
- flickr

top

Exhibit D
Pg 4 of 4
Exhibits to the Declaration of Morgan E. Pietz
Page 90

1 | Brett L. Gibbs, Esq. (SBN 251000)
Steele Hansmeier PLLC.
2 | 38 Miller Avenue, #263
Mill Valley, CA 94941
3 | 415-325-5900
blgibbs@wefightpiracy.com
4
*Attorney for Petitioner*
5

6

IN THE UNITED STATES DISTRICT COURT FOR THE
7

EASTERN DISTRICT OF CALIFORNIA
8

9

10 | In the Matter Of a Petition By                )
                                                 )
11 | INGENUITY13 LLC,                              )       **No.**
                                                 )
12 |                                              )       Judge:
                                                 )
13 |                                              )       **VERIFIED PETITION TO**
                                                 )       **PERPETUATE TESTIMONY**
14 |                                              )
    _____)
15

16 |         1.      Petitioner Ingenuity13 LLC by and through its undersigned attorney, hereby

17 | petitions this Court for an order pursuant to Federal Rule of Civil Procedure 27 authorizing the

18 | issuance of subpoenas *duces tecum* to the Internet Service Providers ("ISPs") listed on Exhibit A to

19 | this petition.

20 |         2.      Petitioner is limited liability company organized and existing under the laws

21 | of the Federation of Saint Kitts and Nevis. Petitioner produces adult entertainment content and this

22 | content is being unlawfully reproduced and distributed over the Internet via the BitTorrent file

23 | transfer protocol. An individual or individuals wrongfully reproduced and distributed Petitioner's

24 | copyrighted works via the BitTorrent protocol in violation of Petitioner's exclusive rights under

25 | United States Copyright Act, 17 U.S.C. §§ 101, *et seq*. Petitioner anticipates bringing a civil action

26 | against the person or persons engaging in such unlawful activity. This action would be cognizable in

27 | a United States court as United States courts have exclusive jurisdiction over copyright actions.

28 | Without knowing the identity or identities of the anonymous infringers, Petitioner has no means to

1  name and serve the individual or individuals in an action with summons and complaint. The purpose

2  of this petition is to ascertain these identity or identities.

3      3.    Petitioner seeks the name, address, telephone number, e-mail address and

4  Media Control Access number of each account holder associated with the Internet Protocol ("IP")

5  addresses listed on Exhibit B to this petition. Each of the IP addresses was identified by Petitioner's

6  agents as being associated with infringing activity on the corresponding dates and times listed on

7  Exhibit B. The reasons to perpetuate the testimony are multiple. First, without this information

8  Petitioner has no means to name and serve a complaint on the infringing parties. Second, on

9  information and belief, this information is destroyed in the regular course of business and will be

10  unavailable to Petitioner after it is destroyed. An example of an ISP's data retention policy is shown

11  as Exhibit C. Finally, under the Cable Communications Policy Act, 47 U.S.C. § 551(c)(2)(B), a court

12  order is necessary to discover an account holder's identity.

13      4.    The names and addresses of the person or persons whom Petitioner expects to

14  be adverse parties are unknown to Petitioner. The individual or individuals responsible for infringing

15  Petitioner's works are known to Petitioner only by an IP address—a number that is assigned to

16  devices, such as computers, that are connected to the Internet. Petitioner used geolocation to trace

17  the IP addresses of the expected adverse party or parties to a point of origin within the State of

18  California.

19      5.    The name and address of each responding party is set forth on Exhibit A to

20  this petition. Petitioner is seeking the name, address, telephone number, e-mail address and Media

21  Control Access number of each account holder associated with the Internet Protocol ("IP") addresses

22  listed on Exhibit B to this petition.

23                      **FACTUAL ALLEGATIONS**

24      6.    Petitioner is the owner of the copyright for the motion picture set forth in

25  Exhibit D to this petition.

26      7.    As set forth below, Petitioner has actionable claims for direct and contributory

27  copyright infringement and a claim for civil conspiracy against the individual or individuals who

28                                    2
                        VERIFIED PETION TO PERPETUATE TESTIMONY



Exhibits to the Declaration of Morgan E. Pietz
Page 92

1  engaged in infringing activities via the IP addresses set forth on Exhibit B hereto based on the

2  parties' use of the BitTorrent protocol to illegally reproduce and distribute Petitioner's work(s).

3  **A. The Unknown Infringers used BitTorrent to Infringe Petitioner's Copyrights**

4        8.    BitTorrent is a modern file sharing method ("protocol") used for distributing

5  data via the Internet. BitTorrent protocol is a decentralized method of distributing data. Instead of

6  relying on a central server to distribute data directly to individual users, the BitTorrent protocol

7  allows individual users to distribute data among themselves by exchanging pieces of the file with

8  each other to eventually obtain a whole copy of the file. When using the BitTorrent protocol, every

9  user simultaneously receives information from and transfers information to one another.

10        9.    The BitTorrent protocol is an extremely popular method for transferring data.

11  A group of individuals transferring data among one another (the "swarm") will commonly include

12  peers from many, if not every, state in the United States and several countries around the world. And

13  every peer in the swarm participates in distributing the file to dozens, hundreds, or even thousands of

14  other peers.

15        10.    The BitTorrent protocol is also an extremely popular method for unlawfully

16  copying, reproducing, and distributing files in violation of the copyright laws of the United States. A

17  broad range of copyrighted albums, audiovisual files, photographs, software, and other forms of

18  media are available for illegal reproduction and distribution via the BitTorrent protocol.

19        11.    Efforts at combating BitTorrent-based copyright infringement have been

20  stymied by BitTorrent's decentralized nature. Because there are no central servers to enjoin from

21  unlawfully distributing copyrighted content, there is no primary target on which to focus anti-piracy

22  efforts. Indeed, the same decentralization that makes the BitTorrent protocol an extremely robust and

23  efficient means of transferring enormous quantities of data also acts to insulate it from anti-piracy

24  measures.

25        12.    The infringing parties in this action were all observed using the BitTorrent

26  protocol to unlawfully reproduce and distribute Plaintiff's copyrighted work by exchanging pieces

27  with one another either directly or via a chain of data distribution.

28

3

VERIFIED PETION TO PERPETUATE TESTIMONY

**B.  Each infringer installed a BitTorrent Client on his or her computer**

13.   The individual or individuals associated with the infringing activity installed a BitTorrent Client onto his or her computer(s). Normal commercial computers do not come pre-loaded with BitTorrent software. Each infringer must have separately installed on their respective computers special software that allows peer-to-peer sharing of files by way of the Internet.   The infringers use software known as BitTorrent clients. Among the most popular BitTorrent clients are Vuze (formerly Azureus), μTorrent, Transmission and BitTorrent 7, although many others are used as well.

14.   Once installed on a computer, the BitTorrent "Client" serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

**C.  The Initial Seed, Torrent and Tracker**

15.   A BitTorrent user who wants to upload a new file, known as an "Initial Seeder," starts by creating a "torrent" descriptor file using the client he or she installed onto his or her computer. The Client takes the target computer file, the "initial seed," in this case, one of the copyrighted Works, and divides it into identically sized groups of bits known as "pieces." The Client then gives each one of the computer file's pieces, in this case, pieces of one of the copyrighted works, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

16.   When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test whether the piece is free of errors. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and ensure that the piece is authentic and uncorrupted.

17.   Torrents files also have an "announce" section, which specifies the Uniform Resource Locator ("URL") of a "tracker" and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by the Client on peer computers to verify the integrity of the data they receive. The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides

VERIFIED PETION TO PERPETUATE TESTIMONY

**Exhibit** _E_

Exhibits to the Declaration of Morgan E. Pietz  **Pg** _94_ **of** _8_
Page 94

1  peers with the URL address(es). The tracker computer or computers direct a peer user's computer to

2  another peer user's computer that have particular pieces of the file, in this case, one of the copyright

3  Works on them, and facilitates the exchange of data among the computers. Depending on the

4  BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer

5  can act as a tracker (decentralized tracking).

6  **D.  Torrent Sites**

7     18.  "Torrent Sites" are websites that index torrent files that are currently being

8  made available for copying and distribution by the people using the BitTorrent protocol. There are

9  numerous torrent websites, such as www.torrentz.eu or thepiratebay.org.

10     19.  Upon information and belief, each infringer went to a torrent site to upload

11  and download one of the Petitioner's copyrighted Works.

12  **E.  Uploading and Downloading a Work Through a BitTorrent Swarm**

13     20.  Once the initial seeder has created a torrent and uploaded it onto one or more

14  torrent sites, then other peers begin to download and upload the computer file to which the torrent is

15  linked (here, one of the copyright Works) using the BitTorrent Client that the peers installed on their

16  computers.

17     21.  The BitTorrent protocol causes the initial seed's computer to send different

18  pieces of the computer file, here, one of the copyrighted Works, to the peers who are seeking to

19  download the computer file. Once a peer receives a piece of the computer file, it starts transmitting

20  that piece to other peers. In this way, all of the peers and seeders are working together in what is

21  called a "swarm."

22     22.  Here, each infringing peer member participated in a swarm through digital

23  handshakes, the passing along of computer instructions, uploading and downloading, and by other

24  types of transmissions.

25     23.  In this way, and by way of example only, one initial seeder can create a

26  torrent that breaks a movie up into hundreds of piece saved in the form of a computer file, like the

27  Works here, upload the torrent file onto a torrent site, and deliver a different piece of the computer

28

<center>5</center>
<center>VERIFIED PETION TO PERPETUATE TESTIMONY</center>

1  file to each of the peers. The receiving peers then automatically begin delivering the piece they just

2  received to the other peers in the same swarm.

3      24.    Once a peer, here an infringer, has downloaded the full file, the BitTorrent

4  Client reassembles the piece and the peer is able to view the video. Also, once a peer has

5  downloaded a full file, that peer becomes known as "an additional seed" because it continues to

6  distribute the torrent file which, in this case, was one of the copyrighted Works.

7  **F.  Petitioner's Computer Investigators Identified Each Infringer's IP Address as an Infringer of Petitioner's Copyright Works**

8

9      25.    Petitioner retained 6881 Forensics, LLC ("6881") to identify the IP addresses

10  used by the individual or individuals that were misusing the BitTorrent protocol to unlawfully

11  distribute Petitioner's copyrighted Work.

12      26.    6881 used forensic software, "BitTorrent Auditor" to audit a swarm for the

13  presence of infringing transactions.

14      27.    6881 extracted the resulting data gathered from the investigation, reviewed the

15  evidence logs, and isolated the transactions and the IP addresses associated with the copyrighted

16  work listed on Exhibit D hereto.

17      28.    The IP addresses and hit dates contained on Exhibits B accurately reflects

18  what is contained in the evidence logs and show that:

19      (A)    Each infringer copied a piece of one of Petitioners copyrighted work;

20      and

21      (B)    Each infringer was part of a BitTorrent swarm.

22      29.    6881's technician analyzed each BitTorrent "piece" distributed by the IP

23  addresses listed on Exhibit B and verified that each piece consisted of part of the copyrighted work.

24      30.    In order for petitioner to be able to take appropriate action to protect its

25  copyrighted work under 17 U.S.C. §§ 101, *et seq*, petitioner must be authorized issuance of

26  subpoenas *duces tecum* to the ISPs listed on Exhibit A to this petition.

27      31.    No prior application has been made for the relief sought herein.

28

6
VERIFIED PETION TO PERPETUATE TESTIMONY

Exhibit _E_

1    WHEREFORE, petitioner requests that an order be made and entered directing that petitioner

2  may compel the production of documents to the extent of determining the name, current (and

3  permanent) addresses, telephone numbers, e-mail addresses and Media Access Control addresses of

4  the person or persons whose IP addresses are listed in Exhibit B from the ISPs listed on Exhibit A

5  for the purposes of determining the true identity of unknown infringers.   To further support its

6  Petition, Petitioner attaches as Exhibit F its Memorandum of Law in Support of Petitioner's Verified

7  Petition to Perpetuate Testimony.

8

9

10  Respectfully Submitted,

11                                     Ingenuity13 LLC,

12  **DATED: October 28, 2011**

13                            By:        /s/  Brett L. Gibbs, Esq.

14                                 Brett L. Gibbs, Esq. (SBN 251000)
15                                 Steele Hansmeier PLLC.
                                   38 Miller Avenue, #263
16                                 Mill Valley, CA 94941
                                   415-325-5900
17                                 blgibbs@wefightpiracy.com
                                   *Attorney for Plaintiff*

18

19

20

21

22

23

24

25

26

27

28
                                   7
              VERIFIED PETION TO PERPETUATE TESTIMONY

**Exhibit** _E_
**Pg** _1_ **of** _8_

1      **NOTARIZED VERIFICATION**

2

3          I declare under penalty of perjury under the laws of the United States of America that the

4      foregoing information contained in this Verified Petition is, to the best of my knowledge, true and

5      correct.

6

7

8      **DATED: October 28, 2011**                    _____/S/ Alan Cooper_____
                                                    Alan Cooper, Manager of Ingenuity 13 LLC
9

10         I, Brett L. Gibbs, Esq., hereby confirm per Eastern District of California Local Rule 131(f)

11     that counsel for Plaintiff has a signed original notarized version of the above Verified Petition.

12

13     **DATED: October 28, 2011**

14
                                        By:        _____/s/ Brett L. Gibbs, Esq._____
15
                                                   Brett L. Gibbs, Esq. (SBN 251000)
16                                                 Steele Hansmeier PLLC.
                                                   38 Miller Avenue, #263
17                                                 Mill Valley, CA 94941
                                                   415-325-5900
18                                                 blgibbs@wefightpiracy.com
                                                   *Attorney for Plaintiff*
19

20

21

22

23

24

25

26

27

28                                      8
                            VERIFIED PETION TO PERPETUATE TESTIMONY

**Exhibit** E
Exhibits to the Declaration of Morgan E. Pietz
Page 98

.1/29/12   Case 2:12-cv-08333-ODW-JC   Document 42   Filed 04/14/13   Page 99 of 153   Page ID #:524

Skip to Main Content  Logout  My Account  Search Menu  New Civil Search  Refine Search  Back        Location . All MNCIS Sites - Case Search  Help

# REGISTER OF ACTIONS
## CASE NO. 27-CV-12-17079

| | |
|---|---|
| **Guava LLC vs CenturyLink Inc** | Case Type: **Civil Other/Misc.**<br>Date Filed: **08/10/2012**<br>Location: **- Hennepin Civil**<br>Judicial Officer: **Steenson DuFresne, Mary E.** |

### PARTY INFORMATION

| | | |
|---|---|---|
| | | **Lead Attorneys** |
| **Defendant** | **CenturyLink Inc** | **DAVID EARLE CAMAROTTO**<br>*Retained*<br>612-333-3000(W) |
| **Plaintiff** | **Guava LLC** | **MICHAEL KEVIN DUGAS**<br>*Retained*<br>312-880-9160(W) |

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 08/10/2012 | Motion |
| 08/20/2012 | Notice of Case Assignment (Judicial Officer: Steenson DuFresne, Mary E. ) |
| 09/24/2012 | Proposed Document |
| 09/24/2012 | Certificate of Representation |
| 09/24/2012 | Memorandum |
| 09/24/2012 | Affidavit-Other |
| 09/24/2012 | Affidavit of Service |
| 09/27/2012 | Notice of Appearance |
| 09/27/2012 | Notice of Appearance |
| 09/27/2012 | Motion |
| 09/27/2012 | Responsive Motion |
| 09/28/2012 | Order-Other |
| 09/28/2012 | Notice of Appearance |
| 10/01/2012 | Motion Hearing  (9:15 AM) (Judicial Officer Steenson DuFresne, Mary E.)<br>Result: Held |
| 10/01/2012 | Taken Under Advisement (Judicial Officer: Steenson DuFresne, Mary E. ) |
| 10/12/2012 | Correspondence |
| 10/15/2012 | Correspondence |
| 10/29/2012 | Telephone Motion Hearing  (9:30 AM) (Judicial Officer Steenson DuFresne, Mary E.)<br>Result: Held |
| 10/29/2012 | Order Granting Motion (Judicial Officer: Steenson DuFresne, Mary E. ) |

### FINANCIAL INFORMATION

| | | | |
|---|---|---|---|
| | **Defendant CenturyLink Inc**<br>Total Financial Assessment<br>Total Payments and Credits<br>Balance Due as of 11/29/2012 | | 422.00<br>422.00<br>0.00 |
| 09/25/2012 | Transaction Assessment | | 322.00 |
| 09/25/2012 | E-File Electronic Payment  Receipt # EP27C-2012-12417 | CenturyLink Inc | (322.00) |
| 09/25/2012 | Transaction Assessment | | 100.00 |
| 09/25/2012 | E-File Electronic Payment  Receipt # EP27C-2012-12420 | CenturyLink Inc | (100.00) |
| | **Plaintiff Guava LLC**<br>Total Financial Assessment<br>Total Payments and Credits<br>Balance Due as of 11/29/2012 | | 622.00<br>622.00<br>0.00 |
| 08/20/2012 | Transaction Assessment | | 422.00 |
| 08/21/2012 | Mail Payment  Receipt # 1227-2012-19301 | Prenda Law Inc | (422.00) |
| 09/27/2012 | Transaction Assessment | | 100.00 |
| 09/27/2012 | E-File Electronic Payment  Receipt # EP27C-2012-12743 | Guava LLC | (100.00) |
| 09/28/2012 | Transaction Assessment | | 100.00 |
| 09/28/2012 | E-File Electronic Payment  Receipt # EP27C-2012-12816 | Guava LLC | (100.00) |

**Exhibit** F
**Pg** 1 **of** 1

Exhibits to the Declaration of Morgan E. Pietz
Page 99

# EXHIBIT K

## AFFIDAVIT OF ALAN COOPER

I, Alan Cooper, under the penalty of perjury state that the following is true:

1.   My name is Alan Cooper and I live at 2170 Highway 47 North, Isle, MN 56342.

2.   I am 38 years old and was born in Colleen, TX.

3.   I work seasonally as a construction worker.

4.   I was was hired in 2006 as a caretaker for a property owned by John L. Steele at 21255 220th Street, McGrath, MN 56350.

5.   The attached agreement is a true copy of the contract between myself and John Steele for taking care of his property.

6.   While taking care of his property I would regularly submit receipts to Steele for reimbursements of costs in repairing or maintaining the property.  These receipts might include my signature when I paid by a credit card or debit card.

7.   It is my belief that Steele has used my name as the name of a CEO or manager for one or more companies.

8.   Steele did occasionally visit his property and we would talk.

9.   Steele had told me on at least one occasion that if anyone asked about companies that I should call him.

10.   Steele has hold me that he had this plan involving copyright lawsuits.

11.   I am not an owner or officer of any corporation or limited liability company.

12.   I am not the owner or CEO of AF Holdings, LLC.

13.   I am not the owner or a manager of Ingenuity13, LLC.

14.   I did not give Steele permission to use my name or sign documents on my behalf.

15.   I did not know that my name was being used in connection with these companies.

_____                    12-3-12
Alan Cooper                                            Date

Subscribed and sworn before me this 3RD day of December, 2012

_____
Notary Public

> JAYNE MARY BLOOM
> Notary Public
> Minnesota
> My Comm. Expires
> Jan 31, 2015



JAYNE MARY BLOOM
Notary Public
Minnesota
My Comm. Expires
Jan 31, 2015



**THIS RENTAL AGREEMENT** (hereinafter referred to as the "Agreement") made and entered into this 17th day of November, 2006, by and between John Steele (hereinafter referred to as "Landlord") and _Alan Cooper_. THIS IS A MONTH TO MONTH RENTAL AGREEMENT IN WHICH EITHER PARTY MAY CANCEL WITH 30 DAYS NOTICE.

1.  **TERM.** Landlord leases to Tenant and Tenant leases from Landlord the above described Premises together with any and all appurtenances thereto, on a month to month basis.

2.  **RENT.** In exchange for paying monthly rent, the Renter agrees to work on the Landlord's property on projects designated by Landlord. Renter agrees to complete all work to the best of his ability. Landlord will determine the projects, but in no event will the time requirement be less than 15 hours a month. Satisfaction of the Renters work to satisfy the Rent requirement of this lease will be at the sole discretion of the Landlord.

3.  **Blank**

4.  **USE OF PREMISES.** The Premises shall be used and occupied by Tenant and Tenant's immediate family, consisting of one daughter, exclusively, as a private single family dwelling, and no part of the Premises shall be used at any time during the term of this Agreement by Tenant for the purpose of carrying on any business, profession, or trade of any kind, or for any purpose other than as a private single family dwelling. Tenant shall not allow any other person, other than Tenant's immediate family or transient relatives and friends who are guests of Tenant, to use or occupy the Premises without first obtaining Landlord's written consent to such use. Tenant shall comply with any and all laws, ordinances, rules and orders of any and all governmental or quasi-governmental authorities affecting the cleanliness, use, occupancy and preservation of the Premises.

5.  **CONDITION OF PREMISES.** Tenant stipulates, represents and warrants that Tenant has examined the Premises, and that they are at the time of this Lease in good order, repair, and in a safe, clean and tenantable condition.

6.  **ASSIGNMENT AND SUB-LETTING.** Tenant shall not assign this Agreement, or sub-let or grant any license to use the Premises or any part thereof without the prior written consent of Landlord. A consent by Landlord to one such assignment, sub-letting or license shall not be deemed to be a consent to any subsequent assignment, sub-letting or license. An assignment, sub-letting or license without the prior written consent of Landlord or an assignment or sub-letting by operation of law shall be absolutely null and void and shall, at Landlord's option, terminate this Agreement.

7.  **ALTERATIONS AND IMPROVEMENTS.** Tenant shall make no alterations to the buildings or improvements on the Premises or construct any building or make any other improvements on the Premises without the prior consent of Landlord. Any and all alterations, changes, and/or improvements built, constructed or placed on the Premises by Tenant shall, unless otherwise provided by written agreement between Landlord and Tenant, be and become the property of Landlord and remain on the Premises at the expiration or earlier termination of this Agreement.

8.  **blank**

9.  **HAZARDOUS MATERIALS.** Tenant shall not keep on the Premises any item of a dangerous, flammable or explosive character that might unreasonably increase the danger of fire or explosion on the Premises or that might be considered hazardous or extra hazardous by any responsible insurance company.

Exhibits to the Declaration of Morgan E. Pietz
Page 103

10. **UTILITIES**.  Tenant shall be responsible for arranging for and paying for all utility services required on the Premises for his own use.

11. **MAINTENANCE AND REPAIR; RULES**.  Tenant will, at its sole expense, keep and maintain the Premises and appurtenances in good and sanitary condition and repair during the term of this Agreement and any renewal thereof.  Without limiting the generality of the foregoing, Tenant shall:

   (a)   Not obstruct the driveways, sidewalks, courts, entry ways, stairs and/or halls, which shall be used for the purposes of ingress and egress only;

   (b)   Keep all windows, glass, window coverings, doors, locks and hardware in good, clean order and repair;

   (c)   Not obstruct or cover the windows or doors;

   (d)   Not leave windows or doors in an open position during any inclement weather;

   (e)   Not hang any laundry, clothing, sheets, etc. from any window, rail, porch or balcony nor air or dry any of same within any yard area or space;

   (f)   Not cause or permit any locks or hooks to be placed upon any door or window without the prior written consent of Landlord;

   (g)   Keep all air conditioning filters clean and free from dirt;

   (h)   Keep all lavatories, sinks, toilets, and all other water and plumbing apparatus in good order and repair and shall use same only for the purposes for which they were constructed.  Tenant shall not allow any sweepings, rubbish, sand, rags, ashes or other substances to be thrown or deposited therein.  Any damage to any such apparatus and the cost of clearing stopped plumbing resulting from misuse shall be borne by Tenant;

   (i)   And Tenant's family and guests shall at all times maintain order in the Premises and at all places on the Premises, and shall not make or permit any loud or improper noises, or otherwise disturb other residents;

   (j)   Keep all radios, television sets, stereos, phonographs, etc., turned down to a level of sound that does not annoy or interfere with other residents;

   (k)   Deposit all trash, garbage, rubbish or refuse in the locations provided therefore and shall not allow any trash, garbage, rubbish or refuse to be deposited or permitted to stand on the exterior of any building or within the common elements;

(l)   Abide by and be bound by any and all rules and regulations affecting the
Premises or the common area appurtenant thereto which may be
adopted or promulgated by the Condominium or Homeowners'
Association having control over them.

12. **DAMAGE TO PREMISES**.  In the event the Premises are destroyed or rendered wholly
uninhabitable by fire, storm, earthquake, or other casualty not caused by the negligence
of Tenant, this Agreement shall terminate from such time except for the purpose of
enforcing rights that may have then accrued hereunder.  The rental provided for herein
shall then be accounted for by and between Landlord and Tenant up to the time of such
injury or destruction of the Premises, Tenant paying rentals up to such date and Landlord
refunding rentals collected beyond such date.  Should a portion of the Premises thereby
be rendered uninhabitable, the Landlord shall have the option of either repairing such
injured or damaged portion or terminating this Lease.  In the event that Landlord
exercises its right to repair such uninhabitable portion, the rental shall abate in the
proportion that the injured parts bears to the whole Premises, and such part so injured
shall be restored by Landlord as speedily as practicable, after which the full rent shall
recommence and the Agreement continue according to its terms.

13. **INSPECTION OF PREMISES**.  Landlord and Landlord's agents shall have the right at all
reasonable times during the term of this Agreement and any renewal thereof to enter the
Premises for the purpose of inspecting the Premises and all buildings and improvements
thereon.  And for the purposes of making any repairs, additions or alterations as may be
deemed appropriate by Landlord for the preservation of the Premises or the building.
Landlord and its agents shall further have the right to exhibit the Premises and to display
the usual "for sale", "for rent" or "vacancy" signs on the Premises at any time within forty-
five (45) days before the expiration of this Lease.   The right of entry shall likewise exist
for the purpose of removing placards, signs, fixtures, alterations or additions, that do not
conform to this Agreement or to any restrictions, rules or regulations affecting the
Premises.

14. **SUBORDINATION OF LEASE**.  This Agreement and Tenant's interest hereunder are
and shall be subordinate, junior and inferior to any and all mortgages, liens or
encumbrances now or hereafter placed on the Premises by Landlord, all advances made
under any such mortgages, liens or encumbrances (including, but not limited to, future
advances), the interest payable on such mortgages, liens or encumbrances and any and
all renewals, extensions or modifications of such mortgages, liens or encumbrances.

16. **SURRENDER OF PREMISES**.  Upon the expiration of the term hereof, Tenant shall
surrender the Premises in as good a state and condition as they were at the
commencement of this  Agreement, reasonable use and wear and tear thereof and
damages by the elements excepted.

17. **ANIMALS**.  Tenant shall obtain permission from Landlord for all be entitled to keep any
animals on the premises.

18. **QUIET ENJOYMENT**.  Tenant, upon payment of all of the sums referred to herein as
being payable by Tenant and Tenant's performance of all Tenant's agreements contained
herein and Tenant's observance of all rules and regulations, shall and may peacefully
and quietly have, hold and enjoy said Premises for the term hereof.

19. **INDEMNIFICATION**.  Landlord shall not be liable for any damage or injury of or to the
Tenant, Tenant's family, guests, invitees, agents or employees or to any person entering
the Premises or the building of which the Premises are a part or to goods or equipment,

or in the structure or equipment of the structure of which the Premises are a part, and Tenant hereby agrees to indemnify, defend and hold Landlord harmless from any and all claims or assertions of every kind and nature.

20. **DEFAULT**. If Tenant fails to comply with any of the material provisions of this Agreement, other than the covenant to pay rent, or of any present rules and regulations or any that may be hereafter prescribed by Landlord, or materially fails to comply with any duties imposed on Tenant by statute, within seven (7) days after delivery of written notice by Landlord specifying the non-compliance and indicating the intention of Landlord to terminate the Lease by reason thereof, Landlord may terminate this Agreement. If Tenant fails to pay rent when due and the default continues for seven (7) days thereafter, Landlord may, at Landlord's option, declare the entire balance of rent payable hereunder to be immediately due and payable and may exercise any and all rights and remedies available to Landlord at law or in equity or may immediately terminate this Agreement.

21. **LATE CHARGE**. In the event that any payment required to be paid by Tenant hereunder is not made within three (3) days of when due, Tenant shall pay to Landlord, in addition to such payment or other charges due hereunder, a "late fee" in the amount of twenty five dollars.

22. **ABANDONMENT**. If at any time during the term of this Agreement Tenant abandons the Premises or any part thereof, Landlord may, at Landlord's option, obtain possession of the Premises in the manner provided by law, and without becoming liable to Tenant for damages or for any payment of any kind whatever. Landlord may, at Landlord's discretion, as agent for Tenant, relet the Premises, or any part thereof, for the whole or any part thereof, for the whole or any part of the then unexpired term, and may receive and collect all rent payable by virtue of such reletting, and, at Landlord's option, hold Tenant liable for any difference between the rent that would have been payable under this Agreement during the balance of the unexpired term, if this Agreement had continued in force, and the net rent for such period realized by Landlord by means of such reletting. If Landlord's right of reentry is exercised following abandonment of the Premises by Tenant, then Landlord shall consider any personal property belonging to Tenant and left on the Premises to also have been abandoned, in which case Landlord may dispose of all such personal property in any manner Landlord shall deem proper and Landlord is hereby relieved of all liability for doing so.

23. **ATTORNEYS' FEES**. Should it become necessary for Landlord to employ an attorney to enforce any of the conditions or covenants hereof, including the collection of rentals or gaining possession of the Premises, Tenant agrees to pay all expenses so incurred, including a reasonable attorneys' fee.

24. **RECORDING OF AGREEMENT**. Tenant shall not record this Agreement on the Public Records of any public office. In the event that Tenant shall record this Agreement, this Agreement shall, at Landlord's option, terminate immediately and Landlord shall be entitled to all rights and remedies that it has at law or in equity.

25. **GOVERNING LAW**. This Agreement shall be governed, construed and interpreted by, through and under the Laws of the State of Minnesota.

26. **SEVERABILITY**. If any provision of this Agreement or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Agreement nor the application of the provision to other persons, entities or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

27. **BINDING EFFECT**.  The covenants, obligations and conditions herein contained shall be binding on and inure to the benefit of the heirs, legal representatives, and assigns of the parties hereto.

28. **DESCRIPTIVE HEADINGS**.  The descriptive headings used herein are for convenience of reference only and they are not intended to have any effect whatsoever in determining the rights or obligations of the Landlord or Tenant.

29. **CONSTRUCTION**.  The pronouns used herein shall include, where appropriate, either gender or both, singular and plural.

30. **NON-WAIVER**.  No indulgence, waiver, election or non-election by Landlord under this Agreement shall affect Tenant's duties and liabilities hereunder.

31. **MODIFICATION**.  The parties hereby agree that this document contains the entire agreement between the parties and this Agreement shall not be modified, changed, altered or amended in any way except through a written amendment signed by all of the parties hereto.

32. **NOTICE**.  Any notice required or permitted under this Lease or under state law shall be deemed sufficiently given or served if sent by United States certified mail, return receipt requested, addressed as follows:

If to Landlord to: John Steele 21067 220th St McGrath, MN 56350

If to Tenant to:

Landlord and Tenant shall each have the right from time to time to change the place notice is to be given under this paragraph by written notice thereof to the other party.

SIGNED THIS 17TH OF NOVEMBER, 2006

Landlord: _____

John Steele, 21067 220th St. McGrath MN 56350.

Tenant: _____

ALAN Agrees to pay $500 on FEB 1 AND $500 MAR 1 FOR SECURITY DEPOSIT

# EXHIBIT L

EXHIBIT L
Exhibits to the Declaration of Morgan E. Pietz
Page 108

Case 2:12-cv-08333-ODW-JC   Document 40-2   Filed 01/14/13   Page 109 of 153   Page ID
#:534
Case 2:11-mc-00084-JAM-DAD   Document 1   Filed 10/28/11   Page 1 of 8

1   Brett L. Gibbs, Esq. (SBN 251000)
    Steele Hansmeier PLLC.
2   38 Miller Avenue, #263
    Mill Valley, CA 94941
3   415-325-5900
    blgibbs@wefightpiracy.com
4
    *Attorney for Petitioner*
5

6

7                    IN THE UNITED STATES DISTRICT COURT FOR THE

8                        EASTERN DISTRICT OF CALIFORNIA

9

10  In the Matter Of a Petition By        )
                                          )
11  INGENUITY13 LLC,                       )        **No.**
                                          )
12                                         )        Judge:
                                          )
13                                         )        **VERIFIED PETITION TO**
                                          )        **PERPETUATE TESTIMONY**
14                                         )
    _____)
15

16          1.      Petitioner Ingenuity13 LLC by and through its undersigned attorney, hereby

17  petitions this Court for an order pursuant to Federal Rule of Civil Procedure 27 authorizing the

18  issuance of subpoenas *duces tecum* to the Internet Service Providers ("ISPs") listed on Exhibit A to

19  this petition.

20          2.      Petitioner is limited liability company organized and existing under the laws

21  of the Federation of Saint Kitts and Nevis. Petitioner produces adult entertainment content and this

22  content is being unlawfully reproduced and distributed over the Internet via the BitTorrent file

23  transfer protocol. An individual or individuals wrongfully reproduced and distributed Petitioner's

24  copyrighted works via the BitTorrent protocol in violation of Petitioner's exclusive rights under

25  United States Copyright Act, 17 U.S.C. §§ 101, *et seq*. Petitioner anticipates bringing a civil action

26  against the person or persons engaging in such unlawful activity. This action would be cognizable in

27  a United States court as United States courts have exclusive jurisdiction over copyright actions.

28  Without knowing the identity or identities of the anonymous infringers, Petitioner has no means to

1   name and serve the individual or individuals in an action with summons and complaint. The purpose

2   of this petition is to ascertain these identity or identities.

3       3.    Petitioner seeks the name, address, telephone number, e-mail address and

4   Media Control Access number of each account holder associated with the Internet Protocol ("IP")

5   addresses listed on Exhibit B to this petition. Each of the IP addresses was identified by Petitioner's

6   agents as being associated with infringing activity on the corresponding dates and times listed on

7   Exhibit B. The reasons to perpetuate the testimony are multiple. First, without this information

8   Petitioner has no means to name and serve a complaint on the infringing parties. Second, on

9   information and belief, this information is destroyed in the regular course of business and will be

10  unavailable to Petitioner after it is destroyed. An example of an ISP's data retention policy is shown

11  as Exhibit C. Finally, under the Cable Communications Policy Act, 47 U.S.C. § 551(c)(2)(B), a court

12  order is necessary to discover an account holder's identity.

13      4.    The names and addresses of the person or persons whom Petitioner expects to

14  be adverse parties are unknown to Petitioner. The individual or individuals responsible for infringing

15  Petitioner's works are known to Petitioner only by an IP address—a number that is assigned to

16  devices, such as computers, that are connected to the Internet. Petitioner used geolocation to trace

17  the IP addresses of the expected adverse party or parties to a point of origin within the State of

18  California.

19      5.    The name and address of each responding party is set forth on Exhibit A to

20  this petition. Petitioner is seeking the name, address, telephone number, e-mail address and Media

21  Control Access number of each account holder associated with the Internet Protocol ("IP") addresses

22  listed on Exhibit B to this petition.

23              **FACTUAL ALLEGATIONS**

24      6.    Petitioner is the owner of the copyright for the motion picture set forth in

25  Exhibit D to this petition.

26      7.    As set forth below, Petitioner has actionable claims for direct and contributory

27  copyright infringement and a claim for civil conspiracy against the individual or individuals who

28

2

VERIFIED PETION TO PERPETUATE TESTIMONY

Exhibits to the Declaration of Morgan E. Pietz
Page 110

Case 2:12-cv-08333-ODW-JC   Document 40-2   Filed 01/14/13   Page 111 of 153   Page ID
#:536
Case 2:11-mc-00084-JAM-DAD   Document 1   Filed 10/28/11   Page 3 of 8

1   engaged in infringing activities via the IP addresses set forth on Exhibit B hereto based on the

2   parties' use of the BitTorrent protocol to illegally reproduce and distribute Petitioner's work(s).

3   **A.  The Unknown Infringers used BitTorrent to Infringe Petitioner's Copyrights**

4          8.     BitTorrent is a modern file sharing method ("protocol") used for distributing

5   data via the Internet. BitTorrent protocol is a decentralized method of distributing data. Instead of

6   relying on a central server to distribute data directly to individual users, the BitTorrent protocol

7   allows individual users to distribute data among themselves by exchanging pieces of the file with

8   each other to eventually obtain a whole copy of the file. When using the BitTorrent protocol, every

9   user simultaneously receives information from and transfers information to one another.

10         9.     The BitTorrent protocol is an extremely popular method for transferring data.

11   A group of individuals transferring data among one another (the "swarm") will commonly include

12   peers from many, if not every, state in the United States and several countries around the world. And

13   every peer in the swarm participates in distributing the file to dozens, hundreds, or even thousands of

14   other peers.

15         10.    The BitTorrent protocol is also an extremely popular method for unlawfully

16   copying, reproducing, and distributing files in violation of the copyright laws of the United States. A

17   broad range of copyrighted albums, audiovisual files, photographs, software, and other forms of

18   media are available for illegal reproduction and distribution via the BitTorrent protocol.

19         11.    Efforts at combating BitTorrent-based copyright infringement have been

20   stymied by BitTorrent's decentralized nature. Because there are no central servers to enjoin from

21   unlawfully distributing copyrighted content, there is no primary target on which to focus anti-piracy

22   efforts. Indeed, the same decentralization that makes the BitTorrent protocol an extremely robust and

23   efficient means of transferring enormous quantities of data also acts to insulate it from anti-piracy

24   measures.

25         12.    The infringing parties in this action were all observed using the BitTorrent

26   protocol to unlawfully reproduce and distribute Plaintiff's copyrighted work by exchanging pieces

27   with one another either directly or via a chain of data distribution.

28

<div align="center">3</div>

VERIFIED PETION TO PERPETUATE TESTIMONY

Case 2:12-cv-08333-ODW-JC   Document 40-2   Filed 01/14/13   Page 112 of 153   Page ID
#:537
Case 2:11-mc-00084-JAM-DAD   Document 1   Filed 10/28/11   Page 4 of 8

**B.  Each infringer installed a BitTorrent Client on his or her computer**

13.    The individual or individuals associated with the infringing activity installed a BitTorrent Client onto his or her computer(s). Normal commercial computers do not come pre-loaded with BitTorrent software. Each infringer must have separately installed on their respective computers special software that allows peer-to-peer sharing of files by way of the Internet.  The infringers use software known as BitTorrent clients. Among the most popular BitTorrent clients are Vuze (formerly Azureus), μTorrent, Transmission and BitTorrent 7, although many others are used as well.

14.    Once installed on a computer, the BitTorrent "Client" serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

**C.  The Initial Seed, Torrent and Tracker**

15.    A BitTorrent user who wants to upload a new file, known as an "Initial Seeder," starts by creating a "torrent" descriptor file using the client he or she installed onto his or her computer. The Client takes the target computer file, the "initial seed," in this case, one of the copyrighted Works, and divides it into identically sized groups of bits known as "pieces." The Client then gives each one of the computer file's pieces, in this case, pieces of one of the copyrighted works, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

16.    When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test whether the piece is free of errors. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and ensure that the piece is authentic and uncorrupted.

17.    Torrents files also have an "announce" section, which specifies the Uniform Resource Locator ("URL") of a "tracker" and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by the Client on peer computers to verify the integrity of the data they receive. The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides

VERIFIED PETION TO PERPETUATE TESTIMONY

Exhibits to the Declaration of Morgan E. Pietz
Page 112

1   peers with the URL address(es). The tracker computer or computers direct a peer user's computer to

2   another peer user's computer that have particular pieces of the file, in this case, one of the copyright

3   Works on them, and facilitates the exchange of data among the computers. Depending on the

4   BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer

5   can act as a tracker (decentralized tracking).

6   **D.  Torrent Sites**

7   　　　　18.   "Torrent Sites" are websites that index torrent files that are currently being

8   made available for copying and distribution by the people using the BitTorrent protocol. There are

9   numerous torrent websites, such as www.torrentz.eu or thepiratebay.org.

10   　　　　19.   Upon information and belief, each infringer went to a torrent site to upload

11   and download one of the Petitioner's copyrighted Works.

12   **E.  Uploading and Downloading a Work Through a BitTorrent Swarm**

13   　　　　20.   Once the initial seeder has created a torrent and uploaded it onto one or more

14   torrent sites, then other peers begin to download and upload the computer file to which the torrent is

15   linked (here, one of the copyright Works) using the BitTorrent Client that the peers installed on their

16   computers.

17   　　　　21.   The BitTorrent protocol causes the initial seed's computer to send different

18   pieces of the computer file, here, one of the copyrighted Works, to the peers who are seeking to

19   download the computer file. Once a peer receives a piece of the computer file, it starts transmitting

20   that piece to other peers. In this way, all of the peers and seeders are working together in what is

21   called a "swarm."

22   　　　　22.   Here, each infringing peer member participated in a swarm through digital

23   handshakes, the passing along of computer instructions, uploading and downloading, and by other

24   types of transmissions.

25   　　　　23.   In this way, and by way of example only, one initial seeder can create a

26   torrent that breaks a movie up into hundreds of piece saved in the form of a computer file, like the

27   Works here, upload the torrent file onto a torrent site, and deliver a different piece of the computer

28

Case 2:12-cv-08333-ODW-JC   Document 40-2   Filed 01/14/13   Page 114 of 153   Page ID
#:539
Case 2:11-mc-00084-JAM-DAD   Document 1   Filed 10/28/11   Page 6 of 8

1   file to each of the peers. The receiving peers then automatically begin delivering the piece they just

2   received to the other peers in the same swarm.

3           24.     Once a peer, here an infringer, has downloaded the full file, the BitTorrent

4   Client reassembles the piece and the peer is able to view the video. Also, once a peer has

5   downloaded a full file, that peer becomes known as "an additional seed" because it continues to

6   distribute the torrent file which, in this case, was one of the copyrighted Works.

7   **F.    Petitioner's Computer Investigators Identified Each Infringer's IP Address as an**
   **Infringer of Petitioner's Copyright Works**

8

9           25.     Petitioner retained 6881 Forensics, LLC ("6881") to identify the IP addresses

10   used by the individual or individuals that were misusing the BitTorrent protocol to unlawfully

11   distribute Petitioner's copyrighted Work.

12           26.     6881 used forensic software, "BitTorrent Auditor" to audit a swarm for the

13   presence of infringing transactions.

14           27.     6881 extracted the resulting data gathered from the investigation, reviewed the

15   evidence logs, and isolated the transactions and the IP addresses associated with the copyrighted

16   work listed on Exhibit D hereto.

17           28.     The IP addresses and hit dates contained on Exhibits B accurately reflects

18   what is contained in the evidence logs and show that:

19                   (A)     Each infringer copied a piece of one of Petitioners copyrighted work;

20                           and

21                   (B)     Each infringer was part of a BitTorrent swarm.

22           29.     6881's technician analyzed each BitTorrent "piece" distributed by the IP

23   addresses listed on Exhibit B and verified that each piece consisted of part of the copyrighted work.

24           30.     In order for petitioner to be able to take appropriate action to protect its

25   copyrighted work under 17 U.S.C. §§ 101, *et seq*, petitioner must be authorized issuance of

26   subpoenas *duces tecum* to the ISPs listed on Exhibit A to this petition.

27           31.     No prior application has been made for the relief sought herein.

28
                                                6
                                VERIFIED PETION TO PERPETUATE TESTIMONY

Case 2:12-cv-08333-ODW-JC   Document 40-2   Filed 01/14/13   Page 115 of 153   Page ID
#:540
Case 2:11-mc-00084-JAM-DAD   Document 1   Filed 10/28/11   Page 7 of 8

1    WHEREFORE, petitioner requests that an order be made and entered directing that petitioner

2    may compel the production of documents to the extent of determining the name, current (and

3    permanent) addresses, telephone numbers, e-mail addresses and Media Access Control addresses of

4    the person or persons whose IP addresses are listed in Exhibit B from the ISPs listed on Exhibit A

5    for the purposes of determining the true identity of unknown infringers.   To further support its

6    Petition, Petitioner attaches as Exhibit F its Memorandum of Law in Support of Petitioner's Verified

7    Petition to Perpetuate Testimony.

8

9

10    Respectfully Submitted,

11                                          Ingenuity13 LLC,

12    **DATED: October 28, 2011**

13                                          By: _____ /s/  Brett L. Gibbs, Esq. _____

14                                          Brett L. Gibbs, Esq. (SBN 251000)
15                                          Steele Hansmeier PLLC.
                                            38 Miller Avenue, #263
16                                          Mill Valley, CA 94941
                                            415-325-5900
17                                          blgibbs@wefightpiracy.com
                                            *Attorney for Plaintiff*
18

19

20

21

22

23

24

25

26

27

28

---

<div align="center">7</div>

VERIFIED PETION TO PERPETUATE TESTIMONY

1

**NOTARIZED VERIFICATION**

2

3  I declare under penalty of perjury under the laws of the United States of America that the

4 foregoing information contained in this Verified Petition is, to the best of my knowledge, true and

5 correct.

6

7

8 **DATED: October 28, 2011**     _____/S/_Alan Cooper_____
               Alan Cooper, Manager of Ingenuity 13 LLC

9

10  I, Brett L. Gibbs, Esq., hereby confirm per Eastern District of California Local Rule 131(f)

11 that counsel for Plaintiff has a signed original notarized version of the above Verified Petition.

12

13 **DATED: October 28, 2011**

14

15        By:  _____/s/  Brett L. Gibbs, Esq._____

16         Brett L. Gibbs, Esq. (SBN 251000)
         Steele Hansmeier PLLC.

17         38 Miller Avenue, #263
         Mill Valley, CA 94941

18         415-325-5900
         blgibbs@wefightpiracy.com

19         *Attorney for Plaintiff*

20

21

22

23

24

25

26

27

28

8

VERIFIED PETION TO PERPETUATE TESTIMONY

# EXHIBIT M

Case 2:12-cv-08333-ODW-JC Document 40-2 Filed 01/14/13 Page 118 of 153 Page ID
#:543



**Morgan Pietz <morganpietz@gmail.com>**

---

## Activity in Case 2:12-cv-08333-DMG-PJW Ingenuity13 LLC v. John Doe Notice of Related Case(s)

---

**Morgan Pietz** <morganpietz@gmail.com>                                   Thu, Dec 13, 2012 at 1:12 PM
To: Brett Gibbs <blgibbs@wefightpiracy.com>

Brett,

I called Prenda's main number earlier today and asked for you.  After being put on hold, I was transferred to
your extension.  The line rang a few times, then it sounded like the line was picked up, but then the line
immediately went dead, so I did not have an opportunity to leave you a voicemail.

Please give me a call -- I would like to follow up with you regarding not only the issues below, but also some
administrative matters relating to your cases in the Northern District of California.

Best regards,
Morgan

On Fri, Dec 7, 2012 at 5:30 PM, Morgan Pietz <morganpietz@gmail.com> wrote:
> Brett,
>
> For the record, I didnt yell or even raise my voice much less swear at you.  I assume you hung up because
> you are trying to dodge these troubling question.  Please quit with the theatrics.
>
> Sent from my iPhone
>
> On Dec 7, 2012, at 5:17 PM, Brett Gibbs <blgibbs@wefightpiracy.com> wrote:
>
>> Mr. Morgan:
>>
>> Mr. Morgan, I did not hang up on you. I take offense to your purposefully twisted versions of things.  At
>> the end of our conversation, I said that "it was nice speaking with, I had other things to do and good bye"
>> [paraphrasing].  That is not "hanging up" on someone, that is called ending a phone conversation (with
>> respect, I might add).  Whether you heard my saying this over your yelling at me is not my fault.  You
>> were swearing at me, and being extremely hostile to me on phone, and I frankly had other things of
>> import to accomplish on my schedule -- the conversation was ten minutes long and the abuse I was
>> subjected to was uncalled for.  A piece of advice: this is not how you "meet and confer" on an issue. It
>> simply was not professional.
>>
>> The issue is entirely irrelevant to the instant matter.  I cannot stress this any further -- it is irrelevant.  You
>> are basing relevancy on a letter filed in Minnesota that was ignored by that court.  Even that court in
>> Minnesota recognized the letter for what it truly was -- a conspiracy theory letter with no factual basis.  I
>> don't know how else to explain this to you.  As you understand, it is hard (if not impossible) to prove a
>> negative -- especially to an individual like yourself that has no trust in things aside from his version of
>> things.  Your use of the word "assume" is very apt in this situation.

As I told you over the phone, when you asked "Is there another Alan Cooper?", I said, "I am sure there are hundreds of Alan Coopers in this world."  If your question had been framed more pointedly, and not so vague, maybe I could have provided you with a specific answer.

I don't wish to discuss this matter further with you because of the verbal abuse I experienced in our first phone call.  You know, as well as I, that there is a certain courtesy-code displayed between even opposing attorneys -- your yelling and use of bad language directed towards me violates those rules.  I would remind you of the following:

"As officers of the court with responsibilities to the
administration of justice, attorneys have an obligation to be
professional with clients, other parties and counsel, the
courts and the public. This obligation includes civility,
professional integrity, personal dignity, candor, diligence,
respect, courtesy, and cooperation, all of which are essential
to the fair administration of justice and conflict resolution."
[California Attorney Guidelines of Civility and Professionalism]

Please be ever mindful of this if we speak in the future.

Regards,

Brett Gibbs

On Fri, Dec 7, 2012 at 11:40 AM, Morgan E. Pietz <mpietz@pietzlawfirm.com> wrote:
  Brett,

  This is to confirm a few things, in writing, about our phone call of earlier today.

  Prior to hanging up on me, you confirmed that you would not be answering either of my questions below about (1) your client contact at Ingenuity 13 (not AF holdings, which I clarified today) or (2) a copy of Alan' Coopers verification in the Ingenuity 13 case in E.D. Cal., which you purported to keep a copy of, under penalty of perjury.  You stated that you viewed these issues as irrelevant to the instant case, and would not answer them absent a more formal demand.  I explained that I disagreed, because as far as I am concerned, the Alan Cooper issue goes straight to the heart of whether your client has proper standing, among other, more troubling issues.

  Also, to repeat my additional request: if any facts in the Alan Cooper letter filed in Minnesota are incorrect, then please let me know which fact and why it is incorrect.  However, since you have so far refused to provide any specifics, I can only continue to assume that everything in that letter is correct.

  I also note that you again refused to say whether there is another Alan Cooper (other than the gentleman in Minnesota who filed the letter through counsel) who is/was the principal of AF Holdings of Ingenuity 13.

  Please contact me should you change your mind and decide that you do wish to discuss this matter further.

  Best regards,
  Morgan

On Fri, Dec 7, 2012 at 11:13 AM, Morgan E. Pietz <mpietz@pietzlawfirm.com> wrote:
Re-forward.


---------- Forwarded message ----------
From: **Morgan E. Pietz** <mpietz@pietzlawfirm.com>
Date: Mon, Dec 3, 2012 at 7:23 PM
Subject: Re: Activity in Case 2:12-cv-08333-DMG-PJW Ingenuity13 LLC v. John Doe Notice of
Related Case(s)
To: Brett Gibbs <blgibbs@wefightpiracy.com>


Brett,

If I am supposedly twisting your words (although you do not say how, or clarify whether you are now
changing your mind), how about a couple of straight answers then, so nothing gets lost in
translation:

(1) Will you tell me the name of your supposed client contact at AF Holdings with whom you
supposedly communicated with last week?  I do not want any details of the conversation, just a
name.

(2) Will you produce the original signature to the verification page, identified below, that supposedly
contains "Alan Cooper's" handwritten signature?

And if the answer to these questions is still no, which is what you said earlier today, please explain
why.

Best regards,
Morgan


On Mon, Dec 3, 2012 at 7:09 PM, Brett Gibbs <blgibbs@wefightpiracy.com> wrote:
Mr. Pietz:

Assume whatever you would like to assume -- that seems to be what you have done throughout
my cases with you.

As for the former, you have grossly misstated the contents of the "very brief conversation from
just prior to the telephonic conference."  I think this twisting of my words is intentional -- and I do
not like playing childish and manipulative games.  So, I will not be drawn into this baseless banter,
wasting everyone's time and money.

If want to have an honest adult conversation, I will participate.  If you want to have a meet and
confer on these issues, I will be available to do that next week.  Let me know when you are
available.

Regards,

Brett Gibbs

On Mon, Dec 3, 2012 at 6:17 PM, Morgan E. Pietz <mpietz@pietzlawfirm.com> wrote:
> Brett,
>
> I wanted to follow up on our very brief conversation from just prior to the telephonic conference
> with Judge Walsh today regarding the two issues raised in my email below.
>
> This email is to confirm that before Magistrate Judge Walsh joined us on the line, you stated
> that you would not be providing me with either the name of your client contact, or a copy of the
> original signature version of Alan Cooper's verification in the E.D. Call Petition matter, which
> you stated, under penalty of perjury, that you have a copy of in your possession.
>
> In an effort to begin a meet and confer dialogue on the matter, can you please elaborate on the
> reason(s) that you are refusing to produce either of these things?
>
> Frankly, I think your refusal to answer the simple question of whether there is another Alan
> Cooper (i.e., not Mr. Steele's former caretaker in Minnesota) who is the principal of AF Holdings
> and Ingenuity 13 speaks volumes.  Until you provide some kind of answer that makes sense,
> under penalty of perjury, I am going to assume the worst case scenario here and litigate
> accordingly.
>
> If you would like to discuss any of this, please feel free to give me a call.
>
> Best regards,
> Morgan
>
>
> On Mon, Dec 3, 2012 at 12:58 PM, Morgan E. Pietz <mpietz@pietzlawfirm.com> wrote:
>> Brett,
>>
>> Last week you told me that you lacked authority to grant me an extension request and would
>> have to "check with [your] client" on whether you could grant a modest extension.  Then, a
>> few days later, you purported that you had answer on this issue (although you never did
>> bother to tell me what your client's response was).
>>
>> In light of all of the serious questions raised in the Notice of Related Cases (filing receipt
>> below) regarding who really owns AF Holdings and Ingenuity 13, I'd like you please clarify
>> something for me: when you said you had to talk to your client last week, with whom did you
>> speak?
>>
>> Also, with reference to Exhibit E (a copy of your verified petition in an ED Cal Ingenuty 13
>> case) to Appendix 1 (of the Notice of Related Cases), please consider this my first, informal
>> request for a copy of the original signature of Alan Cooper.  The verification page, which
>> recites that it was "Notarized" on the heading, states under Alan Cooper's "/s/" signature that:
>>
>>        "I, Brett L. Gibbs, Esq., hereby confirm per Eastern District of California Local Rule
>>        131(f) that counsel for Plaintiff has a signed original notarized version of the above
>>        Verified Petition."

Please produce a copy of that original signature for my inspection.

Feel free to give me a call if you would like to discuss any of this prior to our 3:00 call with Magistrate Walsh today.

Best regards,
Morgan


---------- Forwarded message ----------
From: <cacd_ecfmail@cacd.uscourts.gov>
Date: Mon, Dec 3, 2012 at 12:41 PM
Subject: Activity in Case 2:12-cv-08333-DMG-PJW Ingenuity13 LLC v. John Doe Notice of Related Case(s)
To: ecfnef@cacd.uscourts.gov


**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA

## Notice of Electronic Filing

The following transaction was entered by Pietz, Morgan on 12/3/2012 at 12:41 PM PST and filed on 12/3/2012

| | |
|---|---|
| **Case Name:** | Ingenuity13 LLC v. John Doe |
| **Case Number:** | 2:12-cv-08333-DMG-PJW |
| **Filer:** | John Doe |
| **Document Number:** | 15 |

**Docket Text:**
**NOTICE of Related Case(s) filed by Putative John Doe John Doe. Related Case(s): 2:12-cv-05709-ODW-JC; 2:12-cv-06635-GHK-RZ; 2:12-cv-06660-GAF-AGR; 2:12-cv-07385-DSF-FFM; 2:12-cv-07386-DMG-JEM; 2:12-cv-08322-DMG-PJW; 2:12-cv-08333-DMG-PJW (Attachments: # (1) Appendix 1 - Letter Filed by Counsel for Alan Cooper in District of Minnesota, # (2) Appendix 2 - Transcript of Prenda Hearing in Middle District of Florida, # (3) Appendix 3 - Table of Related Ingenuity 13 and AF Holdings Cases in Central District of California)(Pietz, Morgan)**

**2:12-cv-08333-DMG-PJW Notice has been electronically mailed to:**

Brett Langdon Gibbs &nbsp &nbsp blgibbs@wefightpiracy.com, docket@wefightpiracy.com

Morgan E Pietz &nbsp &nbsp mpietz@pietzlawfirm.com, lrudolph@pietzlawfirm.com

**2:12-cv-08333-DMG-PJW Notice has been delivered by First Class U. S. Mail or by other means <u>BY THE FILER</u> to :**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**_Notice of Related Cases v3.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=12/3/2012] [FileNumber=14739678-0
] [8fa7b4078f2edcb17f48906046f07118f65a17d9fd4cc4bb72a832a819fbb9d764c
53cad2cb7709c7326429417cf1da8198fa258763750d699bdcfb8302432f5]]
**Document description:**Appendix 1 - Letter Filed by Counsel for Alan Cooper in District of Minnesota
**Original filename:**1 - Alan Cooper - ECF Letter.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=12/3/2012] [FileNumber=14739678-1
] [b67f59fd3ea3af034988085bb0050c0b7bec0b51f4a2a1b9e1a86d884bee70902f8
b185448643eaaf0c168ea094d9bb795cfe18ea0a76694db229c8d4f0ed93b]]
**Document description:**Appendix 2 - Transcript of Prenda Hearing in Middle District of Florida
**Original filename:**2 - Nguyen Hearing Transcript - Tampa.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=12/3/2012] [FileNumber=14739678-2
] [800d30a30660cee9e1e1cd9e2085b2203c5f1560dc35331306948d42d5db2bacbb1
4c9c0de2ba4111a44f943ff62244c47022c110fb78c02cb7bc79c5b6db298]]
**Document description:**Appendix 3 - Table of Related Ingenuity 13 and AF Holdings Cases in Central District of California
**Original filename:**3 - Table of Cases.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=12/3/2012] [FileNumber=14739678-3
] [5ae2ecc869dce997f693775d8ff426a8a3c48b190e25e753128678117c874da161b
d2e4141ae7449e578ee22e9cd67e8a02439f2880ed9596a082b3653152487]]

--

Morgan E. Pietz
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Ph: (310) 424-5557
Fx: (310) 546-5301
www.pietzlawfirm.com

--

Morgan E. Pietz
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Ph: (310) 424-5557
Fx: (310) 546-5301
www.pietzlawfirm.com


--

Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel to Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

NOTICE: THIS EMAIL IS INTENDED TO BE PART OF A SETTLEMENT NEGOTIATION AND IS
NOT ADMISSIBLE UNDER FRE RULE 408.

NOTICE:
This communication is covered by the Electronic Communications Privacy Act, found at 18 U.S.C. 2510 et. seq.
and is intended to remain confidential and is subject to applicable attorney/client and/or work product
privileges.  If you are not the intended recipient of this message, or if this message has been addressed to you in
error, please immediately alert the sender by reply e-mail and then delete this message and all attachments.  Do
not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient,
do not disclose the contents or take any action in reliance upon the information contained in this
communication or any attachments.

Circular 230 Disclosure: Pursuant to recently-enacted U.S. Treasury Department regulations, we are now
required to advise you that, unless otherwise expressly indicated, any federal tax advice contained in this
communication, including attachments and enclosures, is not intended or written to be used, and may not be
used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting,
marketing or recommending to another party any tax-related matters addressed herein.


--

Morgan E. Pietz
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com

Ph: (310) 424-5557
Fx: (310) 546-5301
www.pietzlawfirm.com


--

Morgan E. Pietz
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Ph: (310) 424-5557
Fx: (310) 546-5301
www.pietzlawfirm.com


--

Morgan E. Pietz
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Ph: (310) 424-5557
Fx: (310) 546-5301
www.pietzlawfirm.com


--
Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel to Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

NOTICE: THIS EMAIL IS INTENDED TO BE PART OF A SETTLEMENT NEGOTIATION AND IS NOT
ADMISSIBLE UNDER FRE RULE 408.

NOTICE:
This communication is covered by the Electronic Communications Privacy Act, found at 18 U.S.C. 2510 et. seq. and is
intended to remain confidential and is subject to applicable attorney/client and/or work product privileges.  If you are
not the intended recipient of this message, or if this message has been addressed to you in error, please immediately
alert the sender by reply e-mail and then delete this message and all attachments.  Do not deliver, distribute or copy this
message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any
action in reliance upon the information contained in this communication or any attachments.

Circular 230 Disclosure: Pursuant to recently-enacted U.S. Treasury Department regulations, we are now required to

advise you that, unless otherwise expressly indicated, any federal tax advice contained in this communication, including attachments and enclosures, is not intended or written to be used, and may not be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

--

# EXHIBIT N

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


SUNLUST PICTURES, LLC., CASE NO: 8:12-CV-1685-T-35MAP

      Plaintiff,

VS.                                Tampa, Florida
                                   10:00 a.m.
TUAN NGUYEN,                       November 27, 2011

      Defendant.
_____/


TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

Counsel for Plaintiff:      JONATHAN TORRES, ESQUIRE
(Telephonically)            1417 N. Semoran Boulevard
                            Suite 205
                            Orlando, FL  32807
                            (407)953-5818
                            jonathantorresllc@gmail.com


Counsel for Defendant:      GRAHAM W. SYFERT, ESQUIRE
                            1529 Margaret Street
                            Unit 2
                            Jacksonville, FL  32204
                            (904)383-7448
                            graham@syfert.com


Court Reporter:             CLAUDIA SPANGLER-FRY, RPR, CM
                            Official Court Reporter
                            801 North Florida Avenue
                            7th Floor
                            Tampa, FL  33602
                            (813)301-5575
                            cookiefry@aol.com


CLAUDIA SPANGLER-FRY, OFFICIAL U. S. COURT REPORTER

Page 2

1                   P R O C E E D I N G S

2                     November 27, 2012

3                     * * * * * *

4            THE COURT:  Mr. Torres, what sort of noise are you

5    making on the line?

6            MR. TORRES:  I apologize, I'm in the Courthouse.

7            THE COURT:  All right.

8            MR. TORRES:  In Orange County.

9            THE COURT:  Please call the case.

10           THE CLERK:  In the matter of Sunlust Pictures, LLC --

11           MR. TORRES:  Is that better?

12           THE COURT:  That's better, yes.

13           THE CLERK:  -- versus Tuan Nguyen, Case Number

14   8:12-CV-1685.

15           Counsel and parties, please state your appearances,

16   starting with parties for the Plaintiff.

17           MR. LUTZ:  Mark Lutz, appearing on behalf of Sunlust

18   Pictures.

19           THE COURT:  And for the defense?

20           MR. SYFERT:  Your Honor, Graham Syfert here on behalf

21   of Tuan Nguyen, who is also present in Court today.

22           THE COURT:  And on the phone?

23           MR. TORRES:  Attorney Jonathan Torres, Florida counsel

24   for Plaintiff.

25           THE COURT:  And Mr. Lutz, where's your coat and tie

1    this morning?  Did you know you were coming to Federal Court?

2            MR. LUTZ:  I did.

3            THE COURT:  Where's your coat and tie?

4            MR. LUTZ:  I apologize, I did not wear one.

5            THE COURT:  Are you an attorney barred in the State of

6    Florida?

7            MR. LUTZ:  I am not, no, I'm a corporate

8    representative.

9            THE COURT:  And who is your counsel?

10           MR. LUTZ:  I'm sorry?

11           THE COURT:  Who is your lawyer?

12           MR. LUTZ:  Our counsel is on the phone here.

13           THE COURT:  Where is your other lawyer; he hasn't been

14   permitted to withdraw?

15           MR. LUTZ:  He wasn't able to appear today.

16           THE COURT:  Mr. Torres, are you in the case or out of

17   the case?

18           MR. TORRES:  No, I'm still in the case, Your Honor.  I

19   presented a motion for telephonic appearance due to an

20   emergency hearing conflict in Orange County and I was allowed

21   to appear by phone and by order that was sent to me yesterday.

22           THE COURT:  Well, I'm a little confused.  There was a

23   lawyer who moved to withdraw, and there was another lawyer who

24   moved to appear, then he moved to withdraw, so who is on first,

25   I guess?

Page 4

1          MR. TORRES:  Right now, Your Honor, I'm still on the

2    case.  And there is still discussions with my client which I

3    have to confer with them, but right for now, I'm the counsel on

4    the case, Your Honor.

5          THE COURT:  And Mr. Torres, how did you come to be the

6    lawyer in this case?

7          MR. TORRES:  Your Honor, I was contacted by the

8    client, Prenda Law, in order to --

9          THE COURT:  The client and Prenda Law or Prenda Law?

10         MR. TORRES:  Prenda Law, Your Honor,

11         THE COURT:  And what is their relation to you?

12         MR. TORRES:  Just co-counsel arrangement, Your Honor.

13         THE COURT:  And what is that arrangement?

14         MR. TORRES:  For me to appear for any local hearings,

15   Your Honor.

16         THE COURT:  Well, I got a letter from someone from the

17   Prenda Law Group saying they were not representing any party in

18   this case and were not involved in the case and had no

19   authority to speak on anyone's behalf in this case, so is

20   Prenda Law principal counsel in the case or not?

21         MR. TORRES:  No, Your Honor.

22         THE COURT:  So what is their relationship again then

23   to you as counsel in this case?

24         MR. TORRES:  Well, Your Honor, I was --

25         THE COURT:  I'm sorry, I'm sorry, hold on a second.

Page 5

1          Ms. Vizza, would you please swear this witness, on the

2     phone, yes.

3          Mr. Torres, if you would please raise your right hand.

4          Ms. Vizza.

5          MR. TORRES:  Yes.

6     Thereupon,

7                    JONATHAN TORRES,

8     having first been duly sworn to tell the truth, the whole

9     truth, and nothing but the truth, was examined and testified as

10    follows:

11         MR. TORRES:  Yes.

12         THE COURT:  All right, sir.  You're under oath, you

13    have to give truthful answers to the questions that are asked

14    or face penalties of perjury for false answers.

15         Do you understand that?

16         MR. TORRES:  I understand.

17         THE COURT:  All right.

18         So, starting over now, Prenda is the referring law

19    firm to your firm or the originating firm or principal counsel?

20         MR. TORRES:  My understanding, Your Honor, is that

21    Prenda Law was the counsel for Plaintiffs and is still counsel

22    for Plaintiffs.

23         I was contacted by Brett Gibbs in order to be local

24    counsel to appear on behalf of Prenda Law.

25         THE COURT:  So, Prenda Law purports to be the

Page 6

1    principal law firm in this case?

2            MR. TORRES:  Correct.

3            THE COURT:  Did Prenda Law file a notice of appearance

4    as principal law firm in this case?

5            MR. TORRES:  My understanding, Your Honor, is that

6    they were, at one point, counsel in the case.  I'm not sure if

7    they actually have a current notice of appearance or not, I'm

8    not sure.

9            THE COURT:  And what is your financial arrangement

10   with Prenda Law?

11           MR. TORRES:  Well, I'm working on a contingency basis,

12   Your Honor.

13           THE COURT:  And what percentage is your cut of the

14   contingency?

15           MR. TORRES:  My understanding is that it's 75 percent,

16   my understanding, of whatever the fees are generated, my

17   understanding, at least.

18           THE COURT:  Yours will be 75 percent and Prenda's will

19   be 25 percent?

20           MR. TORRES:  That is correct, Your Honor.

21           THE COURT:  Who is principally responsible for the

22   case; Prenda or you?

23           MR. TORRES:  Well, my understanding is that I was

24   recently contacted in regards to this case.

25           My understanding is that I was going to be primarily

Page 7

1    responsible and be the local counsel for this case, but the

2    reason why I presented a motion to withdraw is because just

3    recently I was contacted by defense counsel and was advised of

4    certain issues that were going on in the case.

5              THE COURT:  When were you retained?

6              MR. TORRES:  Well, I was contacted, I believe, Your

7    Honor, it was about 15 days ago.

8              THE COURT:  And who were you contacted by?

9              MR. TORRES:  I was contacted by Mr. Brett Gibbs from

10   Prenda Law.

11             THE COURT:  And who did he tell you was current

12   counsel in the case?

13             MR. TORRES:  Well, he told me that Prenda Law through

14   another attorney locally was the current counsel in the case,

15   and that's why, you know, they were substituting me for counsel

16   in this case, and eight other cases -- actually seven other

17   cases that purportedly Prenda Law was the counsel on.

18             THE COURT:  Give me one second, I need to look up

19   something in the docket.

20             (Brief pause.)

21             And did Mr. Wasinger call you?

22             MR. TORRES:  No, Your Honor, Mr. Wasinger apparently

23   presented a motion to withdraw or substitution of counsel at

24   that point.

25             THE COURT:  And then the Court ordered that he was not

1    granted his leave and directed that he was to appear at this

2    hearing and that his motion for withdrawal would be taken up at

3    this hearing.  And did you see that on the docket when you

4    filed your notice of appearance?

5              MR. TORRES:  No, Your Honor, I did not.

6              THE COURT:  Did you look at the docket when you filed

7    your notice of appearance?

8              MR. TORRES:  I presented the notice of appearance and

9    did not see that Mr. Wasinger was still counsel.

10             THE COURT:  Did you look at the docket is what I asked

11   you?

12             MR. TORRES:  I looked at -- I did look at the docket,

13   per se, I didn't --

14             THE COURT:  The answer is no, you did not read the

15   docket on the case you were appearing in?

16             MR. TORRES:  Correct, Your Honor.

17             THE COURT:  And then shortly after you file your

18   notice of appearance, you moved to withdraw?

19             MR. TORRES:  That is correct, Your Honor.

20             THE COURT:  And why is that?

21             MR. TORRES:  Well, Your Honor, I'll be perfectly

22   honest with you.  Defense counsel contacted me shortly

23   thereafter of being counsel of record, instructed me to call

24   him immediately.

25             And so I -- actually I did, and left him a message,

1   then he returned my phone call.  And there was discussions

2   between Defendant and -- Defendant's counsel and myself in

3   regards to this case.

4          The only thing that -- the first thing that I heard

5   from defense counsel was, you know, rather than see how this

6   case might be settled or anything to that effect, was the fact

7   that there were -- there had been some bar complaints or

8   something to that effect associated with this case or something

9   to that effect, and based on that statement from defense

10  counsel, I decided to present my motion to withdraw and have no

11  further involvement with any of the cases.

12          THE COURT:  Did you have any contact with

13  Mr. Wasinger?

14          MR. TORRES:  No, I did not, Your Honor.

15          THE COURT:  Do you have a written contract with Prenda

16  Law Group?

17          MR. TORRES:  No, I do not, Your Honor.

18          THE COURT:  Have you filed a notice of appearance in

19  all of the other cases that Mr. Wasinger has withdrawn from?

20          MR. TORRES:  Yes, Your Honor.

21          THE COURT:  Have you moved to withdraw in all those

22  cases as well?

23          MR. TORRES:  Yes, I did, Your Honor.

24          THE COURT:  Have those motions been granted?

25          MR. TORRES:  No, Your Honor, based on local rule,

Page 10

1   after conferring with counsel, but that's something I'll

2   remedy, Your Honor.

3           THE COURT:  I got a letter on the 18th from a

4   Mr. Duffy at Prenda Law, Inc.

5           MR. TORRES:  Okay.

6           THE COURT:  And he advises that he was recently made

7   aware that the Court ordered a principal of Prenda Law to

8   appear in person at the motion to dismiss hearing scheduled for

9   today's date.

10          As the sole principal of Prenda Law, Inc., that would

11  be me.  For the record, I was never served with notice of the

12  Court's Order or otherwise made aware of it until very recently

13  via a phone call from a fellow attorney.

14          As an initial matter, I must respectfully inform the

15  Court I am located in Chicago and my attendance would require

16  air travel and he has had surgery on his eyes and this and

17  that.

18          Then he says, I also respectfully question how my

19  appearance could benefit the Court, particularly since I am not

20  representing anyone, in italics, in this case and have no

21  authority to speak on anyone's behalf.

22          It would certainly -- it would clearly be improper for

23  me to make any statement on a pending matter in a jurisdiction

24  in which I am not licensed and on behalf of a client I do not

25  represent.  In light of the foregoing, I pray that the Court

Page 11

1   will excuse my attendance at this hearing.

2           Now, is Prenda Law, Inc. different than the entity

3   that you are dealing with?

4           MR. TORRES:  Your Honor, my only understanding is that

5   Prenda Law is the one that has been in contact with me.  That's

6   the only thing I know.

7           To be honest, Your Honor, I responded to an ad for a

8   local appearance, that's all I did, Your Honor.  And other than

9   that, I was brought into these cases, and that's pretty much

10  it.

11          THE COURT:  Who is Prenda Law, Inc.?  Is that the

12  person you're local counsel for?

13          MR. TORRES:  That's technically my understanding of

14  the situation or the arrangement, if you will.

15          THE COURT:  Who is Mr. Gibbs in relation to Mr. Duffy?

16          MR. TORRES:  Well, Mr. Gibbs apparently is a principal

17  at Prenda Law, to my understanding.

18          THE COURT:  Who is Mr. Duffy?

19          MR. TORRES:  Mr. Duffy, I have no contact with

20  Mr. Duffy.  I've never had any contact with Mr. Duffy.

21          THE COURT:  Mr. Lutz, who is the individual who you

22  just spoke to in the Courtroom with you?

23          MR. LUTZ:  Sorry?

24          THE COURT:  Who is that behind you?

25          MR. STEELE:  Your Honor, my name is John Steele.

Page 12

1           THE COURT:  Who are you?

2           MR. STEELE:  I'm an attorney, but not involved in this

3    case.

4           THE COURT:  You're an attorney with what law firm?

5           MR. STEELE:  I'm not an attorney with any law firm

6    right now, but I have worked with Mr. Duffy in the past and I

7    am certainly familiar with this litigation just because I've

8    been involved in many different cases like this in the past.

9           THE COURT:  But not this case?

10          MR. STEELE:  Correct.

11          THE COURT:  So, Mr. Torres, you don't know who your

12   general counsel is other than Mr. Gibbs, and you don't have a

13   written agreement and you just answered a random ad and put

14   your name on a docket in Federal Court?

15          MR. TORRES:  Well, Your Honor, I was going to make a

16   local appearance for someone that, you know, needed a local

17   counsel, and so I did.

18          THE COURT:  Well, you're still a lawyer.

19          MR. TORRES:  I understand.

20          THE COURT:  And Mr. Lutz, did Mr. Wasinger speak with

21   you about his decision not to appear at this hearing?

22          MR. LUTZ:  They did not, no.

23          THE COURT:  Do you know who Mr. Duffy is?

24          MR. LUTZ:  I believe he is a principal of Prenda Law.

25          THE COURT:  And who is Mr. Gibbs?

Page 13

1          MR. LUTZ:  Mr. Gibbs is also affiliated with Prenda

2   Law, I don't know his official title.

3          THE COURT:  Is he an attorney?

4          MR. LUTZ:  I believe so, in the State of California.

5          THE COURT:  But not in the State of Illinois?

6          MR. LUTZ:  I can't say for sure.

7          THE COURT:  Do you know if he is a partner in the

8   Prenda Law Group?

9          MR. LUTZ:  I do not know his official title, no.

10          THE COURT:  Who is your counsel, who is your lawyer?

11          MR. LUTZ:  Prenda Law is one of them, they represent

12   Sunlust in several cases, not in this case, particularly.

13          THE COURT:  What does that mean; particularly?

14          MR. LUTZ:  Well, it's not in this matter, they

15   represent us in various different cases.

16          THE COURT:  So they were not retained to be your

17   lawyer and they did not refer this matter to Mr. Torres?

18          MR. LUTZ:  I don't know what their affiliation with

19   Mr. Torres is, officially.

20          THE COURT:  Yes, sir.

21          MR. SYFERT:  Your Honor, if I may interject, Mr. Lutz

22   used to work for Mr. Steele down in Miami.  Mr. Lutz was

23   actually a paralegal and debt collector for Prenda Law when it

24   was a multi-state, multi-jurisdictional law firm between here

25   and Illinois.  That's Mr. Lutz.

Page 14

1          So if he's -- he should have better information about

2     the structure of Prenda Law than this and probably has very

3     little structure about the -- or very little information about

4     the actual structure of Sunlust Pictures, Your Honor.

5          THE COURT:  Will you swear this witness, Ms. Vizza,

6     Mr. Lutz.

7     Thereupon,

8                         JOHN LUTZ,

9     having first been duly sworn to tell the truth, the whole

10    truth, and nothing but the truth, was examined and testified as

11    follows:

12         MR. LUTZ:  Yes.

13         THE COURT:  Mr. Lutz, you're under oath, you have to

14    give truthful answers or you face penalties of perjury.

15         Do you understand that?

16         MR. LUTZ:  Yes.

17         THE COURT:  What is your position with Sunlust?

18         MR. LUTZ:  I'm a representative of them.

19         THE COURT:  What does that mean?

20         MR. LUTZ:  Corporate representative.

21         THE COURT:  What does that mean?

22         MR. LUTZ:  They asked me to appear on various matters

23    throughout the country.

24         THE COURT:  Are you an officer of the company?

25         MR. LUTZ:  I'm not, no.

Page 15

1          THE COURT:  Are you authorized to bind the company to

2    any legal contracts?

3          MR. LUTZ:  I am not.

4          THE COURT:  Are you salaried?

5          MR. LUTZ:  No, 1099.

6          THE COURT:  So you are a 1099 contracted entity and

7    you just go around and sit in a Court and represent yourself to

8    be the corporate representative of the company?

9          MR. LUTZ:  Yes.

10         THE COURT:  Mr. Torres, did you know this was

11   Mr. Lutz's position, a paid corporate representative?

12         MR. TORRES:  No, Your Honor, I did not.

13         THE COURT:  Who is the president of Sunlust?

14         MR. LUTZ:  I'm unaware.

15         THE COURT:  Who is the vice president?

16         MR. LUTZ:  I'm unaware

17         THE COURT:  Who is the secretary?

18         MR. LUTZ:  I have no idea.

19         THE COURT:  Who owns Sunlust?

20         MR. LUTZ:  I do not know.

21         THE COURT:  Who signs your checks?

22         MR. LUTZ:  I believe somebody in the accounting

23   department.

24         THE COURT:  What is their name?

25         MR. LUTZ:  To be honest with you, I can't read the

Page 16

1    signature.

2              THE COURT:  Where is the accounting department

3    located?

4              MR. LUTZ:  I'm sorry?

5              THE COURT:  Where is the accounting department

6    located?

7              MR. LUTZ:  I've received checks from California.

8              THE COURT:  How much are you paid monthly to be the

9    corporate representative?

10             MR. LUTZ:  Again, it depends on my appearances, the

11   number of appearances that I do.

12             THE COURT:  How much were you paid last month?

13             MR. LUTZ:  Approximately $1,000.

14             THE COURT:  And do you have any other job than to

15   around go to Courts representing yourself to be the corporate

16   representative of Sunlust?

17             MR. LUTZ:  For Sunlust, no.

18             THE COURT:  Do you have any other job for the Prenda

19   Law holdings to do anything other than go around the country

20   and represent yourself to be their corporate representative?

21             MR. LUTZ:  I do not work for Prenda Law.

22             THE COURT:  Do you serve in this capacity for any

23   other entity than Sunlust?

24             MR. LUTZ:  Yes.

25             THE COURT:  What companies?

Page 17

1                MR. LUTZ:  Hard Drive Productions would be one and

2     Guava, LLC.

3                THE COURT:  Do they have similar lawsuits around the

4     country?

5                MR. LUTZ:  They do.

6                THE COURT:  Do you receive a percentage of the

7     recovery of any of these lawsuits?

8                MR. LUTZ:  I do not.

9                THE COURT:  Do you know Mr. Duffy?

10               MR. LUTZ:  Not personally, no.

11               THE COURT:  Have you talked to him before?

12               MR. LUTZ:  I have not, no.

13               THE COURT:  Is he your lawyer?

14               MR. LUTZ:  He is not my attorney

15               THE COURT:  Is he the lawyer for Prenda Law -- or

16     Sunlust?

17               MR. LUTZ:  In various matters, yes.

18               THE COURT:  How many matters do you represent Sunlust

19     in, in the country?

20               MR. LUTZ:  Approximately a dozen.

21               THE COURT:  So half of them are located here in the

22     Middle District and there are others elsewhere?

23               MR. LUTZ:  I believe we have three here in the Middle

24     District.

25               THE COURT:  Mr. Torres, I thought you entered an

Page 18

1    appearance on five of them here in the Middle District.

2            MR. TORRES:  But not for that particular company.

3            THE COURT:  What was the other company?

4            MR. TORRES:  I believe it's FTG Videos.  I don't have

5    access to my computer at this time, Your Honor, because I'm in

6    the Court in Orange County, but I believe one of them is FTG

7    Videos.

8            THE COURT:  F as in Frank or S as in Sam?

9            MR. TORRES:  F as in Frank, Your Honor.

10           THE COURT:  Mr. Steele, who is the principal of

11   Sunlust?

12           MR. STEELE:  I'm sorry, you're asking me, ma'am?

13           THE COURT:  Yes, sir.

14           MR. STEELE:  I wouldn't know.

15           THE COURT:  You don't know who owns Sunlust?

16           MR. STEELE:  That's correct.

17           THE COURT:  You don't know who the president is?

18           MR. STEELE:  I -- the only person that I know that's

19   involved with Sunlust is Sunny Leone.

20           THE COURT:  Sunny Leone?

21           MR. STEELE:  Is one of the people involved with

22   Sunlust.  That's the only person I've ever --

23           THE COURT:  What is the name?

24           MR. STEELE:  Sunny Leone.

25           THE COURT:  Spell it.

Page 19

1            MR. STEELE:  S-O-N-N-Y, Leone --

2            THE COURT:  L-E-O-N?

3            MR. STEELE:  I believe there's an E at the end of

4    that, I'm not certain.

5            THE COURT:  Where's is he located.

6            MR. STEELE:  Well, I believe it's a she, and I believe

7    that the last time I heard, she was in India filming a major

8    motion picture with some studio down there, but I don't keep up

9    with that, I don't represent Sunlust or anybody anymore.  I no

10   longer actively practice law.

11           THE COURT:  You're not practicing law?

12           MR. STEELE:  Correct.  I do appear occasionally at

13   hearings on an ad hoc basis, but I do not have any current

14   clients.

15           THE COURT:  You still have a bar license in the State

16   of Florida?

17           MR. STEELE:  No, I'm licensed only in the State of

18   Illinois.

19           I want to make very clear to this Court I'm not

20   purporting in any way to be an attorney licensed in the State

21   of Florida.

22           THE COURT:  Have you ever been licensed in the State

23   of Florida?

24           MR. STEELE:  No.

25           THE COURT:  All right.

Page 20

1          Thank you, sir.

2          So, Mr. Lutz, you don't know who you serve for, you're

3    just sitting here in the Courtroom purporting to be a corporate

4    representative?

5          MR. LUTZ:  I was contacted by Sunny Leone several

6    months ago.

7          THE COURT:  And told what?

8          MR. LUTZ:  She asked me to -- when they needed for me

9    to appear for various reasons, if I would do it on a

10   representative basis.

11         THE COURT:  You can sit away from the table, you're

12   not a corporate representative of anybody if you don't have any

13   information about the corporation.

14         You're not an officer or principal of the corporation.

15   The Court will exclude you as a proper corporate entity for

16   this Defendant.

17         Mr. Torres, your motion to withdraw is granted, you

18   are removed from this case.  Any other lawyer who purports to

19   come in to represent this Defendant would need to file a motion

20   for leave to do so.

21         The case is dismissed for failure to appear at this

22   hearing, for failure to present a lawful agent, for attempted

23   fraud on the Court by offering up a person who has no authority

24   to act on behalf of the corporation as its corporate

25   representative, and the Court will hear, by motion, a motion

Page 21

1   for sanctions and fees against this Sunlust entity and everyone

2   affiliated with it, including a motion against Mr. Wasinger for

3   his purposeful failure to appear at this hearing.

4          And a motion will also be heard on Mr. Duffy for his

5   lack of candor in relation to his connection with this matter

6   based upon the representation of Mr. Torres that he was

7   contacted by the Prenda Law Group or Prenda Law, Inc. for the

8   purpose of being retained as local counsel in this case and

9   that was not presented to the Court in this purported

10  correspondence.  The case is dismissed.

11         I intend to advise the other Judges in the Courthouse

12  of the nature of this matter and may refer this matter to the

13  Florida Bar for further proceedings.

14         Is there anything further from the Plaintiff -- I'm

15  sorry -- from the defense?

16         MR. SYFERT:  No, Your Honor.

17         Well, yes, Your Honor, we have one other case that was

18  transferred to Orlando, same issues exist as in this case.

19         THE COURT:  Who is the Judge in the case.

20         MR. SYFERT:  The First Time -- it's First Time Videos

21  versus Oppold, O-P-P-O-L-D.

22         It was originally filed in Tampa then transferred to

23  Orlando.  Spaulding I believe is the Judge, Your Honor.

24         THE COURT:  Judge Spaulding is a Magistrate Judge.  Do

25  you know the case number?

Page 22

1           MR. SYFERT:  I don't have that with me.  I have the

2    old case number from the --

3           THE COURT:  Tampa case?

4           MR. SYFERT:  I have -- yeah, the Tampa case number was

5    8:12-CV-1685-MSS-MAP.

6           THE COURT:  All right.  I'll take a look at it.

7           Mr. Torres, a word to the wise, sir.  When you

8    represent an entity, no matter how limited your role is, you're

9    placing your bar number at issue and you're placing your name

10   and your goodwill at issue before a Court.

11          And saying you're local counsel and you only intended

12   to file on their behalf and pick up a small fee for that

13   limited role does not absolve you from responsibility for

14   making sure that whatever you sign on to, whatever you enter an

15   appearance on behalf of is a legitimate entity with legitimate

16   concerns, because you run a strong risk that you could be

17   sanctioned or lose your bar license behind conduct of the type

18   that you're witnessing here.

19          I hope that this is a lesson to you about how to

20   proceed going forward with characters such as the ones that are

21   presented here.

22          MR. TORRES:  Yes, Your Honor, I totally understand and

23   thank you.

24          THE COURT:  Thank you.

25          MR. TORRES:  Am I excused, Your Honor?

Page 23

1          THE COURT:  You are excused.

2          This matter is dismissed.

3          MR. SYFERT:  Thank you, Your Honor.

4          THE COURT:  Thank you.

5          (Thereupon, the proceedings concluded.)

6                    * * * * * * * *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 24

1                              CERTIFICATE

2

3    STATE OF FLORIDA        )
                                  SS
4    COUNTY OF HILLSBOROUGH   )

5

6          I, CLAUDIA SPANGLER-FRY, Official Court Reporter for

7    the United States District Court, Middle District, Tampa,

8    Division,

9          DO HEREBY CERTIFY, that I was authorized to and did,

10   through use of Computer Aided Transcription, report in

11   shorthand the proceedings and evidence in the above-styled

12   cause, as stated in the caption hereto, and that the foregoing

13   pages numbered 1 to 24 inclusive, constitute a true and correct

14   transcription of my shorthand report of said proceedings and

15   evidence.

16          IN WITNESS WHEREOF, I have hereunto set my hand

17   in the City of Tampa, County of Hillsborough, State of Florida,

18   this 29th day of November, 2012.

19

20          CLAUDIA SPANGLER-FRY, Official Court Reporter

21

22

23                  BY: /s/ CLAUDIA SPANGLER-FRY

24

25

# EXHIBIT O



## LLC FILE DETAIL REPORT

| | | | | | |
|---|---|---|---|---|---|
| **Entity Name** | ANTI-PIRACY LAW GROUP LLC | **File Number** | 04147731 |
| **Status** | ACTIVE | **On** | 11/08/2012 |
| **Entity Type** | LLC | **Type of LLC** | Domestic |
| **File Date** | 11/08/2012 | **Jurisdiction** | IL |
| **Agent Name** | JEFFREY LIVINGSTON | **Agent Change Date** | 11/08/2012 |
| **Agent Street Address** | 161 N CLARK ST STE 3200 | **Principal Office** | 161 N. CLARK ST. SUITE 3200 CHICAGO, IL 606010000 |
| **Agent City** | CHICAGO | **Management Type** | MBR   View |
| **Agent Zip** | 60601 | **Duration** | PERPETUAL |
| **Annual Report Filing Date** | 00/00/0000 | **For Year** | |
| **Series Name** | NOT AUTHORIZED TO ESTABLISH SERIES | | |

Return to the Search Screen

Purchase Certificate of Good Standing
(One Certificate per Transaction)

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

Exhibits to the Declaration of Morgan E. Pietz
Page 153