Morgan E. Pietz (SBN 260629)
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:   (310) 424-5557
Facsimile :   (310) 546-5301

Attorney for Putative John Doe in 2:12-cv-08333-ODW-JC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INGENUITY 13, LLC, a Limited Liability Company Organized Under the Laws of the Federation of Saint Kitts and Nevis,<br><br>        Plaintiff,<br><br>    v.<br><br>JOHN DOE,<br><br>        Defendant. | Case Number: 2:12-cv-08333-ODW-JC<br><br>Case Assigned to:<br>District Judge Otis D Wright, II<br><br>Discovery Referred to:<br>Magistrate Judge Jacqueline Chooljian<br><br>**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF** |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................... 2

I. INTRODUCTION AND SUMMARY ...................................................... 4

II. FACTUAL AND PROCEDURAL BACKGROUND ................................ 6

   (a) Procedural History of Prenda's Related AF Holdings and Ingenuity 13 Cases in the Central District of California .................................................. 6

   (b) Factual Background on Prenda's Various Straw Men and Sham Entities ........ 11

      (1) Alan Cooper: John Steele's Former Caretaker; Victim of Identity Theft ...... 11

      (2) Mark Lutz: John Steele's Former Paralegal; Fraudulent Corporate Representative For Hire ..................................................................... 12

      (3) "Salt Marsh" a/k/a Anthony Saltmarsh: John Steele's Sister's Roommate (Boyfriend?) at Arizona Address Linked to Alan Cooper and Other Prenda Shell Entities; New Prenda Straw Man ...................................... 13

      (4) The Fraudulent Allen Mooney a/k/a "Alan Moay" a/k/a "Alan Mony" Verification in an Illinois Prenda Case .............................................. 15

      (5) Collusion Between Prenda and the "Defendant" in Minnesota Case ...... 17

      (6) Recent Rebranding of Prenda Law and Mr. Gibbs' New Career as "In House Counsel" for Various Prenda Shell Entities ............................ 17

      (7) Paul Duffy, John Steele and Paul Hansemier – Other Attorneys Who Share Responsibility with Mr. Gibbs for Overseeing Prenda's Fraudulent Litigation Scheme ........................................................ 18

III. ARGUMENT .................................................................................. 21

   (a) All of Prenda's Cases Before this Court are "Sham" Lawsuits Exempted from the Protections of the *Noerr-Pennington* Doctrine ............................. 21

      (1) The "Sham" Lawsuit Exceptions to the *Noerr-Pennington* Doctrine ...... 21

      (2) Intentional Use of Forged Copyright Assignment Agreements in the AF Holdings Cases Deprive These Cases of Legitimacy ......................... 23

      (3) The Ingenuity 13 Cases—Indeed, all of Prenda's Cases—Qualify as "Sham" Litigation Because The Cases Are Brought for an Improper Purpose, Without Regard to the Merits ........................................... 24

   (b) Given the Circumstances of These Cases, Prenda Routinely Fails to Comply with its Rule 11(b)(3) Obligations ....................................................... 25

      (1) Mr. Gibbs' Past Statements on the Rule 11 Implications of These Cases ...... 25

      (2) "Inquiry Reasonable Under the Circumstances" ............................... 26

      (3) Other Examples of Prenda's Shoddy "Investigation" ......................... 27

      (4) The "Snapshot" Theory of Copyright Infringement ........................... 27

   (c) There is No Excuse for Violating the Court's Discovery Order ................ 28

IV. CURSORY REBUTTAL TO MR. GIBBS' OSC RESPONSE ................. 28

V. RELIEF REQUESTED ....................................................................... 29

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

(a) Substantial Monetary Sanction Against Prenda Law, Inc. in an Amount Sufficient to Have a Significant Deterrent Effect on a Repeat Bad Actor ........ 29

(b) Award of Attorneys Fees and Costs, as Compensatory Sanction, Payable by Mr. Brett Gibbs ................................................................................................. 30

(c) Striking of the Complaint With Prejudice, and Specific Factual Findings ........ 32

(d) Such Other Relief as the Court Deems Just and Proper .................................... 32

VI. CONCLUSION ........................................................................................................ 33

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

"Roman law criminalized *calumnia* (from which we get the word 'calumny'), which meant the support of fraudulent, groundless, or frivolous litigation for profit."[1]

# I. INTRODUCTION AND SUMMARY

Over the last two and a half years, attorneys associated with Prenda Law, Inc.[2] have filed at least 348 lawsuits, against over 16,000 John Doe defendants.  *See* Declaration of Morgan E. Pietz re: Prenda Law, Inc., ¶¶ 19–20 (ECF No. 40-1, filed 1/14/2013) ("Dec'l. re: Prenda Law"). According to the self-proclaimed pioneer of Prenda's "copyright troll" business model, attorney John L. Steele, in so doing, Prenda has made "a few million dollars."[3] At best, these lawsuits are all questionable—for all of the reasons previously explained by this Court.

What seems increasingly clear though is that Prenda, and its "of counsel" here, Mr. Brett Gibbs, have crossed the Rubicon in these cases, by resorting to fraud, which includes identity theft, sham offshore shell companies, and forged documents.

The AF Holdings cases are all founded upon forgeries.  In each AF Holdings case before this Court, attached as "Exhibit A" to the complaint is a forged copyright assignment agreement supposedly signed by "Alan Cooper."  This fact transforms each of these cases into fraudulent, sham litigation, and possibly renders Prenda a criminal conspiracy.  Further, as detailed, *infra*, "Alan Cooper" is not the only bogus "client" name Prenda has used in its court filings; it appears there are other straw

---

[1] Anthony J. Seebok, *The Inauthentic Claim*, 64 VAND. L. REV. 61 at p. 75 (2011); *citing* Max Radin, *Maintenance by Champerty*, 24 CAL. L. REV. 48, 59-60 (1936). Vestiges of this sentiment survive in California, in the form of the seldom-enforced criminal prohibition on "barratry".  Cal. Pen. Code §§ 158–159.

[2] Prenda Law, Inc. was formerly known as Steele Hansemier, PLLC (a Chicago divorce law firm). Since the name "Prenda" has lately become somewhat toxic, the lawyers behind this scheme are now using several aliases, including: "Anti-Piracy Law Group" (Prenda's newest successor entity, organized in Illinois); "Alpha Law Firm, LLC" (Mr. Paul Hansemeier's firm, organized in Minnesota) and "Livewire Holdings, LLC" (a newer affiliate listing a business address that is a UPS store with private mailbox and package services in Washington, D.C.).

[3] *See* http://www.forbes.com/sites/kashmirhill/2012/10/15/how-porn-copyright-lawyer-john-steele-justifies-his-pursuit-of-sometimes-innocent-porn-pirates/

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

men (with various connections to John Steele) out there. There is new evidence of Prenda submitting a fraudulent and unarguably false "client" verification in a case in Illinois, and disturbing revelations regarding collusion between Prenda and a "defendant" who agreed to stipulate to ISP subpoenas in another case in Minnesota.

Aside from the pattern of fraud with respect to every instance where people connected to Prenda's "clients" had to be identified to a court, there is another deeply troubling pattern in this litigation.  Mr. Gibbs has repeatedly represented to various courts that, in his view, the mere fact that a person happens to pay the Internet bill is not sufficient, by itself, to establish a good faith factual basis for an allegation that this person is the John Doe defendant in a case like this.  Dec'l. re: Prenda Law, ¶¶ 21–22.  Mr. Gibbs has previously conceded—indeed, he was specifically warned on this exact point by Jude Seeborg—that under the circumstances of these cases, further "investigation" is required to name somebody in a complaint, to comply with Rule 11(b)(3).  *Id.* Contrary to these several representations, and in defiance of specific warnings, in several instances Mr. Gibbs has apparently gone ahead and publicly named people as defendants (or tried to do so), without conducting the requisite objectively reasonable additional investigation.  The bad faith inherent in 'shooting first, and identifying targets later,'[4] is substantially compounded given that: (i) these cases are calculated to embarrass (because the content at issue is pornography); (ii) Prenda makes a point of publicly shaming named defendants on its website, as a warning to others; and (iii) most cases are dismissed without prejudice at the first hint of trouble.  The whole enterprise borders on bad faith, at the very least.  Further, as detailed, *infra*, the Wagar and Denton cases are not the only examples of Prenda's shoddy "investigations"; undersigned counsel is aware of at least three other, similar cases

---

[4] *Boy Racer, Inc. v. Does 1-22*, No. 11 C 2984, Slip Op. (N.D. Ill. May 9, 2011) (Shadur, J.) (Court "rejected attorney [John] Steele's effort to shoot first and identify his targets later," and made clear that suits against a "passel of 'Does'" would not succeed).

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

where Mr. Gibbs similarly named a defendant recklessly (or tried to), leaving it to defendants to prove their innocence based on a lax interpretation of Rule 11(b)(3).

Finally, there is simply no excuse for violating the Court's orders to cease discovery efforts.  Mr. Gibbs proffered explanation is that he interpreted the Court's OSC staying discovery as allowing continued "informal" discovery.  According to Mr. Gibbs' response to the instant OSC,[5]

> "Mr. Gibbs believed and interpreted the October 19, 2012 Orders as only precluding him from engaging in any formal discovery efforts ***such as pressuring the ISPs to respond to the subpoenas*** that had been served and precluding him from serving any additional subpoenas. (Gibbs Decl. ¶ 20)."  ECF No. 49, at 9:20-22.

Yet as confirmed by at least one ISP—AT&T—notwithstanding this representation, Prenda did in fact "pressur[e] the ISPs to respond to the subpoenas" notwithstanding Mr. Gibbs's interpretation of the stay order.  Dec'l. of Bart Huffman; Dec'l. of Camille D. Kerr.[6]  The pressure may have been applied from Mr. Duffy's office in Chicago, but the bottom line is that even under Mr. Gibb's current interpretation of the stay order, is was violated, more than once, in at least one case.  *Id.*

## II.  FACTUAL AND PROCEDURAL BACKGROUND

**(a)  Procedural History of Prenda's Related AF Holdings and Ingenuity 13 Cases in the Central District of California**

On July 2, 2012, Mr. Brett Gibbs, who lists himself on the pleadings as "of Counsel" to Prenda Law, Inc.,[7] began filing multiple actions in the Central District

---

[5] Undersigned counsel had about an hour to review Mr. Gibbs response to the OSC prior to filing this document.

[6] Concurrently filed herewith.

[7] In reality, Mr. Gibbs appears act as a functional Chief Operating Officer for Prenda Law.  There is evidence that Mr. Gibbs hires Prenda's "local counsel." Dec'l. re: Prenda Law, Exhibit L, p.

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

of California on behalf of AF Holdings, LLC and Ingenuity 13, LLC.  By September of 2012, the grand total was 45 cases filed by Mr. Gibbs on behalf of these two entities, each against a single "John Doe" defendant identified only by IP address.

All of the AF Holdings cases in this district were transferred to Judge Wright as related cases, pursuant to Section 3.1 of General Order 08-05, on October 4, 2012. *AF Holdings, LLC v. John Doe*, 12-cv-5709-ODW, ECF No. 7, 10/4/12.  Shortly thereafter, Judge Wright issued an Order to Show Cause in the related AF Holdings cases. *AF Holdings, LLC v. John Doe*, 12-cv-5709-ODW, ECF No. 9, 10/19/12 (the "**AF Holdings OSC re: Early Discovery**").  The order required Prenda to explain "how it would proceed to uncover the identity of the actual infringer once it has obtained subscriber information—given that the actual infringer may be a person entirely unrelated to the subscriber—while also considering how to minimize harassment and embarrassment of innocent citizens."  *AF Holdings OSC re: Early Discovery*, pp. 2-3 (emphasis added).  Plaintiff submitted a response on November 1, 2012, which did not go into great detail.

On November 28, 2012, after being engaged by the client just before the subpoena return deadline, undersigned counsel, on behalf of the putative John Doe defendant in *Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333, filed an ex parte application for a stay of the subpoena return date.  ECF No. 13. This ex parte application was granted, *nunc pro tunc*, by Magistrate Judge Walsh on December 3,

---

132:23–24; 134:9–10; 138:15–17 (Prenda's former local counsel in Florida, while being questioned by Judge Scriven of Florida, states "Well, Mr. Gibbs apparently is a principal at Prenda Law, to my understanding").  There is also evidence that Mr. Gibbs' email address "blgibbs@wefightpiracy.com" is used as the email of record on Prenda pleadings all over the country.  Dec'l. re: Prenda Law, ¶ 12, Exhibit C (pleading filed in Nebraska by local counsel there, but using "blgibbs@wefightpiracy.com" as the email address for counsel of record).

 *See* Dec'l. of Morgan E. Pietz re: Prenda Law, Inc. ¶¶ 8, 12, Exhibit N, p. 132, li. 23-24.  (All page references to the Exhibits to the Dec'l. of Morgan E. Pietz re: Prenda Law, Inc. are to the continuous pagination on the bottom right).

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

2013, extending the subpoena return deadline in 12-cv-8333 until December 29, 2012.  ECF No. 16.

On December 3, 2012, undersigned counsel filed a Notice of Related Cases identifying the multiple Ingenuity 13 cases filed by Prenda in this district as related to the AF Holdings cases already assigned to Judge Wright. *AF Holdings, LLC v. John Doe*, 12-cv-5709-ODW, ECF No. 11.   This notice pointed out a number of similarities between the Ingenuity 13 and AF Holdings cases, and also mentioned, for the first time, the evidence suggesting a possible misappropriation of the identity of one Alan Cooper of Minnesota.  *Id.*  Shortly thereafter, undersigned counsel, on behalf of a different client in the Northern District of California, also filed a similar "administrative motion to relate cases" in the AF Holdings and Ingenuity 13 cases in the Northern District.  *See AF Holdings, LLC v. John Doe*, N.D. Cal. No. 4:12-cv-02049-PJH, ECF No. 40, 12/13/12.

On December 17, 2012, Mr. Gibbs filed three sanctions motions against undersigned counsel.  One sanctions motion was filed here in 12-cv-8333, at ECF No. 22.  Another sanctions motion was filed here in 12-cv-5709 at ECF No. 15, which was somewhat inexplicable given that undersigned counsel had not appeared in that action (other than to file the Notice of Related Cases).  Stranger still, in the Northern District, a sanctions motion was filed in the low-numbered case, 4:12-cv-2049-PJH at ECF No. 42, not in the case where undersigned counsel had actually appeared on behalf of a client (i.e., in *Ingenuity 13, LLC v. John Doe*, N.D. Cal. No. 3:12-cv-4976-JSW).  Notably, none of these sanctions motions asserted that any of the allegations about Alan Cooper were incorrect.  Plaintiff's arguments (that attempting to relate cases together for coordination constituted a vexatious multiplication of legal proceedings) were frivolous, and all of the sanctions motions were denied.

On December 18, 2012, undersigned counsel, on behalf of the putative John Doe defendant in *Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333, filed a

-8-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

second ex parte application seeking a further stay of the subpoena return date, and also seeking leave to propound limited early discovery to explore the apparent Alan Cooper fraud.  ECF No. 23.

On December 19, 2012, all of the Ingenuity 13 cases pending in the Central District were also transferred to Judge Wright as related cases, per General Order 08-05. *Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333, ECF No. 24.

On December 20, 2012, the Court issued minute orders in each of the Ingenuity 13 cases that essentially adopted in the Ingenuity 13 cases the procedure already put in place in the *AF Holdings OSC re: Early Discovery*.  Prior orders authorizing subpoenas were vacated, and Mr. Gibbs was ordered to do further explain how a list of ISP subscribers would be used to identify actual infringing John Doe defendants, prior to being given the keys to discovery. *See Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333, ECF No. 28, 12/20/12.

Also on December 20, 2012, for some of the older AF Holdings cases, which had been filed over 120-days earlier, the Court issued an Order to Show Cause re: Lack of Service. *AF Holdings, LLC v. John Doe*, 12-cv-5709-ODW, ECF No. 16. Plaintiff responded to this order on the Rule 4(m) issue in at least a few of the cases, on December 27, 2012.  *See, e.g., id.* at ECF No. 18.

On December 26, 2012, the Court granted undersigned's ex parte application (ECF No. 23) seeking leave to propound limited written discovery exploring the Alan Cooper issue.  ECF No. 32.  That order set a 14-day window in which to propound the requested written discovery.  *Id.*

On December 31, 2012, plaintiff filed disqualification motions in most (if not all) of the related cases pending before Judge Wright.  *E.g., Ingenuity 13*, No. 12-cv-8333 at ECF No. 37.  Undersigned counsel filed a comprehensive reply to the disqualification motion on January 14, 2013.  ECF No. 40.  On January 15, 2013, the disqualification motion was denied by Judge Fitzgerald.

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

On January 4, 2013, undersigned counsel did indeed serve, via overnight mail, the Court-authorized written discovery delving into the Alan Cooper issue. Supplemental Dec'l. of Morgan E. Pietz ("Supp. Dec'l.") ¶ 6.

About a week before the Alan Cooper discovery responses were due in the 12-cv-8333 action, on the evening of January 28, 2013, Mr. Gibbs began voluntarily dismissing all of the related AF Holdings and Ingenuity 13 cases in the Central District of California—all without prejudice.

Mr. Gibbs wrote undersigned counsel on January 29, 2013 stating "I will be entering my notice of withdrawal as counsel of record for Ingenuity13 and AF Holdings in all cases filed in California. Mr. Paul Duffy will be substituting in as counsel." Exhibit P. Subsequent to the email from Mr. Gibbs, Mr. Duffy did substitute in as counsel in most of the Northern District of California AF Holdings and Ingenuity 13 cases. Paul Duffy has previously represented himself to a Florida court as Prenda's "sole principal." On February 6, 2013, Paul Duffy initiated an attempt to meet and confer about this case, the 12-cv-8333 action, by sending an email to undersigned counsel requesting to meet and confer about this case. *Id.* Undersigned counsel and Mr. Duffy mutually agreed to have a meet and confer telephone conference about this case (as well as about a few other matters) set for 11:30 a.m. on February 8, 2013. *Id.*

Around 8:30 a.m. on February 8, 2013, the Court entered the instant Order to Show Cause re Sanctions on the ECF docket (ECF No. 48, dated February 7, 2013). Mr. Duffy did not answer the phone when undersigned counsel attempted to call him, as mutually agreed, at 11:30 a.m. on February 8. Instead, starting on the afternoon on February 8, 2013, Mr. Duffy began dismissing the final cases left, mainly in the Northern District of California, which Prenda had filed on behalf of AF Holdings and Ingenuity 13. (The Central District cases were mostly dismissed on January 28 and 29, 2013). As of the date hereof, every case in California that Prenda could dismiss voluntarily, without paying prevailing party attorneys fees (in

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

1   other words, all cases except the ones where a defendant had answered), has now

2   been dismissed.  Further, according to a PACER search conducted February 11,

3   2013, most, but not quite all, of the AF Holdings and Ingenuity 13 cases have now

4   been dismissed nationally, presumably most, if not all of them, without prejudice.

5   **(b)**    **Factual Background on Prenda's Various Straw Men and Sham Entities**

6       **(1)**    <u>Alan Cooper: John Steele's Former Caretaker; Victim of Identity Theft</u>

7       Most of the facts relating to Alan Cooper have already been explained, most

8   comprehensively in the Dec'l. re: Prenda Law submitted in support of the opposition

9   to the disqualification motion (ECF No. 40-1, at ¶¶ 29–42).

10       However, there are two new developments worth reporting: first, Alan

11   Cooper, through his attorney Paul Godfread, has filed a civil lawsuit against John

12   Steele, Prenda Law, and others alleging misappropriation of his identity. <u>Exhibit Q</u>.

13   Second, at a 30(b)(6) deposition of AF Holdings conducted by undersigned counsel

14   on February 19, 2013, a designated representative for AF Holdings blamed any

15   potential problems with the "Alan Cooper" signature on John Steele.[8]  According to

16   AF Holdings 30(b)(6) deponent Paul Hansemeier, AF Holdings' sole manager and

17   sole employee Mark Lutz directed John Steele (Mr. Lutz's former boss at Steele

18   Hanemeier PLLC) to obtain the signature, and Mr. Steele returned a signed

19   document.

20       Prenda's unilateral, voluntary dismissal of this action, just prior to the

21   deadline for a response on the Alan Cooper-focused written discovery, is another

22   fact pointing to potential fraud, rather than some kind of benign coincidence

23   involving a second "Alan Cooper." Mr. Gibbs' response to the instant OSC says that

24   the complaint is not based on an invalid ***copyright assignment***.  Notably though, the

25   response does ***not*** deny that AF Holdings cases are based on a ***forgery***.

26

27

28

---

[8] Given that this deposition was conducted earlier today, in San Francisco, no transcript is yet available.

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS
FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

    (2)   <u>Mark Lutz: John Steele's Former Paralegal; Fraudulent Corporate Representative For Hire</u>

The episode where Prenda attempted to perpetrate a fraud on the court, in *Sunlust Pictures, Inc. v. Tuan Nguyen*, M.D. Fl. Case No. 8:12-CV-1685-T-35MAP, by holding out John Steele's former paralegal, Mark Lutz, as a principal of Prenda's "client" has also been previously explained. Dec'l. re: Prenda Law ¶¶ 39–40, <u>Exhibit N</u> (transcript of hearing where Judge Scriven invites sanctions motion for attempted fraud on the Court).

However, there are new developments *Sunlust* case—more fraud.  In an attempt to minimize and explain away the first attempted fraud on the Court and oppose a John Doe sanctions motion, Prenda apparently submitted what appears to be a fraudulent declaration to the Court.  Specifically, Prenda tried to explain the absence of a true principal for the client, Sunlust Pictures, at the November 27 hearing by submitting a declaration explaining that the company's true principal, "Daniel Webber" was out of the country at the time of the hearing. *Sunlust Pictures, Inc. v. Tuan Nguyen*, M.D. Fl. Case No. 8:12-CV-1685-T-35MAP at ECF No. 40-2, ¶ 5, 12/20/12 (original, sworn affidavit of "Daniel Webber" stating he was in India on November 27, 2012). As defense counsel in *Sunlust* immediately pointed out, there were two big problems with this story: first, Daniel Weber spells his name with one 'b,' not two, and, second, his Twitter feed places him in Los Angeles, not India, on November 27, 2012.  *Id.* at ECF No. 46 (defendants second motions for sanctions).  Accordingly, after being notified of these inconsistencies by defense counsel, on December 26, 2012, Prenda, through outside counsel specializing in white collar criminal deense, filed a purported "corrected" version of the Daniel Weber declaration, this time spelling Mr. Weber's name correctly, and, more importantly, changing the key fact that he had actually been in Los Angeles on November 27, 2011, not India. *Id.* at ECF No. 44-1, ¶ 5 ("corrected" affidavit stating that "Daniel Weber" was actually in Los Angeles on November 27, 2012).

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

In short, Prenda has shown in *Sunlust* that when accused of fraud, it attempted to explain its actions and avoid responsibility by making further (supposedly inadvertent) misrepresentations.

(3)     "Salt Marsh" a/k/a Anthony Saltmarsh: John Steele's Sister's Roommate (Boyfriend?) at Arizona Address Linked to Alan Cooper and Other Prenda Shell Entities; New Prenda Straw Man

A closer and more sustained review of various past Prenda court filings has revealed new facts suggesting that "Alan Cooper" is not the only straw man Prenda has used, when pressed to identify individuals associated with Prenda's various sham entities.  Just as Alan Cooper was John Steele's former caretaker, and Mark Lutz was John Steele's former paralegal, another purported "client" representative with a personal connection to John Steele has also recently been discovered.  In various filings in the Northern District of California, when pressed to identify a client contact on an ADR Certification, Prenda identified a person named "Salt Marsh" as the "AF Holdings Owner."  *E.g., AF Holdings v. John Doe*, N.D. Cal. No. 12-cv-2396-EMC, ECF No. 8, 7/20/12.[9]  Exhibit R.

After the "Alan Cooper" revelations resulted in newfound scrutiny of Prenda "client" contacts, Nicholas Ranallo, an attorney in Northern California did some digging on "Salt Marsh," since that seems like a made up name.  Mr. Ranallo recently summarized his findings in a declaration.  Exhibit S ("Ranallo Dec'l.").  This declaration by Mr. Ranallo was filed on February 11, 2013, in opposition to Prenda's emergency motion to stay a pending 30(b)(6) deposition of AF Holdings.  The stay was denied, and the 30(b)(6) deposition of AF Holdings is currently set to

---

[9] A similar ADR Certification, which is mandated in the Northern District of California by Local Rule 16-8(b), was filed in most if not all Prenda cases in the Northern District of California that progressed so far as service of process on a named defendant.  However, per Mr. Ranallo, in Prenda's most recent ADR Certification, the new client

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS
FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

occur on February 19, 2013.[10]  This N.D. Cal. AF Holdings case, which is one where the defendant responded to the complaint, is one of the very few AF Holdings or Ingenuity 13 cases now left anywhere in the country.

Without going into all of the details, which are contained in the Ranallo declaration, suffice it to say that although "Salt Marsh" appears to be a bogus name, but there *is* a man named Anthony Saltmarsh, who has apparently shared several residences with John Steele's Sister, Jayme C. Steele. Presumably then, the reputed owner of AF Holdings, "Salt Marsh" is actually Anthony Saltmarsh, who is the live-in boyfriend of John Steele's sister Jayme.

Further, a residential address in Phoenix apparently co-occupied by Anthony Saltmarsh and Jayme Steele has also been linked to several Prenda straw men and sham entities, including Alan Cooper.  Ranallo Dec'l. ¶¶ 8–14.  Prenda previously represented VPR Internationale in various copyright infringement suits.  Dec'l. re: Prenda Law, ¶ 11.  According to the Nevada Secretary of State, all officer positions at VPR Inc. are held by "Alan Cooper," and the address given for Mr. Cooper in each instance is 4532 East Villa Theresa Drive, Phoenix, AZ 85032.  Ranallo Dec'l, "Exhibit D."  Similarly, an Internet search of that same address revealed what appears to be an archived WHOIS record for an Internet domain name registration of <notissues.com> which lists "Alan Cooper" as the registrant, technical contact, and administrative contact, but using johnlsteele@gmail.com as the email address of record, and 4532 East Villa Theresa Drive, Phoneix, AZ 85032 as the mailing address of record.  Exhbit T.  According to public database searches on Anthony Saltmarsh and Jayme Steele, both of them resided at 4532 East Villa Theresa Drive, Phoenix, AZ 85032.

---

[10] Undersigned counsel recently appeared as co-counsel with Mr. Ranallo, in connection with the scheduled AF Holdings 30(b)(6) deposition.  *See* AF Holdings v. John Doe, N.D. Cal. No. 12-cv-2396-EMC, ECF No. 58, 2/14/13.

-14-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

In short, it appears that Prenda/John Steele has used his sister's house as a front for Prenda's litigation activities.  The name "Alan Cooper," at least one Prenda sham entity, VPR, Inc., and John Steele's personal email account are all linked to this address.  Further, it appears that John Steele has used his sister's apparent live-in boyfriend Anthony Saltmarsh, or a misleading twist on his name (i.e., "Salt Marsh") as the newest Prenda straw man.

    (4)    The Fraudulent Allen Mooney a/k/a "Alan Moay" a/k/a "Alan Mony" Verification in an Illinois Prenda Case

A few days before the Alan Cooper revelations came to light, and just the *Sunlust* hearing where the attempted fraud on the court occurred, Prenda file a verified petition for presuit discovery in St. Clair County, Illinois on behalf of "Guava, LLC," another offshore shell company.  *Guava, LLC v. Comcst,* Circuit Court of St. Clair Count, Illinois, No. 12-MR-417. This petition, (like a more expansive version of a federal Rule 27 petition) invokes a rule of Illinois state procedure to seek leave to subpoena IP address records from 330 Internet users, was required to be verified by rule, and is purportedly verified by "Alan Moay."  <u>Exhibit U</u>.  The petition also asserted, as a verified fact, that "venue is proper because at least one of the Doe defendants resides in St. Clair County, Illinois.  Further, Comcast transacts business in St. Clair County, Illinois."

Defense counsel in that case, including the undersigned, ultimately picked up on two problems with this petition: first, the verification is suspicious because "Alan Moay" is a bogus name; there is no record of any such person with that name existing in the United States.  There are also other suspicious elements of the verification: although it purports to be notarized, there is no notary name, seal or registration number, and the font on the verification is different than the font on the petition itself.  Second, after Comcast ran the records through it database, it was ultimately revealed that not a single one of the 330 IP addresses at issue were actually linked to St. Clair County.  This is because Comcast does not do business

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

there; Charter is the local franchised cable operator.  The suit was brought in St. Clair county, on the basis of demonstrably false venue and jurisdictional allegations, solely as a matter of forum shopping. Exhibit U, ¶ 6; *see* Exhibit V.

When pressed on the bogus affiant "Alan Moay," Prenda changed its story. Prenda's current story (as of 1:00 p.m. on February 18, 2013) is that the verification does not say "Alan Moay" at all; rather, it says "Alan Mony."  The problem with the new story (aside from the fact the verification says Alan Moay) is that "Alan Mony" is also a bogus name.  Exhibit V.

However, as noted in the attached reply brief filed recently by undersigned counsel in St. Clair County, the name "Allan Mooney" is a name that has been linked to Prenda previously. *Id.*  According to the Minnesota Secretary of State, a man named "Allan Mooney" was previously listed as the manager of MCGIP, LLC, another shell company plaintiff on whose behalf Prenda has filed various federal lawsuits. *Id.*  The address for "Allan Mooney" on the MCGIP business entity detail was care of Alpha Law Group, LLC, which is the newest firm of Prenda founder Paul Hansemier. One "Alan Mooney" is also a current client of Alpha Law / Paul Hansemeier, in *Mooney v. Priceline.Com Incorporated et al.*, No. 12-cv- 02731-DWF-JSM (D. Minn. Oct. 26, 2012). *Id.*

In short, Prenda appears to have filed yet another bogus verification,[11] this time in state Court in Illinois.  The purported affiant links Prenda's fraudulent activities in Illinois to Mr. Paul Hansemeier of Minnesota, who was the other original founder of Prenda (and whose brother Peter still signs all of the technical declarations for Prenda).

In response to this allegation of another fraudulent Prenda verification, Mr. Gibbs retorts that

---

[11] The original bogus pre-suit discovery verification, purportedly signed by "Alan Cooper," was filed by Mr. Gibbs in *In the Matter of a Petition by Ingenuity 13, LLC*, E.D. Cal. Case No. 11-mc-0084-JAM-DAD, ECF No. 1.

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

(5)    Collusion Between Prenda and the "Defendant" in Minnesota Case

Since Prenda has mainly stopped filing "swarm joinder" suits against multiple Does, given the trouble that theory has run into in federal Courts, it has now resorted to new tactics.  One example of the new tactics are the state pre-suit discovery cases, like Guava, LLC v. Comcast, in St. Clair County, discussed above.

However, the other new tactic Prenda has employed is to make a back room deal with a John Doe it has previously identified, whereby Prenda agrees not to pursue that person, in exchange for which that person will agree to be named and served, and stipulate to early discovery against a passel of "John Doe" co-conspirators.  Apparently, Prenda steers such people (one can imagine Prenda chooses the people who are particularly worried about their cases) to certain lawyers, and these lawyers then agree on behalf of the named lead defendant, to stipulate to far-reaching discovery.  Details of this kind of collusion (all in the name of obtaining ISP subscriber information) are explained in the declaration from the attorney for Spencer Merkel in Guava, LLC v. Merkel, a Minnesota suit seeking discovery on Does all over the country.  Exhibit W.

(6)    Recent Rebranding of Prenda Law and Mr. Gibbs' New Career as "In House Counsel" for Various Prenda Shell Entities

Recently, Mr. Gibbs has substituted out of various Prenda cases as counsel of record.  Far from washing his hands of his involvement with Prenda though, and trying to start anew, Mr. Gibbs has simply changed hats.  Mr. Gibbs has recently purported to be "in house counsel" for at least three different Prenda-related sham entities.[12]  This new role for Mr. Gibbs only further supports the Court's suspicion that Mr. Gibbs has a pecuniary interest in the Prenda shell companies.

---

[12] According to the February 19, 2013 deposition of AF Holdings' 30(b)(6) deponent, Paul Hansemeier, the amended substitution of attorney form Mr. Gibbs filed in N.D. Cal. 12-cv-4221, at ECF No. 22 (filed 1/30/13), which identified Mr. Gibbs as "In-House Counsel, AF Holdings, LLC" is incorrect, and Mr. Gibbs is now, as of two weeks later, not in house counsel to AF Holdings.  Incidentally, the same day that Mr. Gibbs filed the amended substitution of counsel in

-17-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

(7)     Paul Duffy, John Steele and Paul Hansemier – Other Attorneys Who
Share Responsibility with Mr. Gibbs for Overseeing Prenda's
Fraudulent Litigation Scheme

Mr. Gibbs surely bears a significant amount of responsibility for Prenda's egregious actions, but he has not acted alone—the fraud here is systematic, and part of a conspiracy involving several other lawyers and laypeople.

Attorney Paul A. Duffy proclaimed himself the "sole principal" of Prenda Law last fall in a letter to the Court in the *Sunlust* case.  Exhibit Y.  Mr. Duffy is admitted to the State Bar of California[13] (although he primarily practices in Chicago; in addition to California, Mr. Duffy is also admitted Illinois, Massachusetts and Washington, DC)[14], and has appeared as counsel for record for Prenda in various Ingenuity 13 and AF Holdings cases in California.  Exhibit Z.  Moreover, Mr. Duffy attempted to meet and confer with undersigned counsel about this case, 12-cv-8333, indicating he is involved with this particular litigation now before this Court.  Exhibit P.

Attorney John L. Steele, like Mr. Gibbs, also purports to merely be "of counsel" to Prenda.  Dec'l. re: Prenda Law, Exhibit D (Steele's April 20, 2012, entry of appearance as "of counsel" to Prenda in DC case); *but see* Exhibit N, p. 139:5 (Steele tells Judge Scriven on November 27, 2012, "I'm not an attorney with any law firm right now.") *then see* Supp'l Dec'l. ¶ 15 (After appearing at a February 13, 2013, hearing for Guava, LLC, Steele confirmed to several people that he is still

---

that action (1/30/13), he also sent out a letter to several hundred ISP subscribers identified in the St. Clair County Guava, LLC case identifying himself as "In-House Counsel, Guava LLC." Exhibit X.  Finally, as noted below, Mr. Gibbs' special counsel in this action has also identified him in the instant OSC response as in-house counsel for Livewire Holdings, LLC, the purported new owner of AF Holdings (note the letterhead used to send out the Guava letter).  ECF No. 49, fn 1.

[13] http://members.calbar.ca.gov/fal/Member/Detail/224159

[14] http://www.wefightpiracy.com/paul-duffy.php

-18-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS
FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

currently "of counsel" to Prenda Law). However, together with Paul Hansemier, Mr. Steele was the founder of Prenda's predecessor in interest, Steele Hansemier, PLLC. Morover, as indicated, *supra*, in sections II(b)(1)-(3), Mr. Steele's fingerprints are all over Prenda's various frauds. Almost every time Prenda has had to identify a person connection to a "client" shell entity, the person Prenda has held out to the world has been a current or former close associate of John Steele. Mr. Steele indicates on his LinkedIn page that he "sold [his] client book to Prenda Law in 2011," but in reality, Mr. Steele appears to remain heavily involved in Prenda. Exhibit AA. For example, in the Forbes article (fn 3, *supra*) Mr. Steele brags about Prenda litigation as if he is speaking about himself. Similarly, many lawyers who deal with Prenda on a regular basis could testify to the fact that inquiries to Prenda are routinely answered by Mr. Steele himself.

Attorney Paul L. Hansemeier is also one of the founders of this scheme, and his latest firm, "Alpha Law Firm, LLC," appears to be nothing more than Prenda's newest trade name in Minnesota.[15] Like Prenda, the "Alpha Law Firm" also represents the shell company "Guava, LLC" in CFAA / BitTorrent litigation. *See Guava, LLC v. Spencer Merkel*, Hennepin County, Minnesota District Court No. 27-CV-12-20976, Exhibit BB. Alpha Law's counsel of record in the Guava case, Mr. Michael Dugas, was a former associate for Prenda Law. Exhibit CC. Admittedly, Mr. Hansemeier has apparently made some attempts to try and distance himself from Mr. Steele, and the Prenda name, at least on paper, by creating a new firm name for himself. However, the continued involvement of Alpha Law in the Guava litigation, as well as the role Mr. Hansemeier's client Allan Mooney may have played in the bogus verification in the St. Clair County, Illinois Guava case (where Prenda is

---

[15] At the February 19, 2013 30(b)(6) deposition of AF Holdings, Mr. Hansemeier testified that in cases his Alpha Law Firm settled for AF Holdings, the proceeds were paid and deposited into the Prenda trust account, not the Alpha Law Firm trust account.

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

counsel of record, not Alpha Law) suggests Mr. Hansemeier remains involved behind the scenes.

Prenda also uses "local counsel" in many jurisdictions around the country. With the possible exception of the Dugases in Minnesota, who may be involved in management, many of these local attorneys appear to have ended up working with Prenda by answering Craigslist ads, and may not comprehend what they are getting themselves into. Since Mr. Gibbs is admitted in California, he has been counsel of record in all of Prenda's California cases, since the early days of Steele Hansemeier (excepting Paul Duffy's recent substitution for Mr. Gibbs in a handful of cases in the Northern District of California).

In terms of non-attorneys participating in Prenda's scheme, the top of the list would be Paul Hansemeier's brother Peter Hansemeier, who has been Prenda's "technical" expert since the early days of Steele Hansemeier. Close behind Peter Hansemeier would be Mark Lutz, a man who wears many hats for Prenda. In addition to being Mr. Steele's former paralegal, Mr. Lutz is a seasoned telephone solicitor who helps pressure John Doe defendants into settling, and he is also apparently a fraudulent corporate representative for hire, who is Prenda's go-to person to identify as a "client" contact in initial disclosures. On its website, Mr. Lutz is currently listed as a founder of Livewire Holdings, LLC, Prenda's newest affiliate, which has an office at a UPS Store in Washington, DC. Also possibly involved in this scheme, but to an unknown degree would be John Steele's sister Jayme C. Steele, her co-habitant (boyfriend?) Anthony Saltmarsh, and Allan Mooney (Paul Hansemier's client) who is perhaps the "Alan Mony" currently reputed to be the principal of Guava, LLC.

In short, Mr. Gibbs has had lots of help in defrauding this Court; several other attorneys and laypeople connected to Prenda Law are also culpable.

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

# III.  ARGUMENT

**(a)  All of Prenda's Cases Before this Court are "Sham" Lawsuits Exempted from the Protections of the *Noerr-Pennington* Doctrine**

If Prenda had an explanation for the "Alan Cooper" situation, other than intentional fraud, it would have come out by now.  Rather than rehash the documentary evidence on a factual issue that will be addressed at the March 11 hearing, this section instead addresses the legal ramifications that flow from confirmation of the Prenda's fraud.

One important consequence of confirming that Prenda misappropriated Alan Cooper's identity would be that Prenda and the lawyers associated with it would lose any potential tort immunity under the *Noerr-Pennington* doctrine.[16]  Further, even without forged documents in the copyright chain of title, Prenda's cases still qualify as "sham" lawsuits.

(1)   The "Sham" Lawsuit Exceptions to the *Noerr-Pennington* Doctrine

Often, plaintiffs can escape tort liability for filing questionable lawsuits by relying on protections of the *Noerr-Pennington* doctrine, which is the federal counterpart to state law litigation privileges.  Essentially, the *Noerr-Pennington* doctrine protects litigants from retaliatory countersuits when they are using the courts to petition or influence the government (including by filing lawsuits), because such activity is protected under the Petition Clause of the First Amendment to the U.S. Constitution. *See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).

However, there is a general exception to the Noerr-Pennington doctrine for "sham" lawsuits.  *See California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 511 (1972).  In an appeal from a Ninth Circuit copyright infringement

---

[16] This pre-assumes that the Noerr Pennington doctrine, which was originally aimed at antitrust injury, is applicable to lawsuits seeking redress for copyright infringement.

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

case, the U.S. Supreme Court established a two-part test for sham lawsuits. *Prof'l Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49 (1993). First, a sham lawsuit is one that is so "objectively baseless" that "no reasonable litigant could realistically expect success on the merits." *Id.* at 60. If the first part of the test is met, courts should then examine the plaintiff's subjective motivation, and in so doing, "the court should focus on whether the baseless suit conceals 'an attempt to interfere directly' with the business relationships of a competitor." *Id.*

Since *Prof'l Real Estate*, the "sham" lawsuit exception to the *Noerr-Pennington* doctrine has been extended beyond "objectively baseless" lawsuits to include fraudulent lawsuits. Although the U.S. Supreme Court has not explicitly reached the fraud exception to the *Noerr-Pennington* doctrine, it did leave open the possibility for such a rule (seemingly on purpose) in *Prof'l Real Estate. Id.* at fn 6 (the Court "need not decide here whether and, if so, to what extent Noerr permits the imposition of antitrust liability for a litigants fraud or other misrepresentations.") Several Courts of Appeal,[17] including the Ninth Circuit, have picked up on this *dicta*, and explicitly endorsed a fraudulent litigation exception to the *Noerr-Pennington* doctrine. In *Kottle v. Northwest Kidney Ctrs.*, 146 F. 3d 1056, 1060 (9th Cir. 1998) the Ninth Circuit explained that where the litigation behavior at issue "consists of making intentional misrepresentations to the court, litigation can be a sham if 'a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy." *Id. quoting Liberty Lake Inv., Inc. v. Magnuson*, 12 F.3d 155, 158 (9th Cir. 1993); *see also Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1260 (9th Cir. 1980).

In *Kaiser Foundation Health Plan, Inc. v. Abbott Laboratories, Inc.*, 552 F. 3d 1033 (9th Cir. 2009), the Ninth Circuit further explained that there are essentially

---

[17] *Mercatus Group, LLC v. Lake Forest Hosp.*, 641 F.3d 834, 842 (7th Cir. 2011); *Whelan v. Abell*, 48 F. 3d 1247, 1254-55 (D.C. Cir. 1995); *Potters Medical Center v. City Hosp. Ass'n.*, 800 F.2d 568, 580 (6th Cir. 1986); *Ottensmeyer v. Chesapeake & Potomac Tel. Co. of Md.*, 756 F.2d 986, 994 (4th Cir. 1985); *Israel v. Baxter Labs., Inc.*, 466 F.2d 272, 278 (D.C. Cir. 1972)

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

three different kinds of "sham" lawsuits that are not immunized by *Noerr-Pennington*: (i) "where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful"; (ii) "where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose,"; and (iii) "if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy." *Id.* at 1045; *quoting Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006) (citations and internal quotation marks omitted).

   (2)   Intentional Use of Forged Copyright Assignment Agreements in the AF Holdings Cases Deprive These Cases of Legitimacy

   The AF Holdings cases before this Court are the most obvious "sham" lawsuits, because each case is founded upon a forged copyright assignment agreement, purportedly executed for AF Holdings by "Alan Cooper."[18]  In each AF Holdings case, Prenda's standing and ability to bring the suit in the first place is essentially void *ab initio*.  If Mr. Gibbs argues that he did not know the document was forged when he signed the complaint that does not get him or Prenda off the hook; someone at Prenda (*i.e.*, the person who forged Alan Cooper's signature) was attempting to deceive the Court.[19]  In short, with respect to the forged copyright

---

[18] The Ingenuity 13 cases instead attach a Copyright Office printout indicating that the movies at issue were works made for hire for Ingenuity 13, LLC.  *See, e.g., Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333, ECF No. 1, p. 14.

[19] The motive for all of Prenda's fraud appears to be an attempt to hide the fact that Prenda and/or the lawyers associated with it have essentially become their own clients, by taking a direct pecuniary interest in the outcome of the litigation, through the use of the offshore shell companies. That motive means that the failure to identify the Prenda lawyers as people with a pecuniary interest in the outcome of the litigation in accord with Local Rule 7.1-1 would also be separately sanctionable, per L.R. 83-3. *See, Righthaven, LLC v. Democractic Underground, LLC*, D. Nev. No. 10-cv-1356, ECF No. 137, 7/15/11 (imposing $5,000 monetary sanction for failure to disclose party with pecuniary interest in litigation per Local Rule 7.1).

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

assignment agreements, Prenda's fraud was intentional, and it goes straight to the heart of the legitimacy of each of the AF Holdings cases, all of which are rendered "sham" lawsuits by the forgery.  *See Kaiser Foundation, supra*, 552 F. 3d at 1045; *Sosa*, 437 F.3d at 938; *Kottle*, 146 F. 3d at 1060.

> (3)  <u>The Ingenuity 13 Cases—Indeed, all of Prenda's Cases—Qualify as "Sham" Litigation Because The Cases Are Brought for an Improper Purpose, Without Regard to the Merits</u>

The following definition of the second kind of fraudulent "sham" lawsuit perfectly describes Prenda's entire business model: "a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose." *See Kaiser Foundation, supra*, 552 F. 3d at 1045.

Imagine for a moment what might constitute hard proof of a "policy" of "starting legal proceedings without regard to the merits."  In considering this question, the Court need look no farther than <u>Exhibit F</u> to the Dec'l. re: Prenda Law, which is the status report filed by Mr. Gibbs on February 24, 2012, admitting that during the previous year and a half, he and Prenda had filed 118 mass-defendant copyright infringement lawsuits, against 15,878 John Does, but not a single defendant had ever been served in any of these cases.

The same pattern has held in the single-defendant cases filed by Prenda. Over and over again, the record has shown that if Prenda cannot get a default judgment, and a John Doe starts to effectively stick up for him or herself, or if a Court takes an active role overseeing the cases, Prenda simply unilaterally dismisses the case, without prejudice.  That was exactly what happened in each of the Ingenuity 13 and AF Holdings cases pending in this district.

As for Prenda's unlawful purpose, that would be profit through extortion and intimidation.  These cases are not really about vindicating copyright rights.  Rather, they are about using the threat of statutory damages, and (where they can get away with it) the Court's subpoena power, to leverage Internet users into paying quick

-24-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

settlements, upon threat of grave public embarrassment. That Prenda's scheme is unlawful, and not merely improper is further confirmed by California's criminal prohibition on barratry, which makes unlawful the stirring up of three or more actions "with a corrupt or malicious intent to vex and annoy." Cal. Pen. Code §§ 158–59.

In sum, all of Prenda's lawsuits in this district are "sham" litigation within the meaning of the fraud exceptions to the *Noerr-Pennington* doctrine.

**(b)     Given the Circumstances of These Cases, Prenda Routinely Fails to Comply with its Rule 11(b)(3) Obligations**

The role Rule 11 standards should play in cases like these with respect to investigation of claims, good faith factual allegations, and borderline legal arguments, has been an underexplored topic in BitTorrent cases.

(1)     Mr. Gibbs' Past Statements on the Rule 11 Implications of These Cases

A litigant other than Mr. Gibbs could perhaps make an argument (though not a convincing one) that merely paying the Internet bill for a household is enough, by itself, to justify naming and serving that person as a defendant in a case like this. However, Mr. Gibbs should not now be heard to make such an argument, because he knows better—Mr. Gibbs has gone on record with his view about this issue, multiple times, in prior court filings.

As further detailed in the Dec'l. re: Prenda Law, ¶¶ 21–22, on at least four separate occasions, Mr. Gibbs has addressed this Rule 11 issue with various other courts. Mr. Gibbs has confidently assured the courts that, in his view, additional investigation beyond the ISP subpoena is *required* in order to have a good faith basis to allege that an Internet user is a defendant in a case like this. When Prenda is seeking to obtain extensions of a Rule 4(m) deadline, and trying to explain to suspicious Judges why no John Doe defendants have been named and served, this has been the answer: 'Nobody has yet been served, because Prenda needed to do

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

more investigation of the ISP subscribers identified in the subpoena return in order to have a good faith basis to name and serve them.'

If and to the extent that Mr. Gibbs now reverses course and suggests that the subpoena return itself is sufficient, under Rule 11(b)(3) to justify signing a complaint naming someone as a defendant, he should be judicially estopped from making the argument, because it directly contradicts his prior stance on this issue.

(2)    "Inquiry Reasonable Under the Circumstances"

In considering the objective reasonableness of Prenda's additional "investigation" of Mr. Wagar and Mr. Denton which led to Mr. Gibbs signing a pleading naming them as defendants, several "circumstances" should be considered.

First, Prenda's lawsuits are calculated to embarrass, because they all involve allegations of illegally downloading pornography.  Given the salacious content, and the fact that in a case like this, the embarrassing allegations can turn a person with meritorious defenses into an immediate loser, Prenda (and similar pornography plaintiffs) should have a heightened duty under this rule.  That is, under the circumstances of these cases, with their propensity to embarrass, the investigation required to name someone as a defendant should be a little higher than in cases involving more mundane content.  Because the stakes for the defendant are higher, so should they be higher for the plaintiff as well.[20]

Second, Prenda's routine practice of publicly shaming the people it "names" on its website is another circumstance that should be taken into account when evaluating the objective reasonableness of Mr. Gibb's conduct here.  Similarly, third, Prenda's routine practice of dismissing most of its cases without prejudice at the first hint of trouble, is another circumstance that should be taken into consideration.

---

[20] If Prenda objects to being held to a higher pleading standard based on the content of the copyrighted works at issue, then it could simply seek leave to name people under seal, or subject to a protective order guarding against public disclosure (Prenda never does this) which is another way to mitigate the harm.

-26-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

Fourth, Prenda has hundreds of these lawsuits against tens of thousands of defendants; as a professional BitTorrent copyright infringement litigant, a higher degree of factual certainty and investigation can and should be required of Prenda than might be asked of other litigants.

Taken together, all four of these circumstances militate in favor of a finding that Mr. Gibb's factual investigation in the Wagar and Denton cases was objectively unreasonable.

### (3)   Other Examples of Prenda's Shoddy "Investigation"

Notwithstanding his several representations to various Courts, and the specific warning on this issue from Judge Seeborg, Mr. Gibbs has repeatedly relied on shoddy, objectively unreasonable investigations in order to try and name people in complaints.  Mr. Wagar and Mr. Denton are not alone; other Internet users victimized by Mr. Gibbs' lax interpretation of Rule 11(b)(3) include Jesse Nason, Josh Hatfield, and John Botson.

The circumstances of Mr. Gibb's shoddy additional "investigation" in the Nason and Hatfield cases are described in detail in the Dec'l re: Prenda Law, ¶¶ 23-28.  Mr. Gibbs' insufficient investigation in the Botson case is memorialized at *AF Holdings, LLC v. John Doe*, N.D. Cal. No. 12-cv-02048-EJD (ECF No. 30, 11/6/12).  In each of these cases, when pressed to explain the "investigation" that had supposedly identified the defendant, Mr. Gibbs responded with paltry "facts," which turned out to the incorrect.

### (4)   The "Snapshot" Theory of Copyright Infringement

Undersigned counsel agrees with the Court that based on the factual allegations at issue in this group of cases, accusing the defendants of copyright infringement likely veers into questionable territory.

In sum, Mr. Gibbs decision to name Mr. Wagar and Mr. Denton is part of another pattern, whereby Mr. Gibbs has taken a purposefully lax stance on Rule 11(b), in order to maximize the extortionate impact of these kinds of cases.

-27-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

**(c)      There is No Excuse for Violating the Court's Discovery Order**

These violations speak for themselves.  Apparently, while under orders from the Court to suspend discovery efforts, Prenda continued right on running the usual playbook.  As noted above, Mr. Gibbs' proffered explanation does not hold water in light of the directly contradictory declarations offered by AT&T.  Dec'l. of Bart Huffman; Dec'l. of Camille D. Kerr.

## IV.  CURSORY REBUTTAL TO MR. GIBBS' OSC RESPONSE

The first thing that should be pointed out about Mr. Gibbs OSC response is that somebody is mistaken (or lying) about who owns AF Holdings.  On the same day that Mr. Gibbs special counsel filed a pleading stating that AF Holdings was recently sold to Livewire Holdings, LLC, an AF Holdings 30(b)(6) witness sat in a deposition and testified that AF Holdings sole owner is a Nevis trust.  Mr. Hansemeier testified at the deposition that AF Holdings is not sure who formed this trust (other than the paid incorporator), where it is organized, whether there are any trust documents, what the name of the trust is, who might have a beneficial ownership interest in the trust, or who would have authority to terminate the trust.  Mr. Hansemeier sat there and testified to all this with Mr. Gibbs (who, according to his own special counsel, at ECF No. 49. p.1, became general counsel of the company that acquired AF Holdings, Livewire Holdings, LLC back in January) right there at his side, as counsel of record for AF Holdings.  In short, the story his evening is that AF Holdings was sold several weeks ago to Livewire Holdings (Mr. Gibbs new employer).  But the story this afternoon was that AF Holdings is owned by a mystery trust.  Clearly, someone is wrong.

A second, major misrepresentation in the OSC response: when Mr. Gibbs first saw the name Alan Cooper.  Mr. Gibbs' special counsel states that "Indeed, the first time Mr. Gibbs saw the name "Alan Cooper" was on the copyright assignment that was attached to the complaints in the litigations regarding the copyrights."  ECF No. 49, at 25:5-8.  This is also false.  *See* Exhibit L.  Assuming he looked at the verified

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

petition he filed before filing it (which special counsel says was his custom and practice) Mr. Gibbs would have seen Alan Cooper's name on the verification page to a petition Mr. Gibbs filed (while still at Steele Hansemeier) for Ingenuity 13 back in 2011 in *In the Matter of a Petition by Ingenuity 13, LLC*, E.D. Cal No. 11-mc-0084, ECF No. 1, p. 8 (<u>Exhibit L</u>).  Special counsel's attempt to explains away this prior, verification, with a "/s/" signature with Alan Cooper's name on it are not convincing.  Depending on when "exhaustion of all appeals" occurred in that action, Mr. Gibbs likely would have still been under a duty to keep a copy of the original as of December 2012 when he was being asked to produce it.  *See* E.D. Cal. L.R. 131(f).[21]

Finally, the attempt to explain away the apparently fraudulent verification in the St. Clair County, Illinois Guava action (a case where Mr. Gibbs has recently started signing his name to demand letters) should not be credited.  Although the verification in that case purports to be "notarized," the "notarization" consists of an illegible squiggle, and Prenda still has not disclosed the name, notary seal number, or state of registration of the purported notary.  Further, it also appears that Prenda may be playing games with the spelling of Alan Mooney.

## V.  RELIEF REQUESTED

**(a)    Substantial Monetary Sanction Against Prenda Law, Inc. in an Amount Sufficient to Have a Significant Deterrent Effect on a Repeat Bad Actor**

In order to have a meaningful deterrent effect on a litigation enterprise which has bragged about making millions of dollars in this kind of litigation, and which has

---

[21] "**(f) Non-Attorney's Electronic Signature.** Documents that are required to be signed by a person who is not the attorney of record in a particular action (verified pleadings, affidavits, papers authorized to be filed electronically by persons in pro per, etc.), may be submitted in electronic format bearing a "/s/" and the person's name on the signature line along with a statement that counsel has a signed original, e.g., "/s/ John Doe (original signature retained by attorney Mary Roe)." It is counsel's duty to maintain this original signature for one year after the exhaustion of all appeals. This procedure may also be followed when a hybrid electronic/paper document is filed, i.e., the conventionally served document may also contain an annotated signature in lieu of the original."

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

1    repeatedly ignored ethical duties, and skirted rules on perjury, a substantial sanction
2    is appropriate. Mr. Gibbs has filed 45 sham lawsuits in this district.  A sanction of
3    $10,000 per suit would work out to $450,000, which is an amount that would have a
4    meaningful deterrent effect on Prenda and its associated attorneys.  If the Court
5    deems that amount too high, perhaps the Court would consider instead a sanction of
6    $4,000 per case, which is the amount Ingenuity 13 has sought for up-front
7    settlements in the cases now before this Court.  *See* ECF No. 13-2, p. 1 (email from
8    Mr. Gibbs to Mr. Pietz offering to settle the 12-cv-8333 action for $4,000 at the
9    outset of litigation).

10        This sanction should be paid to the Clerk of Court by Prenda Law, Inc., and if
11   not satisfied by Prenda itself, the attorneys running Prenda, including Mr. Gibbs,
12   should make good on the amount owing as a matter of personal liability as attorneys
13   engaged in a fraudulent (but extremely profitable) enterprise.

14        Sanctions are also appropriate "when an attorney is cavalier or bent on
15   misleading the court; intentionally acts without a plausible basis; [or] when the
16   entire course of the proceedings was unwarranted." *Miera v. Dairyland Ins. Co.*, 143
17   F.3d 1337, 1342 (10th Cir. 1998) (quotations and internal citations omitted); *see also*
18   *In re: Estate of Ferdinand E. Marcos Human Rights Litigation*, Ninth Circuit No.
19   11-15487 (unpublished) (October 24, 2012) (affirming $353,600,000 contempt
20   judgment and $100,000 per day contempt sanction).[22]

21   **(b)    Award of Attorneys Fees and Costs, as Compensatory Sanction, Payable**
22   **          by Mr. Brett Gibbs**

23        On behalf of the putative John Doe defendant in 12-cv-8333, undersigned
24   counsel has billed substantial time in this matter.  Calling Prenda to account for its
25   various frauds on the Court is time-consuming, detail-oriented work.  Further, Mr.
26   Gibbs has filed several frivolous motions in this matter, including two identical

27

28   _____
     [22] A copy of this unpublished opinion is attached as <u>Exhibit DD</u>.

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS
FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

sanctions motions against the undersigned, and an entirely frivolous disqualification motion, which undersigned counsel spent considerable time responding to.  The total costs and attorneys fees billable to the client to date in this matter is likely to be close to $25,000.  If the Court so desires, undersigned counsel would be happy to substantiate these costs and fees at or after the hearing on the sanctions motion.

Undersigned counsel shares the Court's suspicion that Prenda's shell companies do not have any assets.  Indeed, in an opposition to a motion by a named defendant to require AF Holdings to post and undertaking to proceed with the case, Mr. Gibbs specifically argued that the undertaking should not be granted because, if it was, AF Holdings could not pay it.  *See AF Holdings v. Navasca*, N.D. Cal. No. 12-cv-2396-EMC, ECF No. 34, p. 1 ("Plaintiff simply cannot afford to post the $48,000 required by the *Trinh* Court to pursue its claims.")

Further, at the February 19, 2013 30(b)(6) deposition of AF Holdings, the company's corporate representative Paul Hansemeier testified that AF Holdings has "never recognized any income" and that all of the company's assets fit into one of two categories.  The first asset category is that AF Holdings owns copyrights. According to Mr. Hansemeier, the second class of assets is that, to the extent that AF Holdings has cash, ***all of the cash is located in the client trust accounts*** of AF Holdings' various attorneys, including Prenda Law, Inc. and the Anti-Piracy Law Group. Mr. Hansemeier testified that aside from reimbursement for costs and attorneys fees, all of the rest of AF Holdings money simply sits in its attorneys' trust accounts, so it can be used to finance further litigation.[23]

Although undersigned counsel is loathe to do so, under the circumstances of this case, it is respectfully requested that the attorneys fee award be made payable by Mr. Gibbs.  It seems wrong that a massive enterprise that brags about making millions of dollars should somehow avoid paying attorneys fees by pleading penury.

---

[23] Undersigned counsel is doing his best to faithfully render this testimony, which was offered earlier today.

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

*See Mick Haig Prods. E.K. v. Does 1-160*, 687 F.3d 649, 652 (5th Cir. 2012) (upholding sanctions entered against a mass BitTorrent copyright plaintiff's attorney).  Further, ***the imposition of attorney fees "must be available in appropriate circumstances notwithstanding a private party's effort to cut its losses and run out of court, using Rule 41 as an emergency exit***." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 390 (1990) (citing Danik, Inc. v. Hartmarx Corp., 875 F.2d 890, 895 (D.C. 1989)).

**(c)      Striking of the Complaint With Prejudice, and Specific Factual Findings**

The putative John Doe in 12-cv-8333 further requests that, as a sanction, the complaint in this matter be stricken with prejudice.  *See id.*

In addition, it is requested that the Court find that the AF Holdings cases in this district are fraudulent, "sham" litigation because they are founded on forged copyright assignment agreements, making the entire action illegitimate. *Kaiser Foundation, supra*, 552 F. 3d at 1045

Similarly, it is requested that the Court find that the Ingenuity 13 cases in this district are fraudulent, "sham" litigation because the cases were brought for an improper purpose, without regard to the merits.  *Id.*

It is also requested that the Court find that Prenda "excited" the AF Holdings and Ingenuity 13 cases in this district, and that these cases were brought "with a corrupt or malicious intent to vex and annoy."  *See* Cal. Pen. Code §§ 158–59.  If the Court is inclined to consider the entry of a vexatious litigant or pre-filing sanction, undersigned counsel would be willing to further brief the issue.

**(d)      Such Other Relief as the Court Deems Just and Proper**

To the extent other sanctions may be appropriate, such further measures are left to the sound discretion of the Court.

-32-

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**

# VI. CONCLUSION

The conduct of Prenda and its "of counsel" Mr. Gibbs in these cases undermines the integrity of the courts and the public's confidence in the justice system.  Here, Prenda has shown is that it is willing to do just about anything to obtain grist for its national "settlement" mill.  Repeatedly, in hundreds of actions filed in courts across the country, Prenda has resorted to misrepresentations, half-truths, and questionable tactics, if not outright fraud, forgery, and identity theft. Until now, Prenda has gotten away with quite a lot of these kinds of tactics because it simply abandons its lawsuits, via a voluntary dismissal, after obtaining subpoena returns, and some settlements.  Indeed, as noted above, Mr. Gibbs is already at it again, now sending out demand letters on behalf of Guava, LLC, which is now purportedly owned by Livewire Holdings, LLC not a mystery trust. Exactly who is responsible for the worst of Prenda's actions here may not yet be clear, but this is the archetypical type of case, where there is a pattern of bad action that is done in such a way to avoid scrutiny, where a major sanctions is appropriate as a deterrent.  This Court is urged not to go easy on Mr. Gibbs or Prenda Law.


Respectfully submitted,

DATED: February 19, 2013                    THE PIETZ LAW FIRM


                                            */s/ Morgan E. Pietz*

                                            Morgan E. Pietz
                                            THE PIETZ LAW FIRM
                                            Attorney for Putative John Doe(s)
                                            Appearing on Caption

**PUTATIVE JOHN DOE'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS AND REQUEST FOR RELIEF**