# **EXHIBIT B**

1  Nicholas Ranallo, Attorney at Law #275016
2  371 Dogwood Way
   Boulder Creek, CA 95006
3  Telephone No.: (831) 703 - 4011
   Fax No.: (831) 533-5073
4  Email: nick@ranallolawoffice.com
   Attorney for Defendant Joe Navasca

5

6

7

8                    UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
   AF HOLDINGS, LLC.,                      Case No. 3:12-cv-02396-EMC
11
          Plaintiff,
12                                          **NOTICE OF DEPOSITION OF AF**
   v.                                       **HOLDINGS, LLC**
13
   JOE NAVASCA                              Date:  February 19, 2013
14                                          Time: 10:00 a.m.
15        Defendants.
                                            Location:
16                                          225 Bush Street
                                            16th Floor
17                                          San Francisco, CA 94104

18

19      **PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 30(b)(6),** Defendant Joe

20  Navasca shall take the deposition upon oral examination of AF Holdings, LLC., at the Premier

21  Business Center, Standard Oil Building, 225 Bush Street, 16th Floor, in San Francisco, California,

22  94104, commencing at 10:00 a.m. on February 19, 2013.  The deposition shall continue from day

23  to day thereafter until completed.  The deposition will be conducted under oath and transcribed by

24  stenographic means.  AF Holdings will be examined upon the topics described in Section A,

25  below, and is required to designate and produce one or more officers, directors, managing agents,

26  or other persons to testify on its behalf.

27      Notice is further given that, pursuant to Fed. R. Civ. P. 30(b)(2) and Fed. R. Civ. P. 34, the

28

---

                              1

EXHIBIT 100
Deponent
Date
WWW.DEPOBOOK.COM

1    deponent is required to produce at said deposition the documents and tangible things identified in

2    Section B herein.

3

4    **Section A.  Subjects of Examination**

5        AF Holdings will be examined upon each of the following subjects, for each of which AF

6    Holdings is required to designate and produce one or more officers, directors, managing agents or

7    other persons to testify on its behalf.

8      1)   Circumstances surrounding the execution of the assignment agreement attached hereto as

9         Exhibit A and attached as an Exhibit to the Amended Complaint in this matter ("the

10        assignment"), including the identities and locations of the document's signatories, details

11        of execution, and the identity of other individuals with personal knowledge regarding its

12        signatories and execution;

13      2)   Whether "Alan Cooper," the individual whose name appears on the assignment attached

14        hereto as Exhibit A, is the same individual as the Minnesota Alan Cooper, represented by

15        Paul Godfread, who was formerly employed by John Steele and filed the documents

16        annexed hereto as Exhibit B in court proceedings in Minnesota, including 0:12-cv-02687

17        in the District of Minnesota.

18      3)   All license and assignment agreements, and any other grants of rights, however titled,

19        relating to the work that forms the basis of the instant suit ("Popular Demand", hereinafter

20        "the work") including grants to AF Holdings from third parties, and from AF Holdings or

21        Heartbreaker Productions to any non-parties, including any licenses, assignments, or other

22        agreements with Heartbreaker Productions regarding the work.

23      4)   All license and assignment agreements, and any other grants of rights, however titled, from

24        Heartbreaker Productions to any third parties relating to the work.

25      5)   AF Holdings corporate policies regarding business records, (including destruction or

26        retention of such records), including financial records and all records associated with

27        acquisition, distribution, licensing, or sale of its works.

28

Notice of Deposition

6) AF Holdings corporate structure, including past and present officers, directors, members, managers, and all other beneficial owners or other individuals with a pecuniary interest in the outcome of AF Holdings BitTorrent litigation campaign;

7) Identity and terms of employment for any and all AF Holdings employees and independent contractors utilized by AF Holdings.

8) Creation and operation of AF Holdings, including principal business activities, identities of initial members and managers, initial capitalization, insurance, and day to day business operation;

9) AF Holdings' revenues derived from the authorized licensing and distribution of the work, including distribution of such revenues by AF Holdings and the identities of the recipients;

10) AF Holdings revenues derived from BitTorrent copyright litigation related to the work, including the distribution of said revenues by AF Holdings and the identities of the recipients;

11) Financial and contractual relationship between AF Holdings and 6881 Forensics, including the identity of any members, managers, officers, directors, or employees with an interest in both entities

12) Financial and contractual relationships between AF Holdings and Heartbreaker Productions, including the identity of any members, managers, officers, directors, or employees with any interest in both entities.

13) AF Holdings knowledge regarding its BitTorrent copyright infringement campaign, including the reliability of IP address identification and the process by which it identifies infringers based on ISP subscriber information;

14) Process by which AF Holdings determines which IP addresses, and subsequently individuals, to sue, including how Joe Navasca was chosen as the defendant in the instant action;

15) The facts upon which AF Holdings has based its identification of Joe Navasca as the infringer of its copyright in the instant suit, and the identity and location of any individuals

or documents supporting such identification;

16) Identity of all persons or entities with a pecuniary interest in the outcome of the instant suit and their relationship to AF Holdings;

17) Identity of all individuals with decision-making and settlement authority related to AF Holdings' BitTorrent copyright infringement litigation, and all individuals at AF who authorized the settlements presented, if any;

18) Role of Mark Lutz (former paralegal for Prenda Law) in AF Holdings, including responsibilities, date and terms of employment and source of Mr. Lutz knowledge regarding the assignment in the instant action, as well as the present physical location of Mr. Lutz;

19) Identity of persons at AF Holdings who authorized the hiring of counsel to pursue infringement claims and who oversee the prosecution of such claims;

20) Information related to AF Holdings insurance policies and indemnification agreements, both past and present, that may impact the parties in this litigation or otherwise relate to AF Holdings financial liability for adverse judgments.

## Section B – Request for Production of Documents and Tangible Things

1. All agreements between AF Holdings and Heartbreaker Productions regarding the work at issue in the instant suit, including all licenses, assignments, or other agreements, however named, that affect the right of either signatory to exploit the work in any manner.

2. All agreements between AF Holdings and any third party regarding the work at issue in the instant suit, including all licenses, assignments or other agreements, however named, that affect the right of any third party to exploit the work.

3. All correspondence between AF Holdings and Heartbreaker Productions regarding the work at issue in this suit, the purported grant of rights that forms the basis for AF Holdings claims of standing, or the rights of either party to exploit the work that forms the basis of this suit and other works created by Heartbreaker Productions.

4. All documents supporting AF Holdings' claim that Joe Navasca has infringed upon its copyrights, as described in the complaint in this matter;

5. All documents related to AF Holdings decision to sue Joe Navasca as the infringer of the work,

6. All documents related to any "valuable consideration" obtained by Heartbreaker Productions in consideration of the purported assignment that forms the basis for AF Holdings claims of standing/copyright ownership in this matter, including any cancelled checks or other proof of payment;

7. AF Holdings' Articles of Incorporation or Organization, however named, as well as any membership agreements or other operating agreements describing the management and control of AF Holdings.

8. AF Holdings' operating agreement, and any other agreement(s) governing the rights and liabilities of AF Holdings' members or managers with respect to the company or each other.

9. All documents related to Mark Lutz employment at AF Holdings, including but not limited to employment agreements.

10. Identity of all AF Holdings employees and independent contractors utilized by AF Holdings.

11. All documents related to or concerning the topics identified in section A.

12. A copy of the work at issue, as transmitted to the copyright office.

NICHOLAS RANALLO, ATTORNEY AT LAW

DATED: January 18, 2013

By: _____ /s/ Nicholas Ranallo _____

Nicholas Ranallo (Cal Bar # 275016)
Attorney for Joe Navasca
371 Dogwood Way
Boulder Creek, CA 95006
(831) 703-4011
Fax: (831) 533-5073
nick@ranallolawoffice.com

## CERTIFICATE OF SERVICE

THE UNDERSIGNED HEREBY CERTIFIES that on this 18th day of January, 2013, a copy of the foregoing deposition notice was served via email on Brett Gibbs, counsel for AF Holdings, at blgibbs@wefightpiracy.com, in accordance with Fed. R. Civ. Proc. 5(b)(2)(E), in accordance with prior agreement of the parties' counsel.  A courtesy copy shall be delivered via regular mail to:

Brett Gibbs
38 Miller Avenue, #263
Mill Valley, CA 94941

/s/          Nicholas R. Ranallo

Nicholas Ranallo, Attorney at Law

Notice of Deposition

**Exhibit A**

# COPYRIGHT ASSIGNMENT AGREEMENT

This Copyright Assignment Agreement is dated effective as of December 20, 2011, by and among Heartbreaker Digital LLC ("Assignor") and AF Holdings, LLC, a Nevis limited liability company ("Assignee").

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    Assignment. Assignor hereby irrevocably assigns, conveys and otherwise transfers to Assignee, and its respective successors, licensees, and assigns, all rights, title and interest worldwide in and to that certain work titled "Popular Demand" and associated with copyright registration number PA0001754383 (collectively the "Work") and all proprietary rights therein, including, without limitation, all copyrights, trademarks, design patents, trade secret rights, moral rights, and all contract and licensing rights, and all claims and causes of action of respect to any of the foregoing, whether now known or hereafter to become known. In the event Assignor has any right in the Work which cannot be assigned, Assignor agrees to waive enforcement worldwide of such right against Assignee, its distributors, and customers or, if necessary, exclusively license such right worldwide to Assignee. These rights may be assigned by Assignee.

2.    Representations and Warranties. Assignor represents and warrants that: (a) the Work was created solely by Assignor, Assignor's full-time employees during the course of their employment, or independent contractors who assigned all right, title and interest in their work to Assignor; (b) Assignor is the owner of all rights, title and interest in the tangible forms of the Work and all intellectual property rights protecting them; (c) the Work and the intellectual property rights protecting them are free and clear of all encumbrances, including, without limitation, security interests, licenses, liens, charges or other restrictions; (d) the use, reproduction, distribution, or modification of the Work does not and will not violate the rights of any third parties in the Work including, but not limited to, trade secrets, publicity, privacy, copyrights, and patents; (e) the Work is not in the public domain; and (f) Assignor has full power and authority to make and enter into this Agreement. Assignor agrees to defend, indemnify, and hold harmless Assignee, its officers, directors and employees for any claims, suits or proceedings alleging breach of these warranties.

3.    Entire Agreement. This Agreement constitutes the entire agreement between Assignor and Assignee with respect to the subject matter herein and supersedes any prior or contemporaneous agreements, written or oral.

4.    Modifications. This Agreement may be modified only by a written agreement signed by both Assignor and Assignee.

5.    Governing Law. This Agreement shall be governed by and enforced in accordance with the State of California and the Ninth Circuit, without giving effect to any conflicts of laws principles.

6.      Severability. If one or more provisions of this Agreement are held to be illegal or unenforceable under applicable law, such illegal or unenforceable portion(s) shall be limited or excluded from this Agreement to the minimum extent required so that this Agreement shall otherwise remain in full force and effect and enforceable in accordance with its terms.

7.      Assignment. Assignee may assign or otherwise transfer this Agreement without consent or notice.

8.      Perfection. Assignors agree at the request and expense of Assignee to execute any documents or perform any actions which Assignee may request to perfect this assignment or otherwise implement this Agreement. Assignor agrees that this assignment may be submitted by Assignee to the United States Copyright Office to reflect the assignment.

9.      Confidentiality. Neither party shall reveal the terms of this Agreement to any third party unless ordered to do so by a court of competent jurisdiction.

10.      Jurisdiction. Each party agrees to submit to the exclusive personal jurisdiction and venue of the courts of the Island of Nevis with respect to any disputes arising hereunder.

Agreed and Accepted as of the first date written above.

Raymond Rogers, on behalf of.

Assignor
Heartbreaker Digital LLC

Alan Cooper, on behalf of:

Assignee
AF Holdings, LLC

**Exhibit B**

Case 2:12-cv-08333-ODW-JC Document 60-2 Filed 03/06/13 Page 12 of 104 Page ID
#:1604
CASE 0:12-cv-02687-RHK-JJG Document 11 Filed 11/29/12 Page 1 of 25

# GODFREAD LAW FIRM, P.C.
100 South Fifth Street, Suite 1900, Minneapolis, MN 55402

November 29, 2012

**Via ECF**
The Honorable Richard H. Kyle
772 Federal Building
316 N. Robert Street
St. Paul, MN 55101

The Honorable Joan N. Erickson
12W U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

**Re:    Alan Cooper - AF Holdings, LLC and Ingenuity13, LLC**

Dear Judge Kyle and Judge Erickson:

I represent Alan Cooper who is concerned that his name or identity is being used
without his consent as the CEO of AF Holdings, LLC, a plaintiff in several cases pending in
the District of Minnesota. His name appears in attachments to the pleadings in these cases.
Perhaps, the CEO of AF Holdings has the same name as my client, we have substantial
information that would indicate that this is not a mere coincidence. I would like to be
certain my client is not at risk of liability for the outcome of these cases and others like it
and that he is not being made a front for the litigation activities of plaintiffs. I have
attempted to contact counsel for AF Holdings and their reaction has not been reassuring.

My client had for several years acted as a caretaker for a Minnesota property owned
by an attorney by the name of John Steele. When visiting his property, Steele had on
numerous occasions bragged to my client about a plan involving massive copyright litigation
in multiple jurisdictions. He also specifically instructed my client to contact him if anyone
asked about various corporations, that Cooper was to call him. When Cooper confronted
Steele about that, Steele told him not to worry about it. Needless to say, my client was
suspicious, but did not know what to make of this situation. Upon learning about the many
lawsuits filed by AF Holdings and learning that AF Holdings has a CEO with an identical
name he began to investigate further, eventually prompting him to retain counsel.

Steele has filed numerous lawsuits across the country similar to the ones before this
court involving copyright infringement over Bittorrent and may be heavily involved in the
cases filed here by AF Holdings. Steele has appeared on behalf of AF Holdings in at least
one case (see Ex. A). Steele also shares an office address (161 N. Clark Street, Chicago, IL
60601) with the office listed on the website of plaintiff's counsel (www.wefightpiracy.com)
(see Ex. B and C). Steele's former law firm, Steele Hansmeier, appears to be the predecessor
firm to Prenda Law and used the same domain name (see Ex. D - a screenshot of a cached
copy of Steele's law firm Steele Hansmeier at www.wefightpiracy.com in February 2011)
Steele Hansmeier has also represented Ingenuity 13, which also appears to have a similar
case pending here (0:12-cv-02686-RHK-JJG) which apparently also has a manager named
Alan Cooper. (See Ex. E, page 8). From these exhibits, it is also clear that attorney Dugas
shares a phone number with attorney Gibbs of Steele Hansmeier (415-325-5900).

Case 2:12-cv-08333-ODW-JC Document 69-2 Filed 03/06/13 Page 13 of 104 Page ID
#:1605
CASE 0:12-cv-02697-RHK-JJG Document 11 Filed 11/29/12 Page 2 of 25

Hon. Richard H. Kyle and Hon. Joan N. Ericksen
November 29, 2012
Page Two

When investigating this matter and calling the number listed on the
wefightpiracy.com website, I confirmed that Steele is currently "of counsel" with Prenda
Law. I called and emailed local counsel, Michael Dugas to give notice of representation and
to find out if there was in fact a different Alan Cooper with AF Holdings. Within an hour
after giving notice to Prenda Law and local counsel of my representation, Steele himself
called my client several times in a row and asked if he had been talking to attorneys in
Minnesota. Because I had not yet heard from attorneys Dugas or Steele, I looked for an
alternative phone number for attorney Dugas and found a different number than the one
that appears on the pleading (312-880-9160, See Ex. F). This number appears as attorney
Steele's number in Exhibit A as well. Calling that number, I heard a voicemail message which
said "Prenda Law." I again left a message, but have received no response. Because I have
received no response from Dugas or Steele, and because Steele has contacted my client, my
suspicions are now increased.

Today, I received an email from another attorney from Prenda Law, Paul Duffy,
suggesting that their client, AF Holdings, probably would not volunteer information. I
reasserted my request to confirm that there was another Alan Cooper at AF Holdings.
Shortly before sending this letter, Duffy emailed me again and said that I should not contact
his office again.

My client would like certainty that his identity is not being used without his
knowledge and against his will as the would be CEO of AF Holdings, LLC or as a manager
of Ingenuity13, LLC. Because both are Nevis based companies, discovering the true officers
or directors is at best difficult. I have attempted to contact plaintiffs' attorneys, but have not
received a response that would allow me to advise my client that he should not be
concerned.

I respectfully request leave to file a motion to intervene and to seek discovery
regarding the true identity of AF Holdings, LLC's CEO and Ingenuity 13, LLC's manager,
Alan Cooper.

Sincerely,

Paul Godfread

Exhibits

cc:     John Steele, Esq. (via email)
        Paul Duffy, Esq. (via email)
        Michael Dugas (via ECF)

paul@godfreadlaw.com
www.godfreadlaw.com                                    phone 612-284-7325
                                                                        fax 612-465-3609

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

AF HOLDINGS LLC,          )
                                   )
        Plaintiff,        )
                                   )
v.                           )    Case : 1:12-cv-00048
                                   )
DOES 1 – 1058,          )    Judge : Hon. Beryl A. Howell
                                   )
        Defendants.     )
                                   )

## MOTION FOR PRO HAC VICE ADMISSION OF JOHN L. STEELE

I, Paul A. Duffy, hereby move pursuant to Local Civil Rule 83.2(d) for the *pro hac vice* admission of John L. Steele to the bar of this Court to act as co-counsel in this action. Mr. Steele is of counsel with the firm of Prenda Law, Inc., and is a member in good standing of the bar of the State of Illinois and the U.S. District Court for the Northern District of Illinois. On the basis of the foregoing, it is respectfully requested that this Court admit Mr. Steele *pro hac vice* for the purpose of appearing and participating as co-counsel on behalf of Plaintiff, AF Holdings, Inc., in this action.

Dated: April 20, 2012               Respectfully submitted,

                                   By:   /s/ Paul A. Duffy

                                   Paul A. Duffy (D.C. Bar # IL0014 )
                                   Prenda Law Inc.
                                   161 N. Clark Street, Suite3200
                                   Chicago, IL  60601
                                   Telephone: (312) 880-9160
                                   Facsimile:  (312) 893-5677
                                   Attorneys for Plaintiff,
                                   AF Holdings LLC

**Exhibit** A
**Pg** 1 of 5

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on April 20, 2012, I caused a true and correct copy of the foregoing Motion For Pro Hac Vice Admission to be electronically filed with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

Dated: April 20, 2012

/s/  Paul A. Duffy
Paul A. Duffy

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

AF HOLDINGS LLC,      )
                              )
      Plaintiff,      )
                              )
v.                     )    **Case : 1:12-cv-00048**
                              )
DOES 1 – 1058,      )    **Judge : Hon. Beryl A. Howell**
                              )
      Defendants.      )
                              )

## DECLARATION OF JOHN L. STEELE

I, John Steele, declare pursuant to 28 U.S.C. § 1746 and Local Civil Rule 83.2(d):

1. I am of counsel with the law firm of Prenda Law, Inc., counsel for Plaintiff, AF Holdings, LLC in the above-captioned action. I submit this declaration in support of Paul A. Duffy's Motion pursuant to Local Civil Rule 83.2(d) for the *pro hac vice* admission of John Steele to the bar of this Court.

2. My full name is John L. Steele.

3. My office address is 161 N. Clark Street, Suite 3200, Chicago, Illinois 60601. My office telephone number is (312) 880-9160.

4. I have also been admitted to practice before, and am a member in good standing of, the bars of the United States Court District Court for the Northern District of Illinois, and the State of Illinois.

5. I have not been disciplined by any bar.

6. I have been admitted *pro hac vice* to this Court in one case (1:12-mc-00150-ESH-AK) in the previous two years.

Exhibit A
Pg 3 of 5

7.      I do not engage in the practice of law from an office located in the District of

Columbia.  I am not a member of the District of Columbia bar, nor do I have an application

for membership pending.

I hereby declare under penalty of perjury under the laws of the United States of

America that the foregoing is true and correct.


Dated:          April 20, 2012


                                        /s/  John Steele
                                        _____

                                        John Steele
                                        Prenda Law Inc.
                                        161 N. Clark St., Suite 3200
                                        Chicago, IL 60601
                                        Telephone: (312) 880-9160
                                        Facsimile:  (312) 893-5677


Exhibit A
Pg 4 of 5

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| AF HOLDINGS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case : 1:12-cv-00048 |
| | ) |
| DOES 1 – 1058, | )   Judge : Hon. Beryl A. Howell |
| | ) |
| Defendants. | ) |
| | ) |

[PROPOSED] ORDER

Upon consideration of the Motion for *Pro Hac Vice* Admission of John L. Steele, it is

hereby

ORDERED that John L. Steele be specially admitted to appear and participate in the

above-captioned matter as counsel for Plaintiff AF Holdings, LLC.

Dated: April 20, 2012        _____

                                                    Hon. Beryl A. Howell
                                                    United States District Court Judge

Exhibit A
Pg 5 of 5

CASE 0:12-cv-02587-RHK-JJG Document 64-2 Filed 08/06/12 Page 19 of 104 Page ID #:1611

11/27/12        Chicago Divorce Lawyer, Child Support Attorney, Child Custody Lawyers, Family Law Attorneys – Ste...



### WELCOME TO THE STEELE LAW FIRM, LLC
### with Offices in Chicago, IL.

**Divorce And Family Law**

**Child Custody**

**Child Support**

**Modification & Enforcement**

**Collaborative Divorce & Mediation**

**Prenuptial & Postnuptial Agreements**

**Spousal Support / Maintenance**

**Domestic Violence & Orders of Protection**

**Adoption**

**Bankruptcy**

**Family Law • Bankruptcy • Divorce • Child Custody**
**Child Support • Prenuptial Agreements**

If you are going through a divorce, or if your financial troubles are leading you to consider bankruptcy, you now have the opportunity to take a situation that isn't working out and make it better.

All of our clients have unique personal problems that they need help with. We are in the business of solving these problems, whether they be related to family law matters, such as divorce, child custody or child support, or consumer bankruptcy matters. Contacting a lawyer can be the first step toward taking hold of your future and building a better life.

**If you are looking for an attorney who will do what it takes to get you relief from your legal concerns, contact us to schedule a free initial consultation about your case.**

**Quality Legal Assistance in Illinois**

The Steele Law Firm is one of Chicagoland's premier family law and consumer bankruptcy law firms. Our attorneys and staff are committed to providing high quality, accessible, compassionate service to our clients. We give each client and case the individual attention they deserve, and do everything in our power to reach our clients' overall needs and goals.

Our main office is located in the Loop in downtown Chicago, and we also have an office location in the Chicago suburb of Naperville. We represent clients with matters in Cook County, DuPage County, Kane County, Lake County, and Will County family courts, and the Northern, Southern and Central Districts of Illinois federal bankruptcy courts.

Whether you are looking for an advocate in a divorce proceeding, need help enforcing a child support order, want to know whether Chapter 7 or Chapter 13 bankruptcy is better for you, you need the advice and assistance of a skilled, experienced Illinois attorney to help you protect all of your legal rights.

Give us a call today at (312) 893-5888 or 1-800-DIVORCE (in Northern Illinois) or contact us to learn more about how we can help you or to set up a FREE consultation.

**STEELE LAW FIRM, LLC**
Phone: 312-893-5888 Toll-Free (in Northern Illinois):
1-800-DIVORCE

**Office Locations:**

**Downtown Chicago**
161 N. Clark St., Suite 5200
Chicago, IL 60601

**Naperville**
2135 CityGate Ln. Suite 300
Naperville, IL 60563

**Rate Information:**

Fixed Hourly Rates
Fixed Flat Fees Available
**FREE Consultation**

**We Accept Major Credit Cards**
• Visa
• MasterCard
• American Express
• Discover

**We Can Assist You With:**

• Matrimonial Law
• Family Law
• Divorce
• Domestic Relations
• Dissolution of Marriage and Legal Separation
• Litigation in Trial Courts
• Negotiated Settlements
• Alternative Dispute Resolution, such as Collaborative Law and Mediation
• Appeals to Reviewing Courts
• Financial Discovery and Analysis
• Property Division
• Retirement Benefits
• Qualified Domestic Relations Orders (QDROs)
• Paternity
• Adoption



Exhibit B
Pg 1 of 2

1/2

Case 2:12-cv-08333-ODW-JC Document 69-2 Filed 02/06/13 Page 20 of 104 Page ID #:1612
CASE 0:12-cv-02697-RHK-JJG Document 11 Filed 11/29/12 Page 9 of 25
11/27/12          Chicago Divorce Lawyer, Child Support Attorney, Child Custody Lawyers, Family Law Attorneys – Ste...

- Child Custody, including Joint Custody and Sole Custody
- Child Visitation
- Child Support
- Child Abductions
- Maintenance, formerly known as Alimony
- Spousal Support
- Marital Settlement Agreements
- Premarital Agreements
- Postnuptial Agreements
- Annulments
- Domestic Violence
- Post-Decree and Post-Judgment Issues and Modifications
- Restraining Orders
- Separation Agreements

**We are a debt relief agency.**

Exhibit B
Pg 2 of 2

11/27/12

Prenda Law INC.



About the Firm    Firm Resources    Attorneys    Practice Areas    Giving    Case Samples



Call: 1-800-380-0840

## DISCLAIMER

The information provided on Prenda Law, Inc.'s website is not intended to be legal advice, but merely conveys general information related to legal issues commonly encountered. This information is not intended to create any legal relationship between Prenda Law, Inc. Intellectual Property Attorneys or any attorney and the user. Neither the transmission nor receipt of these website materials will create an attorney-client relationship between sender and receiver.

The information is not guaranteed to be correct, complete, or current. We make no warranty, expressed or implied, about the accuracy or reliability of the information at this website or at any other website to which this site is linked.

Please note that recovery results vary per client. The recovery amounts in each case reflect the specific facts of that case. Further, recovery amounts in past cases are not a guarantee of future results.

There are no photos of clients on this website. Photos used on this website have been purchased from stock photography companies.

This website is not intended to create and does not create an attorney-client relationship between the user and Prenda Law, Inc. Intellectual Property Attorneys. An attorney-client relationship with us cannot be formed by reading the information at this website. The only way to become our client is through a mutual agreement in a formal letter. This website is not soliciting clients and does not propose any type of transaction. You should not act or rely on any information at this website without seeking the advice of an attorney. The determination of whether you need legal services and your choice of a lawyer are very important matters that should not be based on websites or advertisements.

THIS SITE IS PROVIDED ON AN "AS IS", "AS AVAILABLE" BASIS AND PRENDA LAW INC. EXPRESSLY DISCLAIMS ALL WARRANTIES, INCLUDING THE WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NONINFRINGEMENT.

PRENDA LAW DISCLAIMS ALL RESPONSIBILITY FOR ANY LOSS, INJURY, CLAIM, LIABILITY, OR DAMAGE OF ANY KIND RESULTING FROM, ARISING OUT OF OR ANY WAY RELATED TO (A) ANY ERRORS IN OR OMISSIONS FROM THIS SITE AND ITS CONTENT, INCLUDING BUT NOT LIMITED TO TECHNICAL INACCURACIES AND TYPOGRAPHICAL ERRORS, (B) ANY THIRD PARTY WEBSITES OR CONTENT THEREIN DIRECTLY OR INDIRECTLY ACCESSED THROUGH LINKS IN THIS SITE, INCLUDING BUT NOT LIMITED TO ANY ERRORS IN OR OMISSIONS THEREFROM, (C) THE UNAVAILABILITY OF THIS SITE OR ANY PORTION THEREOF, (D) YOUR USE OF THIS SITE, OR (E) YOUR USE OF ANY EQUIPMENT OR SOFTWARE IN CONNECTION WITH THIS SITE.

## PERSONAL INFORMATION SUBMITTED TO THE WEBSITE

Any information that you send us in an email message might not be confidential or privileged. Prenda Law, Inc. makes effort to protect personal information submitted by users of the website, including through the use of firewalls and other security measures on our servers. However, no server is 100 percent secure, and you should take this into account when submitting personal or confidential data about yourself on any website, including this one.

Additionally, while the website does not gather your name, email address or similar information about you without your knowledge or consent, the website does permit you to voluntarily submit data about yourself so that we can provide you with requested services. The information gathered will be incorporated into our mailing database and will not be sold to third parties for marketing purposes. At your request, we will remove your personal information from our files.

If you are interested in having us represent you, you should call us so we can determine whether the matter is one for which we are willing or able to accept professional responsibility. We will not make this determination by email communication.

The telephone numbers for our office are listed in this website. We reserve the right to decline any representation. We may be required to decline representation if it would create a conflict of interest with our other clients.

## PRACTICE JURISDICTIONS

Prenda Law, Inc. is an Illinois law firm. Always directly confirm with the individual attorney whom you contact whether he or she practices the type of law with which you need assistance in your jurisdiction.

Exhibit C

Pg 1 of 3

1/3

11/27/12

Prenda Law INC.

## TERMS OF USE MAY BE MODIFIED BY THE FIRM

Prenda Law, Inc. periodically changes, adds, or updates the material in this website without notice. Prenda Law, Inc. assumes no liability or responsibility for any errors or omissions in the contents of this website. Your use of this website is at your own risk. Under no circumstances shall Prenda Law, Inc. or any other party involved in the creation, production or delivery of this website be liable to you or any other person for any indirect, special, incidental, or consequential damages of any kind arising from your access to, or use of, this website.

## THIRD-PARTY WEBSITES

This website may occasionally contain links to third party websites for the convenience of our users. Prenda Law, Inc. does not endorse any of these third party sites and does not intent to imply any association between the firm and the party(ies) involved. Furthermore, Prenda Law, Inc. does not control these third party websites and cannot represent that their policies and practices will be consistent with these Terms of Use. If you use any links to websites not maintained by Prenda Law, Inc., you do so at your own risk. Prenda Law, Inc. is not responsible for the contents or availability of any linked sites. These links are provided only as a convenience to the recipient.

## LEGAL AND ETHICAL REQUIREMENTS

Prenda Law, Inc. has tried to comply with all legal and ethical requirements in compiling this website. We do not want to represent clients based on their review of any portion of this website that does not comply with legal or ethical requirements.

To the extent that the professional responsibility rules of any jurisdiction require us to designate a principal office or an attorney responsible for this website, Prenda Law, Inc. designates its office in 161 N Clark St., Suite 3200, Chicago, IL 60601 and its telephone number as (312) 880-9160.

## STATE ADVERTISING DISCLAIMERS

**Alabama:** No representation is made that the quality of the legal services to be performed is greater than the quality of legal services performed by other lawyers.

**Colorado:** Colorado does not certify attorneys as specialists in any field.

**Florida:** The hiring of a lawyer is an important decision that should not be based solely upon advertisements. Before you decide, ask us to send you free written information about our qualifications and experience.

**Illinois:** Unless otherwise stated, our attorneys claiming certification in an area of law are not certified by the Illinois Board of Legal Specialization.

**Iowa:** The determination of the need for legal services and the choice of a lawyer are extremely important decisions and should not be based solely upon advertisements or self-proclaimed expertise. This disclosure is required by rule of the Supreme Court of Iowa.

NOTICE TO THE PUBLIC: Memberships and offices in legal fraternities and legal societies, technical and professional licenses, and memberships in scientific, technical and professional associations and societies of law or field of practice do not mean that a lawyer is a specialist or expert in a field of law, nor do they mean that such a lawyer is necessarily any more expert or competent than any other lawyer. All potential clients are urged to make their own independent investigation and evaluation of any lawyer being considered. This notice is required by rule of the Supreme Court of Iowa.

**Kentucky and Oregon:** THIS IS AN ADVERTISEMENT.

**Mississippi:** The Mississippi Supreme Court advises that a decision on legal services is important and should not be based solely on advertisements.

**Missouri:** Neither the Supreme Court of Missouri nor the Missouri Bar reviews or approves certifying organizations or specialist designations.

**Nevada:** The State Bar of Nevada does not certify any lawyer as a specialist or expert.

**New Mexico:** LAWYER ADVERTISEMENT.

**Tennessee:** None of the attorneys in this firm are certified as a Civil Trial, Criminal Trial, Business Bankruptcy, Consumer Bankruptcy, Creditor's Rights, Medical Malpractice, Legal Malpractice, Accounting Malpractice, Estate Planning or Elder Law specialist by the Tennessee Commission on Continuing Legal Education and Specialization. Certification as a specialist in all other listed areas is not currently available in Tennessee.

**Wyoming:** The Wyoming State Bar does not certify any lawyer as a specialist or expert. Anyone considering a lawyer should independently investigate the lawyer's credentials and ability, and not rely upon advertisements or self-proclaimed expertise.

## LAWYER'S LISTINGS

The information in the directory of lawyers is provided by the listees. Prenda Law, Inc. does not warrant the validity of the information, nor does it guarantee the quality of the work product.

The determination of the need for legal services and the choice of a lawyer are extremely important decisions and should not be based solely upon advertisements or self-proclaimed expertise. Prenda Law, Inc. does not review the contents of the listings, which are provided by the listees or any links; Prenda Law, Inc. is not responsible for any material or information contained in the linked sites or provided by listees.

A description or indication of limitation of practice by a lawyer does not mean that any agency or board has certified such lawyer as a specialist or expert in any indicated field of law practice, nor does it mean that such lawyer is necessarily any more expert or competent than any other lawyer.

All potential clients are urged to make their own independent investigation and evaluation of any lawyer being considered.

## OWNERSHIP, LICENSE & RESTRICTIONS ON USE

As between Prenda Law, Inc. and you, all right, title and interest (including all copyrights, trademarks and other intellectual property rights) in this website belongs to Prenda Law, Inc., its licensors, or its listees. In addition, the names, images, pictures, logos and icons identifying Prenda Law, Inc. products and services in many countries are proprietary marks of Prenda Law, Inc. and/or its subsidiaries or affiliates. Except as expressly provided below, nothing contained herein shall be construed as conferring any license or right, by implication, estoppel or otherwise, under copyright or other intellectual property rights.

Exhibit C
Pg 2 of 3

Case 2:12-cv-08333-ODW-JC Document 69-2 Filed 03/06/13 Page 23 of 104 Page ID #:1615

CASE 0:12-cv-02687-RHK-JJG Document 11 Filed 11/29/12 Page 12 of 25
11/27/12
Prenda Law INC.

You are hereby granted a nonexclusive, nontransferable, limited license to view and use information retrieved from this website provided solely for your personal, informational, non-commercial purposes, and provided you do not remove or obscure the copyright notice or other notices. Except as expressly provided above, no part of this website, including but not limited to materials retrieved there from and the underlying code, may be reproduced, republished, copied, transmitted, or distributed in any form or by any means. In no event shall materials from this website be stored in any information storage and retrieval system without prior written permission from Prenda Law, Inc. Intellectual Property Attorneys.

Use, duplication, or disclosure by or for the United States Government is subject to the restrictions set forth in DFARS 252.227-7013 (c)1)(ii) and FAR 52.227-19.

## LIMITATION OF LIABILITY

A covered party (as defined below) shall not be liable for any direct, indirect, incidental, special, or consequential damages of any kind whatsoever (including, without limitation, attorneys' fees and lost profits or savings) in any way due to, resulting from, or arising in connection with this site, including its content, regardless of any negligence of any covered party. "Covered party" means Prenda Law, Inc., its affiliates, its listees, and any officer, director, employee, subcontractor, agent, successor, or assign Prenda Law, Inc., its affiliates, and its listees.

## GOVERNING LAWS IN CASE OF DISPUTE; JURISDICTION

These Terms of Use shall be governed by and construed in accordance with the laws of the State of Illinois, USA, as they apply to agreements made and solely performed therein. Disputes arising hereunder shall be exclusively subject to the jurisdiction of the federal courts of the United States of America and/or the state courts of Illinois and jurisdiction therefore shall rest solely in Illinois, USA.

## ENTIRE AGREEMENT; SEVERABILITY

These Terms of Use incorporate by reference any notices contained on this Site and constitute the entire agreement with respect to your access to and use of this Site. If any provision of these Terms and Conditions is unlawful, void or unenforceable, then that provision shall be deemed severable from the remaining provisions and shall not affect their validity and enforceability.

Material available in Prenda Law, Inc. website is protected by copyright law.

Prenda Law, Inc. All rights reserved.



You may reproduce materials available at this site for your own personal use and for non-commercial distribution. All copies must include the above copyright notice. ATTORNEY ADVERTISING DISCLAIMER. The contents of this website should not be construed as legal advice on any specific fact or circumstance. Its content was prepared by Prenda Law Inc. (an Illinois law firm organized as a limited liability company with its principal office at 161 North Clark Street, Suite 3200, Chicago, Illinois 60601, Ph 1-800-380-0840) for general information purposes only. Your receipt of such information does not create an attorney-client relationship with Prenda Law Inc. or any of its lawyers. You should not act or rely on any of the information contained here without seeking professional legal advice. Prior results referred to in these materials do not guarantee or suggest a similar result in other matters. Prenda Law Inc.'s lawyers are licensed in Illinois and a limited number of other jurisdictions. They and the Firm cannot file actions in all states without associating locally licensed attorneys and/or becoming admitted in that jurisdiction for a limited purpose.
Prenda Law Inc. lawyer responsible for the contents of this website is Paul Duffy.

CASE 0:12-cv-03268-RHK-JJG Document 11 Filed 11/29/12 Page 13 of 25
Case 2:12-cv-08333-ODW-PJK Document 69-2 Filed 02/06/13 Page 24 of 104 Page ID #:1616
11/28/12



Steele | Hansmeier PLLC

# STEELE | HANSMEIER

- Home
- About Us
- Services
- Contact Us
- Disclaimer

- Steele | Hansmeier Jun 19, 2010 Steele | Hansmeier PLLC is a law firm dedicated to eradicating digital piracy. We represent prominent content producers and commence legal action against individuals and businesses who steal our client's content.



- Combating Piracy in the Digital Age Jun 19, 2010 Our practice includes addressing the unique legal issues posed by Internet-based piracy, where the vast majority of infringement occurs under the cover of IP addresses



- Preserving the Creative Arts Jun 19, 2010 We view our mission as preserving the creative arts for future generations. If left unchecked, digital piracy represents an existential threat to creative arts professionals around the world.

Exhibit D
Pg 1 of 4

CASE 0:18-cv-02687-RHK Document 1-1 Filed 11/29/12 Page 14 of 25
Case 0:12-cv-02687-RHK Document 69-2 Filed 02/06/13 Page 25 of 104 Page ID #:1617



- Steele | Hansmeier 

- Combating Piracy in the Digital Age 

- Preserving the Creative Arts 

Contact Us

# About Us

Steele | Hansmeier PLLC is a Chicago-based law firm that provides legal services to content producers and creative professionals. Our focus is pursuing individuals and businesses who infringe on the copyrights associated with our clients' creative works. Our practice includes addressing the unique legal issues posed by Internet-based piracy, where the vast majority of infringement occurs under the cover of Internet Protocol ("IP") addresses.

We view our mission as a small part of the overall effort to preserve the creative arts for future generations. In our view, the ease with which digital content is pirated represents an existential threat to the future of professional content producers. Our clients understand all too well the problems posed by the unauthorized redistribution of their copyrighted works, particularly given the capital investment associated with producing and marketing professional works.

# Services

The legal services offered by Steele | Hansmeier PLLC reflect the lifecycle of a creative work. Such services include:

- Due diligence efforts to determine whether a proposed creative work lacks originality or infringes on another creative work;
- Developing a plan for protecting and enforcing U.S. and international copyrights;
- Securing U.S. copyrights and coordinating with third parties to secure international copyrights in both Berne and non-Berne Convention countries; and
- Enforcing U.S. copyrights and coordinating with third parties to enforce international copyrights.

Many of our services involve coordinating with third party attorneys (e.g. international copyright work) and third party technology providers (e.g. copyright enforcement). Our consistent focus is to provide our clients with strong returns on the capital they invest in our time and that of our third party service providers.

top

# Due Diligence

Before investing substantial capital into the production and/or distribution of a creative work, a creative artist may wish to conduct a basic level of due

Exhibit D
Pg 2 of 4

11/28/12                                    Steele | Hansmeier PLLC

CASE 0:12-cv-02687-RHK Document 69-2 Filed 02/06/13 Page 26 of 104 Page ID #:1618
Case 0:12-cv-02687-RHK Document 11 Filed 11/29/12 Page 15 of 25

diligence into determining the degree to which their work resembles other copyrighted creative works. The methods for conducting this sort of due diligence vary based on the medium, through most forms of creative work lend themselves to digital due diligence. For example, an audio file can be digitally fingerprinted based on a variety of characteristics (e.g. rhythm, length, melody, etc.). This fingerprint can be compared to those of other audio files. Similar results would then be reviewed to determine whether a copyright issue exists. If such an issue exists, then the creative artist can attempt to obtain a license from the copyright holder of the original work. A creative artist's bargaining power is much stronger before they invest millions of dollar into marketing and distributing a creative work.

In 2008, Joe Satriani filed a copyright infringement lawsuit against the Grammy Award-winning band, Coldplay. Satriani's suit alleged that Coldplay's hit song, *Vida la Vida*, contained substantial portions of Satriani's, *If I Could Fly*. The parties eventually reached an out-of-court monetary settlement for an undisclosed financial sum.

In addition to avoiding infringement lawsuits, it is important to know whether a given creative work will even be afforded the protection of the copyright laws of the jurisdictions in which the artist intends to market the creative work. Steele | Hansmeier PLLC offers services to assist creative artists in conducting the forms of due diligence described in this section.

## Protection Planning

Another category of services offered by Steele | Hansmeier PLLC is assisting creative artists plan their copyright strategy in advance of the creation and/or publication of their creative works. Despite the existence of international treaties, such as the Berne Convention, the world as a whole essentially remains a patchwork of copyright laws with varying degrees of enforcement. By way of example, a creative artist's approach to copyright protection in the United States should look much different than the artists approach to copyright protection in China. We offer to assist creative artists in developing copyright protection strategies worldwide.

## Securing Copyrights

Once a creative work has been produced and/or published, it is generally important to register a copyright in every country where the copyright holder may wish to assert their rights. We offer to assist creative artists by coordinating the registration of their copyrights around the world, as required.

In the United States it is particularly important to register one's copyrights. As a general rule, copyright registration is a prerequisite to filing a copyright infringement lawsuit in U.S. federal court and a timely filing will preserve remedies that may be lost indefinitely if one does not timely register his or her copyright.

## Enforcing Copyrights

Copyright enforcement is a rapidly evolving field. Recent advances in communications technology have dramatically lowered the cost and increased the profitability of mass-piracy. As piracy evolves, so too must copyright enforcement strategies. Steele | Hansmeier PLLC offers services on the cutting edge of copyright enforcement, including: 1) DMCA enforcement services; 2) pirate pursuit services; and 3) advising on comprehensive paradigm shifts in copyright enforcement.

# Disclaimer

Our website is intended to provide only an overview of Steele | Hansmeier PLLC. Nothing on this website is meant to be or should be relied on as legal advice. Commentary on this website is not necessarily up to date. This website is not intended to be an offer to represent you, nor is it intended to establish an attorney client privilege.

Links

-Berne Convention
-Copyright Office
-Copyright Overview
-Copyright Statutes
-Creative Commons

Resources

-Patry Blog
-Geist Blog (Canadian law)
-IP Watch

Pages

- About Us
- Contact Us
- Disclaimer
- Services


Exhibit D
Pg 3 of 4

Case 2:12-cv-08333-ODW-JCG Document 69-2 Filed 02/06/13 Page 27 of 104 Page ID #:1619
CASE 0:12-cv-0265V-RHK-JJG Document 11 Filed 11/29/12 Page 16 of 25

Steele | Hansmeier PLLC

## Google fights piracy



According to an article published on Digital Trends, Google is taking steps to implement several anti-piracy measures, which will ideally make it more difficult for searchers to located pirated material. First, Google is increasing its responsiveness to takedown requests of so-called "reliable copyright holders." Second, its autocomplete function will filter out greater amounts of infringing results. [...]

## Pixar's president discusses copyright laws



According to a recently published article in the Salt Lake Tribune, Ed Catmull, president of Pixar Studios, linked international copyright protection to Pixar's ability to continue investing in the cutting-edge technology that's brought us such movies as Wall-E, Monster's, Inc., and Up – all of which are presumably registered trademarks of Pixar Animation Studios. At [...]

## Robin Hood is the week's most pirated movie



Ridley Scott's Robin Hood, starring Russell Crowe and Cate Blanchett, is not only popular in the theaters, but also among the BitTorrent crowd. According to BitTorrent news site, TorrentFreak, Robin Hood, despite its relatively lower IMDB rating, beat out both Iron Man 2 and the Expendables for the the top spot on the piracy chart [...]

© Copyright Steele | Hansmeier PLLC - Design by Kriesi.at - Wordpress Themes

- RSS
- Facebook
- Twitter
- flickr

top

Exhibit D

Pg 4 of 4

4/4

Case 2:11-mc-00084-JAM-DAD   Document 1   Filed 10/28/11   Page 1 of 8

1  Brett L. Gibbs, Esq. (SBN 251000)
   Steele Hansmeier PLLC.
2  38 Miller Avenue, #263
   Mill Valley, CA 94941
3  415-325-5900
   blgibbs@wefightpiracy.com
4
   *Attorney for Petitioner*
5

6

7                 IN THE UNITED STATES DISTRICT COURT FOR THE

8                       EASTERN DISTRICT OF CALIFORNIA

9

10  In the Matter Of a Petition By          )
                                            )
11  INGENUITY13 LLC,                        )     No.
                                            )
12                                          )     Judge:
                                            )
13                                          )     **VERIFIED PETITION TO**
                                            )     **PERPETUATE TESTIMONY**
14                                          )
                                            )
15

16            1.      Petitioner Ingenuity13 LLC by and through its undersigned attorney, hereby

17  petitions this Court for an order pursuant to Federal Rule of Civil Procedure 27 authorizing the

18  issuance of subpoenas *duces tecum* to the Internet Service Providers ("ISPs") listed on Exhibit A to

19  this petition.

20            2.      Petitioner is limited liability company organized and existing under the laws

21  of the Federation of Saint Kitts and Nevis. Petitioner produces adult entertainment content and this

22  content is being unlawfully reproduced and distributed over the Internet via the BitTorrent file

23  transfer protocol. An individual or individuals wrongfully reproduced and distributed Petitioner's

24  copyrighted works via the BitTorrent protocol in violation of Petitioner's exclusive rights under

25  United States Copyright Act, 17 U.S.C. §§ 101, *et seq*. Petitioner anticipates bringing a civil action

26  against the person or persons engaging in such unlawful activity. This action would be cognizable in

27  a United States court as United States courts have exclusive jurisdiction over copyright actions.

28  Without knowing the identity or identities of the anonymous infringers, Petitioner has no means to

Exhibit  *E*
Pg  1  of  8

Case 2:12-cv-08333-ODW-JC   Document 69-2   Filed 03/06/13   Page 29 of 104   Page ID
#:1621
CASE 0:12-cv-02667-RHK-JJG   Document 11   Filed 11/29/12   Page 18 of 25

1    name and serve the individual or individuals in an action with summons and complaint. The purpose

2    of this petition is to ascertain these identity or identities.

3            3.    Petitioner seeks the name, address, telephone number, e-mail address and

4    Media Control Access number of each account holder associated with the Internet Protocol ("IP")

5    addresses listed on Exhibit B to this petition. Each of the IP addresses was identified by Petitioner's

6    agents as being associated with infringing activity on the corresponding dates and times listed on

7    Exhibit B. The reasons to perpetuate the testimony are multiple. First, without this information

8    Petitioner has no means to name and serve a complaint on the infringing parties. Second, on

9    information and belief, this information is destroyed in the regular course of business and will be

10   unavailable to Petitioner after it is destroyed. An example of an ISP's data retention policy is shown

11   as Exhibit C. Finally, under the Cable Communications Policy Act, 47 U.S.C. § 551(c)(2)(B), a court

12   order is necessary to discover an account holder's identity.

13           4.    The names and addresses of the person or persons whom Petitioner expects to

14   be adverse parties are unknown to Petitioner. The individual or individuals responsible for infringing

15   Petitioner's works are known to Petitioner only by an IP address—a number that is assigned to

16   devices, such as computers, that are connected to the Internet. Petitioner used geolocation to trace

17   the IP addresses of the expected adverse party or parties to a point of origin within the State of

18   California.

19           5.    The name and address of each responding party is set forth on Exhibit A to

20   this petition. Petitioner is seeking the name, address, telephone number, e-mail address and Media

21   Control Access number of each account holder associated with the Internet Protocol ("IP") addresses

22   listed on Exhibit B to this petition.

23                           **FACTUAL ALLEGATIONS**

24           6.    Petitioner is the owner of the copyright for the motion picture set forth in

25   Exhibit D to this petition.

26           7.    As set forth below, Petitioner has actionable claims for direct and contributory

27   copyright infringement and a claim for civil conspiracy against the individual or individuals who

28

VERIFIED PETION TO PERPETUATE TESTIMONY

**Exhibit** E
**Pg** 2 **of** 8

Case 2:12-cv-02833-ORW-RCK Document 69-2 Filed 03/06/13 Page 30 of 104 Page ID
#:1622
CASE 0:12-cv-02668-RHK-JJG Document 11 Filed 11/29/12 Page 19 of 25

Case 2:11-mc-00084-JAM-DAD Document 1 Filed 10/28/11 Page 3 of 8

1    engaged in infringing activities via the IP addresses set forth on Exhibit B hereto based on the

2    parties' use of the BitTorrent protocol to illegally reproduce and distribute Petitioner's work(s).

3    **A. The Unknown Infringers used BitTorrent to Infringe Petitioner's Copyrights**

4        8.    BitTorrent is a modern file sharing method ("protocol") used for distributing

5    data via the Internet. BitTorrent protocol is a decentralized method of distributing data. Instead of

6    relying on a central server to distribute data directly to individual users, the BitTorrent protocol

7    allows individual users to distribute data among themselves by exchanging pieces of the file with

8    each other to eventually obtain a whole copy of the file. When using the BitTorrent protocol, every

9    user simultaneously receives information from and transfers information to one another.

10       9.    The BitTorrent protocol is an extremely popular method for transferring data.

11   A group of individuals transferring data among one another (the "swarm") will commonly include

12   peers from many, if not every, state in the United States and several countries around the world. And

13   every peer in the swarm participates in distributing the file to dozens, hundreds, or even thousands of

14   other peers.

15       10.   The BitTorrent protocol is also an extremely popular method for unlawfully

16   copying, reproducing, and distributing files in violation of the copyright laws of the United States. A

17   broad range of copyrighted albums, audiovisual files, photographs, software, and other forms of

18   media are available for illegal reproduction and distribution via the BitTorrent protocol.

19       11.   Efforts at combating BitTorrent-based copyright infringement have been

20   stymied by BitTorrent's decentralized nature. Because there are no central servers to enjoin from

21   unlawfully distributing copyrighted content, there is no primary target on which to focus anti-piracy

22   efforts. Indeed, the same decentralization that makes the BitTorrent protocol an extremely robust and

23   efficient means of transferring enormous quantities of data also acts to insulate it from anti-piracy

24   measures.

25       12.   The infringing parties in this action were all observed using the BitTorrent

26   protocol to unlawfully reproduce and distribute Plaintiff's copyrighted work by exchanging pieces

27   with one another either directly or via a chain of data distribution.

28

**Exhibit** E
**Pg** 3 **of** 8

1    **B. Each infringer installed a BitTorrent Client on his or her computer**

2          13.    The individual or individuals associated with the infringing activity installed a

3    BitTorrent Client onto his or her computer(s). Normal commercial computers do not come pre-

4    loaded with BitTorrent software. Each infringer must have separately installed on their respective

5    computers special software that allows peer-to-peer sharing of files by way of the Internet.  The

6    infringers use software known as BitTorrent clients. Among the most popular BitTorrent clients are

7    Vuze (formerly Azureus), μTorrent, Transmission and BitTorrent 7, although many others are used

8    as well.

9          14.    Once installed on a computer, the BitTorrent "Client" serves as the user's

10    interface during the process of uploading and downloading data using the BitTorrent protocol.

11    **C. The Initial Seed, Torrent and Tracker**

12          15.    A BitTorrent user who wants to upload a new file, known as an "Initial

13    Seeder," starts by creating a "torrent" descriptor file using the client he or she installed onto his or

14    her computer. The Client takes the target computer file, the "initial seed," in this case, one of the

15    copyrighted Works, and divides it into identically sized groups of bits known as "pieces." The Client

16    then gives each one of the computer file's pieces, in this case, pieces of one of the copyrighted

17    works, a random and unique alphanumeric identifier known as a "hash" and records these hash

18    identifiers in the torrent file.

19          16.    When another peer later receives a particular piece, the hash identifier for that

20    piece is compared to the hash identifier recorded in the torrent file for that piece to test whether the

21    piece is free of errors. In this way, the hash identifier works like an electronic fingerprint to identify

22    the source and origin of the piece and ensure that the piece is authentic and uncorrupted.

23          17.    Torrents files also have an "announce" section, which specifies the Uniform

24    Resource Locator ("URL") of a "tracker" and an "info" section, containing (suggested) names for

25    the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are

26    used by the Client on peer computers to verify the integrity of the data they receive. The "tracker" is

27    a computer or set of computers that a torrent file specifies and to which the torrent file provides

28

4

VERIFIED PETION TO PERPETUATE TESTIMONY

**Exhibit** *E*
**Pg** 4 **of** 8

1    peers with the URL address(es). The tracker computer or computers direct a peer user's computer to

2    another peer user's computer that have particular pieces of the file, in this case, one of the copyright

3    Works on them, and facilitates the exchange of data among the computers. Depending on the

4    BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer

5    can act as a tracker (decentralized tracking).

6    **D. Torrent Sites**

7         18.    "Torrent Sites" are websites that index torrent files that are currently being

8    made available for copying and distribution by the people using the BitTorrent protocol. There are

9    numerous torrent websites, such as www.torrentz.eu or thepiratebay.org.

10        19.    Upon information and belief, each infringer went to a torrent site to upload

11   and download one of the Petitioner's copyrighted Works.

12   **E. Uploading and Downloading a Work Through a BitTorrent Swarm**

13        20.    Once the initial seeder has created a torrent and uploaded it onto one or more

14   torrent sites, then other peers begin to download and upload the computer file to which the torrent is

15   linked (here, one of the copyright Works) using the BitTorrent Client that the peers installed on their

16   computers.

17        21.    The BitTorrent protocol causes the initial seed's computer to send different

18   pieces of the computer file, here, one of the copyrighted Works, to the peers who are seeking to

19   download the computer file. Once a peer receives a piece of the computer file, it starts transmitting

20   that piece to other peers. In this way, all of the peers and seeders are working together in what is

21   called a "swarm."

22        22.    Here, each infringing peer member participated in a swarm through digital

23   handshakes, the passing along of computer instructions, uploading and downloading, and by other

24   types of transmissions.

25        23.    In this way, and by way of example only, one initial seeder can create a

26   torrent that breaks a movie up into hundreds of piece saved in the form of a computer file, like the

27   Works here, upload the torrent file onto a torrent site, and deliver a different piece of the computer

28

<center>5</center>

<center>VERIFIED PETION TO PERPETUATE TESTIMONY</center>

Exhibit _E_

Pg _5_ of _8_

Case 2:12-cv-08333-ODW-JC Document 69-2 Filed 03/06/13 Page 33 of 104 Page ID #:1625
CASE 0:12-cv-02687-RHK-JJG Document 11 Filed 11/29/12 Page 22 of 25

Case 2:11-mc-00084-JAM-DAD Document 1 Filed 10/28/11 Page 6 of 8

1 file to each of the peers. The receiving peers then automatically begin delivering the piece they just
2 received to the other peers in the same swarm.

3     24. Once a peer, here an infringer, has downloaded the full file, the BitTorrent
4 Client reassembles the piece and the peer is able to view the video. Also, once a peer has
5 downloaded a full file, that peer becomes known as "an additional seed" because it continues to
6 distribute the torrent file which, in this case, was one of the copyrighted Works.

7 **F. Petitioner's Computer Investigators Identified Each Infringer's IP Address as an Infringer of Petitioner's Copyright Works**
8

9     25. Petitioner retained 6881 Forensics, LLC ("6881") to identify the IP addresses
10 used by the individual or individuals that were misusing the BitTorrent protocol to unlawfully
11 distribute Petitioner's copyrighted Work.

12     26. 6881 used forensic software, "BitTorrent Auditor" to audit a swarm for the
13 presence of infringing transactions.

14     27. 6881 extracted the resulting data gathered from the investigation, reviewed the
15 evidence logs, and isolated the transactions and the IP addresses associated with the copyrighted
16 work listed on Exhibit D hereto.

17     28. The IP addresses and hit dates contained on Exhibits B accurately reflects
18 what is contained in the evidence logs and show that:

19         (A) Each infringer copied a piece of one of Petitioners copyrighted work;
20 and

21         (B) Each infringer was part of a BitTorrent swarm.

22     29. 6881's technician analyzed each BitTorrent "piece" distributed by the IP
23 addresses listed on Exhibit B and verified that each piece consisted of part of the copyrighted work.

24     30. In order for petitioner to be able to take appropriate action to protect its
25 copyrighted work under 17 U.S.C. §§ 101, *et seq*, petitioner must be authorized issuance of
26 subpoenas *duces tecum* to the ISPs listed on Exhibit A to this petition.

27     31. No prior application has been made for the relief sought herein.

28

6
VERIFIED PETION TO PERPETUATE TESTIMONY

**Exhibit** E
**Pg** 6 **of** 8

Case 2:12-cv-08333-ODW-JC Document 69-2 Filed 03/06/13 Page 34 of 104 Page ID
#:1626
CASE 0:12-cv-02687-RHK-JJC Document 11 Filed 11/29/12 Page 23 of 25

Case 2:11-mc-00084-JAM-DAD   Document 1   Filed 10/28/11   Page 7 of 8

1       WHEREFORE, petitioner requests that an order be made and entered directing that petitioner

2   may compel the production of documents to the extent of determining the name, current (and

3   permanent) addresses, telephone numbers, e-mail addresses and Media Access Control addresses of

4   the person or persons whose IP addresses are listed in Exhibit B from the ISPs listed on Exhibit A

5   for the purposes of determining the true identity of unknown infringers.   To further support its

6   Petition, Petitioner attaches as Exhibit F its Memorandum of Law in Support of Petitioner's Verified

7   Petition to Perpetuate Testimony.

8

9

10  Respectfully Submitted,

11                                  Ingenuity13 LLC,

12  **DATED: October 28, 2011**

13                        By:      _/s/  Brett L. Gibbs, Esq._

14
                                 Brett L. Gibbs, Esq. (SBN 251000)
15                               Steele Hansmeier PLLC.
                                 38 Miller Avenue, #263
16                               Mill Valley, CA 94941
                                 415-325-5900
17                               blgibbs@wefightpiracy.com
                                 *Attorney for Plaintiff*
18

19

20

21

22

23

24

25

26

27

28

Exhibit E
Pg 7 of 8

| | |
|---|---|
| 1 | <p align="center">**NOTARIZED VERIFICATION**</p> |
| 2 | |
| 3 | I declare under penalty of perjury under the laws of the United States of America that the |
| 4 | foregoing information contained in this Verified Petition is, to the best of my knowledge, true and |
| 5 | correct. |
| 6 | |
| 7 | |
| 8 | **DATED: October 28, 2011**          /S/  Alan Cooper |

_/S/  Alan Cooper_

Alan Cooper, Manager of Ingenuity 13 LLC

I, Brett L. Gibbs, Esq., hereby confirm per Eastern District of California Local Rule 131(f) that counsel for Plaintiff has a signed original notarized version of the above Verified Petition.

**DATED: October 28, 2011**

By:          /s/  Brett L. Gibbs, Esq.

Brett L. Gibbs, Esq. (SBN 251000)
Steele Hansmeier PLLC.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com
*Attorney for Plaintiff*

8

VERIFIED PETION TO PERPETUATE TESTIMONY

Exhibit E
Pg 8 of 8



.1/29/12

CASE 0:12-cv-08333-ODW-JC Document 69-2 Filed 03/06/13 Page 36 of 104 Page ID #:1628

Case 2:12-cv-08333-ODW-JC Document ... Filed 11/29/12 Page 25 of 25

Skip to Main Content Logout My Account Search Menu New Civil Search Refine Search Back         Location . All MNCIS Sites - Case Search   Help

# REGISTER OF ACTIONS
## CASE NO. 27-CV-12-17079

| | |
|---|---|
| Guava LLC vs CenturyLink Inc | Case Type: **Civil Other/Misc.** |
| | Date Filed: **08/10/2012** |
| | Location: **- Hennepin Civil** |
| | Judicial Officer: **Steenson DuFresne, Mary E.** |

### PARTY INFORMATION

| | | Lead Attorneys |
|---|---|---|
| Defendant | CenturyLink Inc | **DAVID EARLE CAMAROTTO**<br>*Retained*<br>612-333-3000(W) |
| Plaintiff | Guava LLC | **MICHAEL KEVIN DUGAS**<br>*Retained*<br>312-880-9160(W) |

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 08/10/2012 | Motion |
| 08/20/2012 | Notice of Case Assignment (Judicial Officer: Steenson DuFresne, Mary E. ) |
| 09/24/2012 | Proposed Document |
| 09/24/2012 | Certificate of Representation |
| 09/24/2012 | Memorandum |
| 09/24/2012 | Affidavit-Other |
| 09/24/2012 | Affidavit of Service |
| 09/27/2012 | Notice of Appearance |
| 09/27/2012 | Notice of Appearance |
| 09/27/2012 | Motion |
| 09/27/2012 | Responsive Motion |
| 09/28/2012 | Order-Other |
| 09/28/2012 | Notice of Appearance |
| 10/01/2012 | Motion Hearing  (9:15 AM) (Judicial Officer Steenson DuFresne, Mary E.)<br>Result: Held |
| 10/01/2012 | Taken Under Advisement (Judicial Officer Steenson DuFresne, Mary E. ) |
| 10/12/2012 | Correspondence |
| 10/15/2012 | Correspondence |
| 10/29/2012 | Telephone Motion Hearing  (9:30 AM) (Judicial Officer Steenson DuFresne, Mary E.)<br>Result: Held |
| 10/29/2012 | Order Granting Motion (Judicial Officer: Steenson DuFresne, Mary E. ) |

### FINANCIAL INFORMATION

| | | | |
|---|---|---|---|
| | **Defendant CenturyLink Inc** | | |
| | Total Financial Assessment | | 422.00 |
| | Total Payments and Credits | | 422.00 |
| | Balance Due as of 11/29/2012 | | 0.00 |
| 09/25/2012 | Transaction Assessment | | 322.00 |
| 09/25/2012 | E-File Electronic Payment  Receipt # EP27C-2012-12417 | CenturyLink Inc | (322.00) |
| 09/25/2012 | Transaction Assessment | | 100.00 |
| 09/25/2012 | E-File Electronic Payment  Receipt # EP27C-2012-12420 | CenturyLink Inc | (100.00) |

| | | | |
|---|---|---|---|
| | **Plaintiff Guava LLC** | | |
| | Total Financial Assessment | | 622.00 |
| | Total Payments and Credits | | 622.00 |
| | Balance Due as of 11/29/2012 | | 0.00 |
| 08/20/2012 | Transaction Assessment | | 422.00 |
| 08/21/2012 | Mail Payment  Receipt # 1227-2012-19301 | Prenda Law Inc | (422.00) |
| 09/27/2012 | Transaction Assessment | | 100.00 |
| 09/27/2012 | E-File Electronic Payment  Receipt # EP27C-2012-12743 | Guava LLC | (100.00) |
| 09/28/2012 | Transaction Assessment | | 100.00 |
| 09/28/2012 | E-File Electronic Payment  Receipt # EP27C-2012-12816 | Guava LLC | (100.00) |



Exhibit F

Pg \_1\_ of \_1\_

Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel to Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| AF HOLDINGS LLC, | ) | No. 3:12-cv-02396 EMC |
| | ) | |
| Plaintiff, | ) | **ADR CERTIFICATION BY PARTIES** |
| v. | ) | **AND COUNSEL** |
| | ) | |
| JOHN DOE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ADR CERTIFICATION BY PARTIES AND COUNSEL**

Pursuant to Civil L.R. 16-8(b) and ADR L.R. 3-5(b), each of the undersigned certifies that he or she has:

    (1) Read the handbook entitled *"Dispute Resolution Procedures in the Northern District of California"* on the Court's ADR Internet site www.adr.cand.uscourts.gov *(Limited printed copies are available from the clerk's office for parties in cases not subject to the court's Electronic Case Filing program (ECF) under General Order 45);*
    (2) Discussed the available dispute options provided by the Court and private entities; and
    (3) Considered whether this case might benefit from any available dispute resolution options.

Dated: July 20, 2012                   _/s/ Salt Marsh, AF Holdings Owner_____
                                             PARTY

Dated: July 20, 2012                   _/s/ Brett L. Gibbs, Esq., Trial Counsel_
                                             COUNSEL

EXHIBIT 10
Deponent Hansmeier
Date 2/14   Rptr

1   Brett L. Gibbs, Esq. (SBN 251000)
    Steele Hansmeier PLLC.
2   38 Miller Avenue, #263
    Mill Valley, CA 94941
3   415-325-5900
    blgibbs@wefightpiracy.com
4
    *Attorney for Plaintiff*
5

6

7                  IN THE UNITED STATES DISTRICT COURT FOR THE

8                       NORTHERN DISTRICT OF CALIFORNIA

9                           SAN FRANCISCO DIVISION

10

11

12  AF HOLDINGS LLC,                      )      No. C-11-03335 JSC
                                          )
13                     Plaintiff,         )      **ADR CERTIFICATION BY PARTIES**
          v.                              )      **AND COUNSEL**
14                                        )
    DOES 1-96,                            )
15                                        )
                       Defendants.        )
16                                        )
                                          )

17

18             ADR CERTIFICATION BY PARTIES AND COUNSEL

19        Pursuant to Civil L.R. 16-8(b) and ADR L.R. 3-5(b), each of the undersigned certifies that he

20  or she has:

21        (1) Read the handbook entitled *"Dispute Resolution Procedures in the Northern District of*
22            *California"* on the Court's ADR Internet site www.adr.cand.uscourts.gov *(Limited*
              *printed copies are available from the clerk's office for parties in cases not subject to the*
23            *court's Electronic Case Filing program (ECF) under General Order 45)*;
          (2) Discussed the available dispute options provided by the Court and private entities; and
24        (3) Considered whether this case might benefit from any available dispute resolution options.
25

26  Dated: September 29, 2011                    /s/ Salt Marsh, AF Holdings Owner___
                                                          PARTY
27

28  Dated: September 29, 2011                    /s/  Brett L. Gibbs, Esq.,  Trial Counsel
                                                          COUNSEL

1   Brett L. Gibbs, Esq. (SBN 251000)
    38 Miller Avenue, #263
2   Mill Valley, CA 94941
    415-325-5900
3   blgibbs@wefightpiracy.com

4
    *Withdrawing Attorney for Plaintiff*
5
    Paul Duffy (Bar No. 224159)
6   Anti-Piracy Law Group
    161 N. Clark St., Suite 3200
7   Chicago, IL 60601
    Phone: (800) 380-0840
8   E-mail: paduffy@antipiracylawgroup.com

9
    *Incoming Attorney for Plaintiff*
10

11           IN THE UNITED STATES DISTRICT COURT FOR THE

12               NORTHERN DISTRICT OF CALIFORNIA

13

14  AF HOLDINGS LLC,              )    No. 3:12-cv-04221-SC
                                  )
15            Plaintiff,          )    MOTION FOR WITHDRAWAL AND
         v.                       )    SUBSTITUTION OF COUNSEL
16                                )
    ANDREW MAGSUMBOL,             )
17                                )
              Defendant.          )
18                                )
                                  )
19  _____)

20           **MOTION FOR WITHDRAWAL AND SUBSTITUTION OF COUNSEL**

21           Brett L. Gibbs, counsel for Plaintiff AF Holdings LLC ("Plaintiff"), hereby moves the Court

22  pursuant to Eastern District of California Local Rule ("L.R.") 182(g), for an order permitting him to

23  withdraw as counsel of record for Plaintiff in this action. Concurrently, attorney Paul Duffy hereby

24  moves the Court for permission to be substituted in place of Brett L. Gibbs as attorney for Plaintiff.

25           As grounds for this Motion:

26       1.      Brett L. Gibbs has been counsel for Plaintiff since the commencement of the action.

27       2.      Brett L. Gibbs wishes to withdraw as counsel for Plaintiff.

28

Δ π EXHIBIT 103
Deponent Hansmeier
Date 2/19 Rptr KM

Case 2:12-cv-08333-ODW-JC   Document 69-2   Filed 03/06/13   Page 40 of 104   Page ID
#:1632
Case3:12-cv-04221-SC   Document22   Filed01/30/13   Page2 of 4

3.      Brett L. Gibbs has provided written notice of his withdrawal to Plaintiff. The client understands and accepts the withdrawal of Brett L. Gibbs.

4.      Brett L. Gibbs has provided written notice of his withdrawal to all other parties who have appeared in this case, and there were no objections.

5.      Paul Duffy is licensed to practice in the Eastern District of California, and requests that he be designated Counsel of Record on behalf of Plaintiff.

6.      Brett L. Gibbs, Paul Duffy, and Plaintiff are all in agreement that this withdrawal and substitution are necessary to allow this case to proceed.

WHEREFORE, the Court should grant Brett L. Gibbs' and Paul Duffy's Motion for Withdrawal and Substitution of Counsel.

**DATED: January 30, 2013.**

Respectfully Submitted,                              Respectfully Submitted,

By:      /s/ Brett L. Gibbs, Esq.            By:      /s/ Paul Duffy

Brett L. Gibbs, Esq. (SBN 251000)          Paul Duffy (Bar No. 224159)
38 Miller Avenue, #263                     Anti-Piracy Law Group
Mill Valley, CA 94941                      161 N. Clark St., Suite 3200
blgibbs@wefightpiracy.com                  Chicago, IL 60601
415-325-5900                               Phone: (800) 380-0840
                                           E-mail: paduffy@antipiracylawgroup.com

*Withdrawing Attorney for Plaintiff*       *Incoming Attorney for Plaintiff*

By:      /s/ Brett L. Gibbs, Esq.

Brett L. Gibbs, Esq.
In-House Counsel, AF Holdings LLC

2

1

2

IT IS SO ORDERED.

3

4

Dated: _____                    _____

5                                                        United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR WITHDRAWAL AND SUBSTITUTION OF COUNSEL

1

<div align="center">

**CERTIFICATE OF SERVICE**

</div>

2

3   The undersigned hereby certify that on January 30, 2013, all individuals of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document, and all attachments and related documents, using the Court's ECF system.

4

5

6   /s/  Brett L. Gibbs                                        /s/ Paul Duffy
    Brett L. Gibbs, Esq.                                    Paul Duffy

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div align="center">

4

MOTION FOR WITHDRAWAL AND SUBSTITUTION OF COUNSEL

</div>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HEARTBREAKER PRODUCTIONS, INC. ) | CASE NO.: 1:11-cv-02860 |
| ) | |
| Plaintiff, ) | Judge: Hon. Robert W. Gettleman |
| ) | |
| v. ) | Magistrate: Hon. Young B. Kim |
| ) | |
| DOES 1 – 71 ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## PLAINTIFF'S NOTICE OF DISMISSAL WITHOUT PREJUDICE OF REMAINING DOE DEFENDANTS

Plaintiff, pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure, hereby dismisses

without prejudice all causes of action in the complaint against the remaining Doe Defendants in

this action. Plaintiff has completed its initial discovery in this matter and intends to engage in

settlement efforts or, if necessary, separate actions against the remaining Does. The respective

Does have filed neither an answer to the complaint nor a motion for summary judgment with

respect to the same. Dismissal under Rule 41(a)(1) is therefore appropriate.

[intentionally left blank]



Respectfully submitted,

Heartbreaker Productions, Inc.

**DATED:**  September 23, 2011

By:     /s/ John Steele
        John Steele (Bar No. 6292158)
        Steele Hansmeier PLLC
        1111 Lincoln Road, Suite 400
        Miami Beach, FL 33139
        Tel: (305) 748-2102
        jlsteele@wefightpiracy.com
        *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 23, 2011, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system, in compliance with Local Rule 5.2(a).

<div align="right">

_____/s/ John Steele_____
JOHN STEELE

</div>

AVN - Exile Distribution Adds Heartbreaker Films to Roster    Page 2 of 3
Case 2:12-cv-09293-ODW-JC   Document 69-2  Filed 03/06/13   Page 46 of 104   Page ID
#:1638

Located in: Home > Business > Video News > Exile Distribution Adds Heartbreaker Films to Roster

# Exile Distribution Adds Heartbreaker Films to Roster



Posted Jan 25th, 2011 06.54 PM

Like   2      Tweet ⟨ 44

CHATSWORTH, Calif.—New distribution company Exile Distribution has inked an exclusive deal with Nina Mercedez's and Raymond Balboa's Heartbreaker Films for exclusive DVD distribution and sales representation.

"Heartbreaker Films is exactly what we are looking for—ultra high end sex packed content that will blow everyone away," Exile head of sales Howard Levine said. "I would compare Heartbreaker with the top studios out there today. There's always room for excellence."

**ADVERTISEMENT**



Exile Distribution's roster now is comprised of Penthouse, Peter Girls, Exile Celebrity and Heartbreaker Films.

"I have known Howard for over 10 years," Mercedez said. "He is without a doubt the best salesperson in the business, with 25 years of relationships and his vast knowledge of the product. We know we will get the personal attention that only he can deliver. We know Howard is a long-term person and we were looking for a long-term deal. We are beyond excited."

Heartbreaker Films is coming out of the gate in a big way with its first release featuring Sophia Santi's first boy/girl scene in *Sexual Obsession*. Mercedez's first double-penetration also is slated.

The company brings numerous A-list stars to the table in future releases such as Gianna Lynn, Sienna West, Shyla Stylez, Nyomi Banx, Puma Swede, Santi and Mercedez.



Like   2      Tweet ⟨ 44

E-mail     Comments

Previous article                      Next article
Sssh.com, Screaming O Bring Buzz and Smile to Oscar Nominees, Presenters    Retailers Spotlighted At AVN Awards

**Related Content:**

Companies

Heartbreaker Films
Exile Distribution

Profiles

Sophia Santi
Nina Mercedez

## Comments

Please log in to comment.
Don't have a free account? Become a member!

*By participating you agree to our Privacy Policy & the AVN "Be Kind Policy" and represent that you are not under the age of 18.*






LET US BUILD YOU A CAM SITE & GET A
100% BONUS ON ALL SALES
Get a Cam Site
XBIZ RSS READ OR SYNDICATE

Home > News > 'Nina Mercedez: Popular Demand' Coming from Exile

• Bookmark • Newsletters • Register    Search

Monday, Feb 18, 2013

**HOME**
**NEWS**
Web / Tech
Video
Novelty
Retail
Gay
Europe
Mobile
Apparel
Legal
**FEATURES**
Business
Opinions
Educational
Profiles
Legal
Quick Bites
**BLOGS**
**DIRECTORY**
**BOARD**
**VIDEO INDEX**
Premiere Releases
Editors Choice
Studios
**CALENDAR**
**SERVICES**
PR Blaster
Newsletters
Mobile News
Desktop News
RSS / Syndication

Popular RSS Feeds:

NEWS STORY

# 'Nina Mercedez: Popular Demand' Coming from Exile

*XBIZ NEWS REPORT*

By John Sanford
Thursday, Jul 21, 2011   Text size:

Tweet    Recommend

LAS VEGAS — Nina Mercedez performs the first double-penetration scene of her career in the new Heartbreaker Films movie "Nina Mercedez: Popular Demand" that will be available July 27 from Exile Distribution.

Mercedez, who has not performed in a boy/girl movie in more than a year, said this new movie is all about fulfilling requests from her fans who have been asking for a d.p. scene and more.

"I am so happy to be releasing this DVD. I did these scenes just for my fans. They have been asking me to do a double penetration for years now," she said. "I finally did it and it was incredible!"

Mercedez is joined in the movie by fellow A-listers Sophia Santi, Gina Lynn, Audrey Bitoni and Eva Angelina.

To see a trailer, click here.

Mercedez, meanwhile, is in the running for Adult Film Entertainer of the Year at the 14th annual Adult Nightclub & Exotic Dancer Awards on Aug. 23 in Las Vegas.

Fans must register to vote here.

Mercedez's official website is NinaMercedezxxx.com.

Tweet    Recommend    Blog this    Print    Email

SFW

See all current articles in > adult industry news

### Related Articles
- Forbidden Fruits Films Strikes Chord With 'Taboo Erotica'  Feb 14, 2013
- Center for Sexual Pleasure and Health to Screen New Shibari Film  Nov 13, 2012
- Exile, Monarchy Ship 'Kelly Shibari is Overloaded'  Sep 19, 2012
- Nina Mercedez Stars in Five New Scenes in 'Sexual Icon'  Apr 17, 2012
- Exile Taking Preorders for 'Revenge of the Petites'  Apr 12, 2012
- Exile Inks Distribution Deal with DVSX, X-Cartel  Apr 11, 2012
- Exile Prepares New Volumes of Pornstar Empire Series  Apr 10, 2012

More ways to get XBIZ News: RSS Feeds | E-Newsletters | Desktop Widget | Mobile

Twitter  Facebook  Email  Mobile

XBIZ Research
Will 3D printing revolutionize sex toys similar to VHS' impact on adult movies?
Yes  36.56%
No  29.03%
What's 3D Printing?  34.41%



Click here to see why MyFreeCams is the largest adult webcam site!

Discussions  Blogs  Opportunities  More »




http://www.xbiz.com/news/136501
2/18/2013

Case 2:12-cv-08333-ODW-JC   Document 69-2   Filed 03/06/13   Page 48 of 104   Page ID
#:1640
Case3:12-cv-02396-EMC   Document34   Filed12/21/12   Page1 of 13

1   Brett L. Gibbs, Esq. (SBN 251000)
    Of Counsel for Prenda Law Inc.
2   38 Miller Avenue, #263
    Mill Valley, CA 94941
3   415-325-5900
    blgibbs@wefightpiracy.com
4
    *Attorney for Plaintiff*
5

6
                 IN THE UNITED STATES DISTRICT COURT FOR THE
7
                      NORTHERN DISTRICT OF CALIFORNIA
8

9

10  AF HOLDINGS LLC,                    )    No. 3:12-CV-02396-EMC
                                        )
11          Plaintiff,                  )    **PLAINTIFF AF HOLDINGS LLC'S**
            v.                          )    **RESPONSE TO DEFENDANT JOE**
12                                      )    **NAVASCA'S MOTION TO POST**
    JOE NAVASCA,                        )    **UNDERTAKING**
13                                      )
            Defendant.                  )
14                                      )
    _____     )

15

16                           **INTRODUCTION**

17          Plaintiff AF Holdings LLC ("Plaintiff"), by and through its undersigned counsel, hereby files

18  this Response to Defendant Joe Navsca's ("Defendant") Motion to Post Undertaking. (ECF No. 22.)

19  For the reasons contained herein, Defendant's Motion should be denied.

20  **I.     OPPOSITION TO DEFENDANT'S FACTUAL CONTENTIONS**

21          Before addressing Defendant's arguments, Plaintiff responds to the factual contentions made

22  by Defendant in the instant Motion. (ECF No. 22 at 5-9.) Defendant asserts that "despite Plaintiff's

23  claims about the strength of its case, it has refused to post the undertaking required in [*AF Holdings*

24  *v. Trinh]*." (*Id.* at 5.) The inference Defendant clearly wishes to draw is that, if Plaintiff truly

25  believed in the strength of its case, the undertaking would already have been posted. Such an

26  inference would be incorrect; rather, it is the case that Plaintiff simply cannot afford to post the

27  $48,000 required by the *Trinh* Court to pursue its claims. The *Trinh* Court was in error in

28

Case3:12-cv-02396-EMC   Document34   Filed12/21/12   Page2 of 13

1   determining that Defendant had a reasonable probability of success in that case; for the reasons

2   described herein, it would be similarly erroneous to determine that Defendant in the instant action

3   has a reasonable probability of success.

4
        Defendant asserts that "this case is the latest installment in the 'nationwide blizzard of civil
5
    actions brought by purveyors of pornographic films alleging copyright infringement by individuals.'"
6
7   (*Id.*) This particular excerpt of the holding from *In Re: BitTorrent Adult Film Copyright*

8   *Infringement Cases* is frequently cited by defendants in online copyright infringement cases. But

9   what gets lost in this particular soundbyte is the other side of the story: there is a "nationwide

10  blizzard" of such civil actions only because there is a corresponding, nationwide blizzard of

11  individuals illegally downloading copyrighted material via BitTorrent; literally millions of the latter

12  with only a fraction involved in lawsuits.  There is also a "nationwide blizzard" of personal injury

13  cases and breach of contract cases, because when an individual or entity has been harmed, the

14  individual or entity will often seek to remedy the harm via the legal system—and rightfully so.

15
16  Plaintiff in the instant action, and similarly situated entities, should not be denied the opportunity to

17  assert its rights simply because the harm in question involved pornography. Pornography is legal,

18  pornography is copyrightable, and pornography is very, very popular; what the aforementioned

19  soundbyte fails to recognize is that the owners of such copyrighted works are as entitled to
20
    compensation for its unauthorized use as the NFL, or Warner Brothers, or Stephen King. Our society
21
22  is founded on a tradition of protecting the rights of all, even if those rights may be unpopular; the

23  judge who decided *In Re: BitTorrent* appears to have forgotten that tradition.

24      Defendant asserts that "the fundamental flaw of these suits has likewise remained through

25  each incarnation – an IP address is simply not sufficient to identify the individual that infringed on a

26
    Plaintiff's copyright." (*Id.* at 6) (Emphasis omitted.) Taking Defendant's assertion to be true,
27
28  Plaintiff is left with three—***and only three***—options upon discovering online infringement of its

2

1  copyrighted works: (1) sue the subscriber for the IP address found to have infringed upon Plaintiff's

2  copyright; (2) sue another individual who resides in the subscriber's household; (3) do nothing.

3  Plaintiff understands that communicating with the subscriber is often helpful in narrowing down

4  which option is best, and that is why Plaintiff always reaches out to the subscriber. In this case,

5  however, as both the subscriber of the infringing IP address, Jovino Navasca, and the Defendant, Joe

6  Navasca, both admit (*See* ECF No. 24, ECF No. 25), neither of them *ever* responded to Plaintiff's

7  attempts to initiate contact. Let's revisit Plaintiff's three options: (1) sue the subscriber; (2) sue

8  another individual who resides in the subscriber's household; (3) *do nothing*. Those who feel

9  pornography companies should have no right to enforce their copyright might assert that Plaintiff

10 should do nothing. But why? Why should the Navascas be *rewarded* for ignoring Plaintiff's

11 legitimate claim? This point cannot be emphasized enough: ***Defendant is asserting that he should***

12 ***not have been sued because neither he, nor his father, responded to Plaintiff.*** Plaintiff obviously

13 did not decide to sue subscriber Jovino Navasca in this case, going with his son Joe Navasca.

14 Defendant's Motion and its attached declarations repeatedly demonstrate wonder at how Joe

15 Navasca was chosen as the alleged infringer. As it turns out, when the subscriber of an infringing IP

16 address remains silent upon Plaintiff's attempts to reach out, Plaintiff must conduct an investigation

17 and make factual conclusions and some common-sense assumptions to allege that Defendant, who

18 shared Jovino's domicile, was the most likely candidate to have infringed upon Plaintiff's copyright.

19 Research turns out evidence, evidence leads to conclusions, conclusions leads copyright holders—

20 i.e. Plaintiff—to name and serve someone these lawsuits.  Once again, the alternative would be to

21 *reward the Navascas for their silence.* If such silence were sufficient to defeat a claim of online

22 copyright infringement, then no copyright holder could *ever* sue for online infringement of its

23 copyright; any copyright infringer would simply remain silent, and online infringement would go

24 unpunished, undeterred, and uncompensated, the abuses would literally be ignored. That is not the

3

1  sort of world AF Holdings wishes to occupy; as such, Plaintiff made common-sense assumptions to

2  arrive at the conclusion that Joe Navasca was the likely infringer.   What do we know?  Suffice it to

3  say that Plaintiff's content attracts a specific demographic, and Joe Navasca was the member of the

4  household who best fit that demographic.  Perhaps if the Navascas had not ignored Plaintiff's

5  correspondence, Plaintiff could have made its allegation on the basis of better information. But

6  suffice it to say that there is no legal, ethical, or moral justification for Defendant's implied assertion

7  that Plaintiff simply should not have sued anyone in this case. Jovino Navasca's IP address was used

8  to illegally download Plaintiff's copyrighted work, and Joe Navasca was found to be the most likely

9  infringer; neither individual chose to correspond with Plaintiff, and that is not Plaintiff's fault. The

10 situation is rather reminiscent (though certainly distinct from) of *Summers v. Tice[1]*, the classic staple

11 of tort law textbooks wherein three different hunters may have shot the Plaintiff, but the Court leaves

12 it up to the possible suspects to sort out who caused the harm. Plaintiff has narrowed the scope of

13 inquiry, but the Navascas' refusal to communicate with Plaintiff, once again, left Plaintiff deciding

14 between pursuing its reasonable theory that the infringer was Joe Navasca or doing ***absolutely***

15 ***nothing***. The Navascas should not be rewarded for their having willfully ignored this issue, and

16 Plaintiff should not face the fundamental bar to pursuing the instant action that imposition of the

17 astronomical security moved for by Defendant would pose. Rather, this case should proceed through

18 the discovery process, and Plaintiff and Defendant should be permitted to uncover information to

19 establish their respective factual and legal positions.

20        Defendant asserts that "a wireless internet signal extends far beyond the walls of a single

21 home, and could be accessed by neighbors, guests, or unauthorized interlopers." (ECF No 22 at 9.)

22 These are ***defenses***. The fact that Defendant has defenses does not equate to his having a reasonable

23 probability of success. Indeed, in many situations where there is ambiguity, a case may begin with

---

[1] *Summers v. Tice*, 33 Cal.2d 80 (Cal. Sup. Ct. 1948).

Case 2:12-cv-08333-ODW-JC    Document 69-2    Filed 03/06/13    Page 52 of 104    Page ID
#:1644
Case3:12-cv-02396-EMC   Document34   Filed12/21/12   Page5 of 13

1    the appearance that Defendant has a reasonable probability of success. However, that is why pre-trial

2    mechanisms such as discovery exist—to allow the parties to have sufficient information to evaluate

3    their respective claims and defenses, and to buttress those claims and defenses. At this point,

4    Defendant's contention that "unauthorized interlopers" could have used Defendant's network is

5    nothing more than an alleged defense; it is *not*, as Defendant asserts, a foundation for determining at

6    the outset that Defendant has a reasonable probability of success.

7    
8         Defendant asserts that "Plaintiff has put forth no evidence that Joe Navasca *actually* is the

9    individual that shared the work that forms the basis of the action." (ECF No. 22 at 9.) Curiously,

10   Defendant has not cited to the portion of federal pleading standards, or any other legal authority, that

11   suggests that Plaintiff is required to *prove* its case in its Complaint or face astronomical security

12   requirements. Once again, *discovery* is how Plaintiff plans to buttress and evaluate its common-

13   sense-based reasonable allegation that Joe Navasca was the infringer.

14   
15        Defendant asserts that "importantly, Joe Navasca is not, in fact, the infringer of the work that

16   forms the basis for this suit. In the declaration attached hereto, Mr. Navasca specifically denies that

17   he has ever uploaded, downloaded, or otherwise shared the work." (ECF No. 22 at 9.) Defendant's

18   suggestion that he has a reasonable probability of winning because he declares that he did not act as

19   alleged is laughable. If such declarations served as sufficient evidence, then defending a civil lawsuit

20   would be as easy as signing a sworn declaration of one's innocence; some might argue that that is

21   how our justice system should work, but it obviously is not how it works now.  And to pretend that

22   lying in a federal court is unheard of is preposterous.

23   
24        Defendant asserts that "Mr. Navasca's declaration goes on to explain that, at the time of the

25   alleged infringement, he was likely in bed with his wife, who works early each morning." (*Id.*)

26   Given the way BitTorrent works, however, the uploading and downloading of Plaintiff's copyrighted

27   work at the observed date and time could take place even while Mr. Navasca was soundly asleep;

28

Case 2:12-cv-08333-ODW-JC   Document 69-2   Filed 03/06/13   Page 53 of 104   Page ID
#:1645
Case3:12-cv-02396-EMC   Document34   Filed12/21/12   Page6 of 13

1   BitTorrent can upload and download even without the user being at the computer, or awake.[2] Once

2   again, this is a *potential defense*, and, furthermore, it is a potential defense that is *easily*

3   *controverted*. This is *not* a basis for concluding that Defendant has a reasonable probability of

4   winning this case.

5                                          **ARGUMENT**

6   **I.     DEFENDANT *DOES NOT* HAVE A REASONABLE PROBABILITY OF**
       **OBTAINING JUDGMENT IN THIS ACTION**

7

8   **A. PLAINTIFF'S CURRENT EVIDENCE OF INFRINGEMENT IS *SUFFICIENT***

9
          **1.   THE *SUFFICIENCY* OF AN IP ADDRESS**
10

11           It is apparently undisputed between the parties that the IP address for which Jovino Navasca

12   was the subscriber was found to be infringing upon Plaintiff's copyright. Defendant provides a

13   variety of alternate explanations that amount to a list of other individuals who may have used Jovino

14   Navasca's IP address to commit copyright infringement, asserting that "Joe Navasca is one of

15   several individuals with access [to] IP address 69.109.216.238 (along with his five other house-

16   mates, and countless unidentified potential interlopers)." (ECF No. 22 at 11.) However, it is

17
     *extremely* unlikely that an "unidentified potential interloper" committed the infringement: Neither of
18
     the Navascas, in their respective declarations, have indicated that the household Internet connection
19
     was unsecured. Thus, an "unidentified potential interloper" would have had to crack into a
20
     password-protected network to commit the illegal download. The list of people in the world who
21
     possess the expertise to do so is fairly small, and anyone who *did* possess that expertise would have
22
     also had the expertise to *not have their actions detected by Plaintiff's investigators*, by, for
23
     example, using a Tor node—an extremely simple, extremely ubiquitous technique by which one can
24
     conceal his IP address. Also working against the Navascas is the fact that they live in a *house*. As
25
     such, anyone who was able to crack into the Navascas home network would find that their
26

27

28   ──────────
     [2] http://computer.howstuffworks.com/bittorrent2.htm (last checked December 21, 2012)

1   pornography was downloading at extremely slow speeds: it is common knowledge that, the farther

2   away someone is from the source of an Internet connection, and the thicker the material through

3   which the signal must pass, the weaker, and thus slower, the resulting Internet connection is. Thus

4   someone who possessed the sophisticated knowledge necessary to crack into a secured wireless

5   network would certainly be able to come up with a more efficient way to illegally download

6   pornography. Defendant may be reading this particular passage, thinking that these assertions may

7   not be correct. ***Defendant's assertions***—that another housemate or an unidentified interloper used

8   the Internet connection to commit copyright infringement—may also be incorrect. Complaints are

9   based on inferences; trial, and pre-trial mechanisms such as discovery, are in place ***precisely*** for this

10  reason: these mechanisms allow the parties to buttress and evaluate their claims and inferences, and

11  subsequently assess how to proceed. Defendant's assertions amount to the proposition that Plaintiff

12  should be forced to offer up over $80,000 before proceeding with the case because it has not proven

13  its case yet, but that is simply not how our system of justice works.

14          Defendant makes much ado about supposed inconsistencies in the manner in which

15  Plaintiff's counsel has litigated BitTorrent cases. (ECF No. 22 at 12-13.) Looking past the surface,

16  there is no inconsistency at all. As Defendant asserts, the undersigned has asserted that discovery is

17  necessary to figure out who the true infringer is. But when subscriber Jovino Navasca did not

18  respond to Plaintiff's attempts to correspond, and most-likely-infringer-in-the-household Joe

19  Navasca did not respond to Plaintiff's attempts to correspond, how, exactly, was Plaintiff supposed

20  to engage in that discovery without initiating litigation against the most likely infringer in the

21  household? There is no possible answer to this question; if there were, the undersigned would be

22  employing such an answer to litigate its cases. It is unfortunate that Joe Navasca must litigate this

23  case if, in fact, he did not act as alleged. But the fact that there are possible alternative explanations

24  does not amount to a reasonable probability of his success; it amounts to a list of potential defenses,

1  and given that he cannot yet prove any of them[3], his probability of success at the present time is, at

2  best, no greater than Plaintiff's—and, at worst, much less than Plaintiff's.

3       Defendant argues that "AF Holdings has not explained how they have arrived at the

4  conclusion that Joe Navasca, one of six individuals living at the defendant's address, is the infringer

5  in the instant case." (ECF No. 22 at 13.) As described above, Plaintiff has done so through the use of

6  factual findings and investigation, a ubiquitous practice in the field of law. Plaintiff had no

7  obligation under federal pleading standards to explicitly state every single one of these facts, and

8  does so in the instant Response simply to demonstrate the fallaciousness of Defendant's assertions of

9  his reasonable probability of success in the instant action.

10

11       ## 2.   THERE IS NO ALTERNATIVE PROCESS BY WHICH TO IDENTIFY INFRINGERS AND ACHIEVE JUSTICE

12

13       Defendant next makes a series of assertions which amount to the conclusion that Plaintiff's

14  methodology in identifying infringers is faulty. (ECF No. 22 at 14-17) Defendant is incorrect.

15  Copyright holders are entitled to pursue claims for infringement committed online under the United

16  States Copyright Act. Infringement committed online necessarily involves the parsing of an

17  imperfect relationship between the IP address and the infringer, but imperfect does not mean non-

18  existent. The individual who infringed upon Plaintiff's copyrighted work is someone who was able

19  to access to Jovino Navasca's Internet account. It is a virtual certainty that the individual who used

20  Jovino Navasca's Internet account to download Plaintiff's copyrighted work was a member of

21  Jovino Navasca's household: neither of the Navascas has asserted that the household wireless

22  network is unlocked; if the network was secured, only someone with a highly sophisticated

23  knowledge of Internet technology could have accessed the wireless network without knowing the

---

[3] As described above, Defendant's bare assertion of innocence is simply insufficient; if it were regarded as sufficient, one could imagine that every defendant in civil cases would simply assert the same. As described above, the alibi Defendant provided of being asleep at the date and time of the infringement is irrelevant; BitTorrent can be left running, and can autonomously upload and download files without the user being present at the computer.

8

Case 2:12-cv-08333-ODW-JC   Document 69-2   Filed 03/06/13   Page 56 of 104   Page ID
#:1648
Case3:12-cv-02396-EMC   Document34   Filed12/21/12   Page9 of 13

1    password; someone with highly sophisticated knowledge of Internet technology would have used the

2    readily available and easily utilized methods of avoiding detection of IP addresses, such as a Tor

3    node; additionally, someone with highly sophisticated knowledge of Internet technology would not

4    have used a wireless network located in a home, as the connection will be extremely slow for anyone

5    outside of the home, virtually useless for downloading the large files of which movies are

6    necessarily constituted. In the alternative, if the home wireless network was, in fact, unsecured (as

7

8    Defendant will perhaps assert by declaration in his forthcoming Reply to the instant Response), the

9    fact remains that a wireless network in a household would provide painfully slow speeds for

10   downloading of Plaintiff's content (or, really, any content). A home is simply not an apartment;

11   whereas the wireless signal in an apartment need only pass through thin walls to be usurped by

12
     another, the wireless signal in a home must pass through—to state the obvious—the outer walls of
13
     the home, which are much thicker than the walls of an apartment. As such, the wireless signal in the
14
15   Navascas' home would likely be quite useless to anyone outside the home, particularly for the

16   bandwidth-intensive task of downloading Plaintiff's copyrighted work. These are, as yet, but

17   potential theories, and yet they are no less plausible than the explanations put forth by Defendant—

18   frankly, they are much more plausible; to deem otherwise would be to trust Defendant's unsupported
19
     assertions *ex ante*, and there is absolutely no justification for doing so.
20

21   **B. THE ASSIGNMENT AGREEMENT *IS* VALID**

22           Defendant offers various conspiracy theories that, in sum, argue the proposition that the

23   assignment agreement by which Plaintiff obtained the underlying copyright at issue in this case is

24   invalid. (ECF No. 22 at 17-21.) Defendant's serious allegations regarding supposed misconduct by

25   Plaintiff, in addition to being wholly unsubstantiated, are also irrelevant to whether the assignment

26   agreement is valid. The law of copyright requires only that the assignment be signed by the assignor

27   and not the assignee; as such, any supposed inconsistency (or, more appropriately, any conspiracy
28

1   theory) is wholly irrelevant to a prima facie showing of copyright ownership. *See* 17 U.S.C. 204;

2   *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990). As the Ninth Circuit asserted in

3   *Effects Associates, Inc. v. Cohen*, "The rule is really quite simple: If the copyright holder agrees to

4   transfer ownership to another party, that party must get the copyright holder to sign a piece of paper

5   saying so. It doesn't have to be the Magna Charta; a one-line pro forma statement will do." *Id.*

6   Exhibit B to Plaintiff's Amended Complaint demonstrates that the assignor signed the assignment

7   agreement (*See* ECF No. 13 at Exhibit B) Defendant's contentions based on conspiracy theories of

8

9   Alan Cooper's involvement are thus meritless, and should be dismissed as such.

10   **C.  DEFENDANT'S BARE ASSERTION THAT HE HAS NOT COMMITTED**
         **COPYRIGHT INFRINGEMENT IS *IRRELEVANT***
11

12          As Defendant is currently defending himself in a copyright infringement lawsuit, it would be

13   rather surprising if Defendant were to assert that he *did* commit copyright infringement. Though

14   defendant states that he "unequivocally denies, under penalty of perjury, that he has ever uploaded,

15   downloaded, or otherwise shared the work that forms the basis of the instant suit," (ECF No. 22 at

16

17   21), we can imagine at least a few instances in the practice of law in which individuals have lied

18   about their innocence to avoid liability. This argument amounts to "I am innocent because I say I am

19   innocent," and such an argument cannot support the proposition that Defendant has a reasonable

20   probability of winning the case. As previously noted, Defendant's assertion that "he and his wife are

21   generally in bed long before…the time of the alleged infringement" (ECF No. 22 at 21) is irrelevant

22

23   to whether he committed copyright infringement at that time, as that time is when the uploading and

24   downloading were *observed* to be taking place; given the way BitTorrent operates, Defendant need

25   not have been at his computer at the moment that the infringement was observed. (*See supra* at n.1.)

26   Though Defendant "fully expects he will ultimately be exonerated in the instant matter," he has

27   provided no concrete reason for why the Court should share his expectation. At this time, Defendant

28   has offered mere ***theories*** of why he ***could*** be found innocent, and Plaintiff, throughout this Motion,

1    has offered counter-theories as to why his theories of innocence are flawed. That is why we have

2    trial, and pre-trial mechanisms such as discovery—to buttress and test these theories. But if the

3    Court accepts Defendant's bare assertions and imposes the astronomical security demanded by

4    Defendant, Plaintiff will not be able to afford the security, and consequently, will not be able to have

5    its day in Court. That is not justice.

6

7    **II.    *ANY* AMOUNT OF SECURITY WOULD BE UNREASONABLE**

8        First, in reality, requiring a security, as the Court understands, is only in extreme cases; cases that

9    are essentially "slam dunks."  To obtain an order for security, a party must demonstrate a reasonable

10   probability of winning the case. As described above, all of the bases upon which Defendant reasons

11   that he has such reasonable probability are flawed; indeed, some are wholly irrelevant to the inquiry

12   of whether he has a reasonable probability of winning the case. Defendant argues that "not a single

13   one of the cases [filed by Plaintiff's counsel] has been decided on the merits." (ECF NO. 22 at 24.)

14   The percentage of cases in the American legal system that even *go to trial* is widely reported as

15   being around 2%. In addition, the set of cases mentioned by Defendant are relatively new; it is well

16   known that even getting to the trial stage takes a fair amount of time. This argument by Defendant

17   does not point out anything that is unique to Plaintiff, and thus does not support the proposition that

18   security is reasonable in the instant action.

19       Defendant argues that "AF Holdings has refused to post security in the only matter where it

20   has thus far been required, casting further doubt on the merit of their claims and their intention of

21   standing behind those claims when challenged." (ECF No. 22 at 24.) While Defendant's explanation

22   is convenient for Defendant, there is actually a much simpler explanation: as described above,

23   Plaintiff simply cannot afford to post the security requested in the case mentioned by Defendant.

24   Defendant mentions that AF Holdings is based in St. Kitts and Nevis, but has not pointed out a

25   single negative aspect of the company, other than the fact that it actually tries to enforce its rights

26

27

28

1  under the Copyright Act, a fact which certainly should not be used against Plaintiff. Defendant has

2  not carried his burden of proving that he has a reasonable probability of winning the case; as such,

3  any imposition, at all, of security would be unreasonable in the instant action.

4                                     **CONCLUSION**

5

6         Defendant has moved the Court to impose an insurmountable obstacle to Plaintiff's litigation

7  of its case. Granting security in this case would not only defeat the instant case, but would also

8  encourage all copyright infringers to simply not correspond with copyright owners attempting to

9  fight online infringement of their copyrights—after all, even if they ignore the copyright owners, all

10 they have to do is move for security when they get sued and deny that they infringed the copyright.

11 Plaintiff's methods are concededly not perfect, but there is no perfect method for identifying

12 individuals who commit harms over the Internet. Plaintiff contends that it takes reasonable measures

13 to identify the individual that is most likely to have infringed upon its copyright, and, furthermore,

14 that Defendant has not demonstrated why there is a reasonable probability that he did not infringe

15 upon Plaintiff's copyright—that is, after all, the burden that Defendant must carry for the instant

16 motion, and it is well known that it is hard to prove a negative.

17

18                                     Respectfully Submitted,

19                                     AF HOLDINGS, LLC,

20

21 **DATED: December 21, 2012**

22                            By:    /s/  Brett L. Gibbs, Esq.

23                                   Brett L. Gibbs, Esq. (SBN 251000)
                                     Of Counsel to Prenda Law Inc.
24                                   38 Miller Avenue, #263
                                     Mill Valley, CA 94941
25                                   415-325-5900
                                     blgibbs@wefightpiracy.com
26                                   *Attorney for Plaintiff*

27

28

1

## CERTIFICATE OF SERVICE

2
3
4
The undersigned hereby certifies that on December 21, 2012, all individuals of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document, and all attachments and related documents, using the Court's ECF system, in compliance with Local Rule 5-6 and General Order 45.

5

6
7
/s/  Brett L. Gibbs

Brett L. Gibbs, Esq.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Paul Hansmeier

# CAPITAL REPORTING COMPANY
REPORTING COMPANY®

*We Never Take Your Business For Granted!*

## Order Form

Print Fo

Case Name: _____

Witness(es): _____

Job Date: _____  Reporter Name: _____

## Appearance Information *(Please feel free to attach your business card here.)*

Contact Name: _____

Firm Name: _____

Address: _____

City: _____  State: _____  Zip: _____

Phone: _____  Fax: _____  Email: _____

## Order Information [INITIAL TO THE LEFT OF EACH REQUESTED ORDER ITEM]

### Format *(all format options are included in the per page rate.)*

____ **STANDARD:** includes Regular, Minuscript, Mini CD, and E-Transcript Email.

____ **E-TRANSCRIPT ONLY:** includes .PDF, .TXT, and .VDF files. *No shipping charge plus receive a $5.00 'Go Green' discount!*

____ **COMBINATION:** Select any combination of the following options (all formats include a Keyword Index):

____ Regular (1x page)    ____ Mini CD w/ASCII, .PDF & .VDF Files

____ Minuscript (4x page)    ____ E-Transcript Email

### Additional Services *(additional costs, above the per page rate, will apply. Please contact the office for rates.)*

**SERVICES:** ____ Rough ASCII    ____ Realtime    ____ .PTX File

**EXHIBITS:** ____ Paper (B&W)    ____ Paper (Color)    ____ Scanned (.PDF)    ____ Bundle (Paper + .PDF)    Hyperlinked (select format): ____ .LEF ____ .VIG

**VIDEO:** ____ DVD    ____ VHS    ____ Flash Drive    ____ .mpeg1    ____ .mpeg4    Sync: ____ w/Text ____ w/LEF (Text + Exhibits)

### Turnaround Time *(additional costs, above the Regular per page rate, will apply for expedited delivery. Please contact the office for rates.)*

____ **REGULAR** (8-10 business days)

____ **EXPEDITE** (select one): ____ 7 business days    ____ 6 business days    ____ 5 business days    ____ 4 business days

____ 3 business days    ____ 2 business days    ____ Next business day    ____ Same business day

## Payment Information *(if you would like to pay by credit card, you may enter the information below.)*

☐ AMEX  ☐ MC  ☐ VISA    Card No.: _____  Exp Date: _____  Billing Zip: _____

## Acknowledgement

I and/or my firm hereby accept responsibility for payment of invoice(s) for services requested by me related to the above-referenced matter. I understand that Capital does not accept assignment, and that payment of my invoices is not contingent upon the outcome of the case or on the financial status of my client. I understand that payment, in full, is due within thirty (30) days of the date of the invoice and that finance charges will accrue at the rate of 1.5% per month after 30 days. In the event that Capital engages an attorney to collect any overdue balance, I and/or my firm will be responsible for attorney's fees and, in the event suit is filed, all court costs. I and/or my firm hereby consent to jurisdiction and venue in the Superior Courts of the District of Columbia.

_____          _____
Signature                                                              Date

Executed on September 2, 1010, in Minneapolis, MN.

Paul Hansmeier

Executed on May 5, 2011, in Minneapolis, MN.

Peter Hansmeier

EXHIBIT 109
Deponent Hansmeier
Date 2/19 Rptr. Am
WWW.DEPOBOOK.COM

EXHIBIT
www.DEPOBOOK.COM

# IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
## ST. CLAIR COUNTY, ILLINOIS
### LAW DIVISION

GUAVA LLC,

      Petitioner,

      v.

COMCAST CABLE COMMUNICATIONS, LLC,

      Respondent.

No. 13 MR 417

FILED
ST. CLAIR COUNTY
NOV 2 0 2012
CIRCUIT CLERK

## PETITION FOR DISCOVERY BEFORE SUIT TO IDENTIFY RESPONSIBLE PERSONS AND ENTITIES

1.     Petitioner, Guava LLC, through its undersigned attorney, hereby petitions this Court for entry of an Order requiring Comcast Cable Communications LLC ("Comcast") to provide the identifying information of the subscribers associated with the Internet Protocol ("IP") addresses listed on Exhibit A attached hereto, and in support thereof, states as follows:

## NATURE OF THE ACTION

2.     Petitioner brings this petition pursuant to Illinois Supreme Court Rule 224 to identify unidentified John Does ("Does") so that Petitioner may file an action for computer fraud and abuse and computer tampering against them.

## THE PARTIES

3.     Petitioner is a limited liability company that operates protected computer systems, including computer systems accessible in St. Clair County, Illinois.

4.     Respondent Comcast Cable Communications, LLC ("Comcast") is an Internet Service Provider ("ISP") that provides Internet services to the Does that Petitioner seeks to identify. Does are known to Petitioner solely by an Internet Protocol ("IP") address given to

1

Does by Comcast. An IP address is a unique number that is assigned to Internet users by an ISP at a given date and time.

5.     Comcast records the time and date that it assigns an IP address to a subscriber and maintains in logs for a period of time a record of the assignment. Comcast also maintain records which typically include the name, one or more addresses, one or more telephone numbers, and one or more e-mail addresses of the subscriber. However, these records are not public and are not available to Petitioner at this time. Comcast is the only entity that can link the Does' IP address to the Does' true identity.

## JURISDICTION AND VENUE

6.     Pursuant to 134 Ill. 2d R. 224," "[t]he action for discovery shall be initiated by the filing of a verified petition in the circuit court of the county in which the action or proceeding might be brought or in which one or more of the persons or entities from whom discovery is sought resides." Venue is proper because at least one of the Doe Defendants resides in St. Clair County, Illinois. Further, Comcast transacts business in St. Clair County, Illinois.

7.     This Court has subject matter jurisdiction over this matter because a petition for pre-suit discovery falls within the exclusive original jurisdiction of the Circuit Court. Ill. Const., Art. VI, § 9; 134 Ill. 2d R. 224; see also Shutes v. Fowler, 584 N.E.2d 920, 923 (Ill. App. Ct. 1991) ("Rule 224 is constitutional and confers subject-matter jurisdiction on the circuit court.")

## BACKGROUND

8.     Hacking has become a serious threat to anyone maintaining private or protected computer systems. See Michael Mimoso, Cybercrime Gang Recruiting Botmasters for Large-Scale MITM Attacks on American Banks, THE THREAT POST, Oct. 4, 2012, attached hereto as Exhibit B (explaining that "[a]s many as 30 banks have been targeted" recently by cyber

2

hackers.); Bryon Acohido, *No Slowdown in Sight for Cyberattacks*, USA TODAY, July 30, 2012, attached hereto as Exhibit C (Eddie Schwartz, chief security officer of security firm RSA stating that "[i]t's easier and safer for a criminal to steal money from an online bank account, rather than have to walk into a bank — or to steal intellectual property in an online setting, rather than have to send in a human spy.").

9.      Even large corporations and governmental agencies are not immune from hacking attacks. *See* Kim Zetter, *Hackers Release 1 Million Apple Device IDs Allegedly Stolen From FBI Laptop*, WIRED, Sept. 4, 2012, attached hereto as Exhibit D (explaining that a hacker group obtained "[] million Apple device IDs that" were "obtained from an FBI computer they hacked.").

10.     Companies harmed by hacking are encouraged to seek relief in the courts. *See* Glenn Chapman, *Cyber Defenders Urges to go on the Offense*, AMERICAN FREE PRESS, July 26, 2012, attached hereto as Exhibit E (former FBI cyber crime unit chief Shawn Henry explaining that "I believe the threat from computer network attack is the most significant threat we face as a civilized world, other than a weapon of mass destruction," and Black Hat founder Jeff Moss proposing that "cyber attackers also be fought on legal fronts, with companies taking suspected culprits to court.").

## FACTUAL ALLEGATIONS

### A.   Computer Fraud And Abuse

11.     Plaintiff owns and operates computer systems that distribute third-party adult entertainment content. By way of analogy, Plaintiff is like a satellite radio station in that it distributes content owned by others. Plaintiff generates revenue by requiring third-parties to pay

3

a fee for accessing its distribution systems. Members are assigned a username and password in order to access the distribution system.

12.     The Does obtained usernames and passwords from a website that allows its members to trade stolen usernames and passwords amongst one another. The Does used the stolen usernames and passwords to gain unauthorized access to Plaintiff's protected computer systems. Once they gained unauthorized access to Plaintiff's protected computer systems, they permitted others to do the same.

13.     The Does were able to access Plaintiff's computer systems as though they were paying members. The Does became privy to private information, including information regarding the identities of Plaintiff's customers, account information, financial information, computer programming and security information, and other information that Plaintiff protects and does not even give access to third parties, even those who pay for and obtain legitimate passwords to access Plaintiff's websites.

14.     Since Does accessed the website through a hacked password, they are not required to provide any identifying personal information, such as their true names, addresses, telephone numbers or email addresses. Does can only be identified by their IP addresses.

15.     Petitioner identified the IP addresses associated with the hackers through computer software that allowed Petitioner to detect the unauthorized breaches of its computer systems. The computer software detected the hacking, unauthorized access, and password sharing activity on Petitioner's computer systems. The individuals committing these unlawful activities are identified by their IP addresses as well as the dates and times they unlawfully accessed Petitioner's computer systems. This information is set forth in Exhibit A.

4

16.     Once the IP address and date and time of unlawful access were ascertained, Petitioner used publicly available reverse-lookup databases on the Internet to determine what ISP issued the IP address. The Does Petitioner seeks to identify through this petition are all subscribers of Comcast.

17.     Petitioner has suffered a loss due to the Does fraud and abuse of Petitioner's computer systems in excess of $250,000. Petitioner has suffered a loss in the form of 1) costs associated with detecting the unauthorized breaches and identifying the IP addresses of those associated, 2) costs associated with restoring its computer systems to their condition prior to the breach of its computer systems and preventing future breaches, and 3) lost revenue and costs incurred due to interruption of service.

18.     The above alleged facts support a claim of computer fraud and abuse by Petitioner against the Does under 18 U.S.C. § 1030.[1]

B.  Computer Tampering

19.     The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

20.     The Does knowingly, and without the authorization of Petitioner, accessed Petitioner's computer systems.

21.     Once the Does gained unauthorized access, they knowingly, and without the authorization of Petitioner, obtained data and services as though they were paying members.

22.     Petitioner has suffered a loss due to the Does unauthorized tampering of Petitioner's computer systems in excess of $250,000. Petitioner has suffered a loss in the form of 1) costs associated with detecting the unauthorized breaches and identifying the IP addresses of

---

[1] A private right of action exists under the Act under 18 U.S.C. § 1030(g).

5

29.     Petitioner has a right to the relief sought in order to identify the unknown Does, which is a condition precedent to Petitioner filing an action against the Does, who will be defendants.

30.     The discovery sought is material to Petitioner's anticipated actions at law.

WHEREFORE, Petitioner respectfully requests that the Court enter a judgment:

(A)     Entering an Order requiring Comcast to turn over the following identifying information of the subscribers associated with the IP addresses listed on Exhibit A, attached hereto:

• True Name;

• Address;

• Telephone Number;

• E-mail Address; and

• Media Access Control Address.

(B)     Granting Petitioner further relief as this Court deems just and proper.

Respectfully submitted,

GUAVA LLC

DATED: November 16, 2012

By: _____
Paul A. Duffy, Esq. (Bar No. 6210496)
2 N. LaSalle Street
13th Floor
Chicago, IL 60602
312-952-6136
*Attorney for Petitioner*

7

By: [signature]

Kevin T. Hoerner, #6196686
Becker, Paulson, Hoerner &
Thompson, P.C.
5111 West Main Street
Belleville, IL 62226
(618) 235-0020
Attorney for Petitioner

VERIFICATION

Under penalties of perjury as provided by law pursuant to section 1-109 of the code of civil procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters herein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that the undersigned verily believes the same to be true.

Alan Mooy – Declarant

SUBSCRIBED and SWORN TO
Before Me This 30th day of November, 2012.

Notary Public

# EXHIBIT A

| IP Address | Date/Time (UTC) |
|---|---|
| 173.9.253.149 | 2012-10-05 01:12:01 |
| 23.25.47.84 | 2012-11-15 13:58:19 |
| 24.1.107.63 | 2012-08-10 21:11:53 |
| 24.1.141.155 | 2012-10-15 21:51:01 |
| 24.1.175.233 | 2012-10-08 04:06:10 |
| 24.1.191.211 | 2012-10-10 20:19:24 |
| 24.1.75.199 | 2012-11-15 09:33:40 |
| 24.1.95.156 | 2012-10-11 23:25:46 |
| 24.1.98.146 | 2012-08-03 05:28:23 |
| 24.2.113.158 | 2012-08-14 02:01:08 |
| 24.12.116.87 | 2012-10-11 19:14:53 |
| 24.12.160.43 | 2012-11-05 20:35:08 |
| 24.12.160.5 | 2012-11-12 22:09:42 |
| 24.12.17.76 | 2012-08-16 17:12:21 |
| 24.12.215.82 | 2012-11-06 15:25:41 |
| 24.12.235.189 | 2012-10-29 22:60:33 |
| 24.12.255.78 | 2012-11-01 04:26:30 |
| 24.12.30.72 | 2012-10-03 13:21:19 |
| 24.12.9.239 | 2012-08-06 23:35:11 |
| 24.13.103.83 | 2012-10-26 22:00:56 |
| 24.13.118.250 | 2012-10-10 22:09:37 |
| 24.13.137.179 | 2012-11-15 09:25:17 |
| 24.13.161.156 | 2012-10-25 12:50:30 |
| 24.13.172.38 | 2012-11-01 21:27:57 |
| 24.13.178.197 | 2012-10-01 00:52:51 |
| 24.13.187.100 | 2012-08-11 10:23:45 |
| 24.13.235.108 | 2012-08-14 18:29:03 |
| 24.13.59.132 | 2012-09-15 10:35:30 |
| 24.14.103.125 | 2012-09-18 15:50:10 |
| 24.14.116.211 | 2012-09-13 17:10:10 |
| 24.14.122.52 | 2012-08-09 14:14:22 |
| 24.14.13.193 | 2012-10-01 13:23:41 |
| 24.14.130.83 | 2012-10-06 16:43:11 |
| 24.14.162.27 | 2012-08-20 23:02:49 |
| 24.14.168.183 | 2012-09-29 13:46:42 |
| 24.14.175.98 | 2012-10-18 21:42:55 |
| 24.14.188.2 | 2012-10-31 22:18:00 |
| 24.14.191.2 | 2012-10-30 03:48:51 |
| 24.14.191.209 | 2012-10-25 18:28:44 |
| 24.14.211.234 | 2012-10-10 21:26:49 |
| 24.14.22.36 | 2012-09-15 20:12:28 |
| 24.14.226.226 | 2012-10-03 00:24:19 |
| 24.14.50.22 | 2012-09-13 23:57:01 |
| 24.150.0.234 | 2012-11-09 17:41:30 |
| 24.15.108.237 | 2012-11-04 07:50:59 |
| 24.15.188.130 | 2012-10-29 20:50:23 |

| IP Address | Timestamp |
| --- | --- |
| 24.15.194.37 | 2012-11-09 01:53:56 |
| 24.15.21.54 | 2012-10-09 16:48:00 |
| 24.15.225.33 | 2012-11-08 16:47:49 |
| 24.15.29.44 | 2012-11-12 20:33:39 |
| 24.15.48.154 | 2012-11-06 01:50:48 |
| 24.15.96.96 | 2012-10-15 07:11:54 |
| 24.63.77.213 | 2012-10-17 17:55:01 |
| 24.7.197.117 | 2012-09-30 05:49:20 |
| 24.7.199.112 | 2012-09-16 19:54:04 |
| 24.7.214.221 | 2012-11-02 16:43:02 |
| 50.129.14.36 | 2012-10-16 20:32:04 |
| 50.129.252.207 | 2012-09-28 01:28:10 |
| 50.129.68.62 | 2012-09-29 13:00:56 |
| 50.129.69.141 | 2012-10-19 11:33:31 |
| 50.129.96.232 | 2012-10-24 20:34:18 |
| 50.140.131.57 | 2012-01-06 19:29:04 |
| 50.140.165.240 | 2012-09-21 01:00:25 |
| 50.140.169.244 | 2012-09-23 13:48:02 |
| 50.140.178.114 | 2012-10-05 03:32:14 |
| 50.141.173.240 | 2012-10-30 18:56:59 |
| 50.141.215.254 | 2012-09-30 00:45:57 |
| 50.141.247.73 | 2012-10-05 03:51:20 |
| 50.141.254.153 | 2012-11-09 02:38:17 |
| 50.77.161.249 | 2012-10-03 20:15:25 |
| 67.162.108.239 | 2012-10-05 12:08:40 |
| 67.162.29.173 | 2012-09-26 13:33 |
| 67.162.29.246 | 2012-10-08 23:51:27 |
| 67.162.38.22 | 2012-10-08 01:06:19 |
| 67.162.39.33 | 2012-09-27 13:25:24 |
| 67.162.47.179 | 2012-08-20 18:58:39 |
| 67.162.51.34 | 2012-08-10 03:26:21 |
| 67.162.81.65 | 2012-10-30 14:04:44 |
| 67.163.4.99 | 2012-09-26 04:31:30 |
| 67.163.69.45 | 2012-10-03 10:46:07 |
| 67.163.76.75 | 2012-08-01 06:48:44 |
| 67.163.89.166 | 2012-09-27 01:01:52 |
| 67.163.9.43 | 2012-11-04 11:15:13 |
| 67.165.167.146 | 2012-10-16 00:51:08 |
| 67.165.178.74 | 2012-10-27 02:43:29 |
| 67.165.179.58 | 2012-08-10 00:00:53 |
| 67.165.182.136 | 2012-10-06 17:09:50 |
| 67.165.183.182 | 2012-09-29 07:28:18 |
| 67.167.112.222 | 2012-10-24 21:51:26 |
| 67.167.13.9 | 2012-10-22 16:02:08 |
| 67.167.13.99 | 2012-10-29 06:57:11 |
| 67.167.18.189 | 2012-11-10 00:00:59 |
| 67.167.210.178 | 2012-11-15 06:40:40 |

| | |
|---|---|
| 67.167.246.116 | 2012-10-24 08:07:08 |
| 67.173.104.228 | 2012-10-10 05:53:29 |
| 67.173.113.134 | 2012-11-12 15:13:13 |
| 67.173.142.217 | 2012-10-09 00:52:13 |
| 67.173.41.116 | 2012-09-25 14:53:13 |
| 67.173.67.242 | 2012-10-13 21:41:46 |
| 67.173.71.42 | 2012-09-13 04:21:13 |
| 67.173.81.33 | 2012-10-08 14:16:06 |
| 67.173.94.229 | 2012-08-16 01:30:21 |
| 67.174.12.22 | 2012-08-08 17:41:23 |
| 67.174.24.44 | 2012-10-26 13:22:10 |
| 67.174.3.197 | 2012-09-23 02:06:36 |
| 67.174.7.214 | 2012-08-08 15:14:57 |
| 67.175.164.253 | 2012-10-10 23:57:29 |
| 67.175.167.179 | 2012-10-31 02:41:14 |
| 67.175.201.238 | 2012-11-09 17:08:21 |
| 67.175.219.14 | 2012-11-15 02:16:55 |
| 67.175.225.135 | 2012-10-17 07:27:02 |
| 67.175.34.7 | 2012-11-01 16:02:32 |
| 67.175.45.113 | 2012-09-22 20:19:53 |
| 67.175.62.183 | 2012-11-12 17:17:26 |
| 67.175.64.86 | 2012-10-23 16:29:14 |
| 67.175.7.224 | 2012-11-07 07:46:26 |
| 67.176.150.212 | 2012-09-24 03:23:17 |
| 67.176.153.52 | 2012-11-09 18:34:34 |
| 67.176.182.107 | 2012-10-28 20:20:16 |
| 67.184.1.244 | 2012-11-08 22:58:08 |
| 67.184.166.20 | 2012-08-10 23:48:18 |
| 67.184.177.95 | 2012-11-12 15:21:08 |
| 67.184.228.60 | 2012-09-21 04:12:43 |
| 67.184.24.103 | 2012-11-10 04:21:16 |
| 67.184.86.237 | 2012-11-04 02:24:27 |
| 67.186.127.41 | 2012-11-15 02:16:52 |
| 67.186.83.184 | 2012-10-05 17:56:05 |
| 67.186.86.5 | 2012-10-19 19:12:46 |
| 67.186.92.192 | 2012-11-12 22:33:48 |
| 68.51.99.159 | 2012-09-23 01:22:07 |
| 68.57.197.175 | 2012-10-18 04:18:36 |
| 68.57.219.140 | 2012-08-18 17:37:38 |
| 68.57.231.126 | 2012-10-07 11:33:01 |
| 68.57.233.25 | 2012-10-14 05:51:31 |
| 68.58.155.157 | 2012-10-29 22:23:38 |
| 68.58.68.84 | 2012-08-18 21:48:40 |
| 69.136.14.225 | 2012-11-12 15:47:21 |
| 69.136.9.65 | 2012-10-24 07:20:53 |
| 69.245.251.141 | 2012-10-27 04:19:52 |
| 69.246.215.8 | 2012-10-30 21:55:53 |

| IP Address | Timestamp |
| --- | --- |
| 76.23.65.126. | 2012-08-15 22:42:40 |
| 76.16.255.164 | 2012-09-09 03:56:24 |
| 76.16.243.52 | 2012-10-24 12:58:31 |
| 76.16.213.19 | 2012-08-14 04:18:29 |
| 76.16.189.233 | 2012-11-09 18:53:22 |
| 76.16.1.11 | 2012-10-04 01:11:17 |
| 75.150.227.205 | 2012-10-23 15:38:01 |
| 71.57.92.76 | 2012-10-07 21:38:42 |
| 71.57.63.157 | 2012-08-20 01:27:27 |
| 71.57.44.80 | 2012-08-04 04:01:00 |
| 71.57.33.24 | 2012-10-21 15:16:46 |
| 71.5.3.17 | 2012-09-30 00:57:42 |
| 71.239.90.45 | 2012-09-28 20:11:30 |
| 71.239.61.141 | 2012-09-13 17:28:55 |
| 71.239.55.92 | 2012-11-01 08:21:48 |
| 71.239.44.253 | 2012-10-02 03:15:55 |
| 71.239.43.67 | 2012-11-10 07:08:51 |
| 71.239.27.180 | 2012-11-06 19:47:59 |
| 71.239.253.249 | 2012-09-19 06:31:04 |
| 71.239.187.67 | 2012-10-03 22:10:53 |
| 71.239.186.221 | 2012-08-14 16:30:32 |
| 71.239.129.20 | 2012-08-09 15:30:26 |
| 71.229.75.58 | 2012-08-28 16:18:05 |
| 71.229.73.180 | 2012-09-17 04:52:21 |
| 71.228.23.45 | 2012-08-15 20:52:23 |
| 71.228.23.18 | 2012-08-13 23:57:58 |
| 71.228.2.27 | 2012-11-06 21:05:50 |
| 71.228.2.201 | 2012-08-09 15:27:28 |
| 71.201.68.61 | 2012-11-08 14:55:02 |
| 71.201.53.217 | 2012-10-10 01:41:29 |
| 71.201.48.224 | 2012-08-05 04:48:50 |
| 71.201.240.10 | 2012-10-13 15:30:35 |
| 71.201.225.111 | 2012-09-24 03:38:27 |
| 71.201.200.210 | 2012-10-05 03:15:45 |
| 71.201.20.318 | 2012-10-16 08:51:40 |
| 71.201.196.162 | 2012-08-02 05:41:49 |
| 71.194.86.35 | 2012-10-11 17:33:32 |
| 71.194.76.21 | 2012-08-05 20:56:20 |
| 71.194.75.167 | 2012-11-05 01:09:28 |
| 71.194.6.203 | 2012-08-27 16:48:55 |
| 71.194.47.68 | 2012-09-28 20:50:38 |
| 71.194.248.8 | 2012-10-22 09:13:14 |
| 71.194.189.101 | 2012-11-00 00:36:23 |
| 71.194.185.170 | 2012-09-15 16:55:26 |
| 71.194.120.232 | 2012-09-16 16:34:15 |
| 71.194.120.21 | 2012-10-21 20:48:17 |
| 69.246.223.186 | 2012-11-05 04:52:55 |

| IP Address | Timestamp |
|---|---|
| 76.23.68.15 | 2012-11-15 05:12:32 |
| 76.23.78.180 | 2012-11-03 08:32:20 |
| 76.29.26.158 | 2012-09-26 05:47:06 |
| 76.29.32.36 | 2012-08-11 06:27:36 |
| 76.29.35.172 | 2012-10-26 16:22:59 |
| 76.29.36.240 | 2012-11-01 16:17:39 |
| 76.29.44.43 | 2012-10-25 20:40:39 |
| 76.29.53.56 | 2012-10-15 14:40:17 |
| 76.29.63.21 | 2012-10-11 01:13:57 |
| 76.29.79.47 | 2012-10-10 04:11:31 |
| 76.29.97.30 | 2012-11-09 16:11:12 |
| 98.193.110.119 | 2012-10-01 22:52:43 |
| 98.193.41.242 | 2012-09-19 09:48:45 |
| 98.193.9.222 | 2012-10-01 02:38:37 |
| 98.206.106.234 | 2012-10-13 15:49:43 |
| 98.206.11.227 | 2012-11-15 15:49:25 |
| 98.206.118.16 | 2012-10-27 20:04:04 |
| 98.206.198.204 | 2012-08-31 23:26:45 |
| 98.206.227.66 | 2012-08-10 19:49:36 |
| 98.206.231.28 | 2012-08-03 19:26:19 |
| 98.206.245.122 | 2012-09-28 18:36:23 |
| 98.206.38.123 | 2012-10-11 22:26:06 |
| 98.206.40.164 | 2012-08-07 20:23:47 |
| 98.206.44.107 | 2012-08-27 16:56:35 |
| 98.206.48.241 | 2012-10-21 19:53:30 |
| 98.206.98.9 | 2012-11-14 09:11:24 |
| 98.212.11.69 | 2012-11-01 04:15:20 |
| 98.212.135.39 | 2012-11-03 21:02:29 |
| 98.212.155.105 | 2012-11-02 15:15:00 |
| 98.212.190.193 | 2012-09-26 02:18:32 |
| 98.212.196.209 | 2012-10-04 07:07:31 |
| 98.212.197.162 | 2012-08-27 00:23:19 |
| 98.212.220.251 | 2012-09-20 17:56:12 |
| 98.212.227.110 | 2012-08-20 21:56:21 |
| 98.212.36.159 | 2012-10-21 22:48:49 |
| 98.212.49.254 | 2012-08-18 18:23:38 |
| 98.212.62.146 | 2012-08-06 23:57:41 |
| 98.213.105.3 | 2012-09-14 00:03:10 |
| 98.213.108.128 | 2012-10-06 06:18:33 |
| 98.213.127.203 | 2012-08-24 02:07:41 |
| 98.213.129.83 | 2012-10-25 02:07:33 |
| 98.213.154.107 | 2012-10-08 06:29:27 |
| 98.213.161.246 | 2012-08-22 00:48:41 |
| 98.213.177.66 | 2012-10-23 11:42:38 |
| 98.213.182.122 | 2012-10-07 16:34:40 |
| 98.213.192.42 | 2012-09-23 17:08:44 |
| 98.213.208.66 | 2012-10-12 02:52:53 |

| | |
|---|---|
| 98.227.220.235 | 2012-10-11 01:24:35 |
| 98.227.166.161 | 2012-10-27 21:42:55 |
| 98.227.146.114 | 2012-11-01 02:10:16 |
| 98.227.137.60 | 2012-09-27 09:04:14 |
| 98.227.134.132 | 2012-10-22 16:02:40 |
| 98.227.110.118 | 2012-11-08 06:48:20 |
| 98.227.107.24 | 2012-11-08 00:33:57 |
| 98.227.107.209 | 2012-11-04 05:50:12 |
| 98.226.68.25 | 2012-09-22 20:36:51 |
| 98.226.211.151 | 2012-11-10 05:25:37 |
| 98.226.17.78 | 2012-10-12 13:41:22 |
| 98.226.118.15 | 2012-08-23 16:26:46 |
| 98.223.89.194 | 2012-08-01 14:56:54 |
| 98.223.8.234 | 2012-10-01 18:54:24 |
| 98.223.8.13 | 2012-10-07 01:27:37 |
| 98.223.3.225 | 2012-09-27 17:30:31 |
| 98.223.212.218 | 2012-10-02 00:37:03 |
| 98.223.168.201 | 2012-11-07 17:28:16 |
| 98.223.10.117 | 2012-11-06 18:58:02 |
| 98.222.90.191 | 2012-10-19 22:21:05 |
| 98.222.75.251 | 2012-11-12 22:59:38 |
| 98.222.74.155 | 2012-09-25 05:08:52 |
| 98.222.65.129 | 2012-10-14 15:59:40 |
| 98.222.55.252 | 2012-10-30 01:50:09 |
| 98.222.132.14 | 2012-09-21 19:32:16 |
| 98.215.86.225 | 2012-10-28 06:34:41 |
| 98.215.77.122 | 2012-09-29 20:47:48 |
| 98.215.54.93 | 2012-11-01 16:47:25 |
| 98.215.35.193 | 2012-09-13 13:30:14 |
| 98.215.32.36 | 2012-09-24 22:44:02 |
| 98.215.249.197 | 2012-10-17 22:15:23 |
| 98.215.227.45 | 2012-09-12 21:12:58 |
| 98.215.224.142 | 2012-08-03 05:01:51 |
| 98.215.212.122 | 2012-11-07 23:36:50 |
| 98.215.210.179 | 2012-11-05 07:06:52 |
| 98.215.116.187 | 2012-11-10 02:16:37 |
| 98.214.217.213 | 2012-08-09 19:50:51 |
| 98.214.170.43 | 2012-10-15 20:48:58 |
| 98.214.161.8 | 2012-10-27 02:45:40 |
| 98.213.93.81 | 2012-10-06 19:45:37 |
| 98.213.88.34 | 2012-09-30 03:04:53 |
| 98.213.51.85 | 2012-08-13 22:37:23 |
| 98.213.47.27 | 2012-11-13 00:06:40 |
| 98.213.38.72 | 2012-11-15 21:17:04 |
| 98.213.232.172 | 2012-08-06 10:03:47 |
| 98.213.227.230 | 2012-09-26 19:38:57 |
| 98.213.210.20 | 2012-09-27 22:32:13 |

| | |
|---|---|
| 98.253.39.234 | 2012-10-12 01:52:04 |
| 98.253.233.38 | 2012-11-02 23:27:27 |
| 98.253.188.21 | 2012-11-13 00:01:48 |
| 98.253.178.180 | 2012-08-15 00:37:52 |
| 98.253.133.48 | 2012-10-04 19:02:22 |
| 98.228.73.51 | 2012-10-09 02:14:11 |
| 98.228.72.139 | 2012-11-12 23:13:59 |
| 98.228.50.64 | 2012-09-29 03:53:02 |
| 98.228.245.111 | 2012-10-19 00:40:11 |
| 98.228.239.222 | 2012-08-10 01:41:49 |
| 98.228.231.69 | 2012-10-30 04:26:13 |
| 98.228.214.119 | 2012-11-12 21:38:02 |
| 98.228.196.35 | 2012-10-02 22:55:42 |
| 98.228.179.206 | 2012-08-20 13:23:41 |
| 98.228.138.109 | 2012-10-30 12:22:08 |
| 98.227.93.145 | 2012-09-27 08:35:27 |
| 98.227.36.247 | 2012-11-05 15:18:21 |
| 98.227.240.143 | 2012-10-17 18:26:10 |
| 98.227.221.131 | 2012-09-25 16:18:04 |

EXHIBIT B

those associated, 2) costs associated with restoring its computer systems to their condition prior
to the breach of its computer systems and preventing future breaches, and 3) lost revenue and
costs incurred due to interruption of service.

23.     The above alleged facts support a claim of Computer Tampering under 720 ILCS
5 § 16D-3.[2]

## PRE-SUIT DISCOVERY

24.     The allegations contained in the preceding paragraphs are hereby re-alleged as if
fully set forth herein.

25.     Each Doe used one or more hacked passwords to gain unauthorized access to
Petitioner's protected computer systems in direct violation of the Computer Fraud and Abuse
Act, 18 U.S.C. § 1030, and Computer Tampering, 720 ILCS 5 § 16D-3.

26.     The above alleged facts support claims of computer fraud and abuse and computer
tampering by Petitioner against the Does.  Petitioner will be an actual party, and not merely a
witness or other third party to the claims brought against the Does.

27.     Petitioner does not know the Does' true identities.  Each of the Does' true
identities is known only to each Doe and by Comcast, to which each Doe subscribes.

28.     Petitioner seeks the name, address, telephone number, email address, MAC
address and any other form of information that may be used to identify the Does.  Petitioner is
interested in and entitled to this information so that Petitioner may bring claims of computer
fraud and abuse and computer tampering against the Does in this county.

---

[2] A private right of action exists under the Statute under 720 ILCS 5 § 16D-3(c).

6

October 4, 2012, 12:15PM

# Cybercrime Gang Recruiting Botmasters for Large-Scale MiTM Attacks on American Banks

by Michael Mimoso

A slew of major American banks, some already stressed by a stream of DDoS attacks carried out over the past 10 days, may soon have to brace themselves for a large-scale coordinated attack bent on pulling off fraudulent wire transfers.

RSA's FraudAction research team has been monitoring underground chatter and has put together various clues to deduce that a cybercrime gang is actively recruiting up to 100 botmasters to participate in a complicated man-in-the-middle hijacking scam using a variant of the proprietary Gozi Trojan.

This is the first time a private cybercrime organization has recruited outsiders to participate in a financially motivated attack, said Mor Ahuvia, cybercrime communications specialist for RSA FraudAction. The attackers are promising their recruits a cut of the profits, and are requiring an initial investment in hardware and training in how to deploy the Gozi Prinimalka Trojan, Ahuvia added. Also, the gang will only share executable files with their partners, and will not give up the Trojan's compilers, keeping the recruits dependent on the gang for updates.

Generally, cybercrime gangs deploy as few as five individual botmasters to help in successful campaigns; with this kind of scale, banks could be facing up to 30 times the number of compromised machines and fraudulent transfers, if the campaign is successful.

"This Trojan is not well known. This is not SpyEye or Citadel; it's not available for everyone to buy," Ahuvia said. "Security vendors and antivirus signatures are less likely to catch it or be familiar with it. It will be tricky for vendors to detect and block it. This gang is keeping a tight hold on the compiler. By only giving up executable files, they can control any antivirus signatures are in the wild and keep unique signatures to a minimum."

As many as 30 banks have been targeted, many of them well known and high profile, Ahuvia said. RSA said the gang is targeting American banks because of past success in beating their defenses, as well as a lack of two-factor authentication required for wire transfers.Some European banks, for example, require consumers to use two-factor authentication. She added that RSA FraudAction was unsure how far along the recruitment campaign had gone, or when the attacks would launch.

"There is the chance that once we've gone public, they may abandon their plans because there's too much buzz around it," Ahuvia said. "On the other hand, I don't think anything we know will have such

a dramatic effect on them. There are so many Trojans available and so many points of failure in security that could go wrong, that they'd still have some chance of success."

RSA's researchers were able to make the connection to the Gozi Prinimalka Trojan, which has been in circulation since 2008 and responsible for $5 million in fraud-related losses. Prinimalka is similar to the Gozi Trojan in technical and operational aspects, RSA said, leading to speculation the HangUp Team, which was tied to previous Gozi attacks, is behind this attack as well. Prinimalka is Russian for the word "receive" and is a folder name in every URL patch given by this particular gang to its crimeware servers.

Prinimalka uses the same bot-to-server communication pattern and URL trigger list as Gozi, RSA said. But deployment of the two Trojans is different: Gozi writes a single DLL file to bots upon deployment, while Prinimalka writes two, an executable file and a DAT file which reports to the command and control server.

Once the Trojan is launched, the botmaster fires up a virtual machine synching module. The module then duplicates the victim's computer, including identifiable features such as time zone, screen resolution, cookies, browser type and version, and software identification, RSA said. This allows the botmaster to impersonate the victim's machine and access their accounts. Access is carried out over a SOCKS proxy connection installed on the victim's machine, RSA said.

The cloned virtual system then can move about on the genuine IP address of the compromised machine when accessing the bank website. Taking it a step further, the attackers deploy VoIP phone flooding software that will prevent the victim from receiving a confirmation call or text alerting them to unusual transfer activity, RSA said.

"They are looking for this to be a quick campaign," Ahuvia said. "They want to make as much as they can until the banks and users harden their systems. They want to cash out quickly."

*Commenting on this Article will be automatically closed on January 4, 2013.*

# EXHIBIT C

# No slowdown in sight for cyberattacks

By Byron Acohido, USA TODAY

102

Videos you may be interested in

by Taboola
More videos

acer
Patsy Cline cover artist
Power Skyper
Conquered stage fright
Love my Acer
Powered by Margaret
Aspire | V5

LAS VEGAS - Cyber attacks are accelerating at a pace that suggests the Internet - already a risky environment - is likely to pose a steadily growing threat to individuals and companies for years to come.

That's the somber consensus of security and Internet experts participating in the giant Black Hat cybersecurity conference that concluded here this week.

Internet-generated attacks comprise "the most significant threat we face as a civilized world, other than a weapon of mass destruction," Shawn Henry, former head of the FBI's cybercrime unit, told some 6,500 attendees in a keynote address.

Getty Images

Internet-generated attacks comprise the most significant threat we face as a civilized world, other than a weapon of mass destruction," according to one security expert.

Joe Stewart, Dell SecureWorks' director of malware research, presented research detailing the activities of two large cyber gangs, one based in Shanghai the other in Beijing, that have cracked into the networks of thousands of companies over the past half dozen years.

The attacks invariably begin by infecting the computer of one employee, then using that machine as a toehold to patiently probe deep into the company's network. The end game: to steal customer lists, patents, bidding proposals and other sensitive documents.

Most Popular

Stories
- HF Test
- Don't fall for Facebook 'privacy' notice
- Smart Office 2: A versatile software suite

Videos
- Ed Baig reviews Kindle Paperwhite
- 'Pregnant man' struggles through nasty divorce
- Tennis Channel Court Report 9-30-2012

Photos
- Mayan calendar discovery
- Facebook
- Apple iPhone 5 first day sales

Each gang is made up of dozens of employees playing complementary roles in attacks that are "stealthy and persistent," says Stewart. "Even if they do get discovered and get kicked out of a network, they come back."

Another gang, analyzed by Dell SecureWorks' researcher Jeff Stone-Gross, has been blasting out spam, designed to slip past spam filters. The messages carry instructions to click on a link to read bogus delivery invoices, airline reservations or cellphone bills. The link, however, takes the user to a web page that installs malicious software.

Stone-Gross said the gang currently has access to 678,000 infected PCs, some of which are used to carry out its lucrative specialty: orchestrating fraudulent wire transfers from online banking accounts.

Meanwhile, a different category of hackers is stepping up attacks, not on individual PCs, but on company websites. Website attacks now routinely occur thousands of times each, as criminals probe for ways to breach databases carrying usernames and passwords and other valuable data, says David Koretz, general manager of website security firm Mykonos, a division of Juniper Networks.

Some successful website hackers enjoy boasting —by publically posting some, if not most, of the stolen data. That's what happened recently with data stolen from online retailer Zappos, matchmaking site eHarmony, business social networking site LinkedIn and search giant Yahoo, Koretz says.

Experts say website attacks continue to escalate partly because powerful, easy-to-use hacking programs are widely available for free. What's more, opportunities for an intruder to take control of an individual's PC, or access and probe a company's network, are multiplying as society uses more Internet-delivered services and Internet-connected mobile devices.

"It's easier and safer for a criminal to steal money from an online bank account, rather than have to walk into a bank — or to steal intellectual property in an online setting, rather than to send in a human spy," says Eddie Schwartz, chief security officer of security firm RSA, a division of EMC.

For more information about reprints & permissions, visit our FAQ's. To report corrections and clarifications, contact Standards Editor Brent Jones. For publication consideration in the newspaper, send comments to letters@usatoday.com, include name, phone number, city and state for verification. To view our corrections, go to corrections.usatoday.com

Posted 7/21/2012 10:54 AM | Updated 7/22/2012 10:06 AM

## More from USA TODAY

Man kills girlfriend for revealing she was HIV positive USA TODAY.com for On Deadline

More Duchess Kate topless pics out; police hunt photographer USATODAY.com Lifeline Live

Column: Christian companies can't bow to sinful mandate USATODAY.com News

5 reasons to skip iPhone 5 lines USATODAY.com Tech

## More from the web

If You Have Gmail, You Must Have This (Gmail)

Apple's Next Big Thing Will Be Huge (Market)

Cloud Will Never Be Cheaper Than On-Premise: Gartner (CItranet co)

How to Land Your Dishwasher: Common Promise (MileStone Makes Dishwashers Inc)

4 Things You Can Learn From SeaWay's Notorious Product Fail (Main Frame)

[?]

USA TODAY's new Facebook Comments tool on our stories and blog posts is to provide an enhanced user experience. To post a comment, log into Facebook and then "Add" your comment. To report spam or abuse, click the "X" in the upper right corner of the comment box. To find out more, read the FAQ and Conversation Guidelines.

**MOST POPULAR (USA TODAY)**

Most popular right now:

[#1 text]

Sign up to get:

Most Popular E-mail Newsletter

Top viewed stories, photo galleries and community posts of the day



Sign up for USA TODAY's free e-mail alerts

**Sponsored Links**

BlackBerry Bold 9900
Get more active speed, agility and performance per byte. Learn more.

Microsoft Windows Azure
Discover Microsoft Windows Azure. Up for a Free 90-Day Trial.

The God Machine
It can't create man but it can generate sampling it's the with the click a button. Learn more.

Buy a sun here

EXHIBIT D

Cybersecurity
Hacks and Cracks
Privacy, Crime and Security Online
Threat Level

.3ɛ ɹ 213 85          22          14   Share

# Hackers Release 1 Million Apple Device IDs Allegedly Stolen From FBI Laptop

By Kim ZetterEmail Author
09.04.12
12:49 PM
Follow @KimZetter



*Photo: Wired*

The hacker group AntiSec has released 1 million Apple device IDs that they say they obtained from an FBI computer they hacked.

The hackers say they actually stole 12 million IDs, including personal information, from the hacked FBI computer, but released only 1 million in an encrypted file published on torrent sites.

In a lengthy post online, the hackers wrote that last March, they hacked a laptop belonging to an FBI agent named Christopher K. Stangl from the bureau's Regional Cyber Action Team and the New York FBI office's Evidence Response Team.

The hackers say the IDs were stored in a file on Stangl's desktop titled "NCFTA_iOS_devices_intel.csv."

The file, according to the hackers, contained a list of more than 12 million Apple iOS devices, including Unique Device Identifiers (UDID), user names, names of devices, types of devices, Apple Push Notification Service tokens, ZIP codes, cellphone numbers, and addresses. The hackers released only 1 million UDIDs, however, and did not release the accompanying personal information for the IDs.

Apple UDIDs are a 40-character alphanumeric string that is unique to each Apple device. It's not known why the FBI possessed the Apple IDs. The hackers suggested in a tweet from the the @AnonymousIRC account, that the FBI was using the information to track users.

 **AnonymousIRC**
@AnonymousIRC

*Follow*

12,000,000 identified and tracked iOS devices, thanks FBI SSA
Christopher Stangl, #AntiSec

3 Sep 12          Reply     Retweet     Favorite

Stangl may have been targeted because he was on an e-mail that members of Anonymous intercepted last January. The e-mail was sent to several dozen U.S. and European law-enforcement personnel to participate in a conference call discussing efforts to investigate Anonymous and other hacking groups. The email included a call-in number for the discussion, which members of Anonymous recorded and posted online last February.

The hackers say they released the Apple UDIDs so that people would know that the FBI may be tracking their devices and also because, they wrote in their online post, "We think it's the right moment to release this knowing that Apple is looking for alternatives for those UDID currently ... but well, in this case it's too late for those concerned owners on the list."

Apple has been criticized for hard-coding the ID's in devices, since they can be misused by application developers and others to identify a user, when combined with other information, and track them. Last April, Apple began rejecting applications that track UDIDs.

The Next Web has created a tool for users to check if their UDID is among those that the hackers released.

Related.
You Might Like
Related Links by Contextly

wired.com/threatlevel/.../hackers-release-1-million-apple-device/ce-ids-allegedly-stolen-from-fbi-laptop          2/7

EXHIBIT E

+You   Search   Images   Maps   Play   YouTube   News   Gmail   Documents   Calendar   More ▾

| Sign in |

# Cyber defenders urged to go on the offense

By Glenn Chapman (AFP) – Jul 28, 2012

LAS VEGAS — Computer security champions on Wednesday were urged to hunt down and
eliminate hackers, spies, terrorists and other online evildoers to prevent devastating Internet Age
attacks.

The first day of briefings at a prestigious Black Hat computer security gathering here opened
with a former FBI cyber crime unit chief calling for a shift from defense to offense when it comes
to protecting networks.

"We need venues to fight our enemies, preferably in the cyber world right now," Shawn Henry
said in a Black Hat keynote presentation that kicked off with dramatic video of hostage rescue
teams raining.

"I believe the threat from computer network attack is the most significant threat we face as a
civilized world, other than a weapon of mass destruction."

The peril grows as wallet supplies, power grids, financial transactions, and more rely on the
Internet and as modern lives increasingly involve working and playing on smartphones or tablet
computers, according to Henry.

He joked of a list of adversaries ranging from spies and well-funded criminals to disgruntled
employees with inside knowledge of company networks.

"Cyber is the great equalizer," Henry said.

"With a $500 laptop and an Internet connection anybody, anywhere in the world can attack any
organization, any company," he continued. "The last time I checked, that was about 2.3 billion
people."

After 24 years of working for the FBI, Henry in April switched to the private sector as the head of
a division at startup CrowdStrike specializing in cyber attack incident responses and identifying
attackers.

The computer security industry to expand its arsenal beyond just building walls, filters and other
safeguards against online intruders to include actively hunting, looking for figures.

"It is not enough to watch the perimeter," Henry said, equating computer security to protecting
real world offices. "We have to be constantly hunting, looking for figures.

In the cyber world, that translates into maintaining system activities such as whether files have
been accessed or changed and by whom.

"The sophisticated adversary will get over that fence and walk around, like an invisible man,"
Henry said. "We have to mitigate that threat."

Tactics for fighting cyber intruders should include gathering information about how they operate
and the tools used, and then sharing the data in the industry and with law enforcement agencies
in relevant countries.

"Intelligence is the key to all of this," Henry said. "If we understand who the adversary is, we can
take specific actions.

Teamwork between governments and private companies means that options for responding to
identified cyber attackers can range from improved network software to political sanctions or
even military strikes, according to Henry.

"You can't make every school, every mall, every university, and every workplace impenetrable,"
Henry said. "We have to look at who the adversary is and stop them in advance of them walking
in."

Black Hat founder Jeff Moss, the self-described hacker behind the infamous Def Con gathering
that starts here on Thursday, backed Henry's argument.

"Maybe we need some white blood cells out there; companies willing to push the edge and
focus on threat," Moss said, calling on the computer security community to "raise the
immunity level."

Moss is head of security at the Internet Corporation for Assigned Names and Numbers, which
oversees the world's website addresses.

"So, am I, Luke, or am I Darth Vader; sometimes I'm not sure," Moss quipped about his roles in
the hacker realm and the computer security industry.

"It depends upon which day and who asks."

Moss proposed that cyber attackers also be fought on legal fronts, with companies taking
suspected culprits to court.

"I can't print money; I can't raise an army, but I can hire the lawyers and they are almost as good,"
Moss said. "One way to fight the enemy is you just suck their profit."

Henry related that it may take an Internet version of the infamous 9/11 attack in New York City to
get the world to take the cyber threat to heart.

"We need to get down range and take them out of the fight," Henry said.



Former FBI cyber crime unit chief Shawn
Henry was the keynote speaker at the Black
Hat computer security gathering (AFP/Getty
Images/File)

Map

"As well-trained, well-equipped cyber warriors you can have an impact; the stakes are high."

Copyright © 2012 AFP. All rights reserved. More »

**Man Cheats Credit Score**
1 simple trick & my credit score jumped 217 pts. Banks hate this!
www.thecreditrevolutionprogram.com

**Counterterrorism Degree**
Study counterterrorism at AMU & receive an online college degree.
www.AMU.APUS.edu/Intelligence

**Long Term Care Ins**
6 Quotes,Free Guide & Consultation. Explore Your Insurance Options Now.
www.ltcfo.com/long-term-care-quotes

**Single Woman Over 40?**
The Most Eligible Singles Over 40. Try Our Risk Free Site.
MatureSinglesOnly.com

Add News to your Google Homepage

©2012 Google - About Google News - Blog - Help Center - Help for Publishers - Terms of Use - Privacy Policy - Google Home

**IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT**
**ST. CLAIR COUNTY, ILLINOIS**
**LAW DIVISION**

GUAVA LLC,                               )
                                         )
              Petitioner,                )
                                         )
v.                                       )   No. 12MR417
                                         )
COMCAST CABLE COMMUNICATIONS, LLC,       )
                                         )
              Respondent.                )
                                         )

**MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR DISCOVERY BEFORE SUIT TO IDENTIFY RESPONSIBLE PERSONS AND ENTITIES**

**I.     INTRODUCTION**

Through this petition for discovery, Petitioner, the owner of various private websites, seeks to learn the identities of unidentified John Does ("Does") from Internet Service Provider ("ISP") Respondent Comcast Cable Communications, LLC ("Comcast"), so that Petitioner may file computer fraud and abuse and computer tampering suit against these individuals. Since Does used the Internet to commit their violations, Petitioner only knows Does by their Internet Protocol ("IP") addresses. Does' IP addresses were assigned to Does by Comcast. Accordingly, Comcast can use the IP addresses to identify Does. Indeed, Comcast maintains internal logs, which record the date, time and customer identity for each IP address assignment made by Comcast. Significantly, Comcast only maintain these logs for a very short period of time.

Petitioner seeks an order requiring Comcast to respond to a subpoena that will be served it requiring Comcast to disclose the true name, address, telephone number, e-mail address and Media Access Control ("MAC") address[1] of the Does. Petitioner will only use this information to resolve its computer fraud and abuse and computer tampering dispute with the Does. Without

---

[1] A MAC address is a number that identifies the specific device used for the hacking activity.

1

this information, Petitioner cannot name Does in future computer fraud and abuse and computer tampering suits nor immediately serve Does to pursue any such lawsuit to protect itself.

As explained below, Petitioner is indisputably entitled to learn the identity of Does and a petition for pre-suit discovery is a proper tool for this purpose. Accordingly, this Court should grant this petition.

## II.     FACTUAL BACKGROUND

Petitioner operates computer systems that distribute third-party adult entertainment content. As alleged in the Petition, Petitioner has actionable claims for computer fraud and abuse and computer tampering against each of the Does. Does used hacked passwords to gain unauthorized access to Petitioner's protected computer systems.

Although Petitioner does not know Does' true identities, Petitioner's agents identified each of the Does by a unique IP address assigned to that Doe by Comcast and the date and time of the hacking activity. Comcast maintains internal logs which record the date, time, and customer identity for each IP address assignment made. Comcast can use the IP address provided by Petitioner to identify the Does. Comcast, however, only retains the information necessary to correlate an IP address to a person for a short amount of time. Accordingly, time is of the essence with respect to getting the subpoenas to Comcast so that Comcast may preserve and maintain this information necessary to identify Does.

## III.     ARGUMENT

Petitioner may obtain the identities of the Does through a petition for discovery pursuant to Illinois Supreme Court Rule 224. A petition for discovery before suit to identify responsible persons and entities may be used by "[a] person or entity who wishes to engage in discovery for the sole purpose of ascertaining the identity of one who may be responsible in damages ..."[134]

2.

Ill. 2d R. 224. Illinois courts grant petitions for pre-suit discovery when, like in the present case, the identities of the defendants are unknown to the plaintiff. *John Gaynor v. Burlington Northern and Santa Fe Railway*, 750 N.E.2d 307, 312 (Ill. App. Ct. 2001) ("Rule 224's use is appropriate in situations where a plaintiff has suffered injury but does not know the identity of one from whom recovery may be sought."); *Roth v. St. Elizabeth's Hospital*, 607 N.E.2d 1356, 1361 (Ill. App. Ct. 1993) ("[Rule 224] provides a tool by which a person or entity may, with leave of court, compel limited discovery before filing a lawsuit in an effort to determine the identity of one who may be liable in damages.'") (Quoting 134 Ill. R. 224, Committee Comments, at 188-89)).

The "identity" that Petitioner is entitled to ascertain is more than just the names of the unknown Does. *John Gaynor*, 750 N.E.2d at 312 ("On occasion, the identification of a defendant may require more than simply a name and that, on those occasions, discovery under Rule 224 is not limited to the petitioner's ascertainment of a name only.") (Citing *Beale v. EdgeMark Financial Corp.*, 664 N.E.2d 302 (Ill. App. Ct. 1996)). Petitioner requires this additional information,[2] because sometimes the Internet subscriber and the actual hacker are determined to not be one and the same.[3] Petitioner needs all the identifying information it seeks to make this determination.

Further, Petitioner is not precluded from the information it seeks simply because it is aware of the Does' IP addresses. The court in *Beale* explains that the pre-suit discovery is not precluded "solely on the basis of the petitioner's knowledge of a name only." 664 N.E.2d at 307.

---

[2] The address, telephone number, e-mail address, and Media Access Control address of each account holder.

[3] For instance, an individual who lives alone with a secure wireless Internet connection is very likely to be both the account holder and the hacker. In contrast, where the account holder is, for example, the wife of the household it is more likely the case—given the nature of Petitioner's business—that the husband or a college-aged-son is the appropriate hacker; in other words, in the latter example the account holder and the hacker are most likely not the same individual.

3

Knowledge of the Does' IP addresses does not provide Petitioner with sufficient information to name and bring a lawsuit against them. If mere knowledge of the defendant's name is not enough to preclude pre-suit discovery under Rule 224, then mere knowledge of the Does' IP address is also not enough to preclude the pre-suit discovery.

In short, Petitioner is using the petition for pre-suit discovery for its intended purpose: to identify the names of the people who have harmed it. There is no legal or equitable reason why Petitioner should be prohibited from seeking the Does' identities from Comcast.

## IV.   CONCLUSION

For all the forgoing reasons, the Court should enter an order granting this petition.

Respectfully submitted,

Guava LLC

DATED: November 16, 2012

By: _____
Paul A. Duffy, Esq. (Bar No. 6210496)
2 N. LaSalle Street
13th Floor
Chicago, IL 60602
312-952-6136
*Attorney for Petitioner*

4

By: ______________________
Kevin T. Hoerner, #6196686
Becker, Paulson, Hoerner &
Thompson, P.C.
5111 West Main Street
Belleville, IL 62226
(618) 235-0020
Attorney for Petitioner

# IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
## ST. CLAIR COUNTY, ILLINOIS
## LAW DIVISION

GUAVA LLC,

    Petitioner,

    v.

COMCAST CABLE COMMUNICATIONS, LLC,

    Respondent.

No. 12 M R 417

## ORDER GRANTING PETITION FOR DISCOVERY BEFORE SUIT TO IDENTIFY RESPONSIBLE PERSONS AND ENTITIES

THIS CAUSE, having come before this Court on Petitioner's Petition for Discovery before Suit to Identify Responsible Persons and Entities ("Petition"), and the Court having reviewed said Petition, the Memorandum of Law filed in support thereof, and being otherwise duly advised in the premises, it is hereby

ORDERED AND ADJUDGED as follows:

1.    The Petition is GRANTED.

2.    Petitioner may serve Respondent Comcast Cable Communications LLC ("Comcast") with a subpoena commanding Comcast to provide Petitioner with the true name, address, telephone number, e-mail address, Media Access Control ("MAC") address for each of the John Does ("Does") to whom Comcast assigned an Internet Protocol ("IP") address as set forth on Exhibit A to the Petition. Petitioner shall attach to any such subpoena a copy of this Order. Comcast shall comply with it the subpoena issued pursuant to this Order.

3.    Comcast shall not require Petitioner to pay a fee in advance of providing the subpoenaed information; nor shall Comcast require Petitioner to pay a fee for an IP address that is not controlled by Comcast, or for duplicate IP addresses that resolve to the same individual, or

1

for an IP address that does not provide the name of a unique individual or for Comcast's internal costs to notify its customers. If necessary, the Court shall resolve any disputes between Comcast and Petitioner regarding the reasonableness of the amount proposed to be charged by Comcast after the subpoenaed information is provided to Petitioner.

4.    Petitioner may only use the information disclosed in response to a subpoena served on Comcast for the purpose of identifying the unknown Does so Petitioner can protect and enforce its rights as set forth in its Petition.

DONE AND ORDERED in Chambers at St. Clair County, Illinois this _____

day of _____, 2012.

_____
CIRCUIT COURT JUDGE

2

Home (/)    Search (/Business/Search)    Filings (/Business/Filings)

Search » Business Filings

## Business Record Details »

« Back to Search Results

**Minnesota Business Name**
MCGIP, LLC

**Business Type**
Limited Liability Company (Domestic)

**MN Statute**
322B

**File Number**
401239O-2

**Home Jurisdiction**
Minnesota

**Status**
Inactive

**Filing Date**
10/07/2010

**Renewal Due Date:**
12/31/2012

**Registered Office Address**
80 S 8th Str #900 IDS Ctr Alpha Law Firm
Mpls MN 55402
USA

**Manager**
Allan Mooney
80 S 8th St # 900
Minneapolis MN 55402
USA

**Registered Agent(s)**
(Optional) None provided

**Principal Executive Office Address**
80 S 8th St # 900 c/o Alpha Law Firm
Minneapolis MN 55402
USA

| Filing History | Renewal History |
| --- | --- |

**Filing History**

| | |
| --- | --- |
| 10/07/2010 | Original Filing - Limited Liability Company (Domestic) |
| 10/07/2010 | Limited Liability Company (Domestic) Business Name |
| 12/22/2011 | Notice of Dissolution - Limited Liability Company (Domestic) |
| 12/22/2011 | Termination - Limited Liability Company (Domestic) |

Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone No.: (831) 703 - 4011
Fax No.: (831) 533-5073
Email: nick@ranallolawoffice.com
Attorney for Defendant Joe Navasca

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS, LLC, | Case No. 3:12-cv-02396-EMC |
| Plaintiff, | Declaration of Nicholas Ranallo in Opposition to Motion to Shorten Time/Motion for Stay of Discovery |
| v. | |
| JOE NAVASCA | |
| Defendants. | |

DECLARATION OF NICHOLAS RANALLO

1.  I am an attorney duly licensed to practice in the State of California and before the District Court for the Northern District of California. I am an attorney of record for Joe Navasca, and this declaration is based on personal knowledge of the matters set forth herein or, to the extent so identified, upon information and belief formed after reasonable inquiry as described herein.

2.  On Friday, February 8, 2013, I received an electronic file from Joe Navasca comprised of a voicemail recording left at his residence on the same date.

Paragraph 5, below, represents my personal transcription of the voicemail message. I have retained an electronic copy of the message and can provide it to the court upon request.

3.     Upon information and belief, the individual speaking in the voicemail message is Mark Lutz. This belief is based on my recognition of Mr. Lutz' voice from numerous past conversations with Mr. Lutz in his role as paralegal for Steele Hansmeier/Prenda Law.

4.     On Friday, February 8, 2013, I sent a copy of the voicemail to Brett Gibbs requesting explanation. Beyond noting that I did not represent Jovino, Mr. Gibbs provided no information regarding why a law firm that is not formally involved in this case is seeking settlement from an individual that is not the defendant in this case, and/or seeking to amend the complaint to name an individual that was previously "eliminated" as a likely infringer.

5.     The following represents my personal transcription of the February 8 voicemail. I have endeavored to be as accurate as possible:

"Yes, uh, this message is for Jovino. It's, uh, Anti-Piracy Law Group giving you a call about a couple of letters we mailed you which had to do with the copyright infringement lawsuit that you are a part of. And...um...yeah, I mean, we haven't entered into a settlement agreement as of yet. And, prior to moving forward and modifying the complaint to add your name, our client just asked us to give you a quick call. You know, I suppose if you want to avoid the expense and time that is associated with a case like this, call us back. We can be reached at (800) 380-0840. Your reference number is 84080. Thank you."

6.     The telephone number identified in the message above is the number listed for Prenda Law, Inc., on its weflghtpiracy.com web site.

7.      The reference number noted above corresponds to prior letters from Plaintiff regarding the allegations of infringement from this case.

SALT MARSH

8.      "Salt Marsh" is the individual identified as an "Owner" of AF Holdings in ECF No. 8 in this case, as well as numerous other cases in this district.

9.      I am not aware of any individual with the actual name "Salt Marsh" that is associated with AF Holdings or John Steele.

10.     However, upon information and belief, an individual named Tony or Anthony Saltmarsh does exist, and has documented associations with John Steele's family and the mysterious Alan Cooper, as described further herein.

11.     Upon information and belief, Tony Saltmarsh previously lived at 4532 E. Villa Theresa Drive in Phoenix Arizona, 85032. This belief is based upon a "past address" search through peoplesmart.com. of the address and Mr. Saltmarsh. A copy of Mr. Saltmarsh's full report is annexed hereto as Exhibit B.

12.     Upon information and belief, Jayme Steele also previously lived at 4532 E. Villa Theresa Drive in Phoenix, Arizona. This belief is likewise based on peoplesmart.com "past address" search for Ms. Steele. A copy of this report is annexed hereto as Exhibit C.

13.     Upon information and belief, the 4532 E. Villa Theresa address was also previously used by VPR, Inc., a former Steele Hansmeier client. This belief is based on a review of the Nevada Secretary of State entity details attached hereto as Exhibit D.

14.    Upon information and belief, Alan Cooper was identified as, inter alia, the President and Treasurer of VPR, Inc. and likewise associated with the 4532 East Villa Theresa address.   This belief is likewise based on a review of the Nevada Secretary of State entity details, a copy of which are annexed hereto as Exhibit D.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration is executed on this 11th day of February, 2013, in Boulder Creek, California.

/s/ Nicholas R. Ranallo
_____
Nicholas Ranallo