Heather L. Rosing, Bar No. 183986
David M. Majchrzak, Bar No. 220860
Philip W. Vineyard, Bar No. 233628
KLINEDINST PC
501 West Broadway, Suite 600
San Diego, California 92101
(619) 239-8131/FAX (619) 238-8707
hrosing@klinedinstlaw.com
dmajchrzak@klinedinstlaw.com
pvineyard@klinedinstlaw.com

Specially appearing for
PAUL DUFFY, ANGELA VAN DEN
HEMEL, and PRENDA LAW, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INGENUITY 13 LLC,<br><br>            Plaintiff,<br><br>      v.<br><br>JOHN DOE,<br><br>            Defendant. | Case No.   2:12-cv-8333-ODW(JCx)<br><br>**RESPONSE TO ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE LEVIED**<br><br>Judge:        Hon. Otis D. Wright, II<br>Magistrate Judge: Hon. Jacqueline Chooljian<br>Courtroom:  11<br>Date:         April 2, 2013<br>Time:         10:00 A.M.<br><br>Complaint Filed:  September 27, 2012<br>Trial Date:    None set |

///

///

///

///

///

///

///

///

///

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................1

II.   FIFTH AMENDMENT AND ATTENDANT INFERENCES ......................1

III.  JURISDICTION AND SCOPE OF SANCTIONS AUTHORITY ...............2

      A.    The scope of Rule 11 sanctions authority is limited as follows. ..........3

      B.    The scope of Local Rule 83-3 sanctions authority is limited as
            follows.............................................................................................4

      C.    The scope of inherent powers sanctions authority is limited as
            follows.............................................................................................4

IV.   SANCTIONS ARE NOT APPROPRIATE ...............................................5

      A.    The proceedings in the order to show cause hearing against
            Brett Gibbs were flawed. .................................................................6

            1.    Morgan Pietz was an improper prosecutor............................6

            2.    Jason Sweet was permitted to provide improper
                  testimony........................................................................8

            3.    The court admitted evidence that should have been
                  subject to objections.. ......................................................8

            4.    Evidence was submitted outside the scope of order to
                  show cause categories.......................................................9

      B.    Sanctions should not be awarded because there is no or
            insufficient evidence against Duffy, Van Den Hemel, and
            Prenda on the issues raised in the orders to show cause....................10

            1.    Duffy, Van Den Hemel, and Prenda did not perpetrate a
                  fraud on the court regarding any assignments.........................10

            2.    Duffy, Van Den Hemel, and Prenda did not violate the
                  court's order to cease discovery. ..............................................12

            3.    Prenda, through Gibbs, conducted a reasonable
                  investigation before filing suit or identifying the true
                  names of factiously named defendants.....................................14

                  a.    Conclusive evidence of actual copyright
                        infringement is not necessary to file a lawsuit for
                        said infringement.........................................................15

                        i.    Completed or substantially completed
                              copying of a copyrighted work in usable
                              form is not the standard for infringement. ...........15

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

RESPONSE TO ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE LEVIED

ii.    A plaintiff may prove infringement by showing a defendant's access to a copyrighted work and substantial similarity between the original work and the work possessed by the defendant. ................................17

iii.    Proper defendants for infringement claims may include individuals beyond the person who unlawfully copied the copyrighted work. ................................18

iv.    Before filing an infringement lawsuit, a plaintiff attempting to protect its copyrighted works need not have every fact supporting a cause of action for infringement. ................................20

v.    That a pubescent male is the most likely infringer of adult content is much more than a hunch. ................................21

**b.**    The court's preferred method of investigation – "an old-fashioned stakeout" – is unreasonable in the age of internet piracy. ................................23

i.    Practical considerations determine that a private investigator would receive little more information about an infringer than Brett Gibbs had. ................................23

ii.    Single defendant lawsuits to protect copyrights in the age of downloading is unreasonable and not in the best interests of the copyright holder that is lawfully protecting its rights. ................................24

4.    There is no evidence that Duffy or Van Den Hemel had or were aware of any additional parties with a financial interest in AF Holdings and/or Ingenuity 13. ................................28

5.    Duffy, Van Den Hemel, and Prenda should not be sanctioned for failing to advise the court of related cases. ................................29

6.    Duffy and Van Den Hemel should not be sanctioned for failing to appear on March 11, 2013 because they made themselves available to specially appear, which was confirmed to the court, and the court lacked jurisdiction to order them to appear as witnesses. ................................30

**a.**    The court should not sanction Duffy and Van Den Hemel because the court's lack of personal jurisdiction to order them to appear as out-of-state witnesses made the order unenforceable. ................................32

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

- ii -

**b.** The court should not sanction Duffy and Van Den Hemel because the notice they received was insufficient...................................................................33

**c.** The court should not sanction Duffy and Van Den Hemel because they made themselves available to appear telephonically despite the questions of the court's jurisdiction over them. ......................................35

V.    CONCLUSION ..............................................................................36

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

RESPONSE TO ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE LEVIED

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arista Records LLC v. Myxer Inc.*,
2011 U.S. Dist. LEXIS 109668 (C.D. Cal. 2011)........................................18, 19

*Aurora World, Inc. v. TY Inc.*,
719 F. Supp. 2d 1115 (C.D. Cal. 2009) ......................................................18, 24

*Chambers v. NASCO*,
501 U.S. 32 (1991) ...........................................................................................4

*Cooper v. Steele et al.*,
27-CV-13-3463 (Minn. Dist. Ct., Hennepin Cty., 2013)........................5, 10, 11

*Duffy v. Godfread et al.*,
13-cv-01569 (N.D. Ill.) ...................................................................................11

*Eastern R. Presidents Conference v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961) ........................................................................................21

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1999) ........................................................................................15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ........................................................................................24

*Gillette Foods Inc. v. Bayernwald-Fruchteverwertung, GmbH*,
977 F.2d 809 (3d Cir. 1992)...............................................................................5

*Gonzales v. Texaco, Inc.*,
344 Fed. Appx. 304 (9th Cir. 2009) ...................................................................2

*Griffin v. California*,
380 U.S. 609 (1965) ..........................................................................................2

*Marlin v. Moody Nat'l Bank, N.A.*,
533 F.3d 374 (5th Cir. 2008)...........................................................................33

*Miller v. Cardinale (In re DeVille)*,
361 F.3d 539 (9th Cir. 2004).............................................................................9

*Miranda v. Southern Pac. Transp. Co.*,
710 F.2d 516 (9th Cir. 1983)...........................................................................33

*Newton v. Diamond*,
388 F.3d 1189 (9th Cir. 2003)...........................................................15, 16, 17

*Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*,
174 F.3d 87 (2d Cir. 1999).................................................................................9

RESPONSE TO ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE LEVIED

*Odnil Music Ltd. v. Katharsis LLC*,
  2005 U.S. Dist. LEXIS 16736 (E.D. Cal. 2005)........................................20

*Omni Capital Int'l, Ltd. v. Rudolph Wolff & Co., Ltd.*,
  484 U.S. 97 (1987) ........................................................................32

*People ex rel. Department of Corrections v. Speedee Oil Change Systems, Inc.*,
  20 Cal.4th 1135 (Cal. 1999)............................................................13

*Prenda Law, Inc. v. Godfread et al.*,
  13-cv-00207 (S.D. Ill.) ..................................................................11

*Prof'l Real Estate Investors v. Columbia Pictures Indus.*,
  508 U.S. 49 (1993) ...................................................................21, 27

*Rachel v. Banana Republic, Inc.*,
  831 F.2d 1503 (9th Cir. 1987)............................................................3

*Realnetworks, Inc. v. DVD Copy Control Ass'n*,
  641 F. Supp. 2d 913 (N.D. Cal. 2009) ................................................18

*Shady Records, Inc. v. Source Enters.*,
  2004 U.S. Dist. LEXIS 26143 (S.D. N.Y. 2005)....................................21

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
  81 F.2d 49 (2d Cir. 1936) ..............................................................16

*Simmerman v. Corino*,
  27 F.3d 58 (3rd Cir. 1994) ............................................................33

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984) ...............................................................18, 25

*Stewart v. Wachowski*,
  574 F. Supp. 2d 1074 (C.D. Cal. 2005) ..............................................17

*Sunham Home Fashions v. Pem-America, Inc.*,
  2002 U.S. Dist. LEXIS 24185 (S.D. N.Y. 2002)....................................12

*Ted Lapidus, S.A. v. Vann*,
  112 F.3d 91 (2d Cir. 1997)..............................................................9

*Ullmann v. United States*,
  350 U.S. 422 (1956) ........................................................................2

*UMG Recordings, Inc. v. Sinnott*,
  300 F. Supp. 2d 993 (E.D. Cal. 2004)................................................18

*United Nat'l Ins. Co. v. R&D Latex Corp.*,
  242 F.3d 1102 (9th Cir. 2001)............................................................6

*United States v. Kordel*,
  397 US 1 (1970) ............................................................................1

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RESPONSE TO ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE LEVIED

1

Worth v. Selchow & Righter Co.,
   827 F.2d 569 (9th Cir. 1987)......................................................................16

2

*Young v. United States ex rel. Vuitton Et Fils S. A.*,
   481 U.S. 787 (1987) .....................................................................................6

3

4

**Statutes**

28 U.S.C. § 1821 (2013)......................................................................................34

5

Code of Civil Procedure section 1989...................................................................32

6

Comm. Notes on Am. to Fed. R. Civ. P. 11 (1993) ..............................................3

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

RESPONSE TO ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE LEVIED

# I.

## INTRODUCTION

The February 7, 2013 and the March 14, 2013 orders to show cause broadly allege a variety of matters against fifteen different people and entities.  This response —filed on behalf of Paul Duffy, Angela Van Den Hemel, and Prenda Law, Inc.— discusses in detail the procedural and evidentiary objections to the order to show cause process, as well as the complete lack of evidence against them on the salient points. Under the circumstances, it would not only be grossly unfair, but in excess of this court's authority, to sanction them at all. While Paul Duffy, Angela Van Den Hemel, and Prenda Law, Inc. respect this court's ability to make inquiries regarding matters before it, sanctions against them are simply not appropriate in the five cases referenced by the court.

# II.

## FIFTH AMENDMENT AND ATTENDANT INFERENCES

At the April 2, 2013 order to show cause hearing, the court invited those responding, including Duffy and Van Den Hemel, to either provide testimony in response or to exercise their Fifth Amendment rights.[1] When each of those appearing elected for the latter, the court indicated that it would draw reasonable inferences, accepted the offer of Duffy, Van Den Hemel, and Prenda Law to submit this brief, and ended the hearing.

But the reasonable inferences the court should draw against Duffy, Van Den Hemel, and Prenda are limited. As a preliminary matter, because of the criminal nature of these proceedings where the court has both raised questions of fraud and

///

---

[1] Duffy also appeared as the representative of Prenda Law, Inc. Whereas a corporation does not have Fifth Amendment rights itself, its officers may not be compelled to provide testimony that potentially incriminates themselves personally. *See United States v. Kordel*, 397 US 1, 9 (1970).

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

potential incarceration[2], Duffy and Van Den Hemel's invocation of the Fifth Amendment may not be used to formulate presumptions against them.

Further, because the court initiated the proceedings, they are "akin to contempt" proceedings, and conduct may be judged only in that light. That is, the "reasonableness" of the respondents' conduct is not at issue, only whether it was contemptuous. *See Gonzales v. Texaco, Inc.*, 344 Fed. Appx. 304, 308-09 (9th Cir. 2009) (remanding to the district court for consideration whether the attorneys' conduct was "akin to contempt," given that the lower court instituted its sua sponte Rule 11 sanctions on the basis of the "reasonableness" of the attorneys' conduct).

The Supreme Court has made clear that an inference of guilt may not be drawn from a defendant's failure to testify about facts relevant to his case. *Griffin v. California*, 380 U.S. 609 (1965). "Too many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are either guilty of crime or commit perjury in claiming the privilege." *Ullmann v. United States*, 350 U.S. 422, 426 (1956). Rather, "[t]he privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances." Slochower v. Board of Higher Education, 350 U.S. 551, 557-558 (1956) ; *accord Griffin*, *supra*, 380 U.S. at 618.

## III.

## JURISDICTION AND SCOPE OF SANCTIONS AUTHORITY

As a preliminary matter, the ability to issue sanctions is not unlimited. The court has indicated it is considering issuing sanctions under Rule 11 of the Federal Rules of Civil Procedure, Local Rule 83-3, and its inherent powers. Sanctions under each are restricted as follows.

///

---

[2] Court's February 7, 2013, Order to Show Cause re Sanctions for Rule 11 and Local Rule 83-3 Violations, 11:1-4; Court's Order of March 14, 2013, re the Ex Parte Application of John Steele, Paul Hansmeier, Paul Duffy, and Angela Van Den Hemel, at pp. 1-3.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

**A.**   <u>**The scope of Rule 11 sanctions authority is limited as follows.**</u>

Rule 11 gives the court authority to issue sanctions against an attorney or unrepresented party who signs a "pleading, written motion, [or] other paper" that is brought for any improper purpose or is not well grounded in fact, warranted by existing law, or made in good faith. Thus, Rule 11 imposes an affirmative duty on a party or counsel to investigate the law and facts before filing. *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir. 1987).

But whereas the 1993 Committee Notes on Amendments to Federal Rules of Civil Procedure suggest that the court may likewise consider whether to order sanctions against other attorneys in the firm, co-counsel, or the party personally, those circumstances should be contemplated in cases where "substantial restrictions" are imposed "on the discretion of individual attorneys."

Here, no evidence has been offered to support a conclusion that either Duffy or Van Den Hemel imposed any restrictions on Gibbs.[3] Van Den Hemel, who is merely a paralegal at Prenda (ECF no. 83, ¶ 6) would necessarily be unable to direct Gibbs how to practice law. And Gibbs testified that whatever guidance he received came from sources other than Duffy:

> Q.   Were you supervised by Paul Duffy?
>
> A.   No.

Rep. Tr., p. 78:12-13. So, neither could fall within the scope of persons subject to sanctions under the rule.

Additionally, the rule, by its very terms, limits its applicability to parties, their attorneys, and law firms. Because Van Den Hemel falls within none of those categories, she necessarily may not be sanctioned under Rule 11.

///

///

---

[3] And indeed, "the court must, to the extent possible, limit the scope of the sanction proceedings to the record." *See* Comm. Notes on Am. to Fed. R. Civ. P. 11 (1993).

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

**B.** **The scope of Local Rule 83-3 sanctions authority is limited as follows.**

Counsel for Duffy, Van Den Hemel, and Prenda has been able to find but a single reference to Local Rule 83-3 in any published opinion. And that opinion fails to address jurisdiction. As such, any analysis must be limited to an interpretation of the rule itself.

Rule 83-3 is silent regarding who may be a proper subject of sanctions under the rule. But Rule 83-1 and Rule 83-2 address the rules by District Courts and Judge's Directives that apparently form the foundation for Rule 83-3 sanctions. These include mandates regarding the continuing duty to file a notice of related case under 83-1.3.1 and the statement that any attorney who appears for any purpose submits to the discipline of the Central District in all respects pertaining to the conduct of the litigation set forth in 83-2.6. Plus, 83-3.1.2 provides that the standards for professional conduct from the State Bar Act, the Rules of Professional Conduct, and "the decisions of any court applicable thereto" provide the basis for disciplinary action.

Thus, at the very least, it is clear that discipline under Local Rule 83-3 must be directed to an attorney admitted to practice before the Central District. Neither Duffy nor Van Den Hemel nor the firm fall within that category. As such, sanctions under Local Rule 83-3 against any of them would likewise be inappropriate.

**C.** **The scope of inherent powers sanctions authority is limited as follows.**

If the conduct in question can be adequately sanctioned by other rules, the court ordinarily may not rely on its inherent power. However, if, in the informed discretion of the court, the other rules are not "up to the task," then the court may safely rely on its inherent power to impose additional sanctions. *Chambers v. NASCO*, 501 U.S. 32, 51-52 (1991). But, although the sanctioning power may be greater under the inherent powers, the ability to wield them is limited to instances of bad faith—as opposed to say Rule11, where a signer's unintentional violation is

- 4 -

nonetheless subject to sanctions due to the signer's "certificate of merit." *Gillette Foods Inc. v. Bayernwald-Fruchteverwertung, GmbH*, 977 F.2d 809, 814 (3d Cir. 1992).

Here, there is simply no evidence that Duffy, who did not even supervise Gibbs; Van Den Hemel, a paralegal who does not even live in the State of California; or Prenda Law, who did not even employ Gibbs as a W-2 employee, had any malicious intent or otherwise acted in bad faith regarding the five cases that are the subject of this order to show cause. As such, any sanctions under the court's inherent powers would be inappropriate.

## IV.

## <u>SANCTIONS ARE NOT APPROPRIATE</u>

Through its various orders, the court has indicated that it is considering issuing sanctions upon six grounds. These are (1) the misappropriation of the identity of Alan Cooper and filing lawsuits based on an invalid copyright assignment, (2) violation of the court's order by failing to cease discovery efforts based on information obtained through subpoenas, (3) alleging copyright infringement without conducting a reasonable inquiry, (4) failing to notify the court of all parties that have a financial interest in the outcome of litigation, (5) misrepresenting the nature and relationship of individuals, and (6) contravening this court's March 5, 2013 order to appear. But none of these applies to either Duffy or Van Den Hemel except that they specially appeared telephonically, rather than personally, at the March 11, 2013 hearing due to both the extremely short notice they had received and the belief that the court lacked jurisdiction to order them to provide testimony. For the following reasons, the court should decline to issue sanctions against Duffy, Van Den Hemel, and Prenda.

///

///

///

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

**A.** **The proceedings in the order to show cause hearing against Brett Gibbs were flawed.**

As the court declined to allow any presentation of evidence or legal argument once it learned that those subject to the April 2, 2013 order to show cause were exercising their Fifth Amendment rights, it seems clear that it will be ruling based upon the order to show cause proceedings against Gibbs. But, because of a number of procedural anomalies, it would be erroneous to consider all of the information presented there.

And those issues are particularly significant given that the court initiated the proceedings. Importantly, a sua sponte show cause order deprives a lawyer against whom it is directed of the mandatory twenty-one day "safe harbor" provision provided by the 1993 amendments to Rule 11. In such circumstances, a court is obliged to use extra care in imposing sanctions on offending lawyers. *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115-16 (9th Cir. 2001). As such, the Advisory Committee contemplated that a sua sponte show cause order would only be used "in situations that are akin to a contempt of court."

**1.** **Morgan Pietz was an improper prosecutor.**

As a preliminary matter, the court allowed Morgan Pietz, who represents no party with an interest in the proceedings, to make presentations to the court regarding information that Pietz found significant, including his own speculation and conclusions regarding the practices of Brent Gibbs, Prenda Law, and other attorneys who prosecuted copyright infringement cases, including as "of counsel" to Prenda.  Pietz was an improper subject because, due to the nature of the proceedings, Duffy, Van Den Hemel, and Prenda were entitled to a disinterested proceeding and prosecutor. See, e.g., *Young v. United States ex rel. Vuitton Et Fils S. A.*, 481 U.S. 787, 804-805 (1987) (although the court may appoint an attorney to prosecute contempt proceedings, the prosecutor must be disinterested).

///

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1     Frankly, there was little reason for Pietz to appear at either order to show

2     cause hearing. The court indicated that the hearings were in relation to five cases,

3     Central District of California, case nos. 12-cv-06636, 12-cv-06662, 12-cv-06668,

4     12-cv-06669, and 12-cv-08333. Even before the order to show cause hearing

5     involving Gibbs, all five cases were dismissed. And, of those five cases, Pietz

6     represented a putative defendant in only one, 12-cv-08333. And in that case, where

7     there was no assignment, no allegations of violation of copyright infringement, and

8     no naming of a defendant (and, therefore, no issues regarding an improper

9     investigation before doing so), the only potential issues raised by the court would

10    be whether all the interested parties were named and whether the notice of related

11    cases should have included other actions. Yet Pietz's presentation went far beyond

12    even that scope—or the scope of what the court identified as the subject of

13    potential sanctions.

14    Again, this is particularly significant given that the court initiated both order

15    to show cause proceedings sua sponte. Given that and the dismissal of the claims in

16    12-cv-08333, Pietz's putative client could not potentially obtain a benefit from his

17    participation in the proceedings. He or she could not even be exonerated given that

18    the defendant was not named.[4]

19    Given Pietz's history opposing some of the attorneys responding to the

20    orders to show cause regarding sanctions (*see*, *e.g.*, ECF 40-1, ¶¶ 4, 23-25; ECF

21    53, ¶¶ 2, 4) and his possible sponsorship by an activist group such as Electronic

22    Frontier Foundation (see https://www.eff.org/issues/file-sharing/subpoena-

23    defense), there is at least the appearance that he is not a disinterested prosecutor.[5]

24    ///

---

[4] This also begs the question regarding how Pietz could be retained by the actual copyright infringer.

[5] Pietz has also filed a request for fees in this action, including for acting as special prosecutor. But that motion/request was made before Duffy, Van Den Hemel, and Prenda were requested to appear and is nominally against Gibbs only. Indeed, Prenda, Duffy, and Angela have yet to be served with the request or other moving papers.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

### 2.      Jason Sweet was permitted to provide improper testimony.

During the March 11, 2013 order to show cause proceedings against Gibbs, the court permitted a member of the audience to provide testimony without being called, sworn in, or subjected to cross-examination.

### 3.      The court admitted evidence that should have been subject to objections.

Because Duffy, Van Den Hemel, and Prenda were not parties at the March 11 hearing (instead, Duffy and Van Den Hemel were available as witnesses), they were not given an opportunity to object to improperly proffered evidence. This included, but was not limited to, declarations/affidavits of Bart Huffman, Camille Kerr, Sean Moriarty, Michael Stone, Samuel Teitelbaum, John Steele, and Matt Catlett. All are out-of-court statements, subject to a hearsay objection.

A number of other exhibits, including law and motion, pleadings, and a letter were all admitted without a proper foundation being laid.

On top of that, and perhaps most egregious, Pietz himself offered numerous theories regarding how persons and entities were related to one another and actions that they had taken without either (1) taking the stand and providing testimony under oath subject to cross-examination or (2) laying a proper foundation for his opinions and conclusions. These included, but were not limited to, a diatribe regarding his suspicions about the interrelations between firms, attorneys, and their clients without a single indication of his first-hand knowledge and representations that hundreds of letters with a stamp for Brett Gibbs's signature had been sent throughout the country.

But because Duffy, Van Den Hemel, and Prenda were not parties to the proceeding, they could not object.

///

///

///

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

**4.    Evidence was submitted outside the scope of order to show cause categories.**

Finally, the March 11, 2013 hearing went astray from the parameters of the order to show cause. *See Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87 (2d Cir. 1999) ( "In particular, 'a sanctioned attorney must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter.'"(citing *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 97 (2d Cir. 1997) ); *accord Miller v. Cardinale (In re DeVille)*, 361 F.3d 539, 548 (9th Cir. 2004). The court's notice, which necessarily sets the limits for proceedings, identified four discrete issues to be addressed: (1) whether there was a reasonable investigation of copyright infringement activity, (2) whether there was a reasonable investigation of the infringer's identity, (3) whether the court's discovery order was disobeyed in 12-cv-06636 and/or 12-cv-06669 because Verizon was not notified of the court order to cease discovery efforts, and (4) whether invalid copyright assignments were used to support complaints, thus perpetrating a fraud upon the court. (ECF 48.) Yet, the hearing routinely veered far afield into unrelated subjects. By way of example, within the first few minutes of the hearing, the court began addressing whether Gibbs should have filed a notice of related cases (Req. Judicial Not., Ex. 1, Mar. 11, 2013 Rep. Tr., beginning at p. 7:16), who might have a pecuniary interest in the plaintiffs (*Id.*, beginning at pp. 8:19 and 17:17), management of client funds (*Id.*, beginning at 14:3), and speculation, unsupported by any evidence, that law firms were creating shell companies (*Id.*, beginning at 16:6).

Because none of these subject matters were within the court's notice of a sua sponte sanctions hearing, they were improperly addressed at the hearing. And again, because Duffy, Van Den Hemel, and Prenda were not parties to the proceeding, they could not object, thus implicating their Due Process rights.
///

**B.** **Sanctions should not be awarded because there is no or insufficient evidence against Duffy, Van Den Hemel, and Prenda on the issues raised in the orders to show cause.**

    **1.** **Duffy, Van Den Hemel, and Prenda did not perpetrate a fraud on the court regarding any assignments.**

Turing to the actual allegations set forth in the orders to show cause dated February 7 and March 14, here is no evidence that Duffy or Van Den Hemel were in any way involved in an allegedly forged assignment. There is no evidence that either of them obtained any signatures on the assignments, or had any information about the signatories. There is no evidence that either of them made any representations that the signatures were those of John Steele's former caretaker, Alan Cooper, who bears that same name and who provided testimony to the court. Indeed, Gibbs himself identified neither Duffy nor Van Den Hemel when describing the reasons for his belief in the authenticity of Cooper's signature. Req. Judicial Not., Ex. 1, Mar. 11, 2013 Rep. Tr., pp. 96:5 – 98:9.

Likewise, the evidence suggests that Prenda played no role in the acquisition of Cooper's signatures on the assignment agreements. The Illinois Secretary of State website confirms that Prenda was not even formed until November 7, 2011. Yet, Cooper's signature on the assignments began at least as early as June 12, 2011. Mar. 11, 2013 order to show cause hr'g, ex. 2.

Given that there is no evidence that Duffy and/or Van Den Hemel provided any legal services to AF Holdings before Prenda was formed, or that either individual met or communicated with Cooper, no reasonable inference may be drawn that they were involved in the procurement of his signature or, in the alternative, the signature of whoever executed the assignment on behalf of the assignee.

There are at least two further reasons why sanctions should not be issued for the filing of a complaint with the assignments attached. First, Cooper's testimony

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

is not credible. In the same manner that the court has examined with a critical eye whether attorneys in this case have been forthcoming, it should conduct a similar analysis of Cooper.

As was made abundantly clear before this court, Cooper has a financial stake in the determination of whether he signed or authorized the signature on the assignment agreements appearing over his printed name. He is in the midst of both defending claims and prosecuting claims based on that very subject in Minnesota and Illinois. *See*, *e.g.*, *Cooper v. Steele et al.*, 27-CV-13-3463 (Minn. Dist. Ct., Hennepin Cty., 2013); *Prenda Law, Inc. v. Godfread et al.*, 13-cv-00207 (S.D. Ill.); *Duffy v. Godfread et al.*, 13-cv-01569 (N.D. Ill.). That litigation could potentially explain why Cooper has not yet testified regarding whether he authorized anybody to sign the assignment documents on his behalf.

But even if *Cooper* had no financial interest, his testimony would still be questionable. As set forth in the declaration of a close confidant of Cooper, Brent Berry, Cooper assisted Steele with paperwork without objection and asked "How's my porn company doing?" Decl. of Berry, ¶¶ 11-12. Such statements suggest that, *contrary to his testimony*, Cooper had some knowledge of and involvement with AF Holdings. *See* Req. Judicial Not., Ex. 1, Mar. 11, 2013 Rep. Tr., p. 35:7-21.

And Cooper's mental state has deteriorated to the point of making serious threats to shoot Berry, which has led to treatment for his mental illness. Decl. of Berry, ¶¶ 18-22. Among other things, Cooper has acknowledged that he is "messed up in the head," that "how [he] think[s] is not right," that it "sucks being fucked up," and that it "sucks even more knowing [he] [is] fucked up." *Id.* at ex. A.

Moreover, even if the court believes Cooper in spite of the above, alleging the assignments would still not constitute a fraud on the court because the assignments would still be valid. Transfer of copyright ownership is governed by 17 U.S.C. 204(a). It provides that a "transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or

K LINEDINST PC
501 W EST B ROADWAY, S UITE 600
S AN D IEGO, C ALIFORNIA 92101

memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."

Thus, the signature of the assignee is irrelevant to the validity of the transfer, so long as the assignor signs the instrument. *See Sunham Home Fashions v. Pem-America, Inc.*, 2002 U.S. Dist. LEXIS 24185 at 22 (S.D. N.Y. 2002). And there is no evidence that the signature from Raymond Rogers, the representative of assignor Heartbreaker Digital, LLC, is not authentic. To the contrary, Rogers signed an affidavit in December 2012 indicating that the signature is, in fact, his. Aff. of Rogers, ¶¶ 2-6.

But in an overabundance of caution, in the wake of Cooper's testimony that the signature on the assignments was not his own, Prenda and Duffy took swift measures to ensure that no courts were being deceived. On March 14, 2013, mere days after Alan Cooper testified before this court, Prenda and Duffy filed a notice of allegations that disclosed Cooper's testimony in 16 AF Holdings cases pending in California and Illinois district courts. The following day, on March 15, 2013, they filed a similar notice in a District Court of Columbia appeal. Req. Judicial Not., Ex. 2. Shortly thereafter, the vast majority of those cases were dismissed. Req. Judicial Not., Ex. 3.

### 2. Duffy, Van Den Hemel, and Prenda did not violate the court's order to cease discovery.

There has simply been no evidence presented to the court that either Duffy or Van Den Hemel were involved in any discovery in either 12-cv-06636 or 12-cv-06669—the two cases cited in the court's February 7 order to show cause—after the court issued its October 19, 2013 discovery order. Again, Gibbs made clear that Duffy was not supervising him. Req. Judicial Not., Ex. 1, Mar. 11, 2013 rep. tr., p. 78:12.13. And there is no evidence that Van Den Hemel communicated with Gibbs or otherwise received direction to let Verizon know that it need not comply with the subpoenas issued months before the court's order to cease discovery efforts.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

Likewise, Prenda should not be sanctioned because of Gibbs's alleged conduct. As a preliminary matter, Gibbs testified that he believed that he had a discussion with some other attorneys that are "of counsel" to Prenda and understood from that conversation that they would address any issues with outstanding discovery. As such, Gibbs believed that the court order would be followed and any mistake on his end would likewise have been unintentional. The testimony of Gibbs in fact strongly suggests that, at worst, there were miscommunications within the firm regarding the discovery orders, as happen from time to time in any firm.

And whether the issue originated from Gibbs or any other attorney in an "of counsel" relationship with the firm, imposition of sanctions on the firm itself would be in error. That is because such attorneys are outside the firm. Whereas ABA Formal Advisory Opinion 90-357 defined "of counsel" as a "close, regular, personal relationship," that relationship "is neither that of a partner (or its equivalent, a principal of a professional corporation) with the shared liability and/or managerial responsibility implied by that term; nor, on the other hand, the status ordinarily conveyed by the term 'associate,' which is to say a junior non-partner lawyer, regularly employed by the firm."

Like most jurisdictions that have considered the question, the California Supreme Court adopted the ABA description of an "of counsel" relationship as being "close, regular, personal, and continuous." In discussing this aspect of the "of counsel" relationship, the court noted "the essence of the relationship between a firm and an attorney 'of counsel' to the firm is the closeness of the 'counsel' they share on client matters." *People ex rel. Department of Corrections v. Speedee Oil Change Systems, Inc.*, 20 Cal.4th 1135, 1153 (Cal. 1999). And, although the court concluded that "of counsel" attorneys should be considered in the same manner as the firm's members for conflict purposes, it noted that the roles within the firm were different.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

RESPONSE TO ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE LEVIED

So, although Gibbs or other attorneys may have been available to provide legal services to Prenda clients in their "of counsel" capacity, they effectively remained independent co-counsel for those clients and, not being employed by the firm, were free to act independently of Prenda. So, just as Prenda could not reap the benefits of having the "of counsel" attorneys serve as regular, full-time employees, it likewise should not be saddled with liability for an alleged error in judgment of, or simple miscommunication among, "of counsel" attorneys.

3.   **Prenda, through Gibbs, conducted a reasonable investigation before filing suit or identifying the true names of factiously named defendants.**

As an initial matter, there is no evidence that Duffy and/or Van Den Hemel were part of the investigative process leading up to the filing of claims or identification of fictitiously named defendants. So, it would be improper to sanction them for the investigation for that reason alone. But, even if they had participated, the information Gibbs had before naming defendants was sufficient to give him probable cause to pursue claims, even if his evidence was not perfect at the inception of the litigation. Indeed, no authority requires or even suggests that a plaintiff or its counsel need to know all facts before initiating a civil lawsuit, where the standard at trial—after all discovery has been completed—is merely a preponderance of the evidence, showing only that it is more likely than not that the defendant caused the plaintiff harm.

The court's findings of fact and law in its original February 7, 2013 order to show cause are flawed and reliant on inference supported only by the absence of evidence. First, conclusive evidence of actual copyright infringement is unnecessary to have probable cause to file a copyright infringement. Second, stakeouts would largely be ineffective in determining who the defendant should be for an infringement of copyrighted material on the internet.

**a.**   Conclusive evidence of actual copyright infringement is not necessary to file a lawsuit for said infringement.

A plaintiff need not have all evidence necessary to prevail at trial before filing suit or even before naming a defendant. All that is necessary is probable cause.

i.   Completed or substantially completed copying of a copyrighted work in usable form is not the standard for infringement.

In its February 7, 2013 order to show cause, this court stated, "Plaintiff must show that Defendants copied the copyrighted work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1999). If a download was not completed, Plaintiff's lawsuit may be deemed frivolous." (ECF no. 48, p. 5:1-3.) But the court's reliance on *Feist* is misplaced for multiple reasons.

First, *Feist* has nothing to do with illegal copyright infringement perpetrated by hundreds to thousands of potential defendants via use of the Bit Torrent peer-to-peer system. Rather, *Feist* involved traditional ink-on-paper copying of a phone book and the determination that there was insufficient "originality" in the phone book's factual compilation to justify copyright protection for the compilation. *Feist Publ'ns, Inc.*, *supra*, 499 U.S.at 349-51. The Supreme Court's proclamation that a plaintiff must show that a defendant copied a copyrighted work was a simple and generalized statement of the law of infringement. More nuanced opinions, as discussed below, are necessary for unauthorized electronic downloads.

Second, copyright infringement does not require a whole work or even a quantifiably significant portion of the work to be copied before infringement may be alleged. Music sampling may be the most obvious example of quantifiably minute amounts of copying constituting infringement. A well-known case to legal scholars with an affinity for rap or hip-hop music is *Newton v. Diamond*, 388 F.3d 1189 (9th Cir. 2003). There, the Ninth Circuit was forced to determine whether the

RESPONSE TO ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE LEVIED

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

Beastie Boy's song "Pass the Mic," which had looped a three-note flute progression from the avant-garde jazz piece "Choir," by James W. Newton, had infringed upon Newton's work. *Id.* at 1190. In finding that the Beastie Boys had not infringed on Newton's work, the Ninth Circuit outlined the analysis that courts must undertake to determine whether copying of only a portion of a work amounts to copyright infringement:

> The high degree of similarity between the works here (i.e., "Pass the Mic" and "Choir"), but the limited scope of the copying, place Newton's claim for infringement into the class of cases [referred] to as "fragmented literal similarity." Fragmented literal similarity exists where the defendant copies a portion of the plaintiff's work exactly or nearly exactly, without appropriating the work's overall essence or structure. *Id.* Because the degree of similarity is high in such cases, the dispositive question is whether the copying goes to trivial or substantial elements. Substantiality is measured by considering the qualitative and quantitative significance of the copied portion in relation to the plaintiff's work as a whole. *See, e.g.,* Worth v. Selchow & Righter Co., 827 F.2d 569, 570 n. 1 (9th Cir. 1987) ("The relevant inquiry is whether a substantial portion of the protectible material in the plaintiff's work was appropriated -- not whether a substantial portion of defendant's work was derived from plaintiff's work.") . . . This focus on the sample's relation to the plaintiff's work as a whole embodies the fundamental question in any infringement action, as expressed more than 150 years ago by Justice Story: whether "so much is taken[] that the value of the original is sensibly diminished, or the labors of the original author are substantially to an injurious extent appropriated by another." Courts also focus on the relationship to the plaintiff's work because a contrary rule that measured the significance of the copied segment in the defendant's work would allow an unscrupulous defendant to copy large or qualitatively significant portions of another's work and escape liability by burying them beneath non-infringing material in the defendant's own work, even where the average audience might recognize the appropriation. *Cf.* Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 56 (2d Cir. 1936) ("It is enough that substantial parts were lifted; no plagiarist can excuse the wrong by showing how much of his work he did not pirate."). Thus, as the district court properly concluded, the fact that Beastie Boys "looped" the sample throughout "Pass the Mic" is irrelevant in weighing the sample's qualitative and quantitative significance.

*Id.* at 1195 (citations omitted).

///

///

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

- 16 -

1   Based on *Newton*, it is clear that if any of the defendants to AF Holdings's

2   or Ingenuity 13's lawsuits had engaged in even de minimus copying, as is shown in

3   the IP address tracking "snapshots" that Peter Hansmeier has referenced in his

4   declarations, then a valid claim of copyright infringement may exist.

5   And this court's concern that somebody who downloads less than all of a

6   video would have nothing but unusable data is easily assuaged. Free online media

7   software such as the VLC Player (http://www.videolan.org/) permits a user to view

8   incomplete video downloads so effectively that local law enforcement use the

9   software to pursue criminal investigations against illegal downloaders. (Decl. of

10  Chin, ¶16(c).) Images can be available for viewing through this software after just

11  30 seconds of downloading a file. *Ibid*. Thus, even this court's requirement for a

12  "usable portion of a copyright work" is a low hurdle to cross for purposes of

13  justifying a copyright infringement lawsuit.

14              ii.    A plaintiff may prove infringement by showing a

15                     defendant's access to a copyrighted work and

16                     substantial similarity between the original work and the

17                     work possessed by the defendant.

18  A Central District of California case concerning a pair of huge box office

19  success stories, the motion picture series "The Matrix" and "The Terminator,"

20  shows that a copyright owner need not prove actual copying of his or her work if

21  the alleged infringer had access to the work and possessed a substantially similar

22  version of that work. *See Stewart v. Wachowski*, 574 F. Supp. 2d 1074 (C.D. Cal.

23  2005). In *Stewart*, a screenwriter alleged that the writers, producers, and film

24  studios that created and distributed "The Matrix" and "Terminator" series of films

25  had misappropriated substantially similar creative elements found in script

26  treatments originally drafted by the screenwriter in 1986. *Id.* at 1079-80. The

27  screenwriter also alleged that, in one manner or another, she had provided her

28  treatments to the defendants, who had received them and then used them for their

movies. *Ibid.* In her analysis, Judge Margaret Morrow provided the standard by which copyright infringement is to be proved.

> To prevail on a copyright infringement claim, a plaintiff must show (1) ownership of a valid copyright and (2) copying of the original elements of the protected work. Absent direct evidence of copying, the second element of the claim requires a fact-based showing that defendant had "access" to plaintiff's work and that the two works are "substantially similar."

*Id.* at 1084 (citations omitted); *accord Aurora World, Inc. v. TY Inc.*, 719 F. Supp. 2d 1115, 1133 (C.D. Cal. 2009) (stating "*[b]ecause direct evidence of copying is generally not available*, a plaintiff can establish copying by showing that defendant had access to the copyrighted work and that the parties' works are substantially similar." (emphasis added)).

       iii.    Proper defendants for infringement claims may include individuals beyond the person who unlawfully copied the copyrighted work.

The court has likewise expressed concern that the persons named as defendants in these cases may not be those who actually downloaded the copyrighted material. But, "[a]lthough the Copyright Act does not contain any provision imposing secondary liability for copyright infringement, courts have long recognized that in certain circumstances, vicarious or contributory liability will be imposed." *Arista Records LLC v. Myxer Inc.*, 2011 U.S. Dist. LEXIS 109668 at 135 (C.D. Cal. 2011) (citing *UMG Recordings, Inc. v. Sinnott*, 300 F. Supp. 2d 993, 997 (E.D. Cal. 2004)). Quoting the U.S. Supreme Court ruling in *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434-35 (1984) ("*Sony*"),[6] the *Arista Records* court continued as follows:

///

---

[6] As noted in *Realnetworks, Inc. v. DVD Copy Control Ass'n*, 641 F. Supp. 2d 913 (N.D. Cal. 2009), *Sony* was decided pursuant to the Copyright Act that immediately preceded the Digital Millennium Copyright Act ("DMCA"), which is this country's current copyright law. However, *Realnetworks, Inc.* notes that *Sony* is only superseded "to the extent that the DMCA broadened copyright owners' rights beyond the Sony holding." *Id.* at 941.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1
2
3
4
5
6

> The Copyright Act does not expressly render anyone liable for infringement committed by another. . . . The absence of such express language in the copyright statute does not preclude the imposition of liability for copyright infringements on certain parties who have not themselves engaged in the infringing activity. For vicarious liability is imposed in virtually all areas of the law, and the concept of contributory infringement is merely a species of the broader problem of identifying the circumstances in which it is just to hold one individual accountable for the actions of another.

7   *Arista Records*, *supra*, at 135-36.

8   In addressing contributory infringement, the Central District stated:

9
10
11
12
13
14
15
16

> Traditionally, one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a "contributory" infringer. Put different, liability exists if the defendant engages in personal conduct that encourages or assists the infringement. Indeed: "Establishing direct copyright infringement . . . is a prerequisite to both the contributory and vicarious infringement claims." "The standard for the knowledge requirement is objective, and is satisfied where the defendant knows or has reason to know of the infringing activity." "In Napster, [w]e interpreted the knowledge requirement for contributory copyright infringement to include both those with actual knowledge and those who have reason to know of direct infringement."

17   *Arista Records*, *supra*, at 136-37 (citations omitted). On the issue of vicarious

18   copyright infringement, the same District Court cited to the Seventh Circuit:

19
20
21
22
23

> In *In re Aimster*, the Seventh Circuit explained: "Vicarious liability generally refers to the liability of a principal, such as an employer, for the torts committed by his agent, an employee for example, in the course of the agent's employment." The court reasoned, however, that vicarious liability "has been extended in the copyright area to cases in which the only effective relief is obtainable from someone who bears a relation to the direct infringers that is analogous to the relation of a principal to an agent."

24   *Arista Records*, *supra*, at 140-41, fn. 34 (citations omitted).  Thus, there is liability

25   exposure for a subscriber who encourages, induces, or materially contributes to

26   another's infringement by knowingly making his or her network available to the

27   infringer.

28

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

- 19 -

iv.     Before filing an infringement lawsuit, a plaintiff attempting to protect its copyrighted works need not have every fact supporting a cause of action for infringement.

The Eastern District of California has addressed the reasonability standard of a Rule 11 analysis in the context of copyright infringement and a Motion to Dismiss in *Odnil Music Ltd. v. Katharsis LLC*, 2005 U.S. Dist. LEXIS 16736 (E.D. Cal. 2005). In denying the motion, the court stated:

> The individual defendants offer two main arguments: (1) plaintiffs' purpose in filing suit is to blackmail defendants; and (2) plaintiffs do not provide enough facts in their complaint. . . .

> Defendants first invoke Federal Rule of Civil Procedure 11 (b)(1) by claiming that plaintiffs' complaint was filed for the improper purpose of harassing defendants. The subjective intent of plaintiffs' counsel is of no importance. Instead, the court applies a "reasonable man" standard. G.C. & K.B. Invs., Inc. v. Wilson, 326 F.3d 1096, 1109 (9th Cir. 2003) ("The reasonable man against which conduct is tested [for purposes of Rule 11] is a competent attorney admitted to practice before the district court.").

> Applying that standard, the court finds that merely filing a complaint against defendants for infringement is not harassment. Plaintiffs' counsel, by signing the complaint, certified that, after a reasonable inquiry, facts would be found to support his clients' position. Fed. R. Civ. P. 11. There is no evidence that this belief was objectively unreasonable. **Filing a complaint when one's client has been allegedly wronged is something a reasonable attorney would do.** The complaint cannot be dismissed on these grounds.

> Defendants' next argument, that plaintiffs' complaint does not state enough facts, is also easily resolved. *Conley v. Gibson*, 355 U.S. 41, . . .(1957), is squarely on point:

> "The respondents also argue that the complaint failed to set forth specific facts to support its general allegations . . . and that its dismissal is therefore proper. The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

> *Id*. at 47. Plaintiffs provided defendants with a short and plain

- 20 -

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

statement of the claim that put defendants on notice about what the claim concerned.

*Id*. at 2-5 (emphasis added); *accord Shady Records, Inc. v. Source Enters*., 2004 U.S. Dist. LEXIS 26143 at 87-88 (S.D. N.Y. 2005). Indeed, the express language of Rule 11, at subsection (b)(3), contemplates that discovery will be utilized to provide support for all factual contentions.

And Justice Clarence Thomas, when analogizing Rule 11 to the "sham litigation" exception of antitrust immunity,[7] stated that movie studios had "probable cause" to sue for copyright infringement when a hotel operator permitted its guests to rent movies from a library of discs containing the studios' movies. *See Prof'l Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 65-66 (1993). In so holding, Justice Thomas opined that "sham" equated to "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id*. at 60.

So, before the court may impose Rule 11 sanctions on the parties, it must determine that there was no discovery possible that would have legitimized Plaintiffs' claims in the dismissed actions. Said another way, the court must determine that there was no way that Plaintiffs could have shown through discovery that David Wagar, Benjamin Wagar, or Mayon Denton were actual, contributory, or vicariously liable infringers. Such a conclusion would be wrong. The fact that Plaintiffs tracked known infringers to an IP address associated with these defendants is more than enough to establish "probable cause."

      v.      That a pubescent male is the most likely infringer of adult content is much more than a hunch.

The court glibly characterizes as a "hunch" Brett Gibbs's determination that, if a subscriber is identified as 75 years old or female, then a pubescent male in the

---

[7] *See generally, Eastern R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961).

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

household must be the offending infringer. The statistics support Brett Gibbs's determination. Over several decades, the Kinsey Institute has collected research concerning the sexuality of the human race. One of the areas for which the Kinsey Institute gathers research and data is "Internet Pornography," and on the Institute's website, one can access multiple statistics and source materials concerning users of online pornography. http://www.kinseyinstitute.org/resources/FAQ.html#internet.

For example, the following statistics corroborate Gibbs's analysis:

- Only boys ages 16-17 reported more wanted exposures than unwanted exposures to internet pornography."[8]

- In a national study, 25% of men reported visiting a pornographic site in the previous 30 days; 4% of women reported visiting pornographic sites in the same timeframe.[9]

- Males have been found to make up two thirds of users of sexually explicit Internet sites and account for 77% of on-line time.[10]

- 51% of women reported they never download sexual material.[11]

Similar research also points to young males as the predominant profile for downloaders of adult content.

- In 2000, 73% of youths ages 12-17 were reported to be Internet users, versus 87% in 2004. For adults, 56% reported to be Internet users in 2000, whereas 66% used it by 2004.[12]

- In a USA today poll, children ages 8 to 18 report what they are more likely to do at a home computer rather than at school: 30% say they would download music without paying for it, 29% say they would go to websites they probably shouldn't go to, and 22% say they would download software without paying for it.[13]

---

[8] Citing Wolak, J., Mitchell, K., & Finkelhor, D. (2007). Unwanted and wanted exposure to online pornography in a national sample of youth internet users. Pediatrics, 119(2). http://pediatrics.aappublications.org/cgi/reprint/119/2/247.

[9] Citing Buzzell, T (2005). Demographic characteristics of persons using pornography in three technological contexts. *Sexuality & Culture,* 9(1), pp. 28-48.

[10] Citing Cooper, A., Scherer, C., Boies, S., Gordon, B. Sexuality on the Internet: From Sexual Exploration to Pathological Expression. 1999. Professional Psychology: Research and Practice,Vol. 30(2), pp. 154-164.

[11] *Ibid.*

[12] *Internet use up for young and old,* USA Today, 7 September 2004.

[13] *Youth Internet usage,* Harris Interactive for Business Software Alliance, 2006.

- 22 -

- Fewer than 1 in 10 teenagers believe that music piracy is morally wrong.[14]

- The largest group of viewers of Internet porn is children between ages 12 and 17.[15]

- Breakdown of male/female visitors to pornography sites: 72% male / 28% female.[16]

- Breakdown of U.S. Adult Internet User Demographics: 18-24: 13.61%...25-34: 19.9%...35-44: 25.5%...45-54: 20.67%...55+: 20.32%.[17]

The statistics more than show that Gibbs's decision to pursue "pubescent males" was reasonable.

    **b.**   The court's preferred method of investigation – "an old-fashioned stakeout" – is unreasonable in the age of internet piracy.

        i.    Practical considerations determine that a private investigator would receive little more information about an infringer than Brett Gibbs had.

The court believes an "old-fashioned stakeout may be in order" for purposes of identifying a particular downloader to an IP address. It makes the assumption that an investigator can drive up to a subscriber's house, turn on a wireless device, and determine exactly whether that home has a wireless network and password protection for same. Initially, wireless networks are rarely, if ever, identified by family name or street address; therefore, the best an investigator could hope for is that there is only one network and one home within a sizeable area. (Decl. of Chin, ¶ 16(e).)

///

---

[14] The Barna Group, USA Today, 26 April, 2004.

[15] Family Safe Media. http://www.familysafemedia.com/pornography_statistics.html.

[16] *Ibid.*

[17] *Ibid.*

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1  More likely, however, such as in a subdivision, there would be numerous

2  unidentifiable networks. If an investigator attempted to log onto a network to

3  identify its owner or IP address, he or she would be in violation of the Computer

4  Fraud and Abuse Act. 18 U.S.C. §1030. And even if the investigator were

5  successful in logging on, the pervasive use of dynamic IP addresses likely dictates

6  that an infringer's IP address today is different from that which was discovered

7  infringing. Decl. of Chin, ¶ 16(f). Therefore, simply scanning the airwaves is not

8  an effective or efficient means by which to identify an infringer.

9  Similarly, unless an infringer is downloading adult content in front of an

10  unobstructed window, or absent someone in the home actually admitting to a total

11  stranger (the investigator) that he or she in fact was downloading adult videos, the

12  question must be how does an investigator identify who in the household is

13  actually downloading the copyrighted content. The same problems that confronted

14  Brett Gibbs confront the private investigator. The simple answer to this conundrum

15  is that a plaintiff must be able to use court-sanctioned discovery to identify the

16  infringer. The Central District has endorsed that conclusion. *See, e.g., Aurora*

17  *World, Inc., supra*, 719 F. Supp. 2d at 1133 (C.D. Cal. 2009) (noting that "direct

18  evidence of copying is generally not available.")

19      ii.    Single defendant lawsuits to protect copyrights in the

20             age of downloading is unreasonable and not in the best

21             interests of the copyright holder that is lawfully

22             protecting its rights.

23  One of the main purposes of civil lawsuits is to provide remedies to deter

24  future violations of one's property rights. *See Friends of the Earth, Inc. v. Laidlaw*

25  *Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185-86 (2000). Specifically, the Supreme

26  Court held as follows:

27      It can scarcely be doubted that, for a plaintiff who is injured or
        faces the threat of future injury due to illegal conduct ongoing

28      at the time of suit, a sanction that effectively abates that conduct

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

- 24 -

and prevents its recurrence provides a form of redress. Civil penalties can fit that description.

*Ibid.*

In the case of illegal downloading, however, violations are occurring hundreds, if not thousands, at a time in any given minute. The effects of piracy have been observed the world-over, as highlighted by the article, "Spotting the Pirates," published by The Economist on August 20, 2011. http://www.economist.com/node/21526299.

That article revealed that 92 percent of 16- to 24-year-old internet users in Spain admitted to using peer-to-peer networks. And 70 percent of 45- to 55-year-olds admitted to same. As a result, in 2010, barely 10 million CDs were sold in the country, down from 71 million in 2001. Further, lawful digital sales did not make up the gap, with the Economist noting that a number one album could achieve that status by a miniscule 3,000 sales. Movies fare little better, with Sony Pictures saying that it releases fewer films with less marketing in the country due to piracy. Alternatively, media companies are noted to have increased their participation in countries with tough piracy laws, such as South Korea and Germany.

Thus, the question must be asked: does a succession of high-cost, single-defendant lawsuits or a similar succession of low-cost, multiple-fictitiously-named-defendant lawsuits better serve as the deterrent to the pervasive force of piracy that has single-handedly altered the market for copyrighted materials? Acknowledging that the proliferation of legal pay sites for distribution of copyrighted works is a necessary prong on the attack against piracy, there simply isn't a logical argument supporting use of expensive, single-defendant lawsuits to deter the legions who continue to avoid payment for an artist's work.

The court's analogy to a child photographed with his hand near the candy display is inappropriate for several reasons. For example, a candy bar cannot be the subject of an exponential amount of copying and distribution by the thief, said

Klinedinst PC
501 West Broadway, Suite 600
San Diego, California 92101

copying and distribution reserved solely for the copyright holder and the *raison d'etre* for an infringement lawsuit. Second, Peter Hansmeier's investigation reveals more than a downloader with his hand in the "candy display;" it reveals that at least a portion of the candy bar is in the possession of the downloader (and others) and that the downloader has not paid for it.[18] Similarly, most instances of candy theft do not entail collective efforts of hundreds and thousands of aiders and abettors whose reward for such aid is their own free candy bar. These conspirators are not deterred by one of a swarm of a hundred being caught, because 99 other conspirators are stealing and distributing candy bars, too. Meanwhile, the merchant is left with an empty cash register and decreased demand for the candy bars for which he has incurred sunk costs.

Multiple-defendant lawsuits are inherently a better vehicle to address piracy. Such litigation casts a wider net and permits lower-cost settlements, while still requiring a minimal level of pre-litigation evidence to satisfy due process concerns. Notably, these types of lawsuits have been used successfully in many of the federal circuits, and the district courts have increasingly policed them to ensure that plaintiffs were not abusing the litigation process to exact untoward settlements. Indeed, the presiding judge to which this litigation was originally assigned followed the pattern and practice of this country's district courts by permitting the type of pleading and discovery required to identify infringers. The district courts have inherent authority to compel plaintiffs to identify the true names of fictitiously named defendants within a reasonable time and have done so in the past. The alternative is that the district courts get inundated with single-defendant lawsuits by the hundreds. The former is far more efficient than the latter.

At a minimum, Peter Hansmeier's declarations describing his "snapshot" investigations of Bit Torrent swarms shows that multiple infringers had access to

---

[18] It must be noted that taking even a portion of a candy bar, without paying for that portion, is still theft.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

and possessed variously sized electronic portions of AF Holdings's and Ingenuity 13's copyrighted works. As noted, even the most minute, incomplete portions of video media from the internet can be viewed at the present time; therefore, AF Holdings and Ingenuity 13 have evidence to support the following allegations: (1) certain infringers with distinct IP addresses in the Bit Torrent swarm were observed in possession of varying portions of Plaintiff's copyrighted works; (2) notwithstanding the size or incompleteness of those files, the infringers had the capacity to view the data they had received; (3) the infringers were engaged in both unlawful downloading and distribution of Plaintiffs' copyrighted works; and (4) those infringers had observed access to the copyrighted content through the Bit Torrent swarm. Furthermore, even if the subscriber is not the person downloading the copyrighted material, there is a question of whether the subscriber is encouraging or assisting the infringement by permitting access to his or her computer or wireless network.

These facts more than overcome Justice Thomas's "probable cause" standard to initiate a lawsuit against specific individuals, and, therefore, Plaintiffs' economic concerns in the litigation becomes a moot issue for the Court and the defendants. *See Prof'l Real Estate Investors*, *supra,* 508 U.S. at 65-66 (holding that once it was determined that a plaintiff had a non-frivolous basis for its copyright infringement lawsuit, the District Court could not inquire of the plaintiff's economic motivations in the lawsuit.) Simply, Plaintiffs and their counsel have satisfied any and all pre-litigation discovery requirements and the evidentiary standards for identifying individual defendants; Plaintiffs are entitled to rely on discovery to verify that the named defendants are the actual infringers; and Plaintiffs have done nothing to warrant Rule 11 sanctions.

///

///

///

- 27 -

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

### 4.   There is no evidence that Duffy or Van Den Hemel had or were aware of any additional parties with a financial interest in AF Holdings and/or Ingenuity 13.

The same analysis as above holds true here. There is absolutely no evidence that Duffy and Van Den Hemel were actively involved in any of the five cases that are the subject of this order to show cause or that they supervised Gibbs in his case handling. Because they did not file or cause to be filed a notice indicating no interested parties (Form CV-30), they are not subject to sanctions on this issue.

In considering this issue, this court must look at the circumstances under which attorneys are obligated to make disclosures of financial interest in the litigation at hand. Here, in the Central District of California, the only duty to disclose a financial interest is connected with a one page form—CV-30. The firm exists *for a single purpose*, to allow the court to determine whether it is necessary to disqualify or recuse itself. Local R. 7.1-1; *see also* Req. Judicial Not., Ex. 5, Form CV-30 (stating that "representations are made to the Court to evaluate possible disqualification or recusal."). As such, neither the local rule nor the form contemplates disclosure of the parties' attorneys, who presumably have a financial interest in the outcome of many proceedings. That is because the court already has information regarding who is representing the parties and can conduct a disqualification and/or recusal analysis without being given those same names again.

Here, given that the court has expressed a belief that the only persons with a financial interest in the case are the attorneys who have appeared before the court and the court has not transferred the matter, there apparently was no reason for recusal or disqualification. Thus, the failure to provide such information would have had no impact on the litigation or the efficiency of this court.

Moreover, and most importantly, the only evidence submitted regarding the financial interests of AF Holdings is that it is a limited liability company formed

- 28 -

by Aisha Sargeant in May 2011 and is wholly owned by a trust with no defined beneficiaries. (ECF 69-1, pp. 21:18-2, 38:22-39:15, 40:8-12.) There has been no evidence that Duffy, Van Den Hemel, or Prenda has any type of ownership interest in either AF Holdings or Ingenuity 13.[19]

Finally, and on a related note, Duffy, Van Den Hemel, and Prenda should not be sanctioned, as alleged, for misrepresenting the nature and relationship of John Steele, Paul Hansmeier, Paul Duffy, Angela Van Den Hemel, Mark Lutz, Alan Cooper, Peter Hansmeier, Prenda Law, Inc., Livewire Holdings LLC, Steele Hansmeier PLLC, AF Holdings LLC, Ingenuity 13 LLC, and 6881 Forensics LLC, since—simply put—they have not made any representations whatsoever to this court regarding any of those relationships.

### 5.   Duffy, Van Den Hemel, and Prenda should not be sanctioned for failing to advise the court of related cases.

Once again, neither Duffy nor Van Den Hemel was actively involved in any of the five cases that are the subject of this order to show cause, and neither supervised Gibbs regarding it. Because they did not determine whether to file or cause to be filed a notice of related cases, they should not be sanctioned for Gibbs's conduct.

Although this court has argued that it believes a number of cases were clearly related because they involved the same plaintiffs and the same copyrighted work, that opinion is not universally held by all courts. For example, on December 27, 2012, the Northern District of California issued an order concluding that none of 25 cases filed by AF Holdings and Ingenuity were related to one another. Req. Judicial Not., Ex. 4, 12-cv-04976 ECF no. 15. The order was, in fact, a denial to deem the cases related, not as this court has suggested, a denial of consolidation or

---

[19] Although the court seems to be concerned that some attorneys may have a financial interest in AF Holdings and/or Ingenuity 13, the reasoning for that concern beyond a disqualification/recusal analysis has yet to be explained. There is no ethical or legal bar to attorneys representing an entity in which they hold an interest.

RESPONSE TO ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE LEVIED

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1   joinder. And Pietz, the "prosecutor" for these order-to-show-cause proceedings
2   was the attorney representing the defendant in that action.

3       Although this court may disagree with the conclusion that the Northern
4   District reached, it should find that the contrary judicial conclusion indicates at
5   least an uncertain issue. Indeed, whereas a number of cases were filed by AF
6   Holdings for infringing on a particular copyright and a number of others by
7   Ingenuity 13 for infringement of another, they all have different defendants and
8   involve different events. Just because different people steal something from the
9   same victim does not necessarily make the claims related. For the reasons, a failure
10  to conclude that these cases were related can be neither contemptuous (which must
11  be the standard for sanctions here) nor unreasonable, even if this court believes the
12  Northern District's conclusion was erroneous.

13      **6.**    **Duffy and Van Den Hemel should not be sanctioned for failing to**
14              **appear on March 11, 2013 because they made themselves**
15              **available to specially appear, which was confirmed to the court,**
16              **and the court lacked jurisdiction to order them to appear as**
17              **witnesses.**

18      On March 5, 2013, this court issued an order that eight individuals, including
19  Paul Duffy and Angela Van Den Hemel, appear before this court on Monday,
20  March 11, 2013.[20] The order was to be served on then by Thursday, March 7, 2013.

21      The order was improper and unfair for a variety of reasons, including the
22  fact that his court lacked jurisdiction to order those individuals to appear because
23  they resided outside California, were not parties to this litigation, had not appeared
24  in the actions subject to the orders to show cause, and did not represent parties in
25  them.

26  ///

27  ///

28

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

---

[20] The court did not order Prenda Law to appear on March 11, 2013.

Moreover, neither Duffy nor Van Den Hemel received reasonable notice. As such, the court's order for Duffy and Van Den Hemel to appear on Monday, March 11, 2013 at 1:30 P.M. was simply unfair.

Accordingly, on March 8, 2013, the day after receiving notice, Duffy and Van Den Hemel filed an emergency ex parte application requesting the court to withdraw the order, which the court declined to rule on in advance of the hearing. The court criticized that the application was manually filed so close to the hearing date. But there were reasons for both the timing and the manual filing.

First, Duffy and Van Den Hemel were not served notice of the hearing until the afternoon of March 7, 2013. Thus, within 24 hours, they first learned that they would be personally involved in the proceedings, retained counsel, and got their application on file.

Second, the court's own rules precluded Duffy and Van Den Hemel from filing electronically as both Pietz and this court suggested they should have. "The following documents may not be filed electronically, but must also be submitted in PDF format after they have been filed with the Clerk in paper format: . . . Any first appearance document filed by a third party or non-party to the case." http://www.cacd.uscourts.gov/e-filing/exceptions-electronic-filing. And, indeed, the CM/ECF system requires attorneys filing electronically to do so on behalf of a party who has already appeared in the matter by selecting the party. Because Duffy and Van Den Hemel had not appeared, nothing could be filed electronically on their behalf.

Notwithstanding the pending question regarding the court's jurisdiction over them as witnesses, out of respect for the court and its order, Duffy and Van Den Hemel both made themselves telephonically available for the approximately three-hour long hearing on the afternoon of March 11, 2013.

///

///

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

**a.** The court should not sanction Duffy and Van Den Hemel because the court's lack of personal jurisdiction to order them to appear as out-of-state witnesses made the order unenforceable.

Both Morgan Pietz[21] and this court responded to the ex parte application for the court to withdraw the order to appear based on a lack of jurisdiction by providing an analysis of the court's personal jurisdiction over a party. Such analysis, as both Pietz and this court undertook, is based upon whether the party had minimum contacts with the forum. But neither analysis considered that Duffy and Van Den Hemel were not parties to the litigation. And neither provided any authority supporting the proposition that witnesses are subject to the same analysis as parties. Indeed, they are not.

Again, the public policy behind the need to determine personal jurisdiction over witnesses is at an elevated level because, as individuals, Duffy and Van Den Hemel effectively had no interest in a determination of whether Brett Gibbs should be subjected to sanctions.

Federal courts do not have nationwide personal jurisdiction. With few exceptions, they have no broader power over persons outside the state in which they sit than do the local state courts. *Omni Capital Int'l, Ltd. v. Rudolph Wolff & Co., Ltd.*, 484 U.S. 97, 104-105 (1987).

Here, because Duffy and Van Den Hemel were neither parties to the action nor the subject of the March 11, 2013 proceedings, they could have no role beyond serving as potential witnesses. And California Code of Civil Procedure section 1989 provides that "a witness . . . is not obliged to attend as a witness before any court, judge, justice or any other officer, unless the witness is a resident within the state at the time of service." Neither Duffy nor Van Den Hemel resided in

---

[21] Again, given that claims against Pietz's client had been dismissed, he no longer represented any parties to this action.

California when they were served. (ECF no. 83, ¶¶ 5-6 [Decl. of Steele in support of ex parte application].) So, the court lacked jurisdiction to order them to appear. And no party may properly be sanctioned based upon a perceived disobedience of an improper order.

**b.** The court should not sanction Duffy and Van Den Hemel because the notice they received was insufficient.

As with the jurisdictional issue, Duffy and Van Den Hemel addressed this issue in their ex parte application. Although counsel submitting this response has been unable to identify any authority addressing the notice requirements to witnesses ordered to appear at such hearings, logic dictates that such individuals should at least be similarly accommodated with reasonable notice. Here, the court's March 5, 2013 order that notice be provided by March 7, 2013 to attend a March 11, 2013 hearing with no further information is fundamentally unreasonable.

Due process mandates that a respondent to a Rule 11 sanctions motion receive reasonable notice of the sanctions being sought and the opportunity to submit an opposition. Fed. R. Civ. P. 11(c)(1); *Miranda v. Southern Pac. Transp. Co.*, 710 F.2d 516, 522 (9th Cir. 1983). This applies equally to sanctions imposed sua sponte by the court. So, before imposing sanctions, the court must issue an order to show cause why the respondent has not violated Rule 11 and allow the party to be heard. Fed. R. Civ. P. 11(c)(3); *Simmerman v. Corino*, 27 F.3d 58, 64 (3rd Cir. 1994); *Marlin v. Moody Nat'l Bank, N.A.*, 533 F.3d 374, 379 (5th Cir. 2008).

Although witnesses in most cases would presumably never be expected to submit briefs in the case, public policy supports yielding more courtesies to the convenience of witnesses than to the parties. So, there is a presumption that witnesses would be afforded a meaningful opportunity to prepare for a hearing of any nature, including by being given an opportunity to rearrange their obligations

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

and schedules well enough in advance to safeguard against prejudice to their employment, families, and/or other personal needs.

Here, Duffy resides in Illinois and Van Den Hemel resides in Minnesota. (ECF no. 83, ¶¶ 5-6.) And both are employed within the legal services industry. *Ibid.* As such, providing a two-business-days notice that they need to travel across the country for a hearing in a case that they had not been part of—and had no earlier notice that they would be made part of—was inherently unreasonable in that it could adversely impact their clients and the function of their firm in addition to the impact it would have had on their personal lives.

Further, the notice that Duffy and Van Den Hemel appear contained no information regarding the reason for their appearance. Presumptively, it would have been to provide testimony, but the court issued no order identifying what the scope of such testimony might be, and nobody, including the court, called Duffy or Van Den Hemel despite being informed of their telephonic availability. Req. Judicial Not., Ex. 1, Mar. 11, 2013 Rep. Tr., p. 21:23-25. Without such notice, the witnesses could not properly prepare and were, therefore, deprived of due process.

Finally, witnesses are entitled not only to receive payment for their attendance, but also for travel expenses. 28 U.S.C. § 1821 (2013). But, the court's order not only failed to provide who would have compensated Duffy and Van Den Hemel for their time and expenses, but that they would be compensated at all. Given the considerable expense of traveling such distances (including consideration of the fact that at least Van Den Hemel, given her employment as a paralegal[22], has limited means), especially on such short notice when many common carriers may not even have had seats available, this is a significant issue. For these reasons, even if the court had jurisdiction over Duffy and Van Den Hemel, the notice was unreasonable.

---

[22] ECF no. 83, ¶ 6.

RESPONSE TO ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE LEVIED

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

**c.**    The court should not sanction Duffy and Van Den Hemel because they made themselves available to appear telephonically despite the questions of the court's jurisdiction over them.

As discussed above, Duffy and Van Den Hemel felt strongly that the court lacked jurisdiction to order them to appear as witnesses in Gibbs's order to show cause proceedings and that they received insufficient notice. But, to the extent permitted by the court, they still made a special appearance through counsel, Heather Rosing, (Req. Judicial Not., Ex. 1, Mar. 11, 2013 Rep. Tr., pp. 6:15 – 7:3), and were available telephonically throughout the hearing (*Id.* at 21:7-25). Acknowledging this, the court even commented that it might take them up on the offer to provide testimony telephonically (*Id.* at 22:1-2), but ultimately elected not to do so. Indeed, neither Pietz nor Gibbs's counsel called Duffy or Van Den Hemel to provide testimony either.

Thus, not only did they comply with the court's order—which did not state that an in-person appearance was required[23]—but Duffy's and Van Den Hemel's physical absence had no impact on the proceedings because they were never requested by the court or the attorneys arguing the order to show cause to provide testimony.

In summary, Duffy and Van Den Hemel had justification for not appearing on March 11, 2013 despite the court's order. Yet, they still specially appeared. And, their telephonic availability had no impact on the proceedings given that they were never called to testify. As such, it would be both inappropriate and inequitable to issue sanctions against them based on any determination that they failed to comply with the order to appear.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

---

[23] This is in contrast to the February 7, 2013 order that **specifically required** Brett Gibbs to appear in person. See ECF no. 57, p. 2:22-23.

# V.

# <u>CONCLUSION</u>

For the reasons set forth above, it would be improper to sanction Paul Duffy, Angela Van Den Hemel, and/or Prenda Law, Inc. based on the evidence before the court.  As such, they respectfully request that the court not issue sanctions against them and close this matter.

KLINEDINST PC

DATED: April 8, 2013          By:  /s/ Heather L. Rosing
                                   Heather L. Rosing
                                   David M. Majchrzak
                                   Philip W. Vineyard
                                   Specially appearing for
                                   Paul Duffy, Angela Van Den Hemel,
                                   and Prenda Law. Inc.

15504497v1

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

- 36 -