PHILLIP A. BAKER, BAR ID #169571
pbaker@bknlawyers.com
DANIEL P. LEONARD, BAR ID #194268
dleonard@bknlawyers.com
DERRICK S. LOWE, BAR ID #267998
dlowe@bknlawyers.com
BAKER, KEENER & NAHRA, LLP
633 West 5th Street
Suite 5400
Los Angeles, California 90071
Telephone: (213) 241-0900
Facsimile:  (213) 241-0990

Specially Appearing for
PAUL HANSMEIER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INGENUITY 13 LLC, | Case No.: 2:12-CV-8333-ODW (JCx) |
| Plaintiff, | Judge:   Hon. Otis D. Wright, II<br>Magistrate Judge:<br>          Hon. Jacqueline Chooljian<br>Courtroom:     11<br>Complaint Filed:   09-27-2012<br>Trial Date:        None Set |
| vs. | |
| JOHN DOE, | |
| Defendant. | **SPECIALLY APPEARING, PAUL HANSMEIER'S, RESPONSE TO ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE LEVIED** |
| | DATE: April 2, 2013<br>TIME:  10:00 a.m.<br>CTRM:  11 |

1

# TABLE OF CONTENTS

1. INTRODUCTION ..................................................................................................1
2. JURISDICTION ...................................................................................................3
   a. Rule 11 ......................................................................................................3
   b. Local Rule 83-3 .........................................................................................5
   c. Inherent Powers .........................................................................................5
3. THE COURT SHOULD NOT IMPOSE SANCTIONS AGAINST PAUL HANSMEIER ..........................................................................................5
   a. The Proceedings in the Order to Show Cause Hearing Against Brett Gibbs Were Flawed .........................................................................6
   b. Hansmeier Did Not Perpetrate a Fraud on the Court Because he Neither Misappropriated the Identity of Alan Cooper nor did he file Lawsuits Based on Invalid Copyright Assignments .........................6
   c. Hansmeier Did Not Violate the Court's Order to Cease Discovery. ..................................................................................................6
   d. Hansmeier Did Not Participate in the Pre-Suit or Pre-Naming Investigations ...........................................................................................7
   e. Hansmeier Should not be Sanctioned for Failing to Advise the Court of any Additional Parties that May Have a Financial Interest in the Outcome of the Litigation Because There is no Evidence of any Additional Parties with a Financial Interest in AF Holdings and/or Ingenuity 13 .......................................................7
   f. Hansmeier Should not be Sanctioned for Failing to Advise the Court of Related Cases.............................................................................8
   g. Hansmeier Should not be Sanctioned for Failing to Appear on March 11, 2013 Because he made Himself Available to Specially Appear, which ws Confirmed to the Court, and the Court Lacked the Authority and Jursidiction to Order him to Appear Personally as a Witness......................................................9
   h. Hansmeier Was Not Under any Obligation to Appear Pro Hac .........11
4. CONCLUSION ..................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Bradley v. Fisher,
  80 U.S. [13 Wall.] 335, 20 L. Ed. 646 (1872) .......................................................... 2

Erdman v. Stevens,
  458 F.2d 1205 (2d Cir. 1972) ................................................................................... 2

Gonzales v. Texaco, Inc.,
  344 Fed. Appx. 304 (9th Cir. 2009) ......................................................................... 1

Griffin v. California,
  380 U.S. 609 (1965) ............................................................................................ 1, 2

In Re Ruffalo,
  390 U.S. 544, 88 S. Ct. 1222, 20 L. Ed. 2d 117 (1968) ........................................... 2

Lefkowitz v. Turley,
  414 U.S. 70, 94 S.Ct.316 (1973) .............................................................................. 2

Rachel v. Banana Republic, Inc.,
  831 F.2d 1503 (9th Cir. 1987) ................................................................................. 3

Spevack v. Klein,
  385 U.S. 511, 87 S. Ct. 625, 17 L. Ed. 2d 574 (1967) ............................................. 2

Ullmann v. United States,
  350 U.S. 422 (1956) ................................................................................................. 1

**STATUTES**

Rule 11 of the Federal Rules of Civil Procedure ........................................................ 3

Local Rule 83-3 .................................................................................................... 1, 3, 5

## 1. INTRODUCTION

At the April 2, 2013 order to show cause hearing, the court invited those responding, including Paul Hansmeier (hereinafter "Respondent Hansmeier" or "Hansmeier"), to either provide testimony in response or to exercise his Fifth Amendment rights. When some of those appearing elected for the latter, the court indicated that it would draw reasonable inferences and ended the hearing.

The reasonable inferences the court should draw against Hansmeier are limited. As a preliminary matter, because of the criminal nature of these proceedings where the court has both raised questions of fraud and potential incarceration[1], Hansmeier's invocation of the Fifth Amendment may not be used to formulate presumptions against him.

Further, because the court initiated the proceedings, they are "akin to contempt" proceedings, and conduct may be judged only in that light. That is, the "reasonableness" of the respondents' conduct is not at issue, only whether it was contemptuous. See Gonzales v. Texaco, Inc., 344 Fed. Appx. 304, 308-09 (9th Cir. 2009) (remanding to the district court for consideration whether the attorneys' conduct was "akin to contempt," given that the lower court instituted its sua sponte Rule 11 sanctions on the basis of the "reasonableness" of the attorneys' conduct).

The Supreme Court has made clear that an inference of guilt may not be drawn from a defendant's failure to testify about facts relevant to his case. Griffin v. California, 380 U.S. 609 (1965). "Too many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are either guilty of crime or commit perjury in claiming the privilege." Ullmann v. United States, 350 U.S. 422, 426 (1956). Rather, "[t]he privilege serves to protect the innocent who otherwise might be ensnared by

---

[1] Court's February 7, 2013, Order to Show Cause re Sanctions for Rule 11 and Local Rule 83-3 Violations, 11:1-4; Court's Order of March 14, 2013, re the Ex Parte Application of John Steele, Paul Hansmeier, Paul Duffy, and Angela Van Den Hemel, at pp. 1-3.

ambiguous circumstances." Board of Higher Education, 350 U.S. 551, 557-558 (1956); *accord* Griffin v. California, *supra*, 380 U.S. at 618.

In Erdman v. Stevens, 458 F.2d 1205, 1209-10 (2d Cir. 1972), the Second Circuit determined that:

> A court's disciplinary proceeding against a member of its bar is comparable to a criminal rather than to a civil proceeding. A lawyer is not usually motivated solely by the prospect of monetary gain in seeking admission to the bar or in practicing his chosen profession. However, it cannot be disputed that for most attorneys the license to practice law represents their livelihood, loss of which may be a greater punishment than a monetary fine. See *Bradley v. Fisher, 80 U.S. [13 Wall.] 335, 355, 20 L. Ed. 646 (1872)*; *Spevack v. Klein, 385 U.S. 511, 516, 87 S. Ct. 625, 17 L. Ed. 2d 574 (1967)*. Furthermore, disciplinary measures against an attorney, while posing a threat of incarceration only in cases of contempt, may threaten another serious punishment -- loss of professional reputation. The stigma of such a loss can harm the lawyer in his community and in his client relations as well as adversely affect his ability to carry out his professional functions, particularly if his branch of the law is trial practice. *Undoubtedly these factors played a part in leading the Supreme Court to characterize disbarment proceedings as being "of a quasi-criminal nature*," In Re Ruffalo, 390 U.S. 544, 551, 88 S. Ct. 1222, 20 L. Ed. 2d 117 (1968). *Id*. At 1209-10 (Emphasis Added); *Cf.*, Lefkowitz v. Turley, 414 U.S. 70, 94 S.Ct.316 (1973) (State may not compel waiver of 5th Amendment privilege by threat of loss of employment or livelihood).

The Court stated in no uncertain terms at the April 2, 2013 hearing that it considered this matter to be focused on attorney misconduct and suggested during the March 11, 2013 hearing that it suspected that respondents had committed fraud on the Court. Accordingly, the Court may not draw negative inferences from the respondents' invocation of their 5th Amendment rights.

Additionally, the evidence presented to the court is insufficient to justify sanctions. Respondent Hansmeier was not a party to proceedings outside of the April 2, 2013 proceeding, where no evidence was presented. There is simply no tie between Hansmeier and the issues raised within the court's order to show case. And the court should limit the inferences that it draws about Hansmeier's

1  culpability for the actions of a third-party attorney, like Gibbs, who was neither
2  employed nor supervised by Hansmeier in connection with this matter.  (*See*, Mar.
3  11, 2013 Rep. Tr., pp. 17:23 – 18:6, attached as Exhibit "A" to the Declaration of
4  Phillip A. Baker).

## 2. **JURISDICTION**

As a preliminary matter, the ability to issue sanctions is not unlimited.  The court has indicated it is considering issuing sanctions under Rule 11 of the Federal Rules of Civil Procedure, Local Rule 83-3, and its inherent powers.  Sanctions under each are restricted as follows as outlined in the brief filed on behalf of Prenda Law, Inc., Paul Duffy, and Angela Van Den Hamel for which Respondent Hansmeier hereby joins.

### a. Rule 11.

Rule 11 authorizes a court to issue sanctions against an attorney or unrepresented party who signs a "pleading, written motion, [or] other paper" that is brought for any improper purpose or is not well grounded in fact, warranted by existing law, or made in good faith.  Thus, Rule 11 imposes an affirmative duty on a party or counsel to investigate the law and facts before filing.  Rachel v. Banana Republic, Inc., 831 F.2d 1503, 1508 (9th Cir. 1987).

Here, Gibbs' attempts to delegate his Rule 11 duties to the respondents by testifying that certain respondents, including Hansmeier, acted as Gibbs' supervising attorney.  There are two major problems with Gibbs' attempt.  First, Rule 11 duties are nondelegable.  "Rule 11(b) recognizes a 'nondelegable responsibility' for an attorney to 'personally…validate the truth and legal reasonableness of the papers filed,' and 'to conduct a reasonable factual investigation.'"  Feyko v. Yuhe Int'l, Inc., Dist. Ct. C.D. Cal. (March 5, 2013) (citing Pavelic & LeFlore v. Marvel Entm't Group, 493 U.S. 120, 126 (1989) and Christian v. Mattel Inc., 286 F.3d 1118, 1127 (9th Cir. 2002)).

       Second, Gibbs never indicated (until threatened with sanctions) that any other persons played any role in the cases subject to the Order to Show Cause. Gibbs' sworn testimony in a Florida proceeding on December 21, 2012, directly contradicts his March 11, 2013 testimony.  In the Florida proceeding, Gibbs' testified, "In my role as 'Of Counsel,' I draft, file and litigate copyright lawsuits for Prenda Law, Inc. in California." Gibbs further testified, "In my role as 'Of Counsel,' I also advise and educate other attorneys working with Prenda Law, Inc., as well as Prenda Law's clients, generally on proceeding in lawsuits protecting the rights of copyright holders in federal court."  Gibbs further testified, "In my role as an advisor and educator, I help Prenda Law, as well as their clients, retain counsel to bring lawsuits in other states, and consult with the lead counsel on those cases as the cases progress.  I occasionally help lead counsel prepare documents including motions and responses to facilitate counsels representing their clients. I do not act as co-counsel on any cases in states where I do not have a license to practice law." Listing the clients he had "advise[d] and educate[d]", Gibbs specifically identified "AF Holdings LLC, and Ingenuity13 LLC."  *See* Exhibit "B" to Declaration of PAB in Support of Response to Order To Show Cause.

       Whereas the 1993 Committee Notes on Amendments to Federal Rules of Civil Procedure suggest that the court may likewise consider whether to order sanctions against other attorneys in the firm, co-counsel, or the party personally, those circumstances should be contemplated in cases where "substantial restrictions" are imposed "on the discretion of individual attorneys."  Here, Gibbs' December 21, 2012 testimony established his broad discretion in drafting, filing and litigating copyright lawsuits in California, advising Prenda Law's clients in lawsuits and helping lead counsel across the United States prepare documents and motions.  If further questioned regarding these matters, Gibbs involvement as to investigation, expenses, description of his role, and how he held himself as lead counsel would have been divulged.

      **b.**      **Local Rule 83-3.**

Counsel for Hansmeier has been able to find but a single reference to Local Rule 83-3 in any published opinion and joins in the brief filed on behalf of Prenda Law, Inc., Paul Duffy, and Angela Van Den Hamel for which Respondent Hansmeier hereby joins.

      **c.**      **Inherent Powers.**

As to inherent powers, here, there is simply no evidence that Hansmeier, who did not employ Gibbs at Prenda Law, who had no supervisory authority over Gibbs at Prenda Law, who never appeared in this case and who does not even live in the State of California, had any malicious intent or otherwise acted in bad faith regarding the activities that form the subject of this order to show cause. As such, any sanctions under the Court's inherent powers would be inappropriate.

**3.**    <u>**THE COURT SHOULD NOT IMPOSE SANCTIONS AGAINST PAUL HANSMEIER**</u>

Through its various orders, the court has indicated that it is considering issuing sanctions upon seven grounds. These are (1) the misappropriation of the identity of Alan Cooper and filing lawsuits based on an invalid copyright assignment, (2) violation of the court's order by failing to cease discovery efforts based on information obtained through subpoenas, (3) alleging copyright infringement without conducting a reasonable inquiry, (4) failing to notify the court of all parties that have a financial interest in the outcome of litigation, (5) misrepresenting the nature and relationship of individuals, (6) contravening this court's March 5, 2013 order to appear, and (7) failing to appear *pro hac vice*. For the following reasons, the court should decline to issue sanctions against Hansmeier.

      **a.**    **The Proceedings in the Order to Show Cause Hearing Against Brett Gibbs Were Flawed.**

Respondent Hansmeier hereby joins section IVA of the brief filed on behalf of Prenda Law, Inc., Paul Duffy, and Angela Van Den Hamel and does not restate the arguments contained therein.

      **b.**    **Hansmeier Did Not Perpetrate a Fraud on the Court Because he Neither Misappropriated the Identity of Alan Cooper nor did he File Lawsuits Based on Invalid Copyright Assignments.**

Respondent Hansmeier hereby joins section IVB(1) of the brief filed on behalf of Prenda Law, Inc., Paul Duffy, and Angela Van Den Hamel and does not restate the arguments contained therein.

Further, there is no evidence that Hansmeier obtained or represented that the signatures on the assignments over the name Alan Cooper were those of John Steele's former caretaker, who bears that same name and who provided testimony to the court. Likewise, the evidence suggests that Hansmeier played no role in the acquisition of Cooper's signatures on the assignment agreements. Alan Cooper testified that he never made even made contact with Hansmeier. (Transcript of March 11, 2013 hearing at page 21, lines 16-17, attached as Exhibit A" to the Declaration of Phillip A. Baker.). Given that there is no evidence that Hansmeier ever met or communicated with Cooper, no reasonable inference may be drawn that he was involved in the procurement of his signature or, in the alternative, the signature of whoever executed the assignment on behalf of the assignee.

      **c.**    **Hansmeier Did Not Violate the Court's Order to Cease Discovery.**

There has simply been no evidence presented to the court that Hansmeier was involved in any discovery in either 12-cv-06636 or 12-cv-06669 before or after the court issued its October 19, 2012 discovery order. Outside of Gibbs' testimony, there is no evidence that Gibbs instructed Hansmeier to instruct Respondent Van Den Hemel to instruct Verizon to not comply with the subpoenas

issued months before the court's order to cease discovery efforts. Such an instruction would be incompatible with Gibbs' earlier characterization of Hansmeier as a supervising attorney; supervisory relationships are typically a one-way street. Further, it would have been highly unusual for Gibbs to instruct Hansmeier to serve the October 19, 2012 discovery order on Verizon when the order itself contained no such instruction. In contrast, the December 20, 2012 discovery order did order service on the affected ISPs. In that instance, Gibbs testified that he contacted Respondent Van Den Hemel directly via phone and e-mail to ensure immediate service. There is no apparent reason why Gibbs, in one instance, would claim to route his discovery orders through Hansmeier and, in a separate instance, route his discovery orders through others. Gibbs' testimony regarding his compliance with the October 19, 2012 discovery order lacks consistency.

### d. **Hansmeier Did Not Participate in the Pre-Suit or Pre-Naming Investigations.**

Respondent Hansmeier hereby joins section IVB(3) of the brief filed on behalf of Prenda Law, Inc., Paul Duffy, and Angela Van Den Hamel and does not restate the arguments contained therein. There is no evidence that Hansmeier was part of the investigative process leading up to the filing of claims or identification of fictitiously named defendants – not any.

### e. **Hansmeier Should not be Sanctioned for Failing to Advise the Court of any Additional Parties That May Have a Financial Interest in the Outcome of the Litigation Because There is no Evidence of any Additional Parties with a Financial Interest in AF Holdings and/or Ingenuity 13.**

Hansmeier did not file or cause to be filed a notice indicating interested parties, and should not be sanctioned for Gibbs' conduct. Indeed, the duty to disclose a financial interest is necessary for a single purpose, to allow the court to

determine whether it is necessary to disqualify or recuse itself. Local R. 7.1-1; *see also* Form CV-30 (stating that "representations are made to the Court to evaluate possible disqualification or recusal.")

Here, given that the court has expressed a belief that the only persons with a financial interest in the case are the attorneys who have appeared before the court and the court has not transferred the matter, there apparently was no reason for recusal or disqualification.  Thus, the failure to provide such information would have had no impact on the litigation or the efficiency of this court.

But, the only evidence given regarding the financial interests to AF Holdings is that it is a limited liability company formed by Aisha Sargeant in May 2011 and is wholly owned by a trust with no defined beneficiaries.  (ECF 69-1, pp. 21:18-2, 38:22-39:15, 40:8-12.)  There has been no evidence that Hansmeier has an ownership interest in either AF Holdings or Ingenuity 13.[2]

### f. **Hansmeier Should not be Sanctioned for Failing to Advise the Court of Related Cases.**

There is simply no evidence that Hansmeier participated in the decision to decline to file a notice of related cases.  As there is no evidence before this Court he did not determine whether to file or cause to be filed a notice of related cases, he should not be sanctioned for Gibbs' conduct.

Although this court has argued that it believes a number of cases were clearly related because they involved the same plaintiffs and the same copyrighted work, that opinion is not universally held by all courts.  For example, on December 27, 2012, the Northern District of California issued an order concluding that none of 25 cases filed by AF Holdings and Ingenuity were related to one another.  Req. Judicial Not., 12-cv-04976 ECF no. 15.  The order was, in fact, a denial to deem

---

[2] Although the court seems to be concerned that some attorneys may have a financial interest in AF Holdings and/or Ingenuity 13, the reasoning for that concern beyond a disqualification/recusal analysis has yet to be explained. There is no ethical or legal bar to attorneys representing an entity in which they hold an interest.

1  the cases related, not as this court has suggested multiple times, a denial of
2  consolidation.

3        g. **Hansmeier Should not be Sanctioned for Failing to Appear on March 11, 2013 Because he made Himself Available to Specially Appear, which was Confirmed to the Court, and the Court Lacked the Authority and Jurisdiction to order him to Appear Personally as a Witness.**

8  Respondent Hansmeier hereby joins section IVB(6) of the brief filed on
9  behalf of Prenda Law, Inc., Paul Duffy, and Angela Van Den Hamel and does not
10  restate the arguments contained therein.

11  On March 5, 2013, this Court issued an Order that eight individuals,
12  including Hansmeier, would have to appear before this court on March 11, 2013.
13  But this Court lacked jurisdiction to order those individuals to appear because they
14  resided outside California, were not parties to this litigation, had not appeared in
15  this action, and did not represent parties to this action.

16  Moreover, Hansmeier did not receive reasonable notice of the nature of the
17  proceedings he was ordered to appear in or what was expected of him besides his
18  appearance.  In fact, the Order did not even require that the appearance had to be
19  personal rather than telephonic.

20  Further, Hansmeier received insufficient notice to accommodate cross-
21  country travel or information regarding who would pay for such travel.  Rather, he
22  was not served until late Thursday, March 7, 2013, less than two business days
23  before the hearing.  Based on these factors, the Court's Order for Hansmeier to
24  appear on Monday, March 11, 2013 at 1:30 P.M. was improper.

25  As such, on March 8, 2013, Hansmeier filed an ex parte application
26  requesting the Court to withdraw the Order, which the court declined to rule on in
27  advance of the hearing.  The Court criticized that the application was manually
28  filed so close to the hearing date.  But there were reasons for both the timing and

the manual filing.

First, Hansmeier was not served with notice of the hearing until the afternoon of March 7, 2013. Thus, within 24 hours of the time he learned that he would be personally involved in the proceedings, he retained counsel, and got his application on file.

Second, the Court's own rules precluded Hansmeier from filing electronically as both Pietz and this Court suggested they should have. "The following documents may not be filed electronically, but must also be submitted in PDF format after they have been filed with the Clerk in paper format:...Any first appearance document filed by a third party or non-party to the case." http://www.cacd.uscourts.gov/e-filing/exceptions-electronic-filing. And, indeed, the CM/ECF system requires attorneys filing electronically to do so on behalf of a party who has already appeared in the matter by selecting the party. Because Hansmeier had not appeared, nothing could be filed electronically on his behalf.

Notwithstanding the pending question regarding the Court's jurisdiction over him as a witness, out of respect for the Court and its Order, Hansmeier made himself telephonically available for the approximately three-hour long hearing on the afternoon of March 11, 2013. Although the Court and the parties were advised of his availability, nobody requested that Hansmeier provide any information. So, that he was available to appear telephonically, rather than personally, had no impact on the proceedings and further appeared on April 2, 2013.

In summary, Hansmeier had justification for not appearing in person on March 11, 2013. Yet, he still specially appeared. His telephonic availability had no impact on the proceedings given that he was never called to testify. As such, it would be both inappropriate and inequitable to issue sanctions against him based on any determination that they failed to comply with the order to appear.

### h. **Hansmeier Was Not Under any Obligation to Appear Pro Hac Vice.**

There is no basis for the Court to conclude that Hansmeier was required to enter a Pro Hac appearance in this Court on this matter. There is no credible evidence that Hansmeier prepared the Complaint or Notice of Interested Parties, met and conferred with opposing counsel, made an appearance before this Court or controlled the litigation. Hansmeier is unaware of any opinion which has held that an attorney who is not litigating a matter is responsible to specially apply for pro hac vice admission under similar circumstances as this Court has posited.

Under the Court's apparent view, any attorneys who consult with one another would have to seek *Pro Hac Vice* Application, as would any general counsel, national coordinating counsel and any attorney acting in the role of an adjuster.

## 4. **CONCLUSION**

Respondent Hansmeier hereby request that sanctions not be imposed against him based upon the evidentiary record before this Court.

DATED: April 9, 2013              BAKER, KEENER & NAHRA, LLP


By        /S/ *PHILLIP A. BAKER*
       PHILLIP A. BAKER
       DANIEL P. LEONARD
       DERRICK S. LOWE
    Specially Appearing for
       PAUL HANSMEIER