# EXHIBIT "A"

Reporter's Transcript of Proceedings
Monday, March 11, 2013
(only Relevant pages Referenced in Response to OSC)

# EXHIBIT "A"

intrigue031113 txt

1

1        UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3           HONORABLE OTIS D. WRIGHT

4        UNITED STATES DISTRICT JUDGE PRESIDING

5                 - - -

6
         Ingenuity 13 LLC,                )
7                      PLAINTIFF,         )
                                          )
8        VS.                              )   NO. CV 12-8333 ODW
                                          )
9        John Doe, et al.,                )
                       DEFENDANT,         )
10       _____  )

11

12

13           REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                LOS ANGELES, CALIFORNIA

15                MONDAY, MARCH 11, 2013

16

17

18       _____

19           KATIE E. THIBODEAUX, CSR 9858
             U.S. Official Court Reporter
20           312 North Spring Street, #436
             Los Angeles, California 90012
21

22

23

24

25

2

1    APPEARANCES OF COUNSEL:

2

3    FOR RESPONDENT GIBBS:

4        WAXLER CARNER BRODSKY LLP
         BY:  ANDREW J. WAXLER

Page 1

```
                           intrigue031113 txt
 5        -and- BARRY BRODSKY
          1960 E. Grand Avenue
 6        Suite 1210
          El Segundo, CA   90245
 7

 8

 9   FOR DEFENDANT:

10        THE PIETZ LAW FIRM
          BY:  MORGAN E. PIETZ
11        3770 Highland Avenue
          Suite 206
12        Manhattan Beach, CA   90266

13        -and-

14        NICHOLAS RANALLO LAW OFFICES
          BY:  NICHOLAS R. RANALLO
15        371 Dogwood Way
          Boulder Creek, CA   95006
16

17

18   SPECIALLY APPEARING:

19        KLINEDINST LAW OFFICES
          BY:  HEATHER ROSING
20        501 W. Broadway
          Suite 600
21        San Diego, CA   92101

22

23

24

25
```

                                                                      3

```
 1                           I N D E X

 2

 3   WITNESS NAME                                 PAGE

 4   Alan Cooper
          Direct Examination by the Court         21
 5        Direct Examination by Mr. Pietz         26
          Cross-Examination by Mr. Brodsky        34
 6
     Bart Huffman
 7        Direct Examination by Mr. Pietz         39

 8   Benjamin Fox
          Direct Examination by Mr. Pietz         45
 9
     Jessie Nason
10        Direct Examination by Mr. Pietz         52
                           Page 2
```

```
                       intrigue031113 txt
11   Brad Gibbs
         Direct Examination by Mr. Waxler      73
12       Cross-Examination by Mr. Pietz       105
13
14   EXHIBIT                  I.D.         IN EVID.
15   1                         36             37
     2                         36             37
16   3,4,5                     36
     6,7                       43             44
17   8                         50             50
     9                         56
18   10                        67             67
     11                        68             68
19   12                        73             73
     13                       107            107
20   14                       108            108
     15,16,17,18              110            110
21
22
23
24
25
```

                                                                    4

```
 1       LOS ANGELES, CALIFORNIA; MONDAY, MARCH 11, 2013
 2                         1:38 P.M.
 3                         - - - - -
 4
 5
 6       THE CLERK: Calling Item No. 4, CV 12-8333-ODW,
 7   CV 12-6662, ODW, CV 12-6668, Ingenuity 13 LLC versus John
 8   Doe, additionally, CV 12-6636 ODW, CV 12-6669, AF
 9   Holdings LLC versus John Doe.
10            Counsel, please state your appearances.
11       MR. WAXLER: Andrew Waxler, your Honor, and Barry
12   Brodsky for Mr. Gibbs who is present in the courtroom.
13   Thank you.
14       THE COURT: Good afternoon, counsel.
15       MR. PIETZ: Good afternoon, your Honor. Morgan
```

Page 3

intrigue031113 txt

14 they didn't file income taxes because they were not
15 required in where they were domiciled, but you may be
16 right and I may be wrong.
17     THE COURT: No. He quite clearly said they have
18 not filed income taxes anywhere.
19     MR. WAXLER: I understand that. I just thought it
20 was a different reason for not filing them.
21     THE COURT: Well, probably because they don't do
22 anything, do they?
23     MR. WAXLER: Well, they in hearing from Mr -- in
24 reading from what Mr. Hansmeier says, they obviously own
25 valid copyrights, and those entities retain law firms

                                                                                                         16

1 like Prenda Law, apparently, to file actions such as the
2 ones that are at issue today.
3     THE COURT: They retain firms? Seriously?
4         You can hardly keep a straight face, can you?
5     MR. WAXLER: No, your Honor.
6     THE COURT: These entities were basically created
7 by these lawyers; right? They have no business. They
8 have no employees. They have no function really. They
9 are not even really a shell, are they?
10     MR. WAXLER: I don't know, your Honor.
11     THE COURT: The law firms are basically
12 prosecuting these actions on their own behalf, aren't
13 they?
14     MR. WAXLER: Mr. Gibbs never had any client
15 contact with those clients. Mr. Gibbs received
16 information from Mr. Hansmeier and Mr. Steele, and those
17 individuals advised Mr. Gibbs that they had talked to the
18 clients.

Page 13

intrigue031113.txt

19      THE COURT: Hansmeier and Steele, are those the
20 individuals to whom you refer in your papers to as the
21 senior partners in the law firm.
22      MR. WAXLER: Yes, they are.
23      THE COURT: I have another question. Does
24 Mr. Gibbs have an indemnity or hold harmless agreement
25 from these senior partners? Or is he out there on his

17

1 own?
2      MR. WAXLER: He has no hold harmless agreement
3 from these partners that I am aware of.
4      THE COURT: Okay. All right.
5      MR. WAXLER: He was an of counsel, W -- 1099,
6 independent contractor for Prenda Law.
7      THE COURT: All right. Now, the court is coming
8 to the conclusion, and this is why it has been wonderful
9 to have someone here to disabuse me of the notion that
10 all of these lawsuits are being prosecuted on behalf of
11 the lawyers, that all of the settlement funds inure
12 solely to the benefit of the lawyers because not dime
13 one has been transmitted to AF Holdings or to Ingenuity
14 13.
15      Now, if there is information to rebut that, I
16 would love to hear it. But, otherwise, that is what I am
17 stuck with. So now I am wondering why is it that no
18 disclosure has been made in this court and probably in
19 none of the federal courts that the lawyers have a
20 pecuniary interest in the outcome of these cases?
21      MR. WAXLER: I don't believe that that is what
22 Mr. Gibbs understands the case to be. The fact that the
23 settlement funds were not transmitted as of yet to those
24 entities doesn't mean those settlement funds aren't being

Page 14

intrigue031113 txt

25   held in trust for those entities. Mr. Gibbs has no

18

1   information whatsoever, your Honor, to understand
2   anything different than what I just described.
3        MR. BRODSKY: Your Honor, may I interject one
4   point?
5        THE COURT: Sure. Your name again?
6        MR. BRODSKY: Barry Brodsky.
7        THE COURT: All right. Go ahead, sir.
8        MR. BRODSKY: My understanding and it is only from
9   reading the same deposition transcript was that those
10  funds remained in the trust accounts of the various law
11  firms that were representing the companies to defray
12  future expenses.
13       THE COURT: And what were those expenses other
14  than filing fees?
15       MR. BRODSKY: I would assume they would be filing
16  fees, investigative fees, you know, basically that.
17       THE COURT: To -- okay.
18       MR. BRODSKY: But that is just my reading of the
19  deposition.
20       THE COURT: Okay. And after that is done, then
21  what?
22       MR. BRODSKY: Apparently -- well, we don't know
23  where that trail ends, whether that trail has ended. But
24  we do know this. We know that none of those funds
25  reached Mr. Gibbs.

19

1        THE COURT: And we also know none of those funds
2   reached Ingenuity 13 and AF Holdings.
3        MR. BRODSKY: Apparently, from Mr. Hansmeier's

Page 15

intrigue031113 txt

4 testimony, that is correct.

5 THE COURT: Who was the corporate designee, the
6 30(b)(6) designee for AF Holdings; right?

7 MR. BRODSKY: Yes.

8 THE COURT: And none of those funds ever reached
9 AF Holdings.

10 MR. BRODSKY: According to him, that's correct.

11 THE COURT: All these lawsuits settled on behalf
12 of AF Holdings; right? But they reside in the law firm's
13 trust account.

14 MR. BRODSKY: Some obviously were settled, yes.

15 THE COURT: You know what was really interesting,
16 a lawsuit handled by law firm A, the settlement funds
17 then are transmitted to law firm B's trust account, law
18 firm B being controlled by Mr. Steele. I don't know. I
19 just find these things curious.

20 All right. Any other light to be shed on some
21 of the court's concerns with respect to this foolishness
22 here because -- by the way, is there a Mr. Cooper here?

23 MR. PIETZ: Your Honor, Mr. Cooper is in
24 attendance today, and I believe prepared to confirm that
25 these documents are founded on forgeries.

20

1 THE COURT: Is there an Alan Cooper in the
2 courtroom? Don't be shy. Come forward, sir.

3 (The witness was sworn.)

4 THE CLERK: Thank you. Have a seat.

5 THE COURT: By the way, while we are on the
6 subject, is there a Mark Lutz in the courtroom as well?

7 Is either Hansmeier in the courtroom?

8 MS. ROSING: Your Honor, I am the attorney
9 specially appearing for them and if I could finish my

Page 16

intrigue031113 txt

10  request?
11      THE COURT: I just want to know if they are here.
12      MS. ROSING: They are not physically here, your
13  Honor?
14      THE COURT: Thank you. Good.
15      MR. PIETZ: Your Honor, my understanding was that
16  Ms. Rosing was representing one of the Hansmeiers. Is
17  that different, or are you also representing Peter
18  Hansmeier?
19      MS. ROSING: I did not have an opportunity to say,
20  but I do not represent Peter Hansmeier.
21      THE COURT: I didn't think you would be. The
22  technician? I didn't think you would be.
23      MR. WAXLER: Your Honor, while those individuals
24  are not present, my understanding is they are available
25  by phone.

21

1       THE COURT: Is that right. Okay. I may take them
2   up on that. Maybe. Anyway.
3
4                   DIRECT EXAMINATION
5   BY THE COURT:
6   Q    Mr. Cooper, your name is Alan Cooper?
7   A    Yes, sir.
8   Q    And where do you reside, sir?
9   A    Isle, Minnesota.
10  Q    Isle, Minnesota. Do you have any connection -- let
11  me just ask you specifically, do you have any connection
12  with Mr. Gibbs?
13  A    No, sir.
14  Q    Ever met Mr. Gibbs before?

Page 17

```
                              intrigue031113 txt
     15   A     No.
     16   Q     what about Paul Hansmeier, any connection with him?
     17   A     No.
     18   Q     Ever meet him before?
     19   A     No.
     20   Q     what about John Steele?
     21   A     Yes.
     22   Q     what was your connection with Mr. Steele?
     23   A     I was a caretaker for a piece of property that he
     24   had in Northern Minnesota.
     25   Q     And when was this?
                                                                     22
      1   A     I think from 2006 till last August.
      2   Q     You worked for him from 2006 until August of 2012?
      3   A     No, I did not work for him.  I was a caretaker for
      4   his piece of property.  He had two houses.  I lived in
      5   one and then took care of everything else there.
      6   Q     Okay.  And he paid you?
      7   A     No.
      8   Q     who paid you?
      9   A     There was no pay.  It was I lived in the one house,
     10   and I took care of everything on the property for free.
     11   Q     Or in exchange for a place to live?
     12   A     Yes.
     13   Q     All right.  So you didn't have to pay for your
     14   housing; correct?
     15   A     Correct.
     16   Q     So in exchange for housing on the property, you
     17   took care of his property?
     18   A     Yes.
     19   Q     And this was a deal you negotiated with Mr. Steele?
     20   A     Yes.
                                 Page 18
```