Timothy J. Halloran - 104498
Thomas P. Mazzucco - 139758
MURPHY, PEARSON, BRADLEY & FEENEY
88 Kearny Street, 10th Floor
San Francisco, CA  94108-5530
Tel:     (415) 788-1900
Fax:     (415) 393-8087

Specially Appearing for
JOHN STEELE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INGENUITY 13 LLC, | Case No.: CV-12-8333- ODW(JCx) |
| Plaintiff, | **RESPONSE TO ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE LEVIED** |
| v. | |
| JOHN DOE, | Judge:          Hon. Otis D. Wright, II |
| Defendants. | Courtroom:   11 |
| | Date:           April 2, 2013 |
| | Time:           10:00 A.M. |
| | Complaint Filed:    September 27, 2012 |
| | Trial Date:             None |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   STEELE RENEWS HIS OBJECTION TO JURISDICTION ..................................2

III.  THIS COURT'S AUTHORITY TO SANCTION STEELE IS LIMITED ................4

    A.    Limits On The Court's Authority To Sanction Steele Under Rule 11 ...........4

    B.    Limits On The Court's Authority To Sanction Steele Under 28 U.S.C. § 1927.............5

    C.    Limits On The Court's Authority To Sanction Steele Under Its Inherent Powers ..........6

        1.    Limits On The Court's Authority To Sanction Steele Under The Local Rules ................7

        2.    Limits On The Court's Authority To Sanction Steele For Contempt .................7

IV.   THE COURT MAY NOT SANCTION STEELE OR DRAW ADVERSE INFERENCES AGAINST HIM BASED ON HIS INVOCATION OF HIS 5TH AMENDMENT PRIVILEGE AGAINST COMPELLED TESTIMONY .........8

V.    NO SANCTIONS SHOULD ISSUE AGAINST STEELE BASED ON ANY OF THE OSC ISSUES IDENTIFIED BY THIS COURT…………………………………..9

    A.    Steele Cannot Be Sanctioned For The Alleged Lack Of Reasonable Investigation Of Copyright Infringement Prior To Filing Complaints In The Subject Cases ..............9

    B.    Steele Cannot Be Sanctioned For Any Alleged Lack Of Reasonable Investigation Of Alleged Infringers' Identities Prior To Naming Them In The Subject Cases ........................9

    C.    Steele Cannot Be Sanctioned For Any Alleged Failure To Comply With Discovery Orders ................10

    D.    Steele Should Not Be Sanctioned For Any Alleged "Fraud Upon The Court" ............10

    E.    Steele Cannot Be Sanctioned For Any Alleged Failure To Notify The Court Of All Parties That Have A Financial Interest In The Outcome Of Litigation ..................11

    F.    Steele Cannot Be Sanctioned For Allegedly Misrepresenting The Nature And Relationship Of The Individuals And Entities Named in the OSCs ...........................12

    G.    Steele Cannot Be Sanctioned For Any Alleged Failure To File A Notice Of Related Cases ................13

    H.    Steele Cannot Be Sanctioned For Any Alleged Failure To Make a Pro Hac Vice Appearance Before the Court................13

    I.    Steele Cannot Be Sanctioned For Any Alleged Failure To Appear At The March 11, 2013 Hearing ................14

VI.   CONCLUSION ………………………………………………………………….. 15

- i -

1

## TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*Chambers v. NASCO,*
  501 U.S. 32 (1991)..................................................................................6

5

*Children's Ctr. for Developmental Enrichment v. Machle,*
  (6th Cir. 2010) 612 F3d 518...................................................................6

6

7

*Douglas Furn. Co. of Calif., Inc. v. Wood Dimensions, Inc.,*
  963 F.Supp. 899 (CD Cal. 1997)...........................................................3

8

9

*Estate of Blas v. Winkler,*
  792 F.2d 858 (9th Cir.1986)...................................................................5

10

*FM Industries, Inc. v. Citicorp Credit Services, Inc.,*
  614 F3d 335 (7th Cir. 2010)...................................................................5

11

12

*Gates Learjet Corp. v. Jensen,*
  743 F.2d 1325 (9th Cir. 1984)................................................................2

13

14

*Gompers v. Bucks Stove & Range Co.,*
  221 U.S. 418 (1911)................................................................................8

15

16

*Gonzales v. Texaco, Inc.,*
  344 Fed. Appx. 304 (9th Cir. 2009).......................................................8

17

18

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
  131 S.Ct. 2846 (2011)............................................................................3

19

20

*GRiD Systems Corp. v. John Fluke Mfg. Co., Inc.,*
  41 F3d 1318 (9th Cir. 1994)...................................................................5

21

22

*Griffin v. California,*
  380 U.S. 609 (1965)................................................................................8

23

*In re Intermagnetics Am., Inc.,*
  926 F.2d 912 (9th Cir. 1991)................................................................11

24

25

*In re Keegan Mgmt. Co., Sec. Litig.,*
  78 F.3d 431 (9th Cir. 1996)....................................................................5

26

27

*In re Lehtinen,*
  564 F3d 1052 (9th Cir. 2009).................................................................7

28

- ii -

1
2

**TABLE OF AUTHORITIES**
(continued)

**Page**

3
4

*In re Peters,*
    642 F3d 381 (2nd Cir. 2011)..................................................................6

5

*Int'l Union, United Mine Workers of Am. v. Bagwell,*
    512 U.S. 821 (1994)..................................................................7, 8

6
7

*Lockary v. Kayfetz,*
    974 F2d 1166 (9th Cir. 1992)..................................................................6

8
9

*Mendez v. County of San Bernardino,*
    540 F3d 1109 (9th Cir. 2008)..................................................................6

10
11

*Ohio v. Reiner,*
    532 U.S. 17 (2001)..................................................................8

12

*Pratt v. California,*
    11 F. App'x 833 (9th Cir. 2001)..................................................................5

13
14

*Primus Automotive Fin'l Services, Inc. v. Batarse*
    (9th Cir. 1997) 115 F3d 644..................................................................6

15
16

*Rachel v. Banana Republic, Inc.,*
    831 F.2d 1503 (9th Cir. 1987)..................................................................4

17
18

*Roadway Express, Inc. v. Piper,*
    447 U.S. 752 (1980)..................................................................6, 7

19

*SEC v. Ross,*
    504 F3d 1130 (9th Cir. 2007)..................................................................2

20
21

*Shepherd v. American Broadcasting Cos., Inc.*
    62 F3d 1469 (DC Cir. 1995)..................................................................6

22
23

*Slochower v. Board of Higher Education,*
    350 U.S. 551 (1956)..................................................................8

24
25

*Winterrowd v. American Gen. Annuity Ins. Co.,*
    556 F3d 815 (9th Cir. 2009)..................................................................13

26

**Statutes**

17 U.S.C.
    § 204(a) ..................................................................11

27
28

- iii -

# TABLE OF AUTHORITIES
(continued)

**Page**

18 U.S.C.
 § 401 ................................................................................................7

28 U.S.C.
 § 1927 .........................................................................................4, 5, 6

**Other Authorities**

1993 Committee Notes on Amendments to Rule 11 ................................4

**Rules**

Federal Rules of Civil Procedure
 Rule 11 ...........................................................................................4, 5

Federal Rules of Civil Procedure
 Rule 11(b) ...........................................................................................4

Federal Rules of Civil Procedure
 Rule 11(b)(3) .......................................................................................9

Federal Rules of Civil Procedure
 Rule 11(c)(1) .......................................................................................4

Federal Rules of Civil Procedure
 Rule 11(c)(3) .......................................................................................4

Federal Rules of Civil Procedure
 Rule 11(c)(5)(B) ..................................................................................5

Local Rules for the Central District of California
 Local Rule 7.1-1 ................................................................................11

Local Rules for the Central District of California
 Local Rule 83-1 ...................................................................................7

Local Rules for the Central District of California
 Local Rule 83-2 ...................................................................................7

Local Rules for the Central District of California
 Local Rule 83-2.6 ................................................................................7

Local Rules for the Central District of California
 Local Rule 83-3 ..............................................................................7, 10

RESPONSE TO ORDER TO SHOW CAUSE
WHY SANCTIONS SHOULD NOT BE LEVIED

Case No.: CV-12-8333- ODW(JCx)

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

Local Rules for the Central District of California

4

    Local Rule 83-3.1.2..................................................................................................7

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RESPONSE TO ORDER TO SHOW CAUSE
WHY SANCTIONS SHOULD NOT BE LEVIED

Case No.: CV-12-8333- ODW(JCx)

# I.     **INTRODUCTION**

This Court has no jurisdiction, limited authority, and lacks sufficient evidence to sanction John Steele ("Steele") pursuant to the Court's Orders to Show Cause ("OSC") issued on March 14, 2013 (Dkt 86) and February 7, 2013 (Dkt 48).  The February 7, 2013 OSC was directed exclusively at Brett L. Gibbs ("Gibbs") as counsel of record to Plaintiffs AF Holdings LLC and Ingenuity 13 LLC, based on his alleged conduct in five related cases:  AF Holdings LLC v. Doe, No. 2:12-cv-6636-ODW(JCx) (C.D. Cal. filed Aug. 1, 2012); AF Holdings LLC v. Doe, No. 2:12-cv-6669-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); Ingenuity 13 LLC v. Doe, No. 2:12-cv-6662-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); Ingenuity 13 LLC v. Doe, No. 2:12-cv-6668-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); and Ingenuity 13 LLC v. Doe, No. 2:12-cv-8333-ODW(JCx) (C.D. Cal. filed Sept. 27, 2012)(hereinafter "the subject cases"). See Dkt 57, at 1:15-2:3.

The March 14th OSC amended the prior OSC to include the threat of sanctions against numerous other individuals and entities, including Plaintiffs AF Holdings LLC ("AF Holdings"); Ingenuity 13 LLC ("Ingenuity 13"); Prenda Law ("Prenda"), who employed Gibbs in an 'Of Counsel' role; Prenda's principal, attorney Paul Duffy ("Duffy"); Angela Van Den Hemel, a Prenda Law paralegal; Steele and Paul Hansmeier ("Hansmeier"), attorneys who were also 'Of Counsel' to Prenda; Steele Hansmeier PLLC ("Steele Hansmeier"), Prenda's predecessor; Peter Hansmeier, a technical consultant to Prenda and 6881 Forensics, LLC, his employer; Livewire Holdings LLC ("Livewire"), a purported parent company of Prenda; Mark Lutz ("Lutz") the CEO of AF Holdings and Ingenuity 13; and Alan Cooper ("Cooper"), a purported corporate representative of AF Holdings.

At the April 2, 2013 OSC hearing, the Court invited Steele to testify in response to the March 14th OSC, or not.  Dkt 103, at 6:20-21. When Steele elected for the latter, relying on his Fifth Amendment privilege against compelled testimony, the Court indicated it would draw reasonable inferences against him and ended the hearing. Dkt 103, at 7:3-9:7.  However, the reasonable inferences the Court may draw against Steele are limited, based on the lack of evidence against Steele before this Court.  Moreover, because of the criminal nature of these proceedings, where the Court has raised and clearly made up its mind against Steele on questions of fraud and has threatened incarceration, Steele's invocation of the Fifth Amendment may not be used to formulate presumptions against him.

- 1 -

1    As further discussed below, the lack of evidence of Steele's involvement in the subject cases

2  leaves the Court lacking jurisdiction over Steele, and applicable law and the procedural posture of

3  those cases further dictates the Court's statutory and inherent authority to issue sanctions against Steele

4  is severely limited.

5  **II.    STEELE RENEWS HIS OBJECTION TO JURISDICTION**

6    In federal court, challenging jurisdiction does not constitute an appearance and is not consent to

7  personal jurisdiction.  "[W]here a party has filed a timely and unambiguous objection to the court's

8  jurisdiction, . . . the party has not consented to jurisdiction . . . even if the party has preserved its own

9  options by simultaneously asserting whatever claims or defenses it has …" *SEC v. Ross*, 504 F3d 1130,

10  1149 (9th Cir. 2007) citing *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1330 n. 1 (9th Cir. 1984).

11  Steele's former counsel filed an Ex Parte Application challenging personal jurisdiction immediately

12  after Steele was first made aware of the Court's March 5 Order requiring his appearance at the March

13  11, 2013 OSC hearing, thereby preserving Steele's jurisdictional objection for appeal throughout the

14  proceedings that followed.

15    In objecting to this Court's jurisdiction, Steele declared under oath that he did not live in

16  California or perform legal services in California. Dkt 83 at ¶3.  Regardless, on March 14, this Court

17  denied Steele's Ex Parte Application, finding that: "Based on the papers filed and the evidence

18  presented during the March 11, 2013, hearing, the Court concludes there is at least specific jurisdiction

19  over [Steele] because of [his] pecuniary interest and active, albeit clandestine participation in these

20  cases."[1]  See Dkt 86, at 1:18-21.  However, no evidence was presented at the March 11 hearing or

21  beforehand that can support a conclusion that Steele actively (or clandestinely) participated in the

22  subject cases, nor that Steele has or had a pecuniary interest in any of these cases.

23    In determining whether jurisdiction exists, this Court should not rely on the irrelevant evidence

24  presented by Morgan Pietz ("Pietz") regarding Steele's alleged participation in two matters from the

25  Northern District which predated the filing of all the subject cases by nearly a year or more, and

26  predated the existence of Prenda Law. See *e.g.* Dkt 108-5, at 66:6-68:16 (admitting, over Gibbs'

27
28
_____

[1] The lack of evidence before this Court relating to Steele's alleged pecuniary interest is addressed more fully in Section IV, below.

- 2 -

1   counsel's objection, declarations regarding Steele's alleged involvement in two Northern District

2   cases).   Such minimal contact with California cannot constitute the type of "continuous and

3   systematic" contacts that render a defendant essentially "at home in the forum State" and thereby

4   subject to general jurisdiction here.   *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct.

5   2846, 2851 (2011).   Nor do these alleged contacts create specific jurisdiction. See *Id.*, at 2855

6   ("minimum contacts" exist when the claim arises out of defendant's forum-related activities and the

7   defendant purposefully availed him or herself of the privilege of conducting activities locally); see also

8   *Douglas Furn. Co. of Calif., Inc. v. Wood Dimensions, Inc.*, 963 F.Supp. 899, 902 (CD Cal. 1997)

9   (finding the mere act of sending letters threatening legal action, without more, did not constitute

10   "purposeful availment").

11        Similarly, Prenda attorney Brett L. Gibbs' testimony fails to support a finding of jurisdiction

12   over Steele, as his testimony lacks specificity regarding Steele's involvement in the subject cases or

13   any California cases, and is otherwise inconsistent or contradicted by others.[2]   For example, although

14   Gibbs claimed he was supervised by Steele and Hansmeier at Prenda Law, when pressed for specifics

15   about the degree of supervision he received, Gibbs only offered that Steele and Hansmeier gave him

16   authority to file certain cases here. See Dkt 108-5, at 77:8-24. Gibbs' further testimony has revealed he

17   had significant autonomy in handling the cases.  See  Dkt 108-5, at 77:25-78:4 (claiming Steele and

18   Hansmeier "gave me certain parameters [pursuant to] which I could settle the case myself."); see also

19   Dkt 108-5, at 79:1-5 (regarding the decision to dismiss cases in this Court Gibbs noted: "As counsel of

20   record here, I just kind of broke down like a cost benefit analysis of those cases. And they said,

21   basically, go ahead and dismiss them."); see also Dkt 58, at ¶5 (claiming Steele and Hansmeier

22   provided him with "guidelines").

23        Faced with this weak evidence, even Pietz was left grasping at straws when arguing for this

24   Court's jurisdiction over Steele. See Dkt 52 at 19:8-10 (claiming Steele remained "heavily involved"

25   in Prenda by referencing  Steele's LinkedIn profile, which makes no mention of Prenda); see also *Id.*

26

27   [2] See Dkt 108-5 at 94:3-9  (wherein Gibbs' opposing counsel in another matter Jason Sweet tells the
Court he had a conversation with Gibbs in October 2012 wherein Gibbs claimed he was "national

28   counsel for AF Holdings and that any settlement negotiations were to be made through him.")

- 3 -

1   (mischaracterizing a Forbes article as linking Prenda to Steele, when the article actually references

2   only Steele Hansmeier as "his firm," and describes Prenda Law as "another firm that pursues these

3   types of case [sic].")

4   **III.     THIS COURT'S AUTHORITY TO SANCTION STEELE IS LIMITED**

5          This Court has both statutory and inherent authority to issue sanctions.  Statutorily, the Court

6   may impose sanctions under FRCP Rule 11 and 28 U.S.C. §1927, as well as under this Court's Local

7   Rules, which are generally coextensive with the Court's inherent powers to sanction conduct before it.

8   However, under each of these sources of power, the Court's authority is limited, as discussed below.

9          **A.     Limits On The Court's Authority To Sanction Steele Under Rule 11**

10          Rule 11 imposes an affirmative duty on a party or counsel to investigate the law and facts

11   before filing. *Rachel v. Banana Republic, Inc.,* 831 F.2d 1503, 1508 (9th Cir. 1987).  Specifically, Rule

12   11(b) mandates that any pleading submitted to the Court is deemed certified by the filing attorney that

13   after a reasonable inquiry, the pleading (1) is not being presented for an improper purpose, such as to

14   harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses

15   and other legal contentions are warranted by existing law; (3) the factual contentions have evidentiary

16   support.  Rule 11(c)(1) and (3) allows the Court to issue an order to show cause regarding perceived

17   violations of Rule 11(b), and to impose an appropriate sanction on any attorney, law firm, or party that

18   the Court finds violated the rule or is responsible for the violation, following notice and a reasonable

19   opportunity to respond.

20          Although the 1993 Committee Notes on Amendments to Rule 11 suggest that the court may

21   consider ordering sanctions against non-filing persons, such as other attorneys in the firm, co-counsel,

22   or a party personally, sanctions against non-filing persons should be reserved for cases where

23   "substantial restrictions" are imposed "on the discretion of individual [filing] attorneys," and, "the

24   court must, to the extent possible, limit the scope of the sanction proceedings to the record." *See*

25   Comm. Notes on Am. to Fed. R. Civ. P. 11 (1993).  As further discussed in Sections IV herein,

26   whatever minimal evidence may be cited to support a conclusion that Steele imposed any restrictions

27   whatsoever on Gibbs is undermined by Gibbs own testimony, and otherwise does not satisfy the

28   'substantial restriction' standard.

- 4 -

In addition, although the Court retains jurisdiction to award sanctions even after voluntary dismissal of actions, monetary sanctions under Rule 11 may not be imposed sua sponte by the court following dismissal, unless the Court's OSC Re: Rule 11 Sanctions was issued prior to dismissal. FRCP 11(c)(5)(B).  Here, the Court's initial OSC Re: Rule 11 Sanctions was issued on February 7, 2013, after all five of the actions referred to in the OSC were already voluntarily dismissed.  Under these circumstances, monetary sanctions under Rule 11 cannot be issued against Steele or anyone else referenced in the Court's OSCs.

**B.    Limits On The Court's Authority To Sanction Steele Under 28 U.S.C. § 1927**

Sanctions under 28 USC §1927 are limited to attorney misconduct for "multiplying the proceedings in any case unreasonably and vexatiously."  By its own terms, §1927 only applies to unnecessary filings and tactics once a lawsuit has begun; §1927 cannot be applied to sanction an attorney for filing a Complaint. *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996). Moreover, sanctions under 28 USC §1927 "must be supported by a finding of subjective bad faith." *Id.*, at 436. "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Id.*, quoting *Estate of Blas v. Winkler,* 792 F.2d 858, 860 (9th Cir.1986)).  A filing is frivolous if it "is *both* baseless *and* made without a reasonable and competent inquiry." *In re Keegan Mgmt. Co., Sec. Litig.*, supra, at 434.  No evidence before this Court suggests any post-Complaint filings were made with the requisite level of subjective bad faith by anyone, much less with Steele's input.

§1927 sanctions are also only applicable to direct violations by counsel of record, and aren't imposed for vicarious liability. *Pratt v. California*, 11 F. App'x 833, 836 (9th Cir. 2001) (sanctions awarded under §1927 against co-counsel because they were also counsel of record for plaintiff); see also *FM Industries, Inc. v. Citicorp Credit Services, Inc.*, 614 F3d 335, 340–341 (7th Cir. 2010).  Thus, "Section 1927 cannot reach conduct of a party who is not involved in an action before the sanctioning court at the time of the conduct." *GRiD Systems Corp. v. John Fluke Mfg. Co., Inc.*, 41 F3d 1318 (9th Cir. 1994).  Here, Steele was not counsel of record, nor does the evidence show that he was involved in any actions before the Court which multiplied the proceedings unreasonably and vexatiously.  Thus,

- 5 -

1  the Court should not sanction Steele under §1927.

2  **C.     Limits On The Court's Authority To Sanction Steele Under Its Inherent Powers**

3
4      As the Supreme Court has emphasized: "because inherent powers are shielded from direct
   democratic controls, they must be exercised with restraint and discretion." *Roadway Express, Inc. v.*
5  *Piper*, 447 US at 764, 100; *In re Peters*, 642 F3d 381, 384 (2nd Cir. 2011)("when court is accuser, fact
6
   finder and sentencing judge all in one, restraint and discretion required").  Thus, when the conduct in
7  question is addressed by sanctioning powers such as Rule 11, the court ordinarily may not rely on its
8  inherent powers.  *Chambers v. NASCO*, 501 U.S. 32, 51-52 (1991) (only if the court determines other
9  rules are not "up to the task," may the court rely on its inherent sanctions power).

10     As with sanctions under 28 USC §1927, in order to impose sanctions under its inherent powers,
11 the Court must make a specific finding that the attorney acted in "bad faith." *Primus Automotive Fin'l*
12 *Services, Inc. v. Batarse* (9th Cir. 1997) 115 F3d 644, 650.  The "bad faith" requirement is supposed to
13 present "a high threshold." *Mendez v. County of San Bernardino*, 540 F3d 1109, 1131–1132 (9th Cir.
14 2008).  Moreover, a "clear and convincing" evidentiary standard should apply to such findings.  See
15 *Shepherd v. American Broadcasting Cos., Inc.* 62 F3d 1469, 1477 (DC Cir. 1995).

16     In addition, the Court's inherent power to sanction is generally not extended to litigation
17 conduct occurring in other venues. See *Children's Ctr. for Developmental Enrichment v. Machle*, (6th
18 Cir. 2010) 612 F3d 518, 524 ("Such a conclusion would infringe on the power of other judges to
19 manage their own affairs.").  Similarly, inherent power sanctions are generally based on the sanctioned
20 party's own individual conduct, without regard to misconduct by other parties or attorneys (see *Primus*
21 *Automotive Fin'l Services, Inc. v. Batarse*, 115 F3d 644, 650 (9th Cir. 1997)), and sanctions may only
22 be imposed on non-parties or counsel of record if that person or entity *controls* the litigation and is
23 responsible for the abusive conduct. *Lockary v. Kayfetz*, 974 F2d 1166, 1169 (9th Cir. 1992).

24     As further discussed in Section IV below, whatever evidence can be cited to support a
25 conclusion that Steele controlled the litigation of the subject cases or was responsible for alleged
26 abusive conduct in those case is disputed by Gibbs own testimony, and otherwise does not constitute
27 'clear and convincing' evidence to establish bad faith on Steele's part.  Accordingly, this Court should
28

- 6 -

not sanction Steele under its inherent power.

### 1.    Limits On The Court's Authority To Sanction Steele Under The Local Rules

Because the Court's authority to issue sanctions under the Local Rules stems from the Court's inherent authority, all of the limitations addressed above also apply to sanctions under the Local Rules. Local Rule 83-3 is silent regarding who may be a proper subject of sanctions under the Rule. However, Local Rules 83-1 and Rule 83-2 form the foundation for Rule 83-3 sanctions.   These underlying rules include the disclaimer that any attorney who appears for any purpose submits to the discipline of the Central District in all respects pertaining to the conduct of the litigation. See Rule 83-2.6.  In addition, Rule 83-3.1.2 provides that the standards for professional conduct from the California State Bar Act, the California Rules of Professional Conduct, and "the decisions of any court applicable thereto," provide the basis for disciplinary action.  In short, the Local Rules govern only the conduct of members of the USDC for the Central District of California, which Steele is not.  Because discipline imposed under Local Rule 83-3 must be directed to an attorney admitted to practice before the Central District, sanctions against Steele under the Local Rules are not appropriate.

### 2.    Limits On The Court's Authority To Sanction Steele For Contempt

This Court is apparently contemplating issuing sanctions pursuant to its contempt power. <u>See</u> 2/7/13 OSC at 1:22, 8:5, 11:3-4; <u>see also</u> 3/14/13 OSC at 1:25-28.  This power is also limited.  The power to punish contempt and to coerce compliance with issued orders is based on statutes and the Court's inherent authority. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994); <u>see also</u> 18 U.S.C. §401. However, this power must be exercised with restraint. <u>See</u> *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–65 (1980).   Unconditional sanctions (i.e. where the contemnor has no opportunity to reduce or avoid the fine through compliance) are considered "criminal" sanctions, even if only comprised of a small fine. <u>See</u> *In re Lehtinen*, 564 F3d 1052, 1059 (9th Cir. 2009).  Because of their punitive (rather than coercive) character, criminal sanctions "may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." *Bagwell*, <u>supra</u>, 512 US at 826.  Except in limited circumstances, i.e. those involving "direct contempt" committed in the Court's presence, or the imposition of "petty" fines, due

- 7 -

process for criminal contempt requires the full range of procedures applicable to criminal trials, such as an independent prosecutor, cross-examination, a jury trial, proof beyond reasonable doubt, etc. *Id.*, at 838–839.[3]   Because the Court has not afforded these procedural protections to Steele and civil contempt sanctions do not appear to be at issue, contempt sanctions against Steele are not appropriate.

### IV.   THE COURT MAY NOT SANCTION STEELE OR DRAW ADVERSE INFERENCES AGAINST HIM BASED ON HIS INVOCATION OF HIS 5TH AMENDMENT PRIVILEGE AGAINST COMPELLED TESTIMONY

When Steele elected to exercise his Fifth Amendment right against compelled testimony at the April 2, 2013 OSC hearing, the Court indicated it would draw reasonable inferences and ended the hearing. Dkt 103, at 7:3-9:7.   As discussed below, the reasonable inferences the Court may draw against Steele are limited based on insufficient evidence regarding Steele before this Court.  Moreover, because of the criminal nature of these proceedings, wherein the Court has made allegations of fraud, tax evasion, and threatened potential incarceration[4], Steele's invocation of the Fifth Amendment may not be used to formulate presumptions against him. The Supreme Court has made clear that an inference of guilt may not be drawn from a defendant's failure to testify about facts relevant to his case. *Griffin v. California*, 380 U.S. 609 (1965).  Rather, "[t]he privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances." *Slochower v. Board of Higher Education*, 350 U.S. 551, 557-558 (1956); see also *Ohio v. Reiner,* 532 U.S. 17 (2001).  Accordingly, Steele is permitted, as he did, to invoke his 5th Amendment rights against compelled testimony, while maintaining a claim of innocence regarding all charges against him.

Further, because the court initiated these sanction proceedings, they are "akin to contempt" proceedings, and Steele's conduct must be judged in that light. That is, the "reasonableness" of Steele's conduct is not at issue, only whether it was contemptuous. *See Gonzales v. Texaco, Inc.*, 344 Fed. Appx. 304, 308-09 (9th Cir. 2009).  Aside from the lack of evidence against Steele to support a finding of contempt, as discussed above, because this Court has failed to provide Steele with the procedural protections necessary to impose criminal contempt sanctions, such sanctions are

---

[3] Notably, the 5th amendment privilege against self-incrimination can be invoked when one is facing "criminal" contempt sanctions. *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 444 (1911).

[4] See, e.g., Dkt 48 at pp.9-11; Dkt. 86 at pp. 1-3; and Dkt 108-5 at 15:9-11 and 15:17-18.

1  unavailable against Steele.

2  **V.     NO SANCTIONS SHOULD ISSUE AGAINST STEELE BASED ON ANY
   OF THE OSC ISSUES IDENTIFIED BY THIS COURT**

3

4  **A.     Steele Cannot Be Sanctioned For The Alleged Lack Of Reasonable Investigation Of
   Copyright Infringement Prior To Filing Complaints In The Subject Cases**

5          Although the Court is contemplating issuing sanctions under Rule 11(b)(3) based on the alleged

6  filing of the subject Complaints without a factual foundation (Dkt 48, at 4:12-5:10), it is clear the

7  Court's position is based on a misapplication of applicable law to the subject BitTorrent technology.

8  <u>See</u> <u>Id.</u>, (criticizing use of an "IP snapshot," erroneously concluding partial downloads are unusable,

9  and requiring pre-filing evidence showing that Defendants downloaded the entire copyrighted work).

10 These misunderstandings are addressed in Prenda Law's Response to the OSC, so those arguments will

11 not be repeated by Steele and are hereby joined.  <u>See</u> Dkt 108, at 14:15-21, 24-25, 15:1-21:22; 108-1.

12         More importantly, the evidence and argument submitted does not reference Steele's

13 involvement in the pre-filing investigation of the subject cases; only Gibbs' and Peter Hansmeier's

14 involvement is referenced.  <u>See</u>  Dkt 49, at 12:8-14:2, 16:21-18:2, 20:18-21:27, and Dkt 58, ¶¶7-8.

15 Accordingly, sanctions cannot be imposed upon Steele in relation to the filing of Complaints in the

16 subject cases.

17 **B.     Steele Cannot Be Sanctioned For Any Alleged Lack Of Reasonable Investigation Of
   Alleged Infringers' Identities Prior To Naming Them In The Subject Cases**

18         Similarly, the Court is contemplating issuing sanctions under Rule 11(b)(3) based on the

19 alleged lack of reasonable investigation of actual infringers' identities in the subject cases prior to

20 naming them as Doe Defendants.  Dkt 48, at 2:18-4:11; 5:11-7:26.  Again, Prenda Law/Duffy/Van Den

21 Hemel's Response to the OSC addresses numerous problems with the Court's conclusions and

22 suggestions[5] regarding what constitutes a reasonable investigation of a BitTorrent infringer's identity,

23

24 _____

25 [5]  The Court's suggestion that "old-fashioned stakeout may be in order" overlooks the crucially
   important fact that the subject infringement would have necessarily happened many months prior to the

26 stakeout (i.e. prior to the filing of a Complaint, the initiation of discovery, and obtaining the IP address
   holder's home address from the ISP).  It is therefore puzzling how the Court could conclude that

27 persons within the subscriber's home many months later may be correlated with tracking data from
   many months before to assist with a "determination of who would have been in the subscriber's home

28 when the download was initiated."

1   and Steele joins those arguments by reference. See Dkt 108, at 14:25-27, 23:10-27:25; 108-1.

2   Without exception, *all* of the argument and evidence submitted on this issue refers *exclusively*

3   to Gibbs' own personal investigation of the infringers' identity. See Dkt 49 18:3-20:15, 22:1-24:7; Dkt

4   50, ¶¶26-39, 42; Dkt (3/11) 97:23-101:25. Accordingly, sanctions cannot be imposed upon Steele in

5   relation to naming the alleged infringers in the subject cases.

6   **C.     Steele Cannot Be Sanctioned For Any Alleged Failure To Comply With Discovery Orders**

7   The Court's initial OSC invokes the Court's contempt power and Local Rule 83-3 when

8   discussing Gibbs' alleged violation of two orders requiring Plaintiffs to cease discovery efforts relating

9   to previously issued subpoenas to Verizon Online LLC, an ISP.  Dkt 48, at 8:1-28.  As noted above,

10  the Court may not sanction Steele for contempt because Steele was not provided the procedural

11  safeguards required for imposing contempt sanctions, and sanctions are unavailable against Steele

12  under the Local Rules because he is not a member of the Central District of California bar.

13  Furthermore, in response to the Court's OSC, Gibbs testified that he "caused the Order to be

14  served on the registered agents for service of process of Verizon Online LLC to ensure that Verizon

15  Online LLC had notice not to respond to the subpoenas that had already been served." Dkt 50, at ¶21.

16  At the March 11 hearing, Gibbs' attorney added that "Gibbs had a conversation with Mr. Hansmeier

17  and told him that he thought that this order should be served on the ISP's.  Mr. Hansmeier advised Mr.

18  Gibbs that would be done.  Mr. Hansmeier later advised Mr. Gibbs that his request had been taken care

19  of." Dkt 108-5, at 9:23-10:2.  Gibbs then testified consistently with his attorney's representations.  Dkt

20  108-5, at 102:6-12.  These representations made to this Court do not involve or implicate Steele at all,

21  nor does any other evidence before this Court suggest Steele had anything to do with any alleged

22  disobedience of this Court's discovery orders.  Accordingly, the Court may not impose sanctions upon

23  Steele based on Gibbs' alleged failure to comply with the Court's discovery orders.

24  **D.     Steele Should Not Be Sanctioned For Any Alleged "Fraud Upon The Court"**

25  The Court's February 7, 2013 OSC raised three concerns regarding a suspected "fraud on the

26  Court" involving Alan Cooper's renouncement of any involvement with AF Holdings and accusation

27  that his purported signature on assignment agreements attached to Complaints in the subject cases was

28

- 10 -

not genuine[6].  The Court stated: "First, with an invalid assignment, Plaintiff has no standing in these cases."  Dkt 48, at 9:8.  Apparently re-articulating the same concern, the Court added:  "Second, by bringing these cases, Plaintiff's conduct can be considered vexatious, as these cases were filed for a facially improper purpose." Dkt 48, at 9:9-10.  As both Gibbs and Prenda/Duffy/ Van Den Hemel noted in their Responses To The OSC, the Court is mistaken about the law in this regard; the signature of the assignee is irrelevant to the validity of the assignment, so long as the assignor signs.  See Dkt 49, at 25:9-26:19; Dkt 108, at 11:24-12:9.; see also 17 U.S.C. 204(a).  Lastly, the Court stated: "the Court will not idle while Plaintiff defrauds this institution." Dkt 48, at 9:10-11.  However, even if the Court were to discount the evidence submitted impugning Cooper's credibility and blame Steele for this "fraud," it hardly rises to the level of fraud upon the court recognized by the Ninth Circuit, i.e., "a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *In re Intermagnetics Am., Inc.*, 926 F.2d 912, 916 (9th Cir. 1991).

Regarding any other alleged fraud the Court may consider, as Section III above makes clear, except in rare circumstances not present here, this Court is not empowered to sanction Steele or anyone else based on conduct occurring entirely outside of the subject cases and the Central District.  Based on its prior statements, the Court may have erroneously felt otherwise before.  Dkt 108-5, at 29:14-22 (over Gibbs' counsel's objection that the Court's inquiry about non-Central District cases was "beyond the scope of the OSC," and "not what this OSC is about," the Court responded:  "Well, it has become about it.  It has become about fraudulent filings in federal court" generally).

**E.      Steele Cannot Be Sanctioned For Any Alleged Failure To Notify The Court Of All Parties That Have A Financial Interest In The Outcome Of Litigation**

Apparently, the Court is considering sanctioning Steele and others based on an alleged violation of Local Rule 7.1-1 which is designed "[t]o enable the Court to evaluate possible disqualification or recusal," and requires litigants to "list all persons, associations of persons, firms,

---

[6] Regarding this issue, Steele joins the argument of Prenda Law/Duffy/Van Den Hemel at Dkt 108, pgs. 10:27-11:23.

1   partnerships, and corporations (including parent corporations, clearly identified as such) that may have

2   a pecuniary interest in the outcome of the case."

3       First, as noted in Section III. 3.a. above, this Court may not sanction Steele for violating the

4   Central District Local Rules.  Second, sanctioning anyone for a technical violation of a Local Rule

5   intended solely to allow the court to determine whether recusal is warranted would be improper, as

6   Judge Wright's potential recusal has never been at issue in the subject cases.   Indeed, because Judge

7   Wright believes the attorneys purportedly involved in the subject cases may be the persons omitted

8   from the Certification Of Interested Parties, he would have already recused himself  had his

9   relationship with those attorneys so required.  See Dkt 108-5, at 17:7-14.  Third, and most importantly,

10  no evidence has been presented to this Court suggesting Steele had any involvement with the

11  preparation of the Certification of Interested Parties.  See Dkt 108-5, at 79:6-17 (when asked whether

12  he had a discussion with Steele regarding the Certificate Of Interested Parties, Gibbs eventually

13  responds "I don't know").  Accordingly, Steele is not subject to sanctions on this issue.

14  **F.      Steele Cannot Be Sanctioned For Allegedly Misrepresenting The Nature And**
    **Relationship Of The Individuals And Entities Named in the OSCs**
15

16      Although the Court has not specified the sanctionable misrepresentations it is referring to, the

17  Court has apparently concluded such misrepresentations have occurred. See Dkt 86, at 1:28- 2:2 ("it

18  appears that these persons, and their related entities, may have defrauded the Court through their acts

19  and representations in these cases.");  Dkt 108-5, at 58:21-25 (wherein the Court implies officers of the

20  court have  knowingly  made  misrepresentations  to  the  court).   Disturbingly,  the  Court's  apparent

21  conclusions about the relationships between the persons and entities named in the March 14, 2013

22  OSC wholly ignores evidence to the contrary.  Compare, e.g., Dkt. 69-1, pp. 21:18-2, 38:22-39:15,

23  40:8-12 (regarding who owns AF Holdings) with Dkt 108-5, at 114:5-8 (I do have the picture, and I

24  know who the client is. We have talked about the client, and the client has been running everything.

25  Yeah, I know who the client is"); see also Dkt 108-5at 19:15-18 (suggesting Prenda law is "controlled

26  by Mr. Steele.")

27      However, Steele cannot be sanctioned for any of these alleged misrepresentations made to this

28  Court regarding the relationships among the parties and entities named in the Court's March 14 OSC

- 12 -

because Steele has taken no actions nor made any representations to this Court of any kind, nor is there any evidence before this Court that he acted or was otherwise involved in anyone else's alleged misrepresentations to this Court.

**G.      Steele Cannot Be Sanctioned For Any Alleged Failure To File A Notice Of Related Cases**

Because this Court did not identify the alleged failure to file a Notice of Related Cases as a potential basis for sanctions in any of its OSCs, sanctions against anyone on this issue would be improper. Regardless, Gibbs testified that he believed the Northern District of California and "almost every court … told us in no uncertain terms that these [types of] cases weren't related. Therefore, that informed my belief in terms of whether we wanted to relate [the subject cases] or not." Dkt 108-5, at 81: 2; see also 108-8 (Northern District order finding 25 of Plaintiffs' cases unrelated). These contrary judicial decisions indicates reasonable minds can differ on this subject, and that Gibbs cannot be sanctioned for his good faith belief a Notice of Related Cases was not warranted. Gibbs also testified he didn't know whether Steele was involved in any discussion regarding whether to file a Notice of Related Cases or not. See Dkt 108-5, at 84:6-12. Because there is no evidence before this Court suggesting Steele was involved with this issue, he cannot be sanctioned on this basis.

**H.      Steele Cannot Be Sanctioned For Any Alleged Failure To Make a *Pro Hac Vice* Appearance Before the Court**

An out-of-state attorney must apply for *pro hac vice* admission in a case if that attorney appears in court, signs pleadings, or is the exclusive contact with the client or opposing counsel in a case. *Winterrowd v. American Gen. Annuity Ins. Co.*, 556 F3d 815, 825 (9th Cir. 2009). The evidence before the Court does not demonstrate Steele appeared in any of the subject cases, signed any pleadings in any of the subject cases, or was the exclusive contact with the client or opposing counsel in any of the subject cases. Instead, as the Court docket for each of the subject cases demonstrates, Gibbs was counsel of record in each of the subject cases and signed all the pleadings in each of the subject cases on behalf of Prenda, and Gibbs testified that he had contact with both clients. See Dkt 58, at ¶¶7-8; Dkt 108-5, at 78:9-14, 90:2-8 (Gibbs testified that he had contact with Mark Lutz, who Gibbs knew to be CEO of both Ingenuity 13 and AF Holdings). So, even assuming arguendo that Steele

- 13 -

had some degree of involvement in the subject cases, the evidence demonstrates he did not have exclusive contact with the client in those cases, and no evidence suggests Steele had any, let alone exclusive, contact with opposing counsel in any of the subject cases.   Thus, Steele cannot be sanctioned for failing to make a *pro hac vice* appearance before the Court.

I.   **Steele Cannot Be Sanctioned For Any Alleged Failure To Appear At The March 11, 2013 Hearing**

On March 5, 2013, this Court issued an Order that Steele would have to appear before this court on March 11, 2013.  But, as Steele previously argued, this Court lacked jurisdiction to order him to appear because he resided outside California, was not a party to any of the subject cases, had not appeared in any of the subject cases, and was not counsel of record to any party in any of the subject cases.[7]

Moreover, Steele did not receive reasonable notice of the nature of the proceedings he was ordered to appear in on March 11, nor what was expected of him besides his appearance.   In fact, the Order did not even require that the appearance had to be personal rather than telephonic.  Further, Steele received insufficient notice to accommodate cross-country travel or information regarding who would pay for such travel.   In fact, he was not served until late Wednesday, March 6, 2013, less than three business days before the hearing.  Based on these factors, the Court's Order for Steele to appear on Monday, March 11, 2013 at 1:30 P.M. was improper.

Notwithstanding the pending question regarding the Court's jurisdiction over him as a witness, out of respect for the Court and its Order, Steele made himself telephonically available for the approximately three-hour long hearing on the afternoon of March 11, 2013.  Although the Court and the parties were advised of his availability, nobody requested that Steele provide any information. So, that he was available to appear telephonically, rather than personally, had no impact on the proceedings and further appeared on April 2, 2013.

In summary, Steele had justification for not appearing in person on March 11, 2013. Yet, he still specially appeared. His telephonic availability had no impact on the proceedings given that he was

---

[7] Steele hereby joins section IV(B)(6) of the Prenda Law/Duffy/Van Den Hemel and does not restate the arguments contained therein.

- 14 -

never called to testify. As such, it would be both inappropriate and inequitable to issue sanctions against him based on any determination that he failed to comply with the order to appear.

## VI. **CONCLUSION**

Respondent Steele respectfully request that sanctions not be imposed against him based upon the foregoing authority and the evidentiary record before this Court.

Dated: April 10, 2013

MURPHY, PEARSON, BRADLEY & FEENEY

By /s/ Timothy J. Halloran
   Timothy J. Halloran
   Attorneys for
   JOHN STEELE

20567691_2[1].docx

- 15 -