Morgan E. Pietz (SBN 260629)
THE PIETZ LAW FIRM
3770 Highland Avenue, Suite 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:   (310) 424-5557
Facsimile :   (310) 546-5301

Nicholas Ranallo (SBN 275016)
371 Dogwood Way
Boulder Creek, CA 95006
nick@ranallolawoffice.com
Telephone:   (831) 703-4011
Fax:            (831) 533-5073

Attorneys for Putative John Doe in 2:12-cv-08333-ODW-JC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INGENUITY 13, LLC, a Limited Liability Company Organized Under the Laws of the Federation of Saint Kitts and Nevis,<br><br>      Plaintiff,<br><br>  v.<br><br>JOHN DOE,<br><br>      Defendant. | Case Number: 2:12-cv-08333-ODW-JC<br><br>Case Assigned to:<br>District Judge Otis D Wright, II<br><br>Discovery Referred to:<br>Magistrate Judge Jacqueline Chooljian<br><br>Case Consolidated with Case Nos.:<br>2:12-cv-6636; 2:12-cv-6669;<br>2:12-cv-6662; 2:12-cv-6668<br><br>**REPLY TO BRIEFS BY PRENDA LAW, INC., PAUL DUFFY, PAUL HANSEMEIER, AND JOHN STEELE** |

-1-

## MEMORANDUM IN REPLY

The putative John Doe in 2:12-cv-08333, by and through counsel, hereby replies to the Reponses to Order to Show Cause filed by respective special counsel for Paul Duffy, Prenda Law, Inc., and Angela Van Den Hemel (ECF No. 108); for Paul Hansemeier (ECF No. 109); and for John Steele (ECF No. 110).

First, where were these new arguments in February or March?  The Court has now held not one but two evidentiary hearings on sanctions, which John Steele, Paul Hansemeier and Paul Duffy (collectively, "**Prenda Senior Management**") were ordered to attend, but in which they declined to participate.  Just last week (*after* refusing to answer any of the Court's questions), Mr. Steele was quoted in the adult industry press saying he has been aware of these proceedings for two months. Dec'l. of Morgan E. Pietz (April 16, 2013) ("**Pietz Dec'l.**"), <u>Exhibit KK</u>.[1]  Similarly, the declaration of Brent Berry, submitted by counsel for Duffy and Prenda, was executed on February 15, 2013 (*see* ECF No. 108-3, p. 2).  Given the grave import the Court indicated it was attaching to the Alan Cooper issue, why was the Berry declaration withheld for almost two months, and then filed at the eleventh hour?  Further, why did Prenda not call Berry to testify at either evidentiary hearing?  Nobody has asserted he was unavailable.  The answer is that Berry's credibility would have been destroyed on cross-examination, for a variety of reasons, and this is just more gamesmanship.[2]  In addition, PDF metadata shows that "Paul," presumably Hansemeier, has been involved in the preparation of pleadings here since December.

Prenda Senior Management's new arguments are all a day late and a dollar short.  The egregious misconduct of the Prenda attorneys here undermines the very integrity of the judicial system.  Substantial compensatory civil sanctions are entirely appropriate.

---

[1] "'I can say that I never even heard of the case in front of Judge [Otis] Wright until two months ago. . . I am very confident that once the facts are reviewed by Judge Wright, or the 9th U.S. Circuit Court of Appeals if necessary, this latest effort funded by the Electronic Frontier Foundation to stop anti-piracy litigation will fail.'" http://newswire.xbiz.com/view.php?id=161511

[2] Special counsel still has yet to explain what part of Local Rule 5-4.2 mandated the paper filing of the supposed emergency motion seeking relief from the order to appear.  Citing the court's website is no excuse for disregarding procedures governed by *rule*. *See* ECF No. 108 at 31:13-18.

**(a)     Admissible Documentary Evidence Showing that John Steele has an Interest in Prenda Clients, Including AF Holdings, LLC**

In response to a prior investigation by the Florida bar, John Steele, through counsel, in a formal pleading, explained his relationship to Prenda Law, Inc., as follows, "The Prenda law firm is comprised of Attorney Joe Perea and Paralegal Mark Lutz. Mr. Steele is actually a client of Prenda. ***Steele maintains an ownership interest in several of Prenda's larger clients***. His presence at Prenda would be solely in the capacity of a client." Pietz Dec'l., Exhibit LL, p. 12 (emphasis added) (page numbers from footer, match CM/ECF).

In the objections to undersigned's request for leave to file this reply, Prenda Senior Management somewhat incredibly argues *that Mr. Steele's response to the Florida Bar* is a statement made by someone *other than Mr. Steele*. ECF No. 108 at 7–8. If Prenda Senior Management is now saying that facts Mr. Steele represented to the State Bar of Florida, through counsel, in a pleading, as part of formal proceedings, *really are* subject to reasonable dispute, then that position would seem to very seriously call into question Steele's candor and honesty to the Florida bar. In any event, regardless of whether the underlying statement is true, the Court can take judicial notice of the fact *that Steele, through counsel, told the Florida bar* he has an interest in Prenda clients. Moreover, the Court need not take judicial notice of this pleading or hold the 201(e) hearing Prenda Senior Management is now threatening as a delay tactic, as it is also admissible as a non-hearsay admission by a party opponent, given that Mr. Steele has become a party to this proceeding, and that this statement was made by his lawyer, who he both authorized to file the pleading, and who was his agent in connection with that proceeding. *See* F.R.E. 801(d)(2)(C) and (D). Further, the document is also separately admissible and not hearsay insofar as it is not offered to prove the truth of Steele's statement, but rather to prove that, whether its true or not, Steele told the Florida bar he had an interest in Prenda clients.

The Prenda "clients" in which Mr. Steele has an interest also apparently include AF Holdings, LLC. Attorney Jacques Nazaire represents the plaintiff in *AF Holdings, LLC v. Patel*, N.D. Ga. No. 12-cv-262. In connection with that representation, Mr. Nazaire did

**REPLY TO BRIEFS BY PRENDA LAW, INC., PAUL DUFFY, PAUL HANSEMEIER, AND JOHN STEELE**

some meeting and conferring back and forth with a John Doe defense attorney in Georgia named Blair Chintella.  Specifically, after the Alan Cooper revelations came to light, Chintella pressed Nazaire on that issue by email.  Nazaire replied, "I would like to subpoena him [*i.e., Alan Cooper*] and have him state under oath that he has never received a dime from ***John Steele, who has an interest in AF***" Exhibit MM, p. 27 (bold added).

In their objections, Prenda Senior Management appeared to misunderstand (or intentionally ignore) the main thrust of the argument about why this email is admissible evidence.  First, AF Holdings, LLC is a party to this action.  Second, as apparent from the complaint (Pietz Dec'l., Exhibit NN) and the docket report (Pietz Dec'l., Exhibit OO) in *AF Holdings, LLC v. Patel*, N.D. Ga. No. 12-cv-262, as well as from the email itself, it is indisputable that Nazaire *was counsel of record for AF Holdings, LLC* when he made the assertion at issue*.  See* Exhibit NN, Exhibit OO.  Accordingly, several of the sub-parts of F.R.E. 801(d)(2) likely apply.  Nazaire was AF Holdings' attorney, *i.e.*, agent, acting within the scope of that agency relationship because he was writing opposing counsel in a case where he was counsel of record.  *See* F.R.E. 801(d)(2)(D); *see also id.* at (d)(2)(A) and (d)(2)(C).  In sum, the email is admissible to show that AF Holdings, LLC was part owned by John Steele (that Steele "ha[d] an interest in AF").

In short, if there was any doubt about whether the Prenda lawyers had an undisclosed interest in the offshore shell companies that are the plaintiffs in the cases before this Court, these documents settle it, at least with respect to Steele and AF Holdings.

Proof of this point means that Paul Hansemeier almost certainly perjured himself at his February 19, 2013, 30(b)(6) deposition when he failed to disclose Steele's interest in AF Holdings (*e.g.*, ECF No. 69-1 at 127:14–17) and despite Hansemeier's admission that he meet with Steele prior to the deposition to prepare for it (*id.* at 253:18–21). It also means that Local Rule 7.1-1 has been violated here, multiplied times 45 cases.  And despite Prenda Senior Managements' argument that there is nothing wrong with lawyers having an interest in their clients, it is not so clear that this kind of champertous arrangement is legal under various state laws and ethical under various state bar rules.  Admittedly, the modern

**REPLY TO BRIEFS BY PRENDA LAW, INC., PAUL DUFFY, PAUL HANSEMEIER, AND JOHN STEELE**

1    trend has been toward allowing some forms of champerty and maintenance; most notably,

2    the loosening of contingent fee rules and allowance of third party lawsuit financing. *See*

3    Paul Bond, *Making Champerty Work: An Invitation to State Action*, 150 U. Pa. L. Rev.

4    1297 (2002).  However, the arrangement here is quite different, and much more unsettling.

5    Further, maintenance is still on the books in Illinois (720 ILCS 5/32-12), where Prenda was

6    based, and barratry is still a crime in California (Cal. Pen. Code § 158).[3]

7    **(b)    Brent Berry's Declaration Should Be Afforded Little Weight, If Any**

8         This Court gave Prenda and its associated attorneys specific notice on February 7,

9    2013, that they would be in serious trouble if Alan Cooper's allegations were true.  ECF

10   No. 48 at 9.  As noted above, waiting to present Berry's declaration until the eleventh hour,

11   after the parties have been on notice of the issues for months, and after both evidentiary

12   hearings, echoes prior gamesmanship.  The whole document is inadmissible hearsay, full

13   of double hearsay, and the Court would be justified in not considering it at all.

14        Even if the Court does consider it, the Berry declaration should be afforded little

15   weight because credibility problems are apparent on the face of the document itself.  Berry

16   reveals that he is the real estate agent listing the sale of Steele's Minnesota property. ECF

17   No. 108-3, ¶ 16.  Indeed, according to Berry's Remax website, his sale of Steele's property

18   closed on February 28, 2013.  Pietz Dec'l., ¶ 8, <u>Exhibit PP</u>.  Accordingly, Berry's February

19   15, 2013, declaration was made a week before closing the sale of Steele's property, which

20   would have yielded Berry a substantial commission (and, thus, motive).  *Id.* It is also

21   notable that the Berry declaration was signed *the same week* the multiple complaints for

22   defamation were filed against Mr. Cooper, et al. *E.g.*, N.D. Ill. No. 13-cv-1569, ECF No. 1.

23        Moreover, assuming, *arguendo*, that Berry's outrageous (and shameful) character

24   assassination of Mr. Cooper is all true, does that really rebut the allegation that the lawyers

25   here control the shell companies through the use of straw men?  Is the Court to believe that

26   Prenda Senior Management was taking litigation instructions from a relatively

27   unsophisticated "client" they paint as mentally unstable and murderous?  Berry's

28

---

[3] Citing these statutes to rebut Prenda's argument should not be construed as criminal prosecution.

**REPLY TO BRIEFS BY PRENDA LAW, INC., PAUL DUFFY,**
**PAUL HANSEMEIER, AND JOHN STEELE**

allegations, even if true, further support the idea that Cooper was a straw man.

Finally, it is notable that nobody, including Berry and Steele, has actually denied the truth of any of Alan Cooper's sworn testimony at any point in these proceedings.

In short, the Berry declaration is no substitute for live testimony, it should not be credited, and, even if it is all true, it does not solve Prenda's problems.

**(c)     Starting in December, 2012, After the Court Vacated Subpoenas and Allowed the Limited Discovery re: Alan Cooper, "Paul" Started Authoring Pleadings**

A review of document metadata for the pleadings electronically filed in this case shows "Paul" taking over in December of 2012. The pleadings filed early in this case were created by "SH01" and "SH05". However, starting in December of 2012, someone named "Paul" started authoring pleadings, including the motion to sanction undersigned counsel and the motion to disqualify Judge Wright. Schoen Dec'l., ¶¶ 24–28. Based on Gibbs' testimony, this would likely be Paul Hansemeier, not Paul Duffy. *See* ECF No. 58 ¶¶ 4–6.

**(d)     The Investigation of "Snapshot" Infringement**

The assertions made by Prenda Law, Inc.'s purported expert are misleading on the "snapshot" infringement issue. As explained in detail in the accompanying Schoen declaration, while technically possible, it is *highly unlikely* that only a few pieces of a BitTorrent file would be viewable, even with the VLC player. Schoen Dec'l. ¶¶ 5-23. Further, the kind of forensic sleuthing Prenda's expert talks about is beyond the technical skills of most people, and there is no allegation the John Does did anything of the sort.

Prenda Senior Management cites *Feist* in support of their argument that the "snapshot" theory of copyright infringement is legally sufficient. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1999). However, in *Feist*, the Supreme Court stated "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. . . . Certainly, the ***raw data does not satisfy the originality requirement***.") (emphasis added). *Id.* Recently, Judge Gwin cited this very passage from *Feist* in support of the court's conclusion in a BitTorrent case that "this Court is unconvinced that Plaintiff has even

-6-

**REPLY TO BRIEFS BY PRENDA LAW, INC., PAUL DUFFY, PAUL HANSEMEIER, AND JOHN STEELE**

pleaded a *prima facie* case of copyright infringement. [*fn 35; citing id.*] Here, **Plaintiff provided only an IP address snapshot**, and seeks to use that information alone to justify their motion for discovery. . . . the mere indication of participation weakly supports Plaintiff's conclusions." *Night of the Templar, LLC v. John Does 1-25,* N.D. Oh. No. 13-cv-396, ECF No. 5, 4/10/13, p. 6–7 (emphasis added).

In short, plaintiff's alleges, at most, *de minimis* copying and distribution of raw data, which is not sufficient to state a claim for copyright infringement in good faith. *Id.* Under the circumstances of this kind of case, that kind of allegation alone is not objectively reasonable, or, alternatively, is not enough to justify early discovery, or to survive a 12(b)(6) motion. *See also* ECF No. 52, at 26:7–27:7 (noting the "circumstances" of these cases that should be considered as part of the Rule 11 analysis).

**(e)      Civil Sanctions and the Consequences of Fifth Amendment Invocations**

Helpfully, in 2011, Judge Navarro analyzed relevant Ninth Circuit law applicable to a situation where a ***plaintiff in a civil action*** asserts a Fifth Amendment privilege against self-incrimination. *Schemkes v. Presidential Limousine*, 2011 U.S. Dist. LEXIS 16579 (D. Nev. 2011) (No. 09-cv-1100, 2/18/11) *citing Lyons v. Johnson,* 415 F.2d 540, 542 (9th Cir. 1969) (dismissing plaintiff's case where he refused to participate in discovery by invoking Fifth Amendment privilege) *and Campbell v. Gerrans,* 592 F.2d 1054, 1057 (9th Cir. 1979) (distinguishing *Lyons*); *see also Doe v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) (explaining the case-specific inquiry a fact-finder should undertake in deciding whether to drawn an adverse inference from invocation of the Fifth Amendment in civil litigation)*; Eagle Hospital Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1303–07 (11th Cir. 2009) (affirming sanction striking plaintiff's complaint with prejudice and awarding fees to defendant, after plaintiff took Fifth, where district court undertook careful balancing and made specific findings, including a finding that no lesser sanction was adequate); *Swann v. City of Richmond*, 462 F. Supp. 2d 709, 713 (E.D. Va. 2006) (in considering motion by defendant to compel plaintiff's answers to deposition questions over Fifth Amendment objection, Court considered four factors: (1) validity of invocation of the

**REPLY TO BRIEFS BY PRENDA LAW, INC., PAUL DUFFY,
PAUL HANSEMEIER, AND JOHN STEELE**

privilege; (2) "cost" to plaintiff of invoking it; (3) nexus between privileged topics and heart of lawsuit; (4) could defendant obtain the privileged information from other sources).

In what can only be described as a sad indictment of the legal profession, research reveals that there is actually *another* case where *counsel* took the Fifth when being questioned by the Court about civil litigation he was conducting. *In re: Bisys Securities Litigation*, S.D.N.Y. No. 12-cv-3840, ECF No. 182, 4/20/2009 (Rakoff, J.) (Tr. of Hr'g.).[4] In *Bisys,* class action plaintiffs' attorney Cauley, through his own counsel, invoked his Fifth Amendment right and declined to answer any questions regarding "unavailability" of $9 million in class settlement funds he was supposed to be holding in trust. *Id.* at p. 3–5. Judge Rakoff stated, "Since this is a civil matter, although Mr. Cauley has the right to invoke his Fifth Amendment privilege, as he has just done, in effect, across-the board, the Court can and at this stage does draw an adverse inference. . .that Mr. Cauley has either misappropriated or otherwise misallocated these funds." *Id.* at p. 5. Thus, the Court referred the matter to the U.S. Attorney's Office and the Court's grievance committee. *Id.*

Here, Prenda Senior Management argues that this civil action has become a criminal proceeding, and that their blanket[5] invocations of their Fifth Amendment rights against self-incrimination should "not be used to formulate presumptions against them." *See* ECF No. 108, p. 2. They also argue that undersigned counsel "represents no party with an interest in the proceedings" *Id.* at 6. This is all incorrect

Just because a Court indicates that it believes crimes or disbarrable conduct may have occurred does not mean that the case would then metamorphose into a criminal proceeding wherein no adverse inferences may be drawn. *See Bisys, supra,* at 5. Referring Cauley's apparent misconduct to the U.S. Attorney's office did not stop Judge Rakoff from drawing adverse inferences in *Bisys*. *Id.*

Under the circumstances of this civil action, it might be appropriate to sanction Gibbs and Prenda Senior Management *solely* on the basis of the inferences drawn from the

---

[4] Pietz Dec'l., <u>Exhibit QQ</u>.

[5] It is highly doubtful whether Prenda Senior Management's refusal to testify at all was a proper invocation of the Fifth Amendment privilege. The arguments herein assume that it *was* proper.

-8-

latter's silence.  However, the better approach would be to weigh that silence and the appropriate inferences that should be drawn from it together with the *other record evidence*, which is ample.  *See, e.g., Eagle Hospital, supra,* 561 F.3d at 1304–05.

Prenda Senior Management refused to answer *any* questions, and their total silence meant the putative John Doe was denied an opportunity to probe the affirmative defense of unclean hands, as well as all other issues material to a defense on the merits.  Essentially, this case has devolved into a Mexican standoff of finger pointing and hiding behind the Fifth Amendment, with the result being that both the Court and the Does are left wanting for answers on *all* relevant questions.  Total silence prejudiced putative John Doe's defense and supports drawing adverse inferences. *See Swann, supra,* 462 F. Supp. 2d at 713.

Prenda is still in the position of using the Fifth Amendment both as a shield and as sword.  Prenda may have put the sword down temporarily by dismissing the complaint *without* prejudice, but given the time and expense the putative Doe defendant in 12-cv-8333 has already incurred in defending this case and exposing Prenda's bad faith conduct, allowing Prenda to stonewall now, but potentially re-file later hardly seems fair.  *Schemkes, supra*, 2011 U.S. Dist. LEXIS 16579 at *7 (explaining why a plaintiff cannot use the [Fifth Amendment] privilege as both a sword and shield); *citing Lyons, supra,* 415 F.2d at 542.

Accordingly, under the circumstances here, the Court should strike the plaintiff's complaint with prejudice.[6]  *See Eagle Hospital, supra*, 561 F.3d at 1304–05 (affirming district court's sanction striking complaint with prejudice and awarding defendant fees and costs based on detailed findings, including finding that no lesser sanction would suffice).

Prenda's argument that undersigned counsel "represents no party with an interest in the proceedings" is disingenuous.  Prenda, for its part, has built a business on treating ISP subscribers *as if they are defendants*.  ECF No. 40-1 at ¶¶ 21–28.  They certainly pretended the ISP subscriber *was the defendant* when they tried to slip their unopposed early discovery request past this Court, stating that, "The information requested by Plaintiff [*via*

---

[6] In that event, the putative John Doe would arguably become entitled to attorneys' fees as the prevailing party under Section 505 of the Copyright Act even though he was never served; as noted below, there are also alternative reasons why the putative John Doe should be awarded fees.

**REPLY TO BRIEFS BY PRENDA LAW, INC., PAUL DUFFY,
PAUL HANSEMEIER, AND JOHN STEELE**

*the ISP subpoena*] is limited in scope to the basic identifying information of John Doe." ECF No. 8 at 6:24–25. Prenda should be judicially estopped from now complaining that the ISP subscriber is fighting back, given that the ISP subscriber was sucked into this morass by Prenda's prior argument to this Court that the ISP subscriber *is the defendant*.[7]

Moreover, whether the ISP subscriber's status is that of John Doe defendant, a third party, or somewhere in between, whatever his status, given plaintiff's bad faith, an attorneys' fee sanction here is perfectly appropriate. *Mount Hope Church v. Bash Back*, 705 F.3d 418, 425 (9th Cir. 2012) (where plaintiff acts in bad faith with respect to issuance of subpoena, it is appropriate to award sanctions both to subpoena recipient and to affected non-party with interest in subpoenaed information); *Huntair, Inc. v. Climatecraft, Inc.*, 254 F.R.D. 677, 679-80 (N.D. Okla. 2008) (non-party awarded attorneys' fees in connection with challenging overbroad subpoena); *see generally Roadway Express v. Piper*, 447 U.S. 752, 767, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980) (district court may impose attorney's fees against counsel who willfully abuse judicial process).

Where a litigant bears the expense of investigating and uncovering a party's bad faith conduct, a sanction award commensurate with that expense is an appropriate exercise of the Court's inherent authority. *In re Avon Townhomes Venture*, 2012 Bankr. LEXIS 1410 (B.A.P. 9th Cir. 2012) (non-precedential) ("The Appellants contend that the bankruptcy court imposed criminal sanctions because the sanction award 'did not compensate anyone' but rather 'punished the [A]ppellants in an effort to vindicate the trial Court's process.' Appellants' Opening Br. at 5. However, ***the sanction amount was commensurate with the expense to the estate of investigating and uncovering the Appellants' bad faith conduct***. Such compensatory sanctions are within the court's inherent authority. *In re DeVille*, 361 F.3d at 546. Furthermore, compensatory sanctions are not considered criminal penalties: 'Civil penalties must either be compensatory or designed to

---

[7] Prenda—Gibbs specifically—has been pulling a bait and switch on this point for years. *See, e.g., Boy Racer, Inc. v. Does 1-52*, 2011 WL 7402999 (N.D. Cal. 2011) (Court is surprised when, after obtaining discovery by telling Court ISP subscriber *is* the defendant, Gibbs later changes his position and argues that ISP subscriber was merely third party who cannot be served).

**REPLY TO BRIEFS BY PRENDA LAW, INC., PAUL DUFFY,
PAUL HANSEMEIER, AND JOHN STEELE**

1   coerce compliance.' *F.J. Hanshaw*, 244 F.3d at 1137-38; *Lasar v. Ford Motor Co.*, 399

2   F.3d 1101, 1110 (9th Cir. 2005) (sanctions that compensate for any harm caused are civil);

3   see also *In re Dyer*, 322 F.3d at 1197.)").

4        In response to Prenda Senior Management's arguments, on one point, the putative

5   John Doe amends his prior request for relief.  If the Court were to rely on its inherent

6   authority to assess a civil penalty *payable to the Court*, it might be reversed due to the lack

7   of a jury. *See F.J. Hanshaw Enters. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1141 (9th

8   Cir. 2001).  However, a jury and independent prosecutor are not required with respect to

9   awarding a substantial ***compensatory*** civil sanction to the putative John Doe defendant in

10  12-cv-8333, over and above the attorneys' fees and costs already substantiated (see ECF

11  No. 102; plus Pietz Dec'l ¶ 11). Similarly, a compensatory award might be made to each of

12  the other ISP subscribers who received notice from their ISPs about a Prenda subpoena in

13  the 45 related cases before this Court. *See id.* at 1142–44.

14        "Capable of repetition yet evading review" essentially describes Prenda's entire

15  litigation model. By their own admission in the spring of 2012, Prenda had sued over

16  15,000 John Doe defendants, but never served any of them. <u>Exhibit F</u>.  Here, in typical

17  fashion, seeing trouble ahead, they tried to "cut [their] losses and run out of court, using

18  Rule 41 as an emergency exit." *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 390

19  (1990). Compensating an individual who, on his own dime, fights a bully like Prenda—*and*

20  *wins*—incentivizes resolution of future "troll" suits on the merits, rather by extortionate

21  "settlements."  Similarly, compensating ISP subscribers targeted for abuse will help deter

22  future misconduct.  Accordingly, substantial compensatory sanctions are justified.

23        The evidence is clear: Prenda and its lawyers have engaged in pervasive bad faith

24  conduct that has harmed dozens here and tens of thousands nationally, all while Steele

25  bragged publicly to Forbes about making millions while doing so.  Based on the evidence,

26  AF Holdings, LLC, Ingenuity 13, LLC, Prenda Law, Inc., Brett Gibbs, John Steele, Paul

27  Hansemeier, and Paul Duffy should all be sanctioned.  So there is some hope of collection,

28  given the offshore entities and "trust," the sanction should be payable jointly and severally.

-11-

**REPLY TO BRIEFS BY PRENDA LAW, INC., PAUL DUFFY,**
**PAUL HANSEMEIER, AND JOHN STEELE**

Respectfully submitted,

DATED: April 16, 2013            THE PIETZ LAW FIRM


*/s/ Morgan E. Pietz*

Morgan E. Pietz
THE PIETZ LAW FIRM
Attorney for Putative John Doe(s)
Appearing on Caption

**REPLY TO BRIEFS BY PRENDA LAW, INC., PAUL DUFFY,
PAUL HANSEMEIER, AND JOHN STEELE**