Heather L. Rosing, Bar No. 183986
David M. Majchrzak, Bar No. 220860
Philip W. Vineyard, Bar No. 233628
KLINEDINST PC
501 West Broadway, Suite 600
San Diego, California 92101
(619) 239-8131/FAX (619) 238-8707
hrosing@klinedinstlaw.com
dmajchrzak@klinedinstlaw.com
pvineyard@klinedinstlaw.com

Attorneys for Specially Appearing for
PRENDA LAW, INC.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INGENUITY 13 LLC,<br><br>Plaintiff,<br><br>v.<br><br>JOHN DOE,<br><br>Defendant. | Case No.   2:12-cv-8333-ODW(JCx)<br>Related cases: 2:12-cv-05709-ODW-(JCx)<br>2:12-cv-08322-ODW-(JCx)<br><br>**PRENDA LAW, INC.'S NOTICE OF APPEAL**<br><br>Judge:   Hon. Otis D. Wright, II<br>Magistrate Judge:  Hon, Jacqueline Chooljian<br>Complaint Filed:  September 27, 2012<br>Trial Date:   None set |

Please take NOTICE that specially appearing party Prenda Law, Inc. hereby appeals to the United States Court of Appeals for the Ninth Circuit from the following orders in the above-captioned matter:

(1) The District Court's February 7, 2013, Order to Show Cause Re Sanctions for Rule 11 and Local Rule 83-3 Violations;[1]

(2) The District Court's March 5, 2013, Order instructing appearances by multiple out-of-state third parties for the Court's March 11, 2013, hearing on the

---

[1] Attached hereto as Exhibit A (ECF No. 48).

1   February 7, 2013, Order to Show Cause;[2]

2          (3) The District Court's March 14, 2013, Order extending the February 7,

3   2013, Order to Show Cause to, among others, Prenda Law, Inc.[3]

4          (4) The District Court's May 6, 2013, Order Issuing Sanctions.[4]

5

6

7                                         Klinedinst PC

8

9   DATED: May 20. 2013          By: _____
                                      Heather L. Rosing
10                                    David M. Majchrzak
                                      Philip W. Vineyard
11                                    Attorneys Specially Appearing for
                                      PRENDA LAW. INC.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   _____
     [2] Attached hereto as Exhibit B (ECF No. 66).
28   [3] Attached hereto as Exhibit C (ECF No. 86).
     [4] Attached hereto as Exhibit D (ECF No. 130).

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

- 2 -

## REPRESENTATION STATEMENT

Prenda Law, Inc. ("Prenda Law") files this Notice of Appeal through its current counsel, Klinedinst PC ("Klinedinst"), but intends to obtain new counsel, because Klinedinst had a limited scope of representation agreement with Prenda Law.  That agreement obligated Klinedinst to defend Prenda Law solely through the Order to Show Cause proceedings that are the subject of the intended appeal, and Prenda Law has consented to Klinedinst's withdrawal as counsel of record.

Pursuant to the Federal Rules of Appellate Procedure, Rule 12(b) and Ninth Circuit Rule 3-2, Prenda Law submits the following Representation Statement. The following list identifies the relevant parties and third parties affected by the appealed Orders and identifies, when known, the counsel for those parties and the corresponding contact information.  Where Prenda Law has no personal knowledge of, or must rely on information and belief for, the information necessary for the Representation Statement, it will disclose said lack of knowledge or the source of its information and belief.

| Party or Third Party | Counsel of Record / Pro Se |
|---|---|
| Prenda Law, Inc.<br>161 N. Clark St., Suite 3200<br>Chicago, IL 60601<br>800.380.0840 | Klinedinst PC<br>501 West Broadway, Suite 600<br>San Diego, CA 92101<br>619.239.8131 |
| Paul Duffy<br>2 N. La Salle St., 13th Floor<br>Chicago IL 60602<br>312.952.6136 | Pro Se |
| Paul Hansmeier<br>Alpha Law Firm, LLC<br>900 IDS Center<br>80 South 8th Street<br>Minneapolis, MN  55402<br>612.234.5744<br><br>(Taken from Paul Hansmeier's Notice | Pro Se |

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

| | |
|---|---|
| of Appeal) | |
| Ingenuity 13, LLC<br>Springates East<br>Government Road<br>Charlestown, Nevis<br><br>(Taken from Brett Gibbs' Notice of Appeal) | Pro Se |
| AF Holdings, LLC<br>Springates East<br>Government Road<br>Charlestown, Nevis<br><br>(Taken from Brett Gibbs' Notice of Appeal) | Pro Se |
| Putative John Doe<br>Contact Information unknown | Morgan Pietz, Esq.<br>The Pietz Law Firm<br>3770 Highland Ave., Suite 206<br>Manhattan Beach, CA  90266<br>310.424.5557<br><br>Nicholas Ranallo<br>371 Dogwood Way<br>Boulder Creek, CA  95006<br>831.703.4011 |

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

Klinedinst PC

DATED: May 20. 2013

By:

Heather L. Rosing
David M. Majchrzak
Philip W. Vineyard
Attorneys Specially Appearing for
PRENDA LAW. INC.

15549841v1

- 5 -

# Exhibit A

Case 2:12-cv-08333-ODW-JC   Document 48   Filed 02/07/13   Page 1 of 11   Page ID #:600

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

INGENUITY 13 LLC,

                Plaintiff,

    v.

JOHN DOE,

                Defendant.

Case Nos. 2:12-cv-8333-ODW(JCx)

**ORDER TO SHOW CAUSE RE SANCTIONS FOR RULE 11 AND LOCAL RULE 83-3 VIOLATIONS**

The Court hereby orders Brett L. Gibbs, attorney of record for AF Holdings LLC and Ingenuity 13 LLC, to appear on March 11, 2013, at 1:30 p.m., to justify his violations of Federal Rule of Civil Procedure 11 and Local Rule 83-3 discussed herein.[1]

## A.    Legal Standard

The Court has a duty to supervise the conduct of attorneys appearing before it. *Erickson v. Newmar Corp.*, 87 F.3d 298, 301 (9th Cir. 1996). The power to punish contempt and to coerce compliance with issued orders is based on statutes and the Court's inherent authority. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512

---

[1] The violations discussed herein were committed in the following related cases: *AF Holdings LLC v. Doe*, No. 2:12-cv-6636-ODW(JCx) (C.D. Cal. filed Aug. 1, 2012); *AF Holdings LLC v. Doe*, No. 2:12-cv-6669-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6662-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6668-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx) (C.D. Cal. filed Sept. 27, 2012). To facilitate this matter, Mr. Gibbs will be given the opportunity to address these violations together in one hearing rather than in several separate hearings.

1   U.S. 821, 831 (1994).  And though this power must be exercised with restraint, the
2   Court has wide latitude in fashioning appropriate sanctions to fit the conduct.  *See*
3   *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–65 (1980).

4   **B.      Rule 11(b)(3) Violations**

5         By presenting a pleading to the Court, an attorney certifies that—after
6   conducting a reasonable inquiry—the factual contentions in the pleading have
7   evidentiary support or, if specifically so identified, will likely have evidentiary
8   support after a reasonable opportunity for further investigation or discovery.  Fed. R.
9   Civ. P. 11(b)(3).  This precomplaint duty to find supporting facts is "not satisfied by
10  rumor or hunch."  *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th
11  Cir. 1992).  The reasonableness of this inquiry is based on an objective standard, and
12  subjective good faith provides no safe harbor.  *Golden Eagle Distrib. Corp. v.*
13  *Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986); *F.D.I.C. v. Calhoun*, 34 F.3d
14  1291, 1296 (5th Cir. 1994); *Knipe v. Skinner*, 19 F.3d 72, 75 (2d Cir. 1994).  The
15  Court wields the discretion to impose sanctions designed to "deter repetition of the
16  conduct or comparable conduct by others similarly situated."  Fed R. Civ. P 11(c)(4).

17        In *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6662-ODW(JCx) (C.D. Cal. filed
18  Aug. 2, 2012), the Court ordered Plaintiff on December 20, 2012, to show cause why
19  it failed to timely serve the Defendant or, if the Defendant has already been served, to
20  submit the proof of service.  (ECF No. 12.)  In response, Plaintiff noted that the delay
21  was because it waited to receive a response from the subscriber of the IP address
22  associated with the alleged act of infringement.  (ECF No. 14.)  Plaintiff further noted:
23  "Though the subscriber, David Wagar, remained silent, Plaintiff's investigation of his
24  household established that Benjamin Wagar was the likely infringer of Plaintiff's
25  copyright."  (ECF No. 14, at 2.)  Based on this investigation, Plaintiff filed an
26  Amended Complaint, substituting Benjamin Wagar for John Doe.  (ECF No. 13.)

27        Plaintiff's Amended Complaint alleges the following in connection with
28  Benjamin Wagar:

Case 2:12-cv-08333-ODW-JC   Document 48   Filed 02/07/13   Page 3 of 11   Page ID #:602

- "Defendant Benjamin Wagar ('Defendant') knowingly and illegally reproduced and distributed Plaintiff's copyrighted Video by acting in concert with others via the BitTorrent file sharing protocol and, upon information and belief, continues to do the same." (AC ¶ 1);
- "Defendant is an individual who, upon information and belief, is over the age of eighteen and resides in this District." (AC ¶ 4);
- "Defendant was assigned the Internet Protocol ('IP') address of 96.248.225.171 on 2012-06-28 at 07:19:47 (UTC)." (AC ¶ 4);
- "Defendant, using IP address 96.248.225.171, without Plaintiff's authorization or license, intentionally downloaded a torrent file particular to Plaintiff's Video, purposefully loaded that torrent file into his BitTorrent client—in this case, Azureus 4.7.0.2—entered a BitTorrent swarm particular to Plaintiff's Video, and reproduced and distributed the Video to numerous third parties." (AC ¶ 22);
- "Plaintiff's investigators detected Defendant's illegal download on 2012-06-28 at 07:19:47 (UTC). However, this is a [*sic*] simply a snapshot observation of when the IP address was *observed* in the BitTorrent swarm; the conduct took itself [*sic*] place before and after this date and time." (AC ¶ 23);
- "The unique hash value in this case is identified as F016490BD8E60E184EC5B7052CEB1FA570A4AF11." (AC ¶ 24.)

In a different case, *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6668-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012), Plaintiff essentially makes the same response to the Court's December 20, 2012 Order To Show Cause (ECF No. 12): "Though the subscriber, Marvin Denton, remained silent, Plaintiff's investigation of his household established that Mayon Denton was the likely infringer of Plaintiff's copyright." (ECF No. 13, at 2.) And based on this information, Plaintiff filed an Amended Complaint (ECF No. 16), similar in all respects to the one filed against Benjamin

Wagar in *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6662-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012), with the following technical exceptions:

- "Defendant was assigned the Internet Protocol ('IP') address of 75.128.55.44 on 2012-07-04 at 07:51:30 (UTC)." (AC ¶ 4);

- "Defendant . . . purposefully loaded that torrent file into his BitTorrent client—in this case, μTorrent 3.1.3 . . . ." (AC ¶ 22);

- "The unique hash value in this case is identified as 0D47A7A035591B0BA4FA5CB86AFE986885F5E18E." (AC ¶ 24.)

Upon review of these allegations, the Court finds two glaring problems that Plaintiff's technical cloak fails to mask. Both of these are obvious to an objective observer having a working understanding of the underlying technology.

### 1. Lack of reasonable investigation of copyright infringement activity

The first problem is how Plaintiff concluded that the Defendants actually downloaded the entire copyrighted video, when all Plaintiff has as evidence is a "snapshot observation." (AC ¶ 23.) This snapshot allegedly shows that the Defendants were downloading the copyrighted work—at least at that moment in time. But downloading a large file like a video takes time; and depending on a user's Internet-connection speed, it may take a long time. In fact, it may take so long that the user may have terminated the download. The user may have also terminated the download for other reasons. To allege copyright infringement based on an IP snapshot is akin to alleging theft based on a single surveillance camera shot: a photo of a child reaching for candy from a display does not automatically mean he stole it. No Court would allow a lawsuit to be filed based on that amount of evidence.

What is more, downloading data via the Bittorrent protocol is not like stealing candy. Stealing a piece of a chocolate bar, however small, is still theft; but copying an encrypted, unusable piece of a video file via the Bittorrent protocol may not be copyright infringement. In the former case, some chocolate was taken; in the latter case, an encrypted, unusable chunk of zeroes and ones. And as part of its prima facie

Case 2:12-cv-08333-ODW-JC   Document 48   Filed 02/07/13   Page 5 of 11   Page ID #:604

copyright claim, Plaintiff must show that Defendants copied the copyrighted work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). If a download was not completed, Plaintiff's lawsuit may be deemed frivolous.

In this case, Plaintiff's reliance on snapshot evidence to establish its copyright infringement claims is misplaced. A reasonable investigation should include evidence showing that Defendants downloaded the entire copyrighted work—or at least a usable portion of a copyrighted work. Plaintiff has none of this—no evidence that Defendants completed their download, and no evidence that what they downloaded is a substantially similar copy of the copyrighted work. Thus, Plaintiff's attorney violated Rule 11(b)(3) for filing a pleading that lacks factual foundation.

> ### 2. *Lack of reasonable investigation of actual infringer's identity*

The second problem is more troublesome. Here, Plaintiff concluded that Benjamin Wagar is the person who illegally downloaded the copyrighted video. But Plaintiff fails to allege facts in the Amended Complaint to show how Benjamin Wagar is the infringer, other than noting his IP address, the name of his Bittorrent client, and the alleged time of download.[2] Plaintiff's December 27, 2012 Response to the Court's Order to Show Cause re Lack of Service sheds some light:

> Though the subscriber, David Wagar, remained silent, Plaintiff's investigation of his household established that Benjamin Wagar was the likely infringer of Plaintiff's copyright. As such, Plaintiff mailed its Amended Complaint to the Court naming Benjamin Wagar as the Defendant in this action. (ECF No. 14, at 2.)

The disconnect is how Plaintiff arrived at this conclusion—that the actual infringer is a member of the subscriber's household (and not the subscriber himself or anyone else)—when all it had was an IP address, the name of the Bittorrent client used, the alleged time of download, and an unresponsive subscriber.

---

[2] This analysis similarly applies in *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6668-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012), where Plaintiff fails to allege sufficient facts to show how Mayon Denton is the infringer.

Case 2:12-cv-08333-ODW-JC   Document 48   Filed 02/07/13   Page 6 of 11   Page ID #:605

Plaintiff's December 27, 2012 Discovery Status Report gives additional insight into Plaintiff's deductive process:

> In cases where the subscriber remains silent, Plaintiff conducts investigations to determine the likelihood that the subscriber, or someone in his or her household, was the actual infringer. . . . For example, if the subscriber is 75 years old, or the subscriber is female, it is statistically quite unlikely that the subscriber was the infringer.  In such cases, Plaintiff performs an investigation into the subscriber's household to determine if there is a likely infringer of Plaintiff's copyright. . . . Plaintiff bases its choices regarding whom to name as the infringer on factual analysis. (ECF No. 15, at 24.)

The Court interprets this to mean: if the subscriber is 75 years old or female, then Plaintiff looks to see if there is a pubescent male in the house; and if so, he is named as the defendant.  Plaintiff's "factual analysis" cannot be characterized as anything more than a hunch.

Other than invoking undocumented statistics, Plaintiff provides nothing to indicate that Benjamin Wagar is the infringer.  While it is plausible that Benjamin Wagar is the infringer, Plaintiff's deduction falls short of the reasonableness standard required by Rule 11.

For instance, Plaintiff cannot show that Benjamin is the infringer instead of someone else, such as: David Wagar; other members of the household; family guests; or, the next door neighbor who may be leeching from the Wagars' Internet access. Thus, Plaintiff acted recklessly by naming Benjamin Wagar as the infringer based on its haphazard and incomplete investigation.

Further, the Court is not convinced that there is no solution to the problem of identifying the actual infringer.  Here, since Plaintiff has the identity of the subscriber, Plaintiff can find the subscriber's home address and determine (by driving up and scanning the airwaves) whether the subscriber, (1) has Wi-Fi, and (2) has password-protected his Wi-Fi access, thereby reducing the likelihood that an unauthorized user outside the subscriber's home is the infringer.  In addition, since Plaintiff is tracking a

Case 2:12-cv-08333-ODW-JC   Document 48   Filed 02/07/13   Page 7 of 11   Page ID #:606

number of related copyrighted videos, Plaintiff can compile its tracking data to determine whether other copyrighted videos were downloaded under the same IP address. This may suggest that the infringer is likely a resident of the subscriber's home and not a guest. And an old-fashioned stakeout may be in order: the presence of persons within the subscriber's home may be correlated with tracking data—the determination of who would have been in the subscriber's home when the download was initiated may assist in discovering the actual infringer.

Such an investigation may not be perfect, but it narrows down the possible infringers and is better than the Plaintiff's current investigation, which the Court finds involves nothing more than blindly picking a male resident from a subscriber's home. But this type of investigation requires time and effort, something that would destroy Plaintiff's business model.

The Court has previously expressed concern that in pornographic copyright infringement lawsuits like these, the economics of the situation makes it highly likely for the accused to immediately pay a settlement demand. Even for the innocent, a four-digit settlement makes economic sense over fighting the lawsuit in court—not to mention the benefits of preventing public disclosure (by being named in a lawsuit) of allegedly downloading pornographic videos.

And copyright lawsuits brought by private parties for damages are different than criminal investigations of cybercrimes, which sometimes require identification of an individual through an IP address. In these criminal investigations, a court has some guarantee from law enforcement that they will bring a case only when they actually have a case and have confidently identified a suspect. In civil lawsuits, no such guarantees are given. So, when viewed with a court's duty to serve the public interest, a plaintiff cannot be given free rein to sue anyone they wish—the plaintiff has to actually show facts supporting its allegations.

/ / /

/ / /

Case 2:12-cv-08333-ODW-JC   Document 48   Filed 02/07/13   Page 8 of 11   Page ID #:607

**C.      Local Rule 83-3 Violations**

Under Local Rule 83-3, the Court possesses the power to sanction attorney misconduct, including: disposing of the matter; referring the matter to the Standing Committee on Discipline; or taking "any action the Court deems appropriate." L.R. 83-3.1.  This includes the power to fine and imprison for contempt of the Court's authority, for: (1) misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; (2) misbehavior of any of its officers in their official transactions; or, (3) disobedience or resistance to its lawful writ, process, order, rule, decree, or command.  18 U.S.C. § 401.

The Court is concerned with three instances of attorney misconduct.  The first and second instances are related and concern violating the Court's discovery order.  The third instance concerns possible fraud upon the Court.

*1.      Failure to comply with the Court's discovery order*

In *AF Holdings LLC v. Doe*, No. 2:12-cv-6636-ODW(JCx) (C.D. Cal. filed Aug. 1, 2012) and *AF Holdings LLC v. Doe*, No. 2:12-cv-6669-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012), the Court ordered Plaintiff to "cease its discovery efforts relating to or based on information obtained through any abovementioned Rule 45 subpoenas."  (ECF No. 13, at 1; ECF No. 10, at 1.)  Further, Plaintiff was required to name all persons that were identified through any Rule 45 subpoenas.  (*Id.*)

Plaintiff responded on November 1, 2012, and indicated that it did not obtain any information about the subscribers in both of these cases.  (ECF No. 10, at 6–7, 10.)[3]  But in response to the Court's subsequent Orders to Show Cause, Plaintiff not only named the subscribers, but recounted its efforts to contact the subscriber and find additional information.  (ECF No. 15; ECF No. 18.)

This conduct contravenes the Court's order to cease discovery.  Plaintiff has provided no justification why it ignored the Court's order.

---

[3] This response was filed in *AF Holdings LLC v. Doe*, No. 2:12-cv-5709-ODW(JCx) (C.D. Cal. filed July 2, 2012).

2.    *Fraud on the Court*

Upon review of papers filed by attorney Morgan E. Pietz, the Court perceives that Plaintiff may have defrauded the Court.  (ECF No. 23.)[4]  At the center of this issue is the identity of a person named Alan Cooper and the validity of the underlying copyright assignments.[5]  If it is true that Alan Cooper's identity was misappropriated and the underlying copyright assignments were improperly executed using his identity, then Plaintiff faces a few problems.

First, with an invalid assignment, Plaintiff has no standing in these cases. Second, by bringing these cases, Plaintiff's conduct can be considered vexatious, as these cases were filed for a facially improper purpose.  And third, the Court will not idle while Plaintiff defrauds this institution.

**D.    Conclusion**

Accordingly, the Court hereby **ORDERS** Brett L. Gibbs, **TO SHOW CAUSE** why he should not be sanctioned for the following:

- In *AF Holdings LLC v. Doe*, No. 2:12-cv-6636-ODW(JCx) (C.D. Cal. filed Aug. 1, 2012), violating the Court's October 19, 2012 Order instructing AF Holdings to cease its discovery efforts based on information obtained through any earlier-issued subpoenas;

- In *AF Holdings LLC v. Doe*, No. 2:12-cv-6669-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012), violating the Court's October 19, 2012 Order instructing AF Holdings to cease its discovery efforts based on information obtained through any earlier-issued subpoenas;

///

---

[4] Although the papers revealing this possible fraud were filed in *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx) (C.D. Cal. filed Sept. 27, 2012), this fraud, if true, was likely committed by Plaintiff in each of its cases before this Court.

[5] For example, in *AF Holdings LLC v. Doe*, No. 2:12-cv-6669-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012), Plaintiff filed a copyright assignment signed by Alan Cooper on behalf of Plaintiffs.  (ECF No. 16-1.)

- In *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6662-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012), violating Rule 11(b)(2) by:
  - alleging copyright infringement based on a snapshot of Internet activity, without conducting a reasonable inquiry; or,
  - alleging that Benjamin Wagar is the infringer, without conducting a reasonable inquiry;
- In *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6668-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012), violating Rule 11(b)(2) by:
  - alleging copyright infringement based on a snapshot of Internet activity, without conducting a reasonable inquiry; or,
  - alleging that Mayon Denton is the infringer, without conducting a reasonable inquiry;
- In *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx) (C.D. Cal. filed Sept. 27, 2012), perpetrating fraud on the Court by misappropriating the identity of Alan Cooper and filing lawsuits based on an invalid copyright assignment.

This order to show cause is scheduled for hearing on March 11, 2013, at 1:30 p.m., to provide Mr. Gibbs the opportunity to justify his conduct. Based on the unusual circumstances of this case, the Court invites Morgan E. Pietz to present evidence concerning the conduct outlined in this order. The Court declines to sanction Plaintiffs AF Holdings LLC and Ingenuity 13 LLC at this time for two reasons: (1) Mr. Gibbs appears to be closely related to or have a fiduciary interest in Plaintiffs; and; (2) it is likely Plaintiffs are devoid of assets.

If Mr. Gibbs or Mr. Pietz so desire, they each may file by February 19, 2013, a brief discussing this matter. The Court will also welcome the appearance of Alan Cooper—to either confirm or refute the fraud allegations.

Based on the evidence presented at the March 11, 2013 hearing, the Court will consider whether sanctions are appropriate, and if so, determine the proper

punishment. This may include a monetary fine, incarceration, or other sanctions sufficient to deter future misconduct. Failure by Mr. Gibbs to appear will result in the automatic imposition of sanctions along with the immediate issuance of a bench warrant for contempt.

**IT IS SO ORDERED.**

February 7, 2012

OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE

# Exhibit B

1

2

3

4

5

6

7              **UNITED STATES DISTRICT COURT**

8              **CENTRAL DISTRICT OF CALIFORNIA**

9

10   INGENUITY 13 LLC,                          Case Nos. 2:12-cv-8333-ODW(JCx)

11                      Plaintiff,              **ORDER**

12          v.

13   JOHN DOE,

14                      Defendant.

15          In light of the parties' recent representations made in response to the Court's

16   Order to Show Cause, the Court hereby orders the following:

17          1)     The following persons are hereby **ORDERED** to appear on March 11,

18   2013, at 1:30 p.m.:

19                 a)     John Steele, of Steele Hansmeier PLLC and/or Livewire Holdings

20                        LLC;

21                 b)     Paul Hansmeier, of Steele Hansmeier PLLC and/or Livewire

22                        Holdings LLC;

23                 c)     Paul Duffy, of Prenda Law, Inc.;

24                 d)     Angela Van Den Hemel, of Prenda Law, Inc.;

25                 e)     Mark Lutz, CEO of AF Holdings LLC and Ingenuity 13 LLC;

26                 f)     Alan Cooper, of AF Holdings LLC;

27                 g)     Peter Hansemeier of 6881 Forensics, LLC; and

28                 h)     Alan Cooper, of 2170 Highway 47 North, Isle, MN 56342.

Case 2:12-cv-08333-ODW-JC   Document 66   Filed 03/05/13   Page 2 of 2   Page ID #:1293

1      2)      Brett L. Gibbs is hereby **ORDERED** to serve a copy of this order on the

2  persons in subparagraphs a–g above by March 7, 2013.

3      3)      Morgan E. Pietz is hereby **ORDERED** to serve a copy of this order on

4  the person in subparagraph h above by March 7, 2013.

5      **IT IS SO ORDERED.**

6  March 5, 2013

7

8

9                              **OTIS D. WRIGHT, II**

                    **UNITED STATES DISTRICT JUDGE**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit C

1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INGENUITY 13 LLC, | Case Nos. 2:12-cv-8333-ODW(JCx) |
|            Plaintiff, | **ORDER** |
|   v. | |
| JOHN DOE, | |
|            Defendant. | |

10
11
12
13
14

15       The Court has received the Ex Parte Application filed on behalf of John Steele,
16  Paul Hansmeier, Paul Duffy, and Angela Van Den Hemel, requesting the Court to
17  withdraw its March 5, 2013 Order requiring their attendance on March 11, 2013.

18       Based on the papers filed and the evidence presented during the March 11, 2013
19  hearing, the Court concludes there is at least specific jurisdiction over these persons
20  because of their pecuniary interest and active, albeit clandestine participation in these
21  cases.  Not only does the Ex Parte Application lack merit, its eleventh-hour filing
22  exemplifies gamesmanship.  Accordingly, the Ex Parte Application is **DENIED**.

23       The March 11, 2013 hearing raised questions concerning acts performed by
24  other persons related to Prenda Law, Inc., Steele Hansmeier PLLC, Livewire Holdings
25  LLC, AF Holdings LLC, Ingenuity 13 LLC, and 6881 Forensics, LLC.  The evidence
26  presented suggests these persons may be culpable for the sanctionable conduct
27  explained in the Court's February 7, 2013 Order to Show Cause, which the Court
28  previously attributed to Brett Gibbs only.  Further, it appears that these persons, and

1   their related entities, may have defrauded the Court through their acts and

2   representations in these cases.

3        Thus, the Court amends its February 7, 2013 Order to Show Cause (ECF

4   No. 48) to include sanctions against the persons and entities in subparagraphs a–m

5   below:

6          a)     John Steele, of Steele Hansmeier PLLC, Prenda Law, Inc., and/or

7                 Livewire Holdings LLC;

8          b)     Paul Hansmeier, of Steele Hansmeier PLLC and/or Livewire Holdings

9                 LLC;

10        c)     Paul Duffy, of Prenda Law, Inc.;

11        d)     Angela Van Den Hemel, of Prenda Law, Inc.;

12        e)     Mark Lutz, of Prenda Law, Inc., AF Holdings LLC and/or Ingenuity

13                 13 LLC;

14        f)     Alan Cooper, of AF Holdings LLC;

15        g)     Peter Hansemeier, of 6881 Forensics, LLC;

16        h)     Prenda Law, Inc.;

17        i)     Livewire Holdings LLC;

18        j)     Steele Hansmeier PLLC;

19        k)     AF Holdings LLC;

20        l)     Ingenuity 13 LLC; and

21        m)     6881 Forensics, LLC.

22      These persons and entities are **ORDERED** to appear on March 29, 2013, at

23   10:30 a.m., **TO SHOW CAUSE** for the following:

24        1)     Why they should not be sanctioned for their participation, direction,

25                 and execution of the acts described in the Court's February 7, 2013

26                 Order to Show Cause;

27        2)     Why they should not be sanctioned for failing to notify the Court of

28                 all parties that have a financial interest in the outcome of litigation;

3)     Why they should not be sanctioned for defrauding the Court by misrepresenting the nature and relationship of the individuals and entities in subparagraphs a–m above;

4)     Why John Steele and Paul Hansmeier should not be sanctioned for failing to make a *pro hac vice* appearance before the Court, given their involvement as "senior attorneys" in the cases; and

5)     Why the individuals in subparagraphs a–g above should not be sanctioned for contravening the Court's March 5, 2013 Order (ECF No. 66) and failing to appear on March 11, 2013.

Gibbs is **ORDERED** to serve a copy of this order on the persons and entities in subparagraphs a–m above by March 15, 2013, and must file proofs of service with the Court by March 18, 2013. Gibbs is further **ORDERED** to appear on March 29, 2013, at 10:30 a.m.

No other parties are required to appear on March 29, 2013. If so desired, Morgan E. Pietz and Nicholas R. Ranallo may appear on behalf of Defendant Doe.

Should the persons and entities in subparagraphs a–m above not appear on March 29, 2013, the Court is prepared to draw reasonable inferences concerning their conduct in the cases before the Court, including any inferences derived from their failure to appear. Failure to comply with this order will result in the imposition of sanctions.

**IT IS SO ORDERED.**

March 14, 2013

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

3

# Exhibit D

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INGENUITY 13 LLC,<br><br>                   Plaintiff,<br><br>        v.<br><br>JOHN DOE,<br><br>                   Defendant. | Case No. 2:12-cv-8333-ODW(JCx)<br><br>**ORDER ISSUING SANCTIONS** |

"The needs of the many outweigh the needs of the few."
    —Spock, *Star Trek II: The Wrath of Khan* (1982).

## I.    INTRODUCTION

Plaintiffs[1] have outmaneuvered the legal system.[2]   They've discovered the nexus of antiquated copyright laws, paralyzing social stigma, and unaffordable defense costs.   And they exploit this anomaly by accusing individuals of illegally downloading a single pornographic video.   Then they offer to settle—for a sum

---

[1] The term "Plaintiffs" used in this order refers to AF Holdings LLC, Ingenuity 13 LLC, as well as related entities, individuals, and attorneys that collaborated in the underlying scheme fronted by AF Holdings and Ingenuity 13.

[2] This order concerns conduct committed in the following related cases: *AF Holdings LLC v. Doe*, No. 2:12-cv-6636-ODW(JCx) (C.D. Cal. filed Aug. 1, 2012); *AF Holdings LLC v. Doe*, No. 2:12-cv-6669-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6662-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6668-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx) (C.D. Cal. filed Sept. 27, 2012).

1   calculated to be just below the cost of a bare-bones defense. For these individuals,

2   resistance is futile; most reluctantly pay rather than have their names associated with

3   illegally downloading porn. So now, copyright laws originally designed to

4   compensate starving artists allow, starving attorneys in this electronic-media era to

5   plunder the citizenry.

6       Plaintiffs do have a right to assert their intellectual-property rights, so long as

7   they do it right. But Plaintiffs' filing of cases using the same boilerplate complaint

8   against dozens of defendants raised the Court's alert. It was when the Court realized

9   Plaintiffs engaged their cloak of shell companies and fraud that the Court went to

10   battlestations.

11              **II.    PROCEDURAL HISTORY**

12       The Court issued its February 7, 2013 Order to Show Cause re Sanctions to

13   allow counsel, Brett Gibbs, to explain why he ignored the Court's discovery-stay

14   Order, filed complaints without reasonable investigation, and defrauded the Court by

15   asserting a copyright assignment secured with a stolen identity. (ECF No. 48.) As

16   evidence materialized, it turned out that Gibbs was just a redshirt.

17       Gibbs's behavior in the porno-trolling collective was controlled by several

18   attorneys, under whom other individuals also took their orders. Because it was

19   conceivable that these attorneys (and others) were culpable for Gibbs's conduct, the

20   Court ordered these parties to appear.

21       The following additional parties were ordered to appear: (a) John Steele, of

22   Steele Hansmeier PLLC, Prenda Law, Inc., and/or Livewire Holdings LLC; (b) Paul

23   Hansmeier, of Steele Hansmeier PLLC and/or Livewire Holdings LLC; (c) Paul

24   Duffy, of Prenda Law, Inc.; (d) Angela Van Den Hemel, of Prenda Law, Inc.;

25   (e) Mark Lutz, of Prenda Law, Inc., AF Holdings LLC, and/or Ingenuity 13 LLC;

26   (f) Alan Cooper, of AF Holdings LLC; (g) Peter Hansemeier, of 6881 Forensics, LLC;

27   (h) Prenda Law, Inc.; (i) Livewire Holdings LLC; (j) Steele Hansmeier PLLC; (k) AF

28   Holdings LLC; (l) Ingenuity 13 LLC; (m) 6881 Forensics, LLC; and (n) Alan Cooper,

1   of 2170 Highway 47 North, Isle, MN 56342.  (ECF Nos. 66, 86.)  These parties were

2   ordered to show cause why they should not be sanctioned for their behind-the-scenes

3   role in the conduct facially perpetrated by Gibbs.  These parties were also ordered to

4   explain the nature of their operations, relationships, and financial interests.

## III.    LEGAL STANDARD

6       The Court has a duty to supervise the conduct of attorneys appearing before it.

7   *Erickson v. Newmar Corp.*, 87 F.3d 298, 301 (9th Cir. 1996).  The power to punish

8   contempt and to coerce compliance with issued orders is based on statutes and the

9   Court's inherent authority.  *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512

10  U.S. 821, 831 (1994).  Though this power must be exercised with restraint, the Court

11  has wide latitude in fashioning appropriate sanctions to fit the conduct.  *See Roadway*

12  *Express, Inc. v. Piper*, 447 U.S. 752, 764–65 (1980).

13      Under the Court's inherent authority, parties and their lawyers may be

14  sanctioned for improper conduct.  *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).

15  This inherent power extends to a full range of litigation abuses, the litigant must have

16  engaged in bad faith or willful disobedience of a court's order.  *Id.* at 992.  Sanctions

17  under the Court's inherent authority are particularly appropriate for fraud perpetrated

18  on the court.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 54 (1991).

## IV.    DISCUSSION

20  **A.    Findings of fact**

21      Based on the evidence presented on the papers and through sworn testimony,

22  the Court finds the following facts, including those based on adverse inferences drawn

23  from Steele, Hansmeier, Duffy, and Van Den Hemel's blanket refusal to testify.[3]

24      1.    Steele, Hansmeier, and Duffy ("Principals") are attorneys with shattered

25  law practices.   Seeking easy money, they conspired to operate this enterprise and

26

_____

27  [3] Even if their refusal was based on the Fifth Amendment privilege against self-incrimination, the
Court still may draw adverse inferences against them in this civil proceeding.  *Baxter v. Palmigiano*,

28  425 U.S. 308, 318 (1976).

formed the AF Holdings and Ingenuity 13 entities (among other fungible entities) for the sole purpose of litigating copyright-infringement lawsuits. They created these entities to shield the Principals from potential liability and to give an appearance of legitimacy.

2.     AF Holdings and Ingenuity 13 have no assets other than several copyrights to pornographic movies. There are no official owners or officers for these two offshore entities, but the Principals are the de facto owners and officers.

3.     The Principals started their copyright-enforcement crusade in about 2010, through Prenda Law, which was also owned and controlled by the Principals. Their litigation strategy consisted of monitoring BitTorrent download activity of their copyrighted pornographic movies, recording IP addresses of the computers downloading the movies, filing suit in federal court to subpoena Internet Service Providers ("ISPs") for the identity of the subscribers to these IP addresses, and sending cease-and-desist letters to the subscribers, offering to settle each copyright-infringement claim for about $4,000.

4.     This nationwide strategy was highly successful because of statutory-copyright damages, the pornographic subject matter, and the high cost of litigation. Most defendants settled with the Principals, resulting in proceeds of millions of dollars due to the numerosity of defendants. These settlement funds resided in the Principals' accounts and not in accounts belonging to AF Holdings or Ingenuity 13. No taxes have been paid on this income.

5.     For defendants that refused to settle, the Principals engaged in vexatious litigation designed to coerce settlement. These lawsuits were filed using boilerplate complaints based on a modicum of evidence, calculated to maximize settlement profits by minimizing costs and effort.

6.     The Principals have shown little desire to proceed in these lawsuits when faced with a determined defendant. Instead of litigating, they dismiss the case. When pressed for discovery, the Principals offer only disinformation—even to the Court.

7.     The Principals have hired willing attorneys, like Gibbs, to prosecute these cases.  Though Gibbs is culpable for his own conduct before the Court, the Principals directed his actions.  In some instances, Gibbs operated within narrow parameters given to him by the Principals, whom he called "senior attorneys."

8.     The Principals maintained full control over the entire copyright-litigation operation.  The Principals dictated the strategy to employ in each case, ordered their hired lawyers and witnesses to provide disinformation about the cases and the nature of their operation, and possessed all financial interests in the outcome of each case.

9.     The Principals stole the identity of Alan Cooper (of 2170 Highway 47 North, Isle, MN 56342).  The Principals fraudulently signed the copyright assignment for "Popular Demand" using Alan Cooper's signature without his authorization, holding him out to be an officer of AF Holdings.  Alan Cooper is not an officer of AF Holdings and has no affiliation with Plaintiffs other than his employment as a groundskeeper for Steele.  There is no other person named Alan Cooper related to AF Holdings or Ingenuity 13.

10.     The Principals ordered Gibbs to commit the following acts before this Court: file copyright-infringement complaints based on a single snapshot of Internet activity; name individuals as defendants based on a statistical guess; and assert a copyright assignment with a fraudulent signature.  The Principals also instructed Gibbs to prosecute these lawsuits only if they remained profitable; and to dismiss them otherwise.

11.     Plaintiffs have demonstrated their willingness to deceive not just this Court, but other courts where they have appeared.  Plaintiffs' representations about their operations, relationships, and financial interests have varied from feigned ignorance to misstatements to outright lies.  But this deception was calculated so that the Court would grant Plaintiffs' early-discovery requests, thereby allowing Plaintiffs to identify defendants and exact settlement proceeds from them.  With these granted requests, Plaintiffs borrow the authority of the Court to pressure settlement.

**B.     Sanctions**

Although the Court originally notified the parties that sanctions would be imposed under Federal Rule of Civil Procedure 11(b)(3) and Local Rule 83-3, the Court finds it more appropriate to sanction the parties under its inherent authority. *See In re DeVille*, 361 F.3d 539, 550 (9th Cir. 2004) ("[T]he bankruptcy court's failure to specify, in advance of the disciplinary proceedings, that its inherent power was a basis for those proceedings, did not serve to undercut its sanctioning authority."). The sanctions for Plaintiffs' misconduct are as follows.

*1.     Rule 11 sanctions*

The Court maintains that its prior analysis of Plaintiffs' Rule 11 violations is accurate. (ECF No. 48.) Plaintiffs can only show that someone, using an IP address belonging to the subscriber, was seen online in a torrent swarm. But Plaintiffs did not conduct a sufficient investigation to determine whether that person actually downloaded enough data (or even anything at all) to produce a viewable video. Further, Plaintiffs cannot conclude whether that person spoofed the IP address, is the subscriber of that IP address, or is someone else using that subscriber's Internet access. Without better technology, prosecuting illegal BitTorrent activity requires substantial effort in order to make a case. It is simply not economically viable to *properly* prosecute the illegal download of a single copyrighted video.

Enter Plaintiffs and their cottage-industry lawsuits. Even so, the Court is not as troubled by their lack of reasonable investigation as by their cover-up. Gibbs argued that a deep inquiry was performed *prior* to filing. Yet these arguments are not credible and do not support Gibbs's conclusions. Instead, Gibbs's arguments suggest a hasty after-the-fact investigation, and a shoddy one at that.

For instance, Gibbs characterized Marvin Denton's property as "a very large estate consisting of a gate for entry and multiple separate houses/structures on the property." (ECF No. 49, at 19.) He stated this to demonstrate the improbability that Denton's Wi-Fi signal could be received by someone outside the residence. But

Case 2:12-cv-08333-ODW-JC   Document 130   Filed 05/06/13   Page 7 of 11   Page ID #:2895

1   Denton's property is not a large estate; it is a small house in a closely packed

2   residential neighborhood.  There are also no gates visible.



20       Gibbs's statement is a blatant lie.  His statement resembles other statements

21   given by Plaintiffs in this and their other cases: statements that sound reasonable but

22   lack truth.  Thus, the Court concludes that Gibbs, even in the face of sanctions,

23   continued to make factual misrepresentions to the Court.

24       Nevertheless, Rule 11 sanctions are inappropriate here because it is the wrong

25   sanctions vehicle at this stage of litigation.  The cases have already been dismissed

26   and monetary sanctions are not available. Fed. R. Civ. P 11(c)(5)(B) (a court cannot

27   impose a monetary sanction on its own unless it issued the show-cause order before

28   voluntary dismissal).  The more appropriate sanction for these Rule 11 violations is

Case 2:12-cv-08333-ODW-JC   Document 130   Filed 05/06/13   Page 8 of 11   Page ID #:2896

1   what the Court had already imposed: denial of requests for early discovery.  (ECF
2   No. 28.)

3           2.      *Sanctions under the Court's inherent authority*

4           In addition to Gibbs's misrepresentations, there is the matter of the ignored
5   Court Order vacating early discovery.  (ECF No. 28.)  The evidence does not show
6   that the Order was ignored because of miscommunication among Plaintiffs.  The
7   Order was purposely ignored—hoping that the ISPs were unaware of the vacatur and
8   would turn over the requested subscriber information.

9           Then there is the Alan Cooper forgery.  Although a recipient of a copyright
10  assignment need not sign the document, a forgery is still a forgery.  And trying to pass
11  that forged document by the Court smacks of fraud.  Unfortunately, other than these
12  specific instances of fraud, the Court cannot make more detailed findings of fraud.

13          Nevertheless, it is clear that the Principals' enterprise relies on deception.  Part
14  of that ploy requires cooperation from the courts, which could only be achieved
15  through deception.    In other words, if the Principals assigned the copyright to
16  themselves, brought suit in their own names, and disclosed that they had the sole
17  financial interest in the suit, a court would scrutinize their conduct from the outset.
18  But by being less than forthcoming, they defrauded the Court.  They anticipated that
19  the Court would blindly approve their early-discovery requests, thereby opening the
20  door to more settlement proceeds.

21          The Principals also obfuscate other facts, especially those concerning their
22  operations, relationships, and financial interests.    The Principals' web of
23  disinformation is so vast that the Principals cannot keep track—their explanations of
24  their operations, relationships, and financial interests constantly vary.  This makes it
25  difficult for the Court to make a concrete determination.

26          Still, the Court adopts as its finding the following chart detailing Plaintiffs'
27  relationships.  Though incomplete, this chart is about as accurate as possible given
28  Plaintiffs' obfuscation.

Case 2:12-cv-08333-ODW-JC   Document 130   Filed 05/06/13   Page 9 of 11   Page ID #:2897



As for Van Den Hemel, Lutz, and Hansemeier, they are not without fault even though they acted under orders from the Principals. They were not merely assimilated; they knowingly participated in this scheme, reaping the benefits when the going was good. Even so, their status as non-attorneys *and* non-parties severely limits the sanctions that could be levied against them.

Despite these findings, the Court deems these findings insufficient to support a large monetary sanction—a seven-digit sanction adequate to deter Plaintiffs from continuing their profitable enterprise. Even if the Court enters such a sanction, it is certain that Plaintiffs will transfer out their settlement proceeds and plead paucity. Yet Plaintiffs' bad-faith conduct supports other more fitting sanctions.

///

1    First, an award of attorney's fees to Defendants is appropriate.  This award
2 compensates them for expenses incurred in this vexatious lawsuit, especially for their
3 efforts in countering and revealing the fraud perpetrated by Plaintiffs.

4    So far, only Morgan Pietz and Nicholas Ranallo have appeared.[4]  Upon review,
5 the Court finds Pietz's expenditure of 120.5 hours at an hourly rate of $300 reasonable
6 based on his experience, work quality, and quantity of necessary papers filed with the
7 Court.  (ECF No. 102.)  Although many of these hours were spent after the case was
8 dismissed, these hours were spent in connection with the sanction hearings—time well
9 spent.  Similarly, the attorney's fees and costs incurred by Ranallo also appear
10 reasonable.

11    Therefore, the Court awards attorney's fees and costs in the sum of $40,659.86
12 to Doe: $36,150.00 for Pietz's attorney's fees; $1,950.00 for Ranallo's attorney's fees;
13 $2,226.26 for Pietz's costs; and $333.60 for Ranallo's costs.  As a punitive measure,
14 the Court doubles this award, yielding $81,319.72.[5]  This punitive multiplier is
15 justified by Plaintiffs' brazen misconduct and relentless fraud.  The Principals, AF
16 Holdings, Ingenuity 13, Prenda Law, and Gibbs are liable for this sum jointly and
17 severally, and shall pay this sum within 14 days of this order.

18    Second, there is little doubt that that Steele, Hansmeier, Duffy, Gibbs suffer
19 from a form of moral turpitude unbecoming of an officer of the court.  To this end, the
20 Court will refer them to their respective state and federal bars.

21    Third, though Plaintiffs boldly probe the outskirts of law, the only enterprise
22 they resemble is RICO.  The federal agency eleven decks up is familiar with their
23 prime directive and will gladly refit them for their next voyage.  The Court will refer
24 this matter to the United States Attorney for the Central District of California.  The
25 will also refer this matter to the Criminal Investigation Division of the Internal

26
27 _____
[4] They appeared on behalf of the Doe Defendant in the case *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx) (C.D. Cal. filed Sept. 27, 2012).
28 [5] This punitive portion is calculated to be just below the cost of an effective appeal.

1  Revenue Service and will notify all judges before whom these attorneys have pending
2  cases.  For the sake of completeness, the Court requests Pietz to assist by filing a
3  report, within 14 days, containing contact information for: (1) every bar (state and
4  federal) where these attorneys are admitted to practice; and (2) every judge before
5  whom these attorneys have pending cases.
6     *4.    Local Rule 83-3 sanctions*
7     For the same reasons stated above, the Court will refer Duffy and Gibbs to the
8  Standing Committee on Discipline (for this District) under Local Rule 83-3.
9                          **V.    CONCLUSION**
10    Steele, Hansmeier, Duffy, Gibbs, Prenda Law, AF Holdings, and Ingenuity 13
11 shall pay, within 14 days of this order, attorney's fees and costs totaling $81,319.72 to
12 Doe.  The Court enters additional nonmonetary sanctions in accordance with the
13 discussion above.
14    **IT IS SO ORDERED.**
15    May 6, 2013
16
17
18                          **OTIS D. WRIGHT, II**
                          **UNITED STATES DISTRICT JUDGE**
19
20
21
22
23
24
25
26
27
28