1  Brett Gibbs
2  28 Altamont Avenue
   Mill Valley, CA 94941
3  Telephone: (415) 381-3104
   brett.gibbs@gmail.com
4  *In Propria Persona*

5

6

7           **UNITED STATES DISTRICT COURT**

8           **CENTRAL DISTRICT OF CALIFORNIA**

9  INGENUITY 13 LLC,

10          *Plaintiff*,                    CASE NO. 2:12-CV-8333-ODW (JCx)

11
                                            Judge:            Hon. Otis D. Wright, II
12         v.                               Magistrate Judge:   Hon. Jacqueline Chooljian

13  JOHN DOE,

14          *Defendant*.                    **MOTION FOR INDICATIVE
                                            RULING VACATING MAY 6, 2013
15                                          ORDER ISSUING SANCTIONS
                                            AGAINST MOVANT BRETT L.
16                                          GIBBS**

17
                                            Date:        November 18, 2013
18                                          Time:        1:30 p.m.
19                                          Ct. Room:   11 – Spring St. Floor

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 5

II.  FACTUAL BACKGROUND ............................................................................. 6

  A.  Events Leading Up To The May 6 Order. ..................................................... 6

  B.  Events After The May 6 Order. ..................................................................... 9

    1. The Prenda Principals Have Tried To Force Gibbs' Silence. ...................... 9

    2.  New Evidence of Lies and Fraud by Steele and Hansmeier ..................... 12

      a.    Financial Records Show that, in 2012, Prenda Law Distributed 70% of Settlement Proceeds To Steele and Hansmeier. ....................................................... 12

      b.    BitTorrent Forensic Specialist's Report and Comcast Letter Show that Steele Seeded Films To Lure Potential Defendants Into Infringing on Plaintiffs' Copyrights. ..................... 14

      c.    Recordings Show That Steele Impersonated Mark Lutz and Alan Cooper on Phone Calls……………………………………………………………………16

      d.    Court Records Show That Prenda Law Has Violated Court Orders In Other Cases. ... 17

      e.    Other Courts Have Found Gibbs, but Not The Principals, Credible. .......................... 17

III.    LEGAL STANDARD ..................................................................................... 22

IV.    ANALYSIS ..................................................................................................... 24

  A.  Gibbs Did Not Lie To This Court. .............................................................. 24

  B.  Gibbs Did Not Violate the Court's Order. .................................................. 25

V.    CONCLUSION ................................................................................................ 27

# TABLE OF AUTHORITIES

**Cases**

*AF Holdings LLC v. Doe*, Case Nos. 0:12-cv-01445-JNE-FLN, *et al.*, (D. Minn.).......................11, 21

*AF Holdings, LLC v. Joe Navasca*, Case No. 3:12-02396-EMC (N.D. Cal.)............................. *passim*

*AF Holdings, LLC v. Patel*, Case No. 2:12-CV-00262-WCO (N.D. Georgia)..................11, 15, 21

*Baxter v. Palmigiano*, 425 U.S. 308 (1976)...............................................................................27

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) .................................................................... 23

*Erickson v. Newmark Corp.*, 87 F.3d 298 (9th Cir. 1996)...................................................... 23

*Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001) ...................................................................... 23

*First Time Videos, LLC. v. Oppold*, Case No. 6:12-CV-01493-CEH-KRS (M.D. FL.)..................... 14

*Guava LLC v. Spencer Merkel*, Case No. 27-CV-12-20976 (Minn. 4th Dist.) ................................. 18

*Guiterrez-Rodriguez v. Cartagena*, 882 F. 2d 553 (1st Cir. 1989)...............................................8

*In re Edmond,* 934 F.2d 1304 (4th Cir. 1991) ....................................................................8

*Ingenuity13, LLC v. John Doe, Case No. 2:12-cv-08333-ODW (JCx)* ....................................... *passim*

*Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821 (1994)...................................... 23

*Nationwide Life Ins. Co. v. Richards,* 541 F.3d 903 (9th Cir. 2008).....................................8

*Paul Duffy v Paul Godfread and Alan Cooper*, Case No. 1:13-cv-01569 (D. Minn.)...................16

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) ...................................................... 23

*Sunlust Pictures, LLC v. John Doe IP 216.40.69.178*, Case No. 1:12-cv-01271-LMB-IDD (E.D. Va.)

    (Filed Nov. 7, 2012)............................................................................................17

*Sunlust Pictures, LLC v. John Doe IP 68.98.135.78*, Case No. 1:12-cv-01280-LMB-IDD (E.D. Va.)

    (Filed Nov. 7, 2012)..................................................................................................17

*Sunlust Pictures, LLC v. John Doe*, Case No. 1:12-cv-00656-CMA-KMT (D. Col.)...................17

*Sunlust Pictures LLC v. Tuan Nguyen* 8:12-cv-01685-MSS (M.D. Fla.)...................................20

*United States of America v. $133,420 In United States Currency*, 672 F.3d 629 (9th Cir. 2012)........8

*United States v. Manchester Farming Partnership,* 315 F.3d 1176 (9th Cir. 2003) .......................... 23

*United States v. Parcels of Land*, 903 F 2d. 36 (1st Cir. 1990)…………………………………………..8

*Yagman v. Republic Ins.*, 987 F.2d 622 (9th Cir.1993) ...................................................................... 23


**Rules**

Federal Rule of Appellate Procedure 12.1………………………………………………….........5

Federal Rules of Civil Procedure 60 ………………………………………………………....…22

Federal Rules of Civil Procedure 62.1 ……………………………………………………….5, 22

## MOTION FOR INDICATIVE RULING VACATING ORDER ISSUING SANCTIONS AGAINST MOVANT BRETT L. GIBBS

Attorney Brett L. Gibbs, *in propria persona,* files this motion for an indicative ruling vacating the Court's May 6, 2013 Order Issuing Sanctions against Gibbs in accordance with Federal Rules of Civil Procedure 62.1 and Federal Rule of Appellate Procedure 12.1.  In support of this motion, Gibbs presents the following:

## I.   INTRODUCTION

In its May 6 Order Issuing Sanctions, the Court awarded attorneys' fees and costs to Defendants' attorneys and doubled the award as a punitive measure "justified by Plaintiffs' brazen misconduct and relentless fraud."  The Court imposed joint and several liability for an $81,319.72 sanction on John Steele, Paul Hansmeier and Paul Duffy, whom the Court labeled the "Principals," as well as the two Plaintiffs (AF Holdings, LLC and Ingenuity 13, LLC), Prenda Law, Inc., and Gibbs.  The Court also referred Steele, Hansmeier, Duffy and Gibbs to their respective state and federal bars, the United States Attorney for the Central District of California, the Criminal Division of the Internal Revenue Service and the District's Standing Committee on Discipline.

In this Motion, Gibbs asks the Court to reconsider whether the monetary sanctions imposed on the Principals, Prenda, and Plaintiffs should also have been imposed on him.  Gibbs will present new evidence showing that Steele and Hansmeier are the beneficial owners of the sham companies that served as Plaintiffs, and of Prenda Law itself.  He will present new evidence of fraudulent behavior by the Prenda Principals after the Court's May 6 Order, and new evidence from other Courts that have sanctioned the behavior of the Principals.  Finally and relatedly, Gibbs will show that his sworn declarations and testimony have been relied upon by other Courts, affirming that Gibbs is a credible witness in these matters.

In light of this new evidence, Gibbs' will show that his conduct did not warrant sanctions.  Gibbs asks the Court to reconsider whether his mistake in characterizing a

Defendant's property as "a very large estate" was in fact a "blatant lie," whether Gibbs ignored the Court's discovery stay order, and whether any of Gibbs' statements or actions in this case exhibited bad faith.  Since May 6, 2013, whenever Gibbs has testified or filed declarations in cases involving the Principals and their sham companies, the Courts have found Gibbs credible and relied on his testimony in imposing sanctions on the Principals.  Gibbs asks this Court to do the same and vacate the monetary sanction which the Court imposed on him on May 6, 2013.

## II.    FACTUAL BACKGROUND

### A. Events Leading Up To The May 6 Order.

Gibbs received a phone call from Hansmeier in March, 2011 asking if he would be interested in working for Steele Hansmeier PLLC, the predecessor to Prenda Law. (Declaration of Brett L. Gibbs Supporting Motion for Indicative Ruling ["Gibbs Decl."] at ¶ 9).  Hansmeier had been Gibbs' assigned roommate during his first year at the University of Minnesota Law School (2004-2005), but they had not remained in contact after Gibbs transferred to the University of California, Hastings College of Law in 2005. (Gibbs Decl. at ¶ 10). When Hansmeier called, Gibbs was nearing the end of 20 months of debilitating surgeries, radiation and chemotherapy treatments for brain cancer.  He had been unable to work since July 10, 2009, when his diagnosis forced him to leave his job with a small Oakland law firm, and he was still not sufficiently healthy to return to a full-time position. (Gibbs Decl. at ¶ 11).  Gibbs accepted the offer to work as an independent contractor in an "of counsel" position at Steele Hansmeier, handling all litigation in California, with the explicit understanding that he would only work as many hours per week as he and his doctors thought advisable. (Gibbs Decl. at ¶ 12).

Gibbs worked for Steele Hansmeier and its successor, Prenda Law, from late March 2011 until late February 2013. (Gibbs Decl. at ¶ 13).  During this entire period,

6

as Gibbs has testified consistently in this court and others, Steele and Hansmeier directed virtually all of Gibbs' activities. (Gibbs Decl. at ¶ 14). He was in frequent phone and email contact with both of them, often speaking several times a day. (Gibbs Decl. at ¶ 15).

In its February 7, 2013 Order to Show Cause Re Sanctions for Rule 11 and Local Rule 83-3 Violations, this Court averred that "Gibbs appears to be closely related to or have a fiduciary interest in Plaintiffs" Ingenuity13 LLC and AF Holdings LLC. (ECF No. 48 at pg. 10). The Court required Gibbs to file a response to the OSC and attend a show-cause hearing on March 11, 2013. Defendant's counsel, Morgan Pietz, was also given the opportunity to file a response to the Court's OSC.

In his response, Pietz argued that "What seems increasingly clear though is that Prenda, and its 'of counsel' here, Mr. Brett Gibbs, have crossed the Rubicon in these cases, by resorting to fraud, which includes identity theft, sham offshore shell companies, and forged documents." (ECF No. 52 at pg. 4). Pietz further asserted that "Mr. Gibbs appears [to] act as a functional Chief Operating Officer for Prenda Law…. [and] Mr. Gibbs has a pecuniary interest in the Prenda shell companies." He sought monetary sanctions from "Prenda Law, Inc., and … the attorneys running Prenda, including Mr. Gibbs". (*Id*. at n.7, pgs. 17, 30). Pietz submitted a chart (which the Court adopted in its May 6 Order) detailing "Plaintiffs' relationships," showing Gibbs' position as equivalent to that of the Principals. (ECF No. 130 at pg. 9).

At the March 11 hearing, Gibbs testified under direct examination from his attorney as well as cross-examination by Pietz and the Court. Gibbs answered every question put to him, testifying, among other things, that Prenda Law was run by Steele and Hansmeier, that he had no direct contact and no fiduciary relationship with the Plaintiffs, that he had no personal knowledge of the Alan Cooper forgery, and that he was neither a partner in, nor owner of, Prenda law. (ECF No. 93 pgs. 76-77, 94-96).

After Gibbs testified, the Court scheduled a further OSC hearing for April 2, 2013, ordering that Steele, Hansmeier, Duffy and others attend.  Steele, Hansmeier, Duffy and all of the other subpoenaed parties appeared at the hearing, but they all refused to testify, choosing instead to invoke their rights under the Fifth Amendment in a civil case because they believed that the Court was investigating conduct which could carry criminal penalties. (ECF No. 130 at pg. 3).[1]

In its May 6 Order Issuing Sanctions, the Court identified Steele, Hansmeier and Duffy as Prenda's "Principals." (ECF No. 130 at pg. 3). "The Principals maintained full control over the entire copyright-litigation operation. The Principals dictated the strategy to employ in each case, ordered their hired lawyers and witnesses to provide disinformation about the cases and the nature of their operation, and possessed all financial interests in the outcome of each case." (*Id. at pg 5*).  Only two of the Court's eleven findings even mentioned Gibbs:

> 7.   The Principals have hired willing attorneys, like Gibbs, to prosecute these cases.  Though Gibbs is culpable for his own conduct before the Court, the Principals directed his actions. In some instances, Gibbs operated within narrow parameters given to him by the Principals, whom he called "senior attorneys."

> 10.   The Principals ordered Gibbs to commit the following acts before this Court: file copyright-infringement complaints based on a single snapshot of Internet activity; name individuals as defendants based on a statistical guess; and insert a copyright assignment with a fraudulent signature.  The Principals also instructed Gibbs to prosecute these lawsuits only if they remained profitable; and to dismiss them

---

[1] When Steele, Hansmeier and Duffy asserted their Fifth Amendment rights in this civil case, they did so with no guarantee that the Court will allow their subsequent testimony.  In analogous situations, Courts have decided to preclude or strike affidavits and testimony offered after invocation of the Fifth Amendment.  *See, e.g., United States of America v. $133,420 In United States Currency,* 672 F.3d 629 (9th Cir. 2012) ("Preserving the integrity and the truth-seeking function of the judicial process is as important in civil as in criminal proceedings. *Nationwide Life Ins. Co. v. Richards,* 541 F.3d 903, 910 (9th Cir.2008) [affirming district court's refusal to allow witness to testify on particular subject at trial when the Fifth Amendment had been used to block inquiry into that subject during a deposition]"; *see also Guiterrez-Rodriguez v. Cartagena*, 882 F. 2d 553, 557 (1st Cir. 1989); *In re Edmond,* 934 F.2d 1304, 1308-1309 (4th Cir. 1991); and *United States v. Parcels of Land,* 903 F 2d. 36, 43 (1st Cir. 1990).

otherwise. (*Id*. at pg 5).

The only misconduct which the Court attributed directly to Gibbs related to Gibbs' investigations into the identities of Doe defendants.  The Court concluded that Gibbs' description of one of the Defendant's properties as "a very large estate" was a "blatant lie [which] resembles other statements given by Plaintiffs in this and their other cases: statements that sound reasonable but lack truth." (*Id*. at pg. 7).  The Court also raised "the matter of the ignored Court Order vacating early discovery," though not specifically identifying Gibbs as an individual who ignored the order. (*Id*. at pg. 8). The balance of the May 6 Order focused on the conduct of the Principals and the Plaintiffs.

Nevertheless, despite the Court's conclusion that "As evidence materialized, it turned out that Gibbs was just a redshirt," the May 6 Order imposed the same monetary sanction on Gibbs as it imposed on the Principals and the Plaintiffs. (*Id*. at pgs. 2, 10).

## B. Events After The May 6 Order.

### 1. The Prenda Principals Have Tried To Force Gibbs' Silence.

After receiving the May 6 Order, Hansmeier telephoned Gibbs in an attempt to persuade him to work with, not against, the Principals as they appealed the Order. (Gibbs Decl. at ¶ 16).  Over several conversations, Hansmeier conveyed to Gibbs exactly what he would have to do to be covered by the superseadous bond which the Principals were arranging to purchase.  Knowing that Gibbs would not be able to post sufficient collateral to buy a separate bond, Steele and Hansmeier made six demands which Gibbs would have to accede to before they would add him to their bond: (1) Gibbs pay $3,000 to Hansmeier and Steele to reimburse them for the entire cost of the bond; (2) Gibbs sign a unilateral Release and Settlement Agreement releasing any and all claims he might have against Duffy, Steele, Hansmeier, Prenda Law, Steele

Hansmeier PLLC, and Alpha Law Firm" (*See* Exhibit A); (3) Gibbs agree to sign a declaration stating (falsely) that Steele had no involvement in a Florida copyright case; (4) Gibbs represent AF Holdings and Ingenuity 13 in their appeal of the May 6 Order; (5) Gibbs sign an agreement that would create a fiduciary relationship between Gibbs and both Steele and Hansmeier;[2] and (6) Gibbs sign an agreement indemnifying Steele and Hansmeier

> against any and all claims, demands, actions, suits, losses, costs, charges, expenses, damages and liabilities whatsoever which [they] may pay, sustain, suffer or incur by reason of or in connection with the appeal of the May 6, 2013 order issued by Judge Wright in Case No. 2:12-cv-8333-ODW (JCx) including, without limiting the generality of the foregoing, all costs and expenses (including legal expenses) incurred in connection with any such loss or damage. (*See* Exhibit B).

The unilateral release and the indemnity agreement proposed by Steele and Hansmeier would have made Gibbs solely liable for the full amount of the monetary sanctions imposed on all of the parties in the May 6 order, as well as the costs and attorneys' fees incurred in appealing the order. Steele and Hansmeier were also trying to force Gibbs to testify dishonestly or remain silent with regard to the Principals' fraudulent activities. Gibbs rejected their offer and was not included on the bond.

On May 22, 2013, in another transparent attempt to prevent Gibbs from testifying about Prenda Law's activities, Duffy sent Gibbs an email and certified letter "reminding" him of his "ongoing obligation to maintain attorney-client privilege, attorney work-product information and other applicable obligations." (*See* Exhibit C).

Perhaps the most flagrant attempt to intimidate Gibbs came on July 8, 2013, when Mark Lutz (Prenda's former paralegal and the only officer or employee of Plaintiffs) and Steele sent similar, unsworn and virtually fact-free bar complaints

---

[2] While neither Steele nor Hansmeier explained the reason for demanding the creation of a "fiduciary relationship," it was clear to Gibbs that they hoped to use it to prevent Gibbs from being able to testify against them in any courtroom in the country.

against Gibbs to the California State Bar. Steele also filed the bar complaints in this Court, and Lutz forwarded them to Dan Browning, a reporter for the Minneapolis *Star Tribune*.[3] (ECF No. 218) (Gibbs Decl. at ¶ 17).  In his bar complaint, Steele reiterated and expanded upon his unsupported, unsworn and untrue claims that: "I want to make it clear that I never read, prepared, reviewed, modified, discussed, or was in any way involved with the pleadings filed by Attorney Gibbs in the Judge Wright matter.  My first knowledge of the case was when a third party told me something in February 2013 that Attorney Gibbs was in trouble for insulting a judge in California.";[4] and "On May 6, 2013 Judge Wright issued an order based solely on Attorney Gibbs perjurous statements made at the March hearing that I did not attend." (ECF No. 218-1 at pg. 84).[5]

Gibbs submits that the Principals' attempts to silence or discredit him are, in themselves, strong new evidence that Gibbs was truthful in his testimony. The Principals have not produced and cannot produce any evidence that Gibbs is lying, so their only hope of escaping sanctions in this and other courts is to destroy Gibbs' credibility or otherwise find a way to prevent him from testifying truthfully about their conduct.  It is understandable that, as courts move closer to discovering the truth about

---

[3] This was the same week that Steele was scheduled to appear before this Court for a hearing on his motion to reconsider (because he claimed that he and others had not been properly served).  Steele apparently hoped that, by filing the bar complaints and a mountain of other documents, he could deflect attention from his own conduct by getting the Court stirred up with baseless, unsworn allegations about Gibbs, an invitation which the Court summarily declined. (ECF Doc. No. 224).

[4] Gibbs, of course, discussed this case with Steele many times. For example, Gibbs contacted Steele on February 7 about this Court's OSC to Gibbs.  Steele replied by sending emails to Gibbs about Prenda's malpractice insurance.  This would be peculiar behavior for someone who had no involvement with Prenda and/or knew nothing about the proceedings in this Case which created Gibbs' need for Prenda's insurance. (*See* Exhibit D).

[5] Gibbs is not the only attorney who has received threats from the Principals. On September 20, 2013, Paul Godfread, the attorney for Alan Cooper, filed a declaration stating: "Paul Hansmeier called me on September 9, 2013 to discuss pending motions in the miscellaneous case *AF Holdings v. Patel*.  During that call, he offered to not sue me if I agreed to not handle any more cases relating to himself, Prenda Law, or any of Prenda Law's clients.  He told me that he had been contacted by people who wanted to sue me based on actions I have taken in these cases and related cases and he believed such lawsuits would continue for as long as 10 years.  He also stated that such lawsuits wouldn't be profitable for himself, his clients, or myself, and that they would cause serious problems for me personally and professionally.  I declined to entertain his 'offer' and told him I perceived such an 'offer' as a threat of vexatious litigation." *AF Holdings LLC v. Doe*, Case Nos. 0:12-cv-01445-JNE-FLN, *et al.*, (D. Minn.) (Doc. No. 43).

Prenda Law and the Principals, their attempts to "Blame Everything On Gibbs" grow ever louder, more far-fetched and desperate.

### 2. New Evidence of Lies and Fraud by Steele and Hansmeier

   a. *Financial Records Show that, in 2012, Prenda Law Distributed 70% of Settlement Proceeds To Steele and Hansmeier.*

Steele and Hansmeier have repeatedly claimed that they have no ownership interest in Prenda Law, AF Holdings or Ingenuity 13 and that all settlement proceeds are held in trust accounts for use in future litigation.  For example, in the bar complaint filed in this Court, Steele stated "I have never had an ownership interest in Prenda Law Inc"; "I have never had an ownership interest in AF Holdings LLC or Ingenuity 13." (*Id*. at pg. 83).  In his deposition, Hansmeier testified that he had "no ownership interest [in AF Holdings] whatsoever" and that proceeds from settlements went into an attorney's trust account and were withdrawn only to pay expenses of litigation. (ECF No. 69-1 at pgs. 9-13).

The truthfulness of these and similar statements is severely challenged by two documents which Prenda Law sent to the Dropbox account on Gibbs' computer in early 2013: "*Prenda Law Profit and Loss Detail, January through December 2012*" and "*Prenda Law Balance Sheet Detail*." (*See* Exhibits E and F).  The receipt and disbursements shown in these spreadsheets directly contradict the oft-repeated statements of Steele and Hansmeier that they have no financial interest in Prenda Law or its litigation.

According to the *Prenda Law Profit and Loss Detail*, in 2012 alone, Prenda made "Payments to Old Owners"[6]—Hansmeier, Steele and Under the Bridge

---

[6] The term "Payments to Old Owners" implies that Steele, Hansmeier, and Under The Bridge Consulting were, at one time, owners of Prenda Law. At 70% of revenue, the payments seem unreasonably large to be from an arms-length sale of Steele Hansmeier PLLC to Duffy, especially if Steele and Hansmeier were not playing any role in managing Prenda.

MOTION FOR INDICATIVE RULING   NO. 2:12-CV-8333-ODW (JCx)

Consulting (their jointly-owned company[7])—equal to almost 70% of Prenda's total revenue. Hansmeier received $645,821.29 ($185,321.28 directly and $460,500.00 through Under the Bridge). Steele received $660,915.94 ($200,415.94 directly and $460,500.00 through Under the Bridge). This does not include tens of thousands of dollars in additional payments to or on behalf of Steele and Hansmeier for travel and entertainment, meals, credit card charges, and miscellaneous reimbursements, or payments to Steel's wife, Kerry Eckenrode Steele. It also does not include payments totaling $37,069.56 to Duffy or Duffy Law Group, also classified as "Payments to Old Owners."[8] Judging from the documents it appears that neither the *Profit and Loss Detail* nor the *Balance Sheet Detail* show any payments to AF Holdings, Ingenuity 13 or other Plaintiffs represented by Prenda.[9]

Exhibit E shows that Prenda received income from "Pirates" of $1,931,977.09 in 2012, and made "Payments to Old Owners" of $1,343,806.78 or 69.6% of its total receipts. Considering other payments to or for Steele, Hansmeier and Duffy, the total distributed to them likely exceeded 80% of receipts, even though these distributions left Prenda with a 2012 loss of $487,791.20. These figures do not include payments to Steele and Hansmeier from other Prenda accounts, or settlements that may have

---

[7] Approximately a month before Gibbs left Prenda Law, Hansmeier told Gibbs in a telephone conversation that Hansmeier and Steele each owned 50% of a side-business called Under the Bridge Consulting. At the time, Gibbs did not understand the implications of Hansmeier's comment. Only later did Gibbs realize that Under the Bridge was being used as a conduit for funneling settlement money from Prenda to Steele and Hansmeier (Gibbs Decl. at ¶ 18). The name "Under the Bridge" presumably refers to a place where trolls congregate. If the payments were indeed from the sale of Steele Hansmeier, it is puzzling that such large sums were paid to Under the Bridge Consulting.

[8] Classifying payments to Duffy as "Payments to Old Owners" is curious. It may indicate that Duffy owned a small interest in Steel Hansmeier PLLC when its business was transferred to Prenda. It could also mean that the "Payments to Old Owners" account was being used to disguise payments to the *de facto* owners of Prenda Law – Steele, Hansmeier and Duffy.

[9] This supports the conclusion that these companies were not independent entities, but rather alter egos of Steele and Hansmeier.

bypassed Prenda completely.[10]

Not only do these documents refute statements from Steele and Hansmeier that they lack any interest or beneficial ownership in Prenda Law, they also provide strong new evidence supporting Gibbs' prior testimony. Steele and Hansmeier were the primary beneficiaries of settlement payments to Prenda Law, giving them a compelling, if secret, financial interest in all aspects of Prenda's operations and litigation. They had a direct financial incentive to ignore any court order—or ignore Gibbs when he relayed such an order—if complying would slow the flow of settlement proceeds to Prenda.

> **b.** *BitTorrent Forensic Specialist's Report and Comcast Letter Show that Steele Seeded Films To Lure Potential Defendants Into Infringing on Plaintiffs' Copyrights.*

On June 3, 2013, in a Florida copyright-infringement case, Delvan Neville, a computer researcher, doctoral candidate at Oregon State University and BitTorrent forensic specialist, filed a 31-page declaration that concluded, after exhaustive analysis, that films were made available to BitTorrent users on download sites like The Pirate Bay by "sharkmp4," a GoDaddy account owned and controlled by Steele. *First Time Videos, LLC. v. Oppold*, Case No. 6:12-CV-01493-CEH-KRS (M.D. FL.), Docket No. 37-11, (Exhibit K, Declaration of Delvan Neville). The uploaded files were labeled as "Fast" indicating that they could be easily and rapidly downloaded from someone eager to give out the file. Some films were available from the sharkmp4 account before they were available anywhere else; one film was available before a copyright registration was filed; and one or more films were made available by someone who apparently had access to the original Master of the work. Neville's Declaration draws several important conclusions, all of which further implicate Steele

---

[10] Many entries in The *Prenda Law Profit and Loss Detail, January through December 2012* (Exhibit E) refer to transfers to and from other Prenda bank accounts. Without reviewing these accounts, it is not possible to say if they were also used to make payments to Steele and Hansmeier, further increasing their income from Prenda. (Gibbs Decl. at ¶ 19).

in attempts to maximize the number of individuals whom Prenda could pursue for copyright infringement:

> "Therefore, it appears that there is sufficient evidence to conclude that Ingenuity 13 is sharing its own works via sharkmp4 and identifying such swarms to 6881 Forensics[11] upon creation."

> "It appears from all the evidence that John Steele (or someone under his control or with access to his Go-Daddy account records with authorization to make changes to domain names) is the most probable candidate for the identity of Pirate Bay user sharkmp4."

> "Because all three entities [Ingenuity 13, 6881 Forensics and Prenda Law] appear under the same control, it is my belief that the purpose of sharing the file by sharkmp4 appears to have been in an effort to induce infringement for the purposes of monetization of copyrights of commercially low value." (*Id* at pgs. 22, 29, 31).

The efforts of Steele and Hansmeier to entice copyright infringement of films so that they could extort settlements from downloaders were further confirmed in a letter from Comcast in response to a subpoena in an AF Holdings case in Georgia.  In that case, Comcast was asked to identify the subscriber who owned IP address 75.72.88.156, the address used by sharkmp4 to seed certain films produced by AF Holdings and Ingenuity 13. On August 6, Comcast's Legal Response Center identified the subscriber as "Steele Hansmeier PLLC" of Minneapolis, MN. *AF Holdings, LLC v. Patel*, Case No. 2:12-CV-00262-WCO (N.D. Georgia), Doc. No.61-16.

The Neville declaration and the Comcast letter provide compelling new evidence that Steele and Hansmeier designed and operated a lucrative honeypot scheme.  While Gibbs never knew or suspected any of this, it was another critical element underpinning a business plan that relied entirely on revenue from settlements with alleged "pirates." This new evidence raises the possibility that Steele and the Plaintiffs gave their implied consent to the downloading of these films and had no

---

[11] 6881 Forensics is purportedly owned by Peter Hansmeier, Paul Hansmeier's brother, and was employed by Prenda to identify IP addresses of "pirates" who downloaded films.

legal basis for their many copyright-infringement lawsuits. This new evidence provides yet another reason to conclude Gibbs testified truthfully when he admitted to this Court that he had "in a way" been "duped" by Hansmeier and Steele.[12] (*See* ECF No. 93 at 97).

                c.      *Recordings Show That Steele Impersonated Mark Lutz and Alan Cooper on Phone Calls.*

On August 28, 2013, Gibbs testified at an evidentiary hearing in *AF Holdings, LLC v. Navasca*, Case No. 3:12-cv-02396-EMC (N.D. Cal). Defendant's attorney played voice recordings of two phone calls to GoDaddy's support lines during which the caller claimed to be Mark Lutz on one call and Alan Cooper on the other. Gibbs testified that the voice on the recordings claiming to be Mark Lutz and Alan Cooper was in fact Steele's. (*Id*. Doc. No. 116 at pg. 8). His testimony was buttressed by the fact that the caller asked GoDaddy to send a new password to the email address johnlsteele@gmail.com.[13]

That Steele would misappropriate other people's identities on recorded telephone calls makes his denial that he (or someone acting at his direction) forged the name of Alan Cooper on copyright assignments even less credible.

---

[12] At the March 11 OSC hearing, the Court asked, "Do you feel like you have been duped by Hansmeier and Steele?" Gibbs responded, "In a way, yes." His answer today would be "In many, many ways, yes."

[13] Steele's misappropriation of Alan Cooper's identity began even earlier. In the amended counterclaim in *Paul Duffy v Paul Godfread and Alan Cooper*, Case No. 1:13-cv-01569 (D. Minn.) (Doc. No. 36 at pg. 7), Defendants' attorney explains: "On November 6, 2010, at 10:01 a.m. Steele created a GoDaddy account and was assigned Shopper ID 39706942. ECF No. 16-3. Steele initially used his own name and the business address for Prenda Law, Inc. on the account. A mere 15 minutes later, Mr. Steele changed the customer name from "John Steele" to "Alan Cooper" and replaced the Steele Hansmeier address with 4532 East Villa Theresa Drive ("the Villa Theresa Address"). This address was previously shared by John Steele's sister, Jayme Steele and her boyfriend Anthony Saltmarsh. Id. Anthony Saltmarsh would later find himself, without his knowledge or consent, the namesake of the 'undefined beneficiary trust' which owns AF Holdings." The amended counterclaim describes, in some detail, the vexatious litigation in multiple venues which the Principals brought against Cooper in retaliation for exposing the forgery of his signature. Just as in this, and many other cases, retaliation seems to be the Principals' weapon of choice in dealing with opponents who stand up to them.

1

2

### d. Court Records Show That Prenda Law Has Violated Court Orders In Other Cases.

3

4

In a Colorado case which bears many similarities to this case, Prenda Law's local attorney filed a complaint against John Doe and 1385 "joint tortfeasors." On March 22, 2012, the court granted a motion for early discovery, allowing Plaintiff to subpoena ISPs for the purpose of identifying the Defendant and the 1,385 "co-conspirators." On October 19, 2012, the Honorable Judge Kathleen M. Tafoya issued an order reversing her original early discovery order and quashing all outstanding ISP subpoenas. The court ordered: "Insofar as any personal identifying information of the non-party 'joint tortfeasors' has already been provided to Plaintiff from the 'joint tortfeasors' ISPs, Plaintiff is prohibited from further communicating with these subscribers." *Sunlust Pictures, LLC v. John Doe*, Case No. 1:12-cv-00656-CMA-KMT (D. Col.) Doc. No. 94.

5

6

7

8

9

10

11

12

13

Despite this direct and unambiguous Court Order, Prenda sent out letters and subpoenas to subscribers in Virginia and began lawsuits against them based on information gained from ISPs in the Colorado case. *See, e.g., Sunlust Pictures, LLC v. John Doe IP 216.40.69.178*, Case No. 1:12-cv-01271-LMB-IDD (E.D. Va.) (Filed Nov. 7, 2012) (same IP address as in Colorado case); *Sunlust Pictures, LLC v. John Doe IP 68.98.135.78*, Case No. 1:12-cv-01280-LMB-IDD (E.D. Va.) (Filed Nov. 7, 2012) (same IP address as in Colorado case).

14

15

16

17

18

19

20

The proceedings in Colorado and Virginia indicate that Prenda's failure to abide by this Court's October 19 Order vacating early discovery was neither isolated nor unintentional. Moreover, it happened in cases in which Gibbs was not involved.

21

22

23

24

### e. Other Courts Have Found Gibbs, but Not The Principals, Credible.

25

26

There are numerous cases in which Prenda or its Principals or its Plaintiffs are under investigation for misconduct, have been sanctioned, or are facing sanctions. In a

27

28

MOTION FOR INDICATIVE RULING       NO. 2:12-CV-8333-ODW (JCx)

county court in Minnesota, the Honorable Tanya M. Bransford found that the plaintiff, Guava LLC—another sham company owned by Steele and Hansmeier—had engaged in conduct "markedly similar to a fraudulent scheme as found by Judge Otis Wright." The Court awarded a total of $63,367.52 in costs and attorney's fees, and made Alpha Law Firm[14] and its local counsel jointly and severally liable for payment. *Guava LLC v. Spencer Merkel,* Case No. 27-CV-12-20976 (Minn. 4th Dist.).

In the Northern District of California, the Court had to assess the credibility of the Principals and Gibbs in another AF Holdings copyright-infringement case in which Gibbs had previously represented the Plaintiff. *See AF Holdings, LLC v. Joe Navasca*, Case No. 3:12-02396-EMC (N.D. Cal.). Gibbs' final action before being allowed to withdraw from this case was to file AF Holdings motion for voluntary dismissal. *Id* at Doc. No. 62. Duffy substituted into this case when Gibbs withdrew. *Id* at Doc. No. 63. The Court, before ruling on the motion to dismiss, requested an explanation of the forged signature of Alan Cooper on the copyright assignment. In response, Duffy and Lutz filed declarations, with Duffy claiming that he knew nothing about the ADR certification and that it was Gibbs alone, not Prenda Law, who had the obligation to produce it. *Id* at Doc. No. 79. Lutz, as the sole officer or employee of Plaintiff, went further, declaring: "Gibbs also from time to time sent to me certifications to sign on behalf of AF Holdings stating that I am familiar with the ADR policies. My practice was to sign those certifications on behalf of the Salt Marsh Trust and return them to Gibbs." *Id*. at Doc. No. 80. Citing these declarations, the Honorable Judge Edward M. Chen entered final judgment dismissing the case on May 21, 2013, and directed the clerk to close the file. *Id*. at Doc. No. 82, 83.

On June 4, 2013, the Defendant made a motion for costs and attorney fees. Gibbs, knowing that Lutz's declaration about signing ADR certifications was false,

---

[14] Alpha Law LLC, is a Minnesota law firm owned and operated by Hansmeier. It shared an address and attorneys with Prenda and, for all intents and purposes, seems to be just another name under which Prenda operated.

and understanding his obligations as an officer of the court, submitted a declaration supporting Defendant's motion.  In his declaration, Gibbs stated that he had not sent ADR certifications to Lutz, and he had not had the alleged conversations with Lutz. Gibbs reiterated that Hansmeier told him that Salt Marsh was an individual who had read and signed the certifications, and that Hansmeier confirmed to him that Prenda Law had the original signatures on file. *Id* at Doc. No 84.

On July 22, the Court awarded fees and costs of $22,531.93 to the Defendant. The Court found that "the signature by Alan Cooper appears to have been a forgery" and:

> persons affiliated with AF used the alias 'sharkmp4' to post links on the Pirate Bay website to many of the copyrighted works in order to induce users to download the works so that they could then be sued for copyright infringement. This evidence corroborates Judge Wright's finding that the motivation for this and similar suits is to sue and coerce settlement. . . [W]hat AF has not done is offer any counter-evidence such as a declaration from Mr. Steele in which he denies that he is 'sharkmp4' or other evidence that AF did not take steps to induce users to download the subject works.  This evidence could easily have been offered by AF as a part of its opposition brief.  AF's failure to submit any factual denial under oath is telling. *Id* at Doc. No. 100 at pgs. 2, 5.

On July 2, 2013, before Judge Chen had awarded costs and fees, Defendant had made a motion for sanctions against Steele and Hansmeier. (*Id* at Doc. 93.)  On July 25, after awarding costs and fees to Defendant, the Court referred the motion for sanctions to the Honorable Magistrate Judge Nandor J. Vadas for a report and recommendation. Judge Vadas scheduled an evidentiary hearing for August 28, 2013 and directed the parties to be prepared to address the legal effect of the findings in this Court's May 6 Order and other specific questions. *Id* at Doc. No. 102, 103. The evidentiary hearing was Prenda's chance to rebut the findings in this Court's May 6 Order, to clarify the ownership of AF Holdings and the identity of Salt Marsh, to offer evidence supporting their assertions that Gibbs was single-handedly orchestrating

Prenda Law's every move, to explain the Alan Cooper signature, and to describe how settlement funds were being sent to AF Holdings.  Even though the Principals had elected not to present such evidence to this Court at its April 2, 2013 OSC hearing, this was a fresh opportunity for them to submit sworn evidence supporting their allegations without the fear of criminal penalties which kept them from testifying on April 2, 2013.

At the August 28 hearing, Duffy, appearing as the attorney for AF Holdings, claimed that Lutz was in San Francisco on his way to the hearing.  Lutz, however, did not appear in court or telephone to explain his absence.  Duffy did not attempt, in any meaningful way, to answer any of the specific questions posed by the court.  When Lutz did not appear, Duffy called no other witnesses and presented almost no new evidence.[15]  Gibbs, on the other hand, voluntarily appeared and testified for over an hour answering every question posed to him by Defendant's attorney, the Court and Duffy.  Gibbs again testified that Steele and Hansmeier were the decision-makers at Prenda Law.  Gibbs provided phone records of calls with Steele and Hansmeier detailing hundreds of calls, including calls on dates that were specifically relevant to issues arising in the *Navasca* case.

Duffy then cross-examined Gibbs. In his September 16, 2013 Report and Recommendation, the Honorable Magistrate Judge Vadas described their exchange as follows:

---

[15] Duffy did introduce one new item into evidence during his cross-examination of Gibbs—an "Engagement Letter" dated November 15, 2011 from Duffy to Lutz, which included this sentence:  "The attorney who will be overseeing your company's litigation, and your primary contact at Prenda Law, will be Brett Gibbs."  Although this was the first time Gibbs had seen this document, it had been attached to a Declaration of Mark Lutz filed April 29, 2013 as an Exhibit to a Memorandum of John Steele in a Florida case.  *Sunlust Pictures LLC v. Tuan Nguyen* 8:12-cv-01685-MSS (M.D. Fla.), Doc. No. 51 at pg. 22.  In that case, the Defendant's attorney pointed out that the Engagement Letter was printed on stationery which Prenda did not use at the time, strongly suggesting it was fraudulently created after the fact. *Id.*, Doc. No. 52. at pg. 7.  Gibbs also believes this was a back-dated creation of Prenda designed to deceive the courts in both Florida and California and deflect blame from Steele, Hansmeier and Duffy to him. (Gibbs Decl. at ¶ 21).  Gibbs finds it more than a little surprising that the Principals would submit yet another fake document to a federal court given the multiple accusations of fraud they already face in courts around the country.

AF attempted to attack Gibbs' testimony by presenting an affidavit he had filed in another case, where Gibbs represented himself as an attorney who worked "Of Counsel" for Prenda; litigated copyright lawsuits for Prenda Law; and advised and educated other attorneys working with Prenda Law, as well as Prenda's clients. Plaintiff's Ex. 1. AF also introduced affidavits filed by other attorneys who represented AF and described Gibbs as their point of contact for AF. Plaintiff's Exs. 2, 4. However, these declarations do not rebut Gibbs' testimony that Steele and Hansmeier alone communicated with their purported client, and that they directed Gibbs' litigation strategy. The declarations actually corroborate Gibbs' testimony he communicated with local counsel for AF, essentially acting as a go-between for Steele and Hansmeier. AF further attempted to attack Gibbs' testimony by pointing out that Gibbs and Hansmeier were friends from college, and therefore must have spoken on the phone about personal matters. And finally, AF attempted to undercut Gibbs' credibility by offering "evidence" that Gibbs had "cut a deal" with defendants in various AF cases and thus could not be trusted. **The undersigned is not at all persuaded by AF's arguments and finds that Gibbs' testimony is credible, supported by the record, and supported by the evidence admitted during the evidentiary hearing.** *Id.* at Doc. No. 116 at pgs. 6-7 (*emphasis added*). [16]

The Principals have refused to answer questions about their activities at Prenda Law, appearing only at hearings during which they will not be cross-examined by opposing counsel. For example, in *AF Holdings, LLC v. Doe* 0:12-cv-01445-JNE-FLN (D. Minn.), Steele testified on September 30, 2013 about the Alan Cooper signature, but the Court did not permit opposing counsel to question him. They also continue to dodge legitimate discovery requests. *See AF Holdings, LLC v. Patel*, Case No. 2:12-CV-00262-WCO (N.D. Georgia) at Doc. No 74, 75. They have designated Lutz as the sole officer of Plaintiffs, but have only presented vague and unconvincing reasons

---

[16] On October 16, 2013, Judge Chen adopted Judge Vadas' report and recommendation that "essentially found credible Mr. Gibbs's testimony" and rejected all of AF Holdings' objections. (*Id* at Doc. No. 120 at pgs. 6, 13). The Court also scheduled a November 21, 2013 OSC evidentiary hearing for Steele and Hansmeier to present evidence about the ownership of Plaintiff and other matters, but warned (in bold type) that "**any testimony in a declaration (or affidavit) that a party or nonparty deems important, significant, or critical must be presented at the evidentiary hearing by a live witness, subject to cross-examination.**" (*Id* at pgs. 15-16).

why he did not testify at a scheduled deposition in Georgia or at hearings in Minnesota or California at which he was ordered to appear.[17]

Gibbs, on the other hand, has testified in person or filed sworn declarations in multiple cases, submitted to cross-examination by Courts, opposition attorneys, and even a Prenda Principal. The Court in the Northern District of California found him, but not the assertions of a Prenda Principal, to be credible. Gibbs submits that all of this supports the Court's May 6 findings and sanctions against the Principals, Prenda and Plaintiffs, and also supports vacating those sanctions against him.

## III.   LEGAL STANDARD

Gibbs requests that the Court issue an indicative ruling to the Ninth Circuit under FRCP 62.1 stating that it would grant Gibbs' motion for reconsideration under FRCP 60(b) and vacate the sanctions imposed on Gibbs in its May 6 Order if the Court of Appeals remands for that purpose.

Gibbs respectfully requests that the Court reconsider the sanctions imposed on Gibbs under three of the Grounds for Relief set forth in FRCP (60)(b):

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (and)
> (6) any other reason that justifies relief.

In its May 6 Order, the Court set out the legal standard under which the Court issued the sanctions:

---

[17] On August 21, 2013, neither Lutz nor his attorney appeared for a scheduled deposition in *AF Holdings, LLC v. Patel*. *See* 2:12-cv-00262-WCO (M.D. Fla.) at Doc 76. No reason was given for their failure to appear. On August 28, 2013, Lutz failed to appear in a San Francisco court despite a Court Order that AF Holdings provide specific information to the Court. The Court did not allow Duffy to file Lutz's affidavit explaining that he had been detained by unnamed "federal authorities" at the Miami airport as he attempted to fly to the hearing. *AF Holdings LLC v. Navasca, Id* at Doc 115-1. Most recently, Lutz failed to appear at a September 30, 2013 evidentiary hearing in Minneapolis concerning the Alan Cooper forgery. Steele testified at the hearing that he overheard Cooper's side of a telephone conversation in which Cooper gave Lutz permission to sign Cooper's name (a story that differs markedly from earlier versions.) Asked to explain Lutz's absence, Hansmeier filed a declaration stating that he believed that "Lutz will be able to provide a good-faith reason" for not appearing. *AF Holdings, LLC v. Doe* 0:12-cv-01445-JNE-FLN, at Doc 52.

The Court has a duty to supervise the conduct of attorneys appearing before it. *Erickson v. Newmark Corp.*, 87 F.3d 298, 301 (9th Cir. 1996). The power to punish contempt and to coerce compliance with issued orders is based on statutes and the Court's inherent authority. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994). Though this power must be exercised with restraint, the Court has wide latitude in fashioning appropriate sanctions to fit the conduct. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–65 (1980).

Under the Court's inherent authority, parties and their lawyers may be sanctioned for improper conduct. *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). This inherent power extends to a full range of litigation abuses, **the litigant must have engaged in bad faith or willful disobedience of a court's order. Id. at 992**. Sanctions under the Court's inherent authority are particularly appropriate for fraud perpetrated on the court. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 54 (1991). (*emphasis added*)

In the Ninth Circuit, sanctions under the court's inherent powers are available if the court specifically finds bad faith or conduct tantamount to bad faith. *Fink*, 239 F.3d at 989, *citing Chambers*, 501 U.S. at 54.  In *Yagman v. Republic Ins*., 987 F.2d 622, 628 (9th Cir.1993), the Ninth Circuit vacated the imposition of sanctions where there was no evidence that the attorney had "acted in bad faith or intended to mislead the court."  Bad faith "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; ... it contemplates a state of mind affirmatively operating with furtive design or ill will." *United States v. Manchester Farming Partnership* 315 F.3d 1176, 1185 (9th Cir. 2003).

Gibbs' testimony is uncontroverted by any sworn testimony of the Prenda Principals.  Gibbs asks the Court to reconsider whether Gibbs acted with a dishonest purpose or simply made an inadvertent "mistake" when he characterized Mr. Denton's property as "a very large estate."  Gibbs also asks the Court to reconsider if Gibbs

knowingly violated the Court Order vacating early discovery or otherwise exhibited bad faith in this case.

## IV.   ANALYSIS

Gibbs was sanctioned by the Court for (1) telling a "blatant lie" about the size of Mr. Denton's property, and (2) ignoring a Court order vacating early discovery.

### A. Gibbs Did Not Lie To This Court.

The Court's May 6 Order described Gibbs' first transgression as follows:

> Enter Plaintiffs and their cottage-industry lawsuits. Even so, the Court is not as troubled by their lack of reasonable investigation as by their cover-up. Gibbs argued that a deep inquiry was performed prior to filing. Yet these arguments are not credible and do not support Gibbs's conclusions. Instead, Gibbs's arguments suggest a hasty after-the-fact investigation, and a shoddy one at that.

> For instance, Gibbs characterized Marvin Denton's property as "a very large estate consisting of a gate for entry and multiple separate houses/structures on the property." (ECF No. 49, at 19.) He stated this to demonstrate the improbability that Denton's Wi-Fi signal could be received by someone outside the residence. But Denton's property is not a large estate; it is a small house in a closely packed residential neighborhood. There are also no gates visible. (aerial photo omitted)

> Gibbs's statement is a blatant lie. His statement resembles other statements given by Plaintiffs in this and their other cases: statements that sound reasonable but lack truth. Thus, the Court concludes that Gibbs, even in the face of sanctions, continued to make factual misrepresentations to the Court. (ECF No. 130 at pgs. 6-7).

Here is the paragraph from the Gibbs' Declaration which the Court found contained Gibbs' "blatant lie":

> Moreover, in order to rule out neighbors of the property located at 635 S. Vanderwell Avenue, West Covina, California 91790 utilizing the internet connection, Ingenuity utilized Google maps and obtained a satellite picture of the property. The satellite photo revealed that the property was a very large estate consisting of a gate for entry and multiple separate houses/structures on the property. **Further, through**

**another publically available search, the house was identified as approximately 1,304 sq. ft. sitting on a 7,620 sq. ft. lot.** Considering the position of the house and the neighboring properties, including the seemingly main house on the lot, it seemed clear that, should the household have wireless Internet, it likely was not accessible by its neighbors. (ECF No. 49 at ¶ 38) (*emphasis added*).

While Gibbs clearly erred in characterizing Mr. Denton's property as "a very large estate," there was no intent to misrepresent facts or mislead this Court. (Gibbs Decl. at ¶ 22). The sentence following "a very large estate" gives the reported square footage of Mr. Denton's property. Street view photos show a sliding gate on the neighbor's driveway on one side of the house and a swing gate on Mr. Denton's driveway on the other side of the house.[18] (*See* Exhibit G). Gibbs had no intent to deceive or provide misleading information. The entire paragraph was aimed at showing that it was not *likely* that neighbors had intercepted wireless signals from Mr. Denton's property, exactly what Gibbs believed based on his own experience and his research on wireless routers.

Gibbs respectfully asks the Court to review Gibbs' few poorly chosen words in the context in which they were presented and to rule under FRCP 60(b)(1) that Gibbs' description of Denton's property was an inadvertent mistake and not a bad faith effort to deceive the Court.

### B. Gibbs Did Not Violate the Court's Order.

In the May 6 Order, the Court states:

> In addition to Gibbs' misrepresentations, there is the matter of the ignored Court Order vacating early discovery. The evidence does not show that the Order was ignored because of miscommunication among Plaintiffs. The Order was purposefully ignored—hoping that the ISPs were unaware of the vacatur and would turn over the requested subscriber information.

---

[18] Gibbs testified to the Court on March 11 that he used aerial views from Google maps as well as Google Street View photos in his investigation (ECF No. 93 at pgs. 99–100).

Although Gibbs is mentioned in the first sentence, the Court did not directly name Gibbs as someone who ignored its October 19 Order vacating early discovery. Nevertheless, Gibbs believes that the Court may have concluded that Gibbs did ignore its Order, and, understanding how the Court could have reached this conclusion, wants to explain exactly what transpired.

Gibbs believed that he had fully complied with the Court's October 19 Order vacating early discovery.  On October 19, Gibbs called Hansmeier, who had also received a copy of the Order, to tell him that the Court Order should be served on the ISP's.  In a subsequent conversation, Hansmeier confirmed that this had been done, that all of the ISPs had been served with the Court Order quashing the subpoenas. Believing Hansmeier, Gibbs declaration, filed on February 19 in response to the Court's OSC, included the following paragraph:

> 21.  Following receipt of the October 19, 2012 Orders, I caused the Court's October 19, 2012 Orders to be served on the registered agents for service of process of Verizon Online LLC to ensure that Verizon Online LLC had notice not to respond to the subpoenas that had already been served. (ECF No. 50, pg. 7).

And Gibbs' attorney, in his February 19 response to the OSC, stated:

> Indeed, following receipt of the October 19, 2012 Orders, Mr. Gibbs caused the Court's October 19, 2012 Orders to be served on the registered agents for service of process of Verizon Online LLC (and the other ISPs) to ensure that Verizon Online LLC had notice not to respond to the subpoenas that had already been served. (Gibbs' Decl. ¶ 21).  This is certainly not the action of an attorney that was attempting to evade the Court's orders. (ECF No. 49, pgs. 9-10)

On March 11, Gibbs was presented with evidence that Verizon had not been served with the October 19 Court Order. (ECF Nos. 77, 78).  When questioned about this by the Court, Gibbs' attorney responded:

> Prenda Law is one of the, is one of the e-mail addresses that received a copy of your October 19, 2012 order.  As does Mr. Gibbs. Mr. Gibbs had a conversation with Mr. Hansmeier and told him that he

26

1
2

thought that this order should be served on the ISP's.  Mr. Hansmeier advised Mr. Gibbs that would be done.  Mr. Hansmeier later advised Mr. Gibbs that his request had been taken care of.  (ECF 93 pg 9-10)

3
4
5
6
7
8
9

Gibbs did not have direct involvement with the process of issuing subpoenas to ISPs or receiving their responses.  These activities were generally handled by Angela Van Den Hemel in Hansmeier's office in Minneapolis[19] and others in Prenda's Chicago office. If the Court Order was not served on the ISPs, it was not because Gibbs chose to ignore it.  Gibbs may have been misled by Hansmeier, but he did not knowingly ignore this Court's October 19 Order. (Gibbs Decl. at ¶ 23).   Neither Hansmeier nor anyone else has provided any evidence or testimony to the contrary.[20]

10
11

Gibbs respectfully asks the Court to vacate the sanctions against him because he did not ignore the Court's order or act in bad faith in this, or any other, regard.

12

## V.   CONCLUSION

13
14
15
16
17
18
19
20
21

The frequent and flagrant misconduct by the Prenda Principals warranted the sanctions imposed by this Court on May 6.  New evidence demonstrates conclusively that Steele, Hansmeier and Duffy were never interested in protecting films from copyright infringement.  They only wanted to maximize settlement proceeds and use shell companies, organized in offshore jurisdictions, with no assets, accounts, employees or operations, to hide the fact that they were the true beneficiaries of Prenda's extortion scheme.   Bad faith was an essential ingredient in their business model.

22

23
24

[19] At the March 11, 2013 OSC hearing, an attorney from AT&T testified that he communicated regularly with Angela Van Den Hemel at Prenda about subpoena-related matters.  Ms. Van Den Hemel exercised her Fifth Amendment right not to testify at the April 2 OSC hearing, so it remains unknown whether Hansmeier told her about the October 19 Court Order vacating discovery.

25
26
27

[20] Because the Principals invoked their Fifth Amendment right not to testify at the OSC hearing on April 2, 2013, the Court may infer that their silence supports Gibbs' testimony that he told Hansmeier about the Court Order vacating early discovery, that Hansmeier chose to ignore it and then lied to Gibbs about having complied.  "[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). *See* ECF No. 130 at n.3.

28

MOTION FOR INDICATIVE RULING          NO. 2:12-CV-8333-ODW (JCx)

1
2
3
4
5
6
7
8
9
10

Gibbs was in another league.  He did not know that the Principals had forged signatures on documents.  Until recently, he thought his clients were independent entities, not front organizations organized and owned by Steele and Hansmeier to hide settlement proceeds.  He took directions from Steele and Hansmeier, but never thought he was being directed to do anything illegal or unethical.  His mistake was believing and relying on their statements, and transmitting them to the Court, unaware that they were false.  When he learned the truth, he resigned and no longer represents parties in copyright-infringement cases. He has since testified truthfully about the Principals' activities in this Court and others, even in the face of the Principals' less-than-subtle attempts at retaliation.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Gibbs believes that vacating the sanctions against him will help Defendant in the Court of Appeals to argue that sanctions on the Principals, the Plaintiffs, and Prenda Law should be affirmed.  The findings in the Court's May 6 Order relied heavily on Gibbs' testimony.  The veracity of his testimony and its usefulness in other courts will be significantly undermined if this Court, even after reconsidering, concludes that Gibbs told a "blatant lie."  It would seem difficult, if not impossible, to assert the truthfulness of Gibbs' testimony about Prenda while arguing that Gibbs was properly sanctioned for lying to the Court.  By vacating the monetary sanctions against Gibbs, the Court would allow the Defendant and others to use Gibbs' testimony about the Principals without the need for equivocation.  Vacating the sanctions against Gibbs would also prevent Steele, Hansmeier and Duffy from arguing that Gibbs lacks credibility because this Court sanctioned him.  It would show that this Court was correct when it relied on Gibbs testimony in its findings of fact in the May 6 Order.  It would reassure other Courts that are considering sanctions in Prenda cases that Gibbs is a credible witness whose testimony has withstood careful scrutiny in multiple courts.

27
28

Gibbs is respectfully requesting that the Court issue an indicative ruling vacating the sanctions imposed on him.  Leaving in place the sanctions on the Principals and their shell companies punishes them for acting in bad faith for financial gain.  Vacating the sanctions against Gibbs, who did not act in bad faith, avoids painting him with the same brush and punishing him for being an unwitting participant in the Principals' massive fraud.

While Gibbs is asking the Court to vacate the sanctions imposed upon him in its May 6 order, he is not asking the Court to withdraw the referrals the Court made to the U.S. Attorney, the Central District Disciplinary Committee, the State Bar and the Internal Revenue Service. Gibbs wants these investigations to proceed and will continue to cooperate fully with them.  If the monetary sanctions against Gibbs are vacated, Gibbs will withdraw his appeal—which the Ninth Circuit has consolidated with the appeals of Prenda, the Principals and Plaintiffs. This will not prevent him from testifying about the actions and statements of the Principals in this or other cases.

Vacating the sanctions which the Court imposed on Gibbs will not affect the sanctions imposed on the other parties. As noted above, all of the significant conclusions made by the Court in its eleven findings of fact relate almost exclusively to the Principals, not Gibbs.  Their appeals to the Ninth Circuit will not be affected by this Court's order extricating Gibbs from the Court imposed monetary sanctions.

Gibbs respectfully requests that the Court issue an indicative ruling to the Court of Appeals stating that it will vacate the sanctions on Gibbs if the Ninth Circuit remands the case.

Respectfully submitted,

DATED: October 17, 2013

/s/ Brett L. Gibbs
Brett L. Gibbs
28 Altamont Avenue
Mill Valley, CA 94941
*In Propria Persona*

29